| | |
|---|---|
| 1 | COOLEY LLP |
| | TRAVIS LEBLANC (251097) |
| 2 | (tleblanc@cooley.com) |
| | KRISTINE A. FORDERER (278745) |
| 3 | (kforderer@cooley.com) |
| | ANUPAM DHILLON (324746) |
| 4 | (ADhillon@cooley.com) |
| | 3 Embarcadero Center, 20th Floor |
| 5 | San Francisco, CA  94111 |
| | Telephone:    +1 415 693 2000 |
| 6 | Facsimile:     +1 415 693 2222 |
| 7 | TIANA DEMAS (*pro hac vice*) |
| | (tdemas@cooley.com) |
| 8 | 110 N. Wacker Drive, 42nd Floor |
| | Chicago, IL  60606 |
| 9 | Telephone:    +1 312 881 6500 |
| | Facsimile:     +1 312 881 6598 |
| 10 | |
| 11 | URVASHI MALHOTRA (334466) |
| | (umalhotra@cooley.com) |
| 12 | 3175 Hanover Street |
| | Palo Alto, CA  94304 |
| 13 | Telephone:    +1 650 843 5000 |
| | Facsimile:     +1 650 849 7400 |

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MISAEL AMBRIZ, individually and on behalf of all other persons similarly situated, | Case No. 3:23-cv-05437-RFL |
| Plaintiff, | **GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM (FED. R. CIV. P. 12(b)(6))** |
| v. | **DATE: MARCH 19, 2024** |
| Google LLC, | **TIME: 10:00 A.M.** |
| Defendant. | **JUDGE: HONORABLE RITA F. LIN** |
| | **COURTROOM: 15, 18TH FLOOR** |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................ 1
II.  FACTUAL BACKGROUND ............................................................................................... 2
III. LEGAL STANDARD ........................................................................................................... 4
IV.  THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ...................... 5
    A.   Google is not a "third party" to the communications at issue. ................................ 5
    B.   Plaintiff does not plausibly allege the involvement of a "person." ......................... 9
    C.   Plaintiff does not allege eavesdropping on a "telegraph or telephone wire." ....... 10
    D.   Plaintiff does not plausibly allege that "contents" of his communications
        were intercepted by Google "while . . . in transit." ............................................... 11
    E.   Plaintiff consented to having his calls monitored and recorded. .......................... 12
    F.   CIPA's exemption for telephone companies bars Plaintiff's claim. ..................... 13
V.   CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................................................................. 4, 12

*Balletto v. American Honda Motor Co., Inc.*,
　No. 23-cv-1017-JSW, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ........................................ 9

*Bartholomew v. YouTube, LLC*,
　17 Cal. App. 5th 1217 (2017) ................................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................................................... 4

*In re Google Assistant Privacy Litigation*,
　457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................................... 10, 11

*Graham v. Noom, Inc.*,
　533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................................. 6–8

*Javier v. Assurance IQ, LLC*,
　No. 20-cv-2860-CRB, 2023 WL 3933070 (N.D. Cal. June 9, 2023) ...................................... 13

*Javier v. Assurance IQ, LLC*,
　649 F. Supp. 3d 891 (N.D. Cal. 2023) ................................................................................. 8, 13

*Johnson v. Blue Nile, Inc.*,
　No. 20-cv-8183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ........................................... 7

*Kearney v. Salomon Smith Barney, Inc.*,
　39 Cal. 4th 95 (2006) ............................................................................................................... 12

*Khoja v. Orexigen Therapeutics, Inc.*,
　899 F.3d 988 (9th Cir. 2018) ................................................................................................ 3, 4

*Licea v. American Eagle Outfitters, Inc.*,
　659 F. Supp. 3d. 1072 (2023) ............................................................................................ 10, 11

*Lofton v. Verizon Wireless (VAW) LLC*,
　586 F. App'x 420 (9th Cir. 2014) ............................................................................................ 13

*Mastel v. Miniclip SA*,
　549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................................................ 10, 11

*Matera v. Google Inc.*,
　No. 15-cv-4062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................................... 12

# TABLE OF AUTHORITIES
(continued)

Page

*Mireskandari v. Mail*,
   No. CV 12-29743 MMM (FFMx), 2013 WL 12129559 (C.D. Cal. July 30, 2013) .................................................................................................................. 11

*Negro v. Superior Court*,
   230 Cal. App. 4th 879 (2014) ...................................................................................... 12

*Newirth by and through Newirth v. Aegis Senior Communities, LLC*,
   931 F.3d 935 (9th Cir. 2019) ........................................................................................ 5

*In re Northpoint Communications Group, Inc., Securities Litigation & Consolidated Cases*,
   221 F. Supp. 2d 1090 (N.D. Cal. 2002) ........................................................................ 5

*People v. Mahoney*,
   47 Cal. App. 3d 699 (1975) ........................................................................................ 13

*People v. Wilson*,
   17 Cal. App. 3d 598 (1971) ........................................................................................ 11

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ............................................................................................ 6, 14

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ...................................................................................... 6, 7

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................................................................... 8, 9

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ...................................................................................... 5

*Swarts v. Home Depot*,
   No. 23-cv-995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ............................. 9

*Tavernetti v. Superior Court*,
   22 Cal. 3d 187 (1978) ............................................................................................ 9, 14

*Telesaurus VPC, LLC v. Power*,
   623 F.3d 998 (9th Cir. 2010) ...................................................................................... 12

*United States v. Goldstein*,
   532 F.2d 1305 (9th Cir. 1976) ............................................................................... 13, 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
   No. 22-cv-9042-JSC, 2023 WL 3707181 (N.D. Cal. May 24, 2023) ........................ 11

COOLEY LLP
ATTORNEYS AT LAW
WASHINGTON, DC

iii

GOOGLE'S MOTION TO DISMISS
CASE NO. 3:23-CV-05437

# TABLE OF AUTHORITIES
(continued)

**Page**

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979) .................................................................................................. 6

*Weisbuch v. County of Los Angeles*,
    119 F.3d 778 (9th Cir. 1997) ............................................................................................ 5, 14

*Williams v. DDR Media, LLC*,
    No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ..................................... 7

*Williams v. What If Holdings, LLC*,
    No. C 22-3780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ......................... 6, 7, 8

*Yockey v. Salesforce, Inc.*,
    No. 22-cv-9067-JST, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ..................................... 9

**Statutes**

California Civil Procedure Code § 2295 ...................................................................................... 14

California Penal Code
    § 631(a) ........................................................................................................................ *passim*
    § 631(b) ......................................................................................................................... 13, 14
    § 631(b)(1) ........................................................................................................................... 14
    § 631(c) ................................................................................................................................ 14
    § 632(b) ................................................................................................................................ 10
    § 638(c)(2)–(3) ..................................................................................................................... 14

California Public Utilities Code § 234 ......................................................................................... 14

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 1, 5

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, on Tuesday, March 19, 2024 at 10:00 am, or as soon thereafter as this Motion may be heard, before the Honorable Rita F. Lin of the United States District Court, Northern District of California at the San Francisco Courthouse, Courtroom 15, 18th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google") will and hereby does move the Court to dismiss Plaintiff's Complaint.

Google requests that the Court dismiss the entire Complaint because it fails to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). This is the issue to be decided. The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings, any oral argument, and any other materials properly presented with this Motion.

**MEMORANDUM AND POINTS OF AUTHORITIES**

**I.   INTRODUCTION**

Plaintiff's Complaint should be dismissed because Google cannot be liable under the California Invasion of Privacy Act ("CIPA") for merely providing a software program—the modern equivalent of a tape recorder—that Verizon Communication Inc. ("Verizon") uses for customer service calls. The Complaint's wiretapping and eavesdropping theories under Section 631(a) of CIPA ("Section 631(a)") are untenable. Plaintiff Misael Ambriz ("Plaintiff") alleges that during his calls with Verizon customer service, Verizon used software provided by Google to assist with the calls. But California law makes abundantly clear that supplying such technology does not make the supplier itself a party to the conversation. That is all that allegedly happened here: Plaintiff allegedly called Verizon's customer service center, interacted first with a computerized "virtual agent" and then spoke to a live Verizon customer service agent. Plaintiff never claims, nor could he, that he was unaware his call was being monitored and recorded. Instead, Plaintiff alleges that Verizon did not inform him that the monitoring and recording was achieved through Google software: the Cloud Contact Center ("CCAI"). Based on these allegations, Plaintiff has brought a putative class action against Google for allegedly violating Section 631(a), by wiretapping and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

eavesdropping on conversations between Verizon and callers to Verizon's customer service line. The Court should reject this legal theory and dismiss the case for numerous reasons.

*First*, and most fundamentally, Plaintiff cannot state a claim because he does not plausibly allege that Google eavesdropped on—or was a "third party" to—his communications with Verizon. The law is clear that parties to communications (like Verizon) can use tools (like software provided by other entities) to record or analyze their own conversations with others (like Plaintiff), consistent with CIPA. The use of such tools does not make their provider (Google) an unannounced third-party to the call. No violation occurred here.

*Second*, Plaintiff fails to sufficiently plead additional required elements of his CIPA claim. Plaintiff does not allege that a "person" intercepted his call. CCAI is not a "person" under the statute, and Plaintiff never claims that Google or any Google employee eavesdropped on his calls. The Complaint also fails to plead that Plaintiff called Verizon customer service using a "telegraph or telephone wire" (as opposed to an internet-based smartphone). Nor does Plaintiff allege that his communications were intercepted "while … in transit."

*Third*, the Court should dismiss the Complaint because Plaintiff consented to having his calls monitored and recorded. He does not allege that Verizon failed to inform him that his calls were being monitored and recorded, or that he was unaware of this when he decided to continue his calls. Instead, he attempts to artfully plead around his consent by claiming he was not informed that *Google's* software did the recording.

*Finally*, Plaintiff's claim is barred because CIPA specifically *exempts* telephone companies (like Verizon) and their "agents" (like Google) from the statute if the contemporaneous call recording is for the purpose of providing the telephone company's services. Verizon's provision of direct customer service falls within this exception.

Plaintiff cannot cure these deficiencies through amendment, and the Court should dismiss the Complaint with prejudice.

## II. FACTUAL BACKGROUND

Plaintiff alleges he is a California resident who called Verizon's customer service center multiple times, most recently in January 2023. ECF No. 1, Compl. ¶¶3, 25, 32. On these calls,

Plaintiff first interacted with a "virtual agent"—an AI-based software program—and then he asked to be (and was) transferred to a human agent. *Id.* ¶35. Plaintiff claims he "reasonably expected" that once transferred to a human agent, his "conversation would be only between himself and the Verizon human customer service agent," and not the "virtual agent." *Id.* ¶35. However, he alleges that during the call, the virtual agent transcribed his conversation and "suggested 'smart replies' and news articles to the Verizon agent." *Id.* ¶36. Plaintiff does not describe the substance of his conversation with the virtual agent or the live customer service representative, nor does he explain why he expected that a recorded customer service call would remain private. *Id. passim*. Plaintiff alleges that "[n]either Verizon nor Google procured Plaintiff's prior consent, express or otherwise, to have [Google] eavesdrop on Plaintiff's conversation with Verizon," nor did Plaintiff expressly or impliedly consent to "allow [Google] to wiretap his communications with Verizon." *Id.*¶38.

Google's CCAI is an AI-powered call center offered to businesses that "'empowers human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance' and 'uses natural language processing to identify call drivers and sentiment that helps contact center managers learn about customer interactions to improve call outcomes.'" Compl. ¶17. CCAI operates both as a virtual agent and as support for live (human) agent interactions if they become necessary. *Id.* ¶¶20–21. Customers first speak with a "virtual agent" but may be transferred to a real person if necessary or requested; to streamline the service, the human agent will receive a transcript of the virtual agent interactions. *Id.* ¶¶18–19. While the Complaint alleges, based on a promotional video, that a "Google 'session manager monitors the state of the conversation' with the human agent," the same video makes clear that the "session manager" is computer software and not a person.[1] *Id.* Plaintiff further alleges based on the same

---

[1] How Does Google Cloud Contact Center AI Work?, https://www.youtube.com/watch?v=i8b4pEYIsIM (last visited Jan. 16, 2024). The Court can consider this video and the other documents cited as the basis of Plaintiff's allegations, Compl. n.1–n.9, because they are incorporated by reference. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom-their claims," and its application is appropriate where "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) ("Once a document is deemed incorporated by reference, the entire document is assumed to be true for

video that during the human agent interactions, CCAI "'[t]ranscribe[s] calls in real time for agents to reference during the call or for analysis after the call,'" "'grabs the context of the conversation to suggest articles and real-time, step-by-step guidance' to the agent," and suggests "smart replies to the agent." *Id.* ¶¶22–24 (alterations in original).

Plaintiff generally alleges that Google's terms allow it to use "'Customer Data' to 'train or fine-tune any AI/ML models.'" Compl. ¶28. However, the incorporated Service Specific Terms ("SS Terms") are clear that Google cannot use "Customer Data" to train AI/ML models unless Verizon—the "Customer"—allows it to do so, which is not alleged here. *Id.* at n.8.

Based on this predicate, Plaintiff alleges that Google violated Section 631(a) by wiretapping and eavesdropping on his customer service calls with Verizon without his consent. Compl. ¶¶52, 57. Although he lists all four prongs of CIPA in the Complaint, *id.* ¶52, Plaintiff only asserts a claim under the first and second prongs, *id.* ¶¶55–56. He alleges that Google, through CCAI, (1) "[i]ntentionally taps, or makes an[] unauthorized connection" on a "telegraph or telephone wire" and (2) "read[s] or attempt[s] to read or learn the contents or meaning of any … communication while … in transit." *Id.* ¶¶52, 55–56.

Plaintiff seeks to represent a nationwide class of "all individuals who, while in the United States, had the contents of their conversations with Verizon read and learned by" Google using CCAI, and a similarly defined subclass of individuals who were in California when the alleged conduct occurred. Compl. ¶¶40–41. He seeks $5,000 in statutory damages for each time Google allegedly violated CIPA. *Id.* ¶60.

**III.   LEGAL STANDARD**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) where the plaintiff has failed to state a cognizable legal theory or allege sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v.*

---

purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." (citation omitted)).

*Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). If a plaintiff alleges facts showing that she is not entitled to relief, it is well established that "a plaintiff may plead herself out of court." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (citation omitted). Finally, "[t]he court need not accept as true statements in a complaint contradicted by supporting documentation incorporated therein." *In re Northpoint Comm'ns. Grp., Inc., Secs. Litig. & Consol. Cases*, 221 F. Supp. 2d 1090, 1098 (N.D. Cal. 2002) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998)).[2]

## IV. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6)

### A. Google is not a "third party" to the communications at issue.

Under Section 631(a), CCAI—a software tool—does not qualify as a third-party participant to a communication. The Court should dismiss the case on this ground alone.

Plaintiff pursues only the first two prongs of Section 631(a), both of which prohibit "any person who, by means of any machine, instrument, or contrivance"

> (1) intentionally taps, or makes any unauthorized connection … with any telegraph or telephone wire, line, cable or instrument; or
>
> (2) willfully and without consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.

Cal. Pen. Code § 631(a). As to the first prong, Plaintiff alleges that Google, through CCAI, "intentionally tapped . . . the lines of telephone communications between" himself and Verizon. Compl. ¶55. For the second prong, Plaintiff alleges that Google, through CCAI, "willfully and without the consent of all parties to the communication, . . . read or attempted to read or learn the contents or meaning of electronic communications of [Plaintiff and the putative class], while the electronic communications were in transit or passing over any wire . . . within California." *Id.* ¶56.

---

[2] As noted in the Joint Case Management Statement, ECF No. 25 at 5, if the case is not dismissed, Google may move to compel this case to arbitration should discovery reveal the existence of an enforceable arbitration agreement between Plaintiff and Verizon, as to which Google is a third-party beneficiary. Google therefore reserves, and does not waive, its right to compel arbitration at a later point. *See Newirth by and through Newirth v. Aegis Senior Comms., LLC*, 931 F.3d 935, 940 (9th Cir. 2019) (waiver of compelling arbitration requires "the intentional relinquishment or abandonment of a known right").

Both theories fail.

"Only a third-party can listen to a conversation secretly," and a party to a communication can record it without eavesdropping. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021); *see also Williams v. What If Holdings, LLC*, No. C 22-3780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Parties to a conversation cannot eavesdrop on their own conversation[.]"); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (Section 631(a) "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (no CIPA violation where a party to a communication surreptitiously used a tape recorder to record the conversation).

This well-established rule comes from two California decisions: *Rogers v. Ulrich*, 52 Cal. App. 3d at 899, and *Ribas v. Clark*, 38 Cal. 3d 355 (1985). In *Rogers*, the defendant installed a tape recorder in his telephone, recorded a conversation with the plaintiff, and then played that conversation for a third party. 52 Cal. App. 3d at 897–98. The court held that a party to a conversation can record it without eavesdropping: "It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.* at 899. In other words, the tape recorder is not a third party. In *Ribas*, the California Supreme Court applied this principle to hold that a third party that listened in on a call between a husband and wife, unbeknownst to the husband, had "eavesdropped" for purposes of CIPA. The *Ribas* court distinguished "the secondhand repetition of the contents of a conversation" in *Rogers* from the "simultaneous dissemination to an unannounced second auditor" in *Ribas*, because the latter "denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." 38 Cal. 3d at 360–61.

Courts in this district have dismissed Section 631(a) claims involving technology like CCAI, analogizing it to the tape recorder in *Rogers*, not the friend in *Ribas*. In *Graham*, Judge Beeler held that the plaintiff failed to state a Section 631(a) claim against Noom, a weight-loss web application, and FullStory, the provider of "session replay" technology that Noom used "to record what visitors are doing on the Noom website, such as their keystrokes, mouse clicks, and page

scrolling, thereby allowing a full picture of the user's website interactions." *Graham*, 533 F. Supp. 3d at 827. The Court noted that FullStory provided a service solely for the benefit of its clients (*i.e.*, Noom), and the plaintiff did not allege "that FullStory intercepted and used the data itself." *Id.* at 832. Rather, FullStory was "a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data." *Id.* As such, FullStory was "an extension of Noom" that "provides a tool – like the tape recorder in *Rogers* – that allows Noom to record and analyze its own data in aid of Noom's business." *Id.* The Court held that FullStory was "not a third-party eavesdropper" and dismissed the Section 631(a) claim. *Id.* at 833. Multiple courts have followed *Graham's* reasoning to dismiss Section 631(a) claims involving similar technologies. *See, e.g.*, *Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 WL 5352896, at *1 (N.D. Cal. Aug. 18, 2023) (dismissing Section 631(a) claim against provider of keystroke recording software because it was "more akin to a tape recorder vendor than an eavesdropper"); *What If Holdings*, 2022 WL 17869275, at *4 (explaining that the software "functioned as a recorder, and not as an eavesdropper"); *Johnson v. Blue Nile, Inc.*, No. 20-cv-8183-LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (dismissing Section 631(a) claim because the plaintiff "does not plausibly plead that FullStory eavesdropped on her communications with Blue Nile … only that FullStory is Blue Nile's vendor for software services").

As in the above cases, Plaintiff alleges that Google provides CCAI—a software service—to Verizon. Compl. ¶1. Plaintiff claims he interacted directly with CCAI's "virtual agent" at the outset of his calls. *Id.* ¶34. Then, he asked to be (and was) transferred to a Verizon customer service agent. *Id.* ¶35. Crucially, Plaintiff does *not* claim that he was not informed at the beginning of the call that it was being monitored and recorded. Instead, Plaintiff alleges he "was not aware" that Google, not Verizon, provided the "virtual agent" that was making the recording. *Id.* ¶34. This is no different from claiming that a party who records a call violates Section 631(a) by not disclosing the manufacturer of the tape recorder. CIPA does not stretch that far. *See, e.g.*, *Rogers*, 52 Cal. App. 3d at 899; *DDR Media*, 2023 WL 5352896, at *4–5. And once Plaintiff's call was transferred from the virtual agent to the live representative, Plaintiff concedes that CCAI merely assists the live Verizon agents (who are indisputably parties to the calls) in responding to customers, including "by

identifying intent and providing real-time, step-by-step assistance" and by "help[ing] contact center managers learn about customer interactions to improve calls." Compl. ¶17. CCAI is plainly "an extension" of Verizon because it simply "provides a tool" for Verizon's business. *See Graham*, 533 F. Supp. 3d at 832.

Plaintiff's allegation that Google "can" use "Customer Data" to "fine tune" CCAI does not change the analysis. The incorporated SS Terms state that "Google *will not* use Customer Data to train or fine-tune any AI/ML models without Customer's prior permission or instruction." Compl. ¶28, n.8. Plaintiff does not allege that Verizon permitted Google to use Verizon's data for such training. And even if Verizon had done so, the SS Terms clearly set forth Google and the Customer's roles with respect to "Customer Personal Data." Google is merely a "processor," and the Customer (Verizon) "instructs Google to process Customer Personal Data in accordance with the Applicable Agreement (including this Addendum) and applicable law" for purposes dictated by the Customer, *not* Google. *See* CLOUD DATA PROCESSING ADDENDUM (CUSTOMERS).[3] Like the service providers in *Graham* and its progeny, Google does not have the authority to use the data it receives from Verizon for its own purposes. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 832 ("Unlike NaviStone's and Facebook's aggregation of data for resale, there are no allegations here that FullStory intercepted and used the data itself."); *What If Holdings*, 2022 WL 17869275, at *3 ("[A] key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way.").

Google's inability to use the data for its own purposes distinguishes the allegations here from those in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) ("*Javier I*"), and *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). *See* Compl. ¶54 (citing *Javier I* and *Saleh* for the proposition that offering "software-as-a-service and not merely a passive device" violates Section 631(a)). But, *Javier I* recognized that a software vendor would not be an

---

[3] https://cloud.google.com/terms/data-processing-addendum (last visited Jan. 16, 2024). The Cloud Data Processing Addendum is incorporated and hyperlinked in the SS Terms. *See* Compl. n.8; *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1229 n.7 (2017) (explaining hyperlink in terms of service may be incorporated and "used to create an enforceable contract").

"unannounced second auditor" if it "does not have the capability to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of the owner)" or if "the ubiquity of services like [those of the vendor] on the internet effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the defendant]." 649 F. Supp. 3d at 900; *see also Saleh*, 562 F. Supp. 3d at 521 (recognizing that "FullStory did not become a 'party' to the communication simply because it was providing recording and transmission services for Nike"); *Swarts v. Home Depot*, No. 23-cv-995-JST, 2023 WL 5615453, at *1, *7 (N.D. Cal. Aug. 30, 2023) (Home Depot's use of LivePerson, "a company that provides software to 'analyz[e] the data and provid[e] Home Depot [with] customer data metrics related to each conversation," did not violate CIPA because plaintiff did not allege that "LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot"); *Yockey v. Salesforce, Inc.*, No. 22-cv-9067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (Salesforce did not violate CIPA by providing a chat feature where the allegations did "not support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to" its direct customer); *Balletto v. Am. Honda Motor Co., Inc.*, No. 23-cv-1017-JSW, 2023 WL 7026931, at *1–3 (N.D. Cal. Oct. 24, 2023) (same).

Here, the very document Plaintiff incorporated into the Complaint makes clear that Google *cannot* use the call data for its own purposes and is not an unannounced third party. The Court should dismiss the Complaint on this ground alone.

### B. Plaintiff does not plausibly allege the involvement of a "person."

The Complaint also fails to allege that any "person" wiretapped or eavesdropped on Plaintiff's customer service calls–yet another reason for dismissal under Section 631(a). CCAI is software, not a person, and both prongs of Section 631(a) require that a "person" do the wiretapping or eavesdropping. *See Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978) (telephone company lineman's disclosure to law enforcement of drug-related phone conversation he heard while repairing line malfunction violated Section 631(a) and warranted suppression of evidence in support of search warrant); Cal. Pen. Code § 631(a) (limiting violations to those committed by "any

person").

California Penal Code § 632(b) defines "person" as "an individual, business, association, partnership, corporation, limited liability company, or other legal entity." CCAI is not a "person" under this definition; it is software. And the Complaint pointedly does not allege that any Google employee or other Google "person" "intentionally tapped," "made an unauthorized connection," or eavesdropped on any real-time Verizon customer service call. To the contrary, the Complaint repeatedly alleges that it is only "through GCCCAI"[4] that "Google . . . eavesdropped on Plaintiff's entire conversation with the Verizon human customer service agent." Compl. ¶36; *see also id*. ¶¶22–23, 25. While Plaintiff references a "session manager" that allegedly "monitors the state of the conversation with the human agent," *id.* ¶21, n.3, the video Plaintiff cites makes clear that the "session manager" is not a person; it is part of the CCAI software. *Id.* (citing HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK at 2:34 ("A session manager monitors the state of the conversation. *It* sends the request to a partner-installed agent desktop. At this point, the *human agent* will see transcripts of the conversation with the virtual agent…")). The Court should dismiss the Complaint in its entirety because Plaintiff fails to allege involvement by any Google "person."

### C. Plaintiff does not allege eavesdropping on a "telegraph or telephone wire."

Plaintiff also cannot state a claim under Section 631(a)'s first clause because he does not allege that Google wiretapped a "telegraph or telephone wire[.]" Cal. Pen. Code § 631(a). The Complaint does not allege that Plaintiff used a landline to contact Verizon, and given the ubiquity of smartphones, the Court cannot infer this. It is well-established that a smartphone (*i.e.*, a computer) does not satisfy the "telegraph or telephone wire" requirement. *See, e.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) (though they "contain the word 'phone' in their name, and have the capability of performing telephonic functions, [iPhones] are, in reality, small computers" (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021)); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (Section 631(a) claim under first clause must be dismissed if allegations do not show that plaintiff called "using telegraph or telephone wires").

---

[4] The Complaint refers to CCAI as "Google Cloud Contact Center AI" or "GCCCAI." Compl. ¶1.

Plaintiff does not allege that he used a "telegraph or telephone wire" to contact Verizon on any occasion. He alleges only that he "called" Verizon "several times." Compl. ¶32. This does not support the inference that Plaintiff used a landline. The Court should dismiss Plaintiff's Section 631(a) wiretapping claim for failure to plead this required element.

> D.  **Plaintiff does not plausibly allege that "contents" of his communications were intercepted by Google "while . . . in transit."**

Plaintiff's claim under Section 631(a)'s second clause fails for the additional reason that he does not plausibly allege that Google intercepted a communication "in transit." To state a claim under this prong, Plaintiff must plead that Google "reads, or attempts to read, a communication that is '*in transit* or *passing* over any wire, line or cable, *or is being sent from, or received* at any place within' California." *Mastel*, 549 F. Supp. 3d at 1136 (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 826 (emphasis in original)).

Here, Plaintiff does not plausibly allege that his communications were intercepted "while in transit." *See, e.g.*, *Mireskandari v. Mail*, No. CV 12-29743 MMM (FFMx), 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (finding plaintiff failed to "plausibly [] plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage"); *People v. Wilson*, 17 Cal. App. 3d 598, 603 (1971) (concluding no CIPA violation because information "was obtained after and not 'while' [communications] were in transit or passing 'over' the telephone wire"). As one court explained, "the crucial question … is whether [the plaintiff] has plausibly alleged that [the defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient." *Mastel*, 549 F. Supp. 3d at 1137. "Bare allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit." *Licea*, 659 F. Supp. 3d at 1085. Instead, a party must allege specific facts supporting real-time interception. *Valenzuela v. Keurig Green Mt., Inc.*, No. 22-cv-9042-JSC, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) (holding it was "impossible to infer from the complaint" that communications were intercepted "while . . . in transit" where plaintiff alleged that third-party "code" was embedded in defendant's website for a chat feature).

The Complaint's allegations do not meet the "in transit" requirement. The sole references to "in transit" are when Plaintiff recites the elements of Section 631(a), *see* Compl. ¶¶15, 52, 56, which is insufficient. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (instructing courts to "disregard threadbare recitals of the elements of a cause of action" (quoting *Iqbal*, 556 U.S. at 678)). Even under Plaintiff's theory that the information is somehow shared with Google pursuant to the SS Terms, there are no facts in the Complaint supporting the idea that this occurs while the communications at issue are "in transit." The Court should dismiss Plaintiff's Section 631(a) claim brought under the second clause for failure to allege an interception "in transit."

### E. Plaintiff consented to having his calls monitored and recorded.

Plaintiff's entire claim also fails because Section 631(a) requires the prohibited conduct to be "without consent," and prior consent is an absolute defense to a CIPA claim. "Under CIPA, a consent defense is established when both parties—the sender and the recipient of the communication—consent to the alleged interception." *Matera v. Google Inc.*, No. 15-cv-4062-LHK, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016); *see Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) (CIPA prohibits eavesdropping "without first informing all parties to the conversation that the conversation is being recorded"); *Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 892 (2014) ("In the wiretapping context, a finding of implied-in-fact consent requires 'circumstances indicating that the [party] knowingly agreed to the surveillance.'" (citation omitted)).

As noted above, Plaintiff does not allege that Verizon failed to inform him, as is standard for any customer service call, that his calls would be monitored and recorded generally. Compl. ¶¶32–35.[5] Instead, Plaintiff merely claims that Verizon did not specify that *Google* provided the

---

[5] Plaintiff cannot amend to allege that he was unaware his call would be monitored and recorded at all, because all incoming callers to Verizon's customer contact center (1-833-VERIZON) are informed of this. The current message says:

> Welcome to Verizon. I'm the Verizon Assistant. Para Español, oprima el nueve. Your call may be monitored or recorded by Verizon and our vendors for quality assurance and security, to train our employees and systems, and to personalize your experience. Say or enter a phone number or account number associated with the question you are calling

software that Verizon used to record and transcribe customer service calls. *Id.* ¶38 ("Neither Verizon nor Google procured Plaintiff's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff's conversations with Verizon.").

Plaintiff cannot plead around the fact of notice generally, and the Complaint is clear that he knowingly stayed on the call (and, in fact, made multiple calls). This is grounds for dismissal. *See Javier v. Assurance IQ, LLC*, No. 20-cv-2860-CRB, 2023 WL 3933070, at *2–3 (N.D. Cal. June 9, 2023) (dismissing case brought by Plaintiff's counsel on statue-of-limitations grounds because the plaintiff was on notice of the allegedly illegal monitoring the first time he visited the website due to the company's privacy policy); *see also Javier I*, 649 F. Supp. 3d at 902 n.6 (taking judicial notice of privacy policy on prior motion to dismiss making the same argument). Nothing else is required to obtain Plaintiff's consent, and his CIPA claim should be dismissed.

### F. CIPA's exemption for telephone companies bars Plaintiff's claim.

Finally, the Court should dismiss the Complaint because the alleged conduct falls squarely within Section 631(b)'s exemption for telephone companies and their agents. Section 631(a) does not apply where "[a]ny … telephone company" is "engaged in the business of providing communications services and facilities," including any of its "agents," as long as the conduct is "for the purpose of construction, maintenance, conduct or operation of the services and facilities of the … telephone company." Cal. Pen. Code § 631(b)(1); *see United States v. Goldstein*, 532 F.2d 1305, 1314 (9th Cir. 1976) (holding telephone company's investigation into fraud, by tapping a line, complied with CIPA because "the conduct of the phone company's business requires it to detect and prevent toll fraud" (quoting *People v. Mahoney*, 47 Cal. App. 3d 699, 716 n.4 (1975))). Here, Plaintiff alleges that Google, via CCAI, is an agent that helps Verizon provide customer support—a "service" of a "telephone company."

***First***, at all relevant times, Google was an "agent" of a "telephone company" with respect

---

about. To become a new customer, say 'New Customer,' or say, 'I don't have one.'

(last accessed January 16, 2024). *See Lofton v. Verizon Wireless (VAW) LLC*, 586 F. App'x 420, 421–22 (9th Cir. 2014) (denying motion for preliminary injunction in putative CIPA class action because Verizon "has revised its written policy to require its debt collectors to disclose on every outgoing call that the call is being recorded").

to its provision of CCAI. Verizon is a telephone company under CIPA, *see Cal.* Pen. Code § 631(c), because it is a "corporation … owning, controlling, operating, or managing any telephone line for compensation within this state," Pub. Util. § 234, and/or provides commercial telephone services using "cellular radiotelephone[s]," Cal. Pen. Code § 638(c)(2)–(3). *See* Compl. ¶3. Moreover, Google, as alleged in the Complaint, was an "agent" of Verizon at all relevant times. *See* Cal. Civ. Pro. Code § 2295 ("An agent is *one who represents another*, called the principal, *in dealings with third persons*." (emphasis added)). Here, Plaintiff alleges that Verizon "contracted" with Google to use CCAI "to respond to customers who … call to, among other things, receive support" for Verizon's services, products, and other offerings. Compl. ¶¶3, 9, 25. Plaintiff further alleges that CCAI interacts with customers as a "virtual agent" and supports Verizon's live customer service agents. Thus, Google, via CCAI, was an agent of Verizon (a telephone company) under Section 631(b).

**Second**, CCAI is used by Verizon to maintain, conduct, or operate Verizon's services and facilities. *See* Cal. Pen. Code § 631(b)(1). The Complaint alleges that people call Verizon customer service to "receive support," Compl. ¶3, which "support" is necessarily for Verizon's "services," *see Cal.* Pen. Code § 631(b)(1). The Complaint also claims that Google, via CCAI, assists Verizon's customer support representatives by "empower[ing] human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance" and "help[ing] contact center managers learn about customer interactions to improve call outcomes." Compl. ¶17. Because Plaintiff's own allegations establish that CCAI is used to advance Verizon's business and services, the conduct at issue is exempt from CIPA.[6] *See Goldstein*, 532 F.2d at 1314 (fraud prevention is part of phone company's business); *Tavernetti*, 22 Cal. 3d at 189 (repair lineman did not violate CIPA by eavesdropping while fixing a phone line, although his subsequent disclosure of that communication to law enforcement was not exempt); *see also Weisbuch*, 119 F.3d at 783 n.1 ("A plaintiff may plead herself out of court.").

---

[6] In *Ribas v. Clark*, the California Supreme Court rejected an argument on demurrer about the applicability of a different CIPA exemption. 38 Cal. 3d at 362. *Ribas* is distinguishable because the facts necessary to show that the exemption applied were not apparent from the face of the complaint. Here, the Complaint's allegations establish that the exemption applies.

## V. CONCLUSION

For the reasons discussed herein, the Court should dismiss the Complaint in its entirety.

Dated: January 16, 2024

COOLEY LLP

By: */s/ Travis LeBlanc*
Travis LeBlanc
Tiana Demas
Kristine Forderer
Anupam Dhillon
Urvashi Malhotra

Attorneys for Defendant
Google LLC