**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISAEL AMBRIZ, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Case No. 3:23-cv-05437-RFL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: March 19, 2024<br>Time: 10:00 a.m.<br>Room: Courtroom 15 – 18th Floor<br>Judge: Hon. Rita F. Lin |

1

## **TABLE OF CONTENTS**

2
                                                                        **PAGE(S)**

3
INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................1

     I.     The Complaint Sufficiently Alleges A Violation Of CIPA § 631(a) ........................1

          A.    Google Was A Third-Party Wiretapper To Plaintiff's
               Communications .......................................................................................1

               1.     Defendant Is A Third-Party Wiretapper Under The
                        "Separate Entity" Approach .................................................2

               2.     Defendant Is A Third-Party Wiretapper Under The
                        "Capability" Approach .......................................................4

               3.     Defendant Is A Third-Party Wiretapper Under The
                        "Extension" Approach, Even Though This Approach Is
                        Contrary To The Text And Policy Of CIPA § 631, As Well
                        As Ribas, And Should Be Rejected .....................................7

          B.    Google Is A "Person" ...............................................................................9

          C.    Defendant Intercepted Plaintiff's Calls "In Transit" ................................10

          D.    Defendant Has Not Met Its Burden To Demonstrate Plaintiff
                Consented To The Wiretapping.................................................................12

          E.    CIPA's Public Utility Exemption Does Not Apply To
                Defendant .................................................................................................13

CONCLUSION ............................................................................................................15

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Ades v. Omni Hotels Management Corp.*,
   46 F. Supp. 3d 999 (C.D. Cal. 2014) .......................................................................... 15

*Augustine v. Lenovo (United States), Inc.*,
   2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ................................................... 1, 12, 13

*Balletto v. Am. Honda Motor Co.*,
   2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) .......................................................... 4, 8

*Balletto v. Am. Honda Motor Co.*,
   2024 WL 589090 (N.D. Cal. Feb. 13, 2024) ........................................................... 5, 11

*Blue Spike, LLC v. Zeitera, LLC*,
   2014 WL 4310977 (N.D. Cal. Aug. 28, 2014) ............................................................ 14

*D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*,
   2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ...................................................... 2, 8, 11

*Diaz v. Target Corp.*,
   2010 WL 11558086 (C.D. Cal. Sept. 20, 2010) .......................................................... 14

*Exec. Sec. Mgmt., Inc. v. Dahl*,
   830 F. Supp. 2d 883 (C.D. Cal. 2011) ......................................................................... 15

*First Mercury Ins. Co. v. Great Divide Ins. Co.*,
   241 F. Supp. 3d 1028 (N.D. Cal. 2017) ....................................................................... 14

*Flowers v. Twilio, Inc.*,
   2016 WL 11684603 (Cal. Super. Ct. Aug. 2, 2016) .................................................... 2, 9

*Garcia v. Yeti Coolers, LLC*,
   2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) ............................................................. 4, 5

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................................ 7, 8

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
   2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ............................................................... 4

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................... 3, 11

*In re Google Inc.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................................................ 14

*In re Nelson*,
  761 F.2d 1320 (9th Cir. 1985) ........................................................... 15

*James v. Walt Disney Co.*,
  2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ...................................... 10

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023) .......................................... passim

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) .................................. 12, 13

*Johnson v. Blue Nile, Inc.*,
  2021 WL 1312771 (N.D. Cal. April 8, 2021) ......................................... 7

*Kauffman v. Papa John's Int'l, Inc.*,
  2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ......................................... 13

*Kight v. CashCall, Inc.*,
  200 Cal. App. 4th 1377 (2011) ........................................................... 10

*Licea v. Am. Eagle Outfitters, Inc.*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023) ............................................... 12

*Licea v. Old Navy, LLC*,
  2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ...................................... 13

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................ 12

*Maghen v. Quicken Loans Inc.*,
  94 F. Supp. 3d 1141 (C.D. Cal. 2015) ................................................ 15

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................... 12

*McClung v. AddShopper, Inc.*,
  2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........................................ 11

*Mireskandari v. Mail*,
  2013 WL 12129559 n.44 (C.D. Cal. July 30, 2013) ............................. 11

*People v. Buchanan*,
  26 Cal. App. 3d 274 (1972) ................................................................ 15

*People v. Garber*,
  275 Cal. App. 2d 119 (1969) .............................................................. 14

*People v. Wilson*,
  17 Cal. App. 3d 598 (Ct. App. 1971) ................................................. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ............................................................. 2

*Ribas v. Clark*,
   38 Cal. 3d 355, (1985) ....................................................................... 3, 4, 9, 10

*Roney v. Miller*,
   705 F. App'x 670 (9th Cir. 2017) ...................................................................... 15

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................. 2, 9

*Tanner v. Acushnet Co.*,
   2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ............................................................ 6

*Tavernetti v. Superior Ct.*,
   22 Cal. 3d 187 (1978) .................................................................................. 14

*United States v. Goldstein*,
   532 F.2d 1305 (9th Cir. 1976) ......................................................................... 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
   2023 WL 3707181 (N.D. Cal. May 24, 2023)........................................................... 12, 13

*Valenzuela v. Nationwide Mutual Ins. Co.*,
   2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) ...................................................... passim

*Valenzuela v. Super Bright LEDs Inc.*,
   2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......................................................... 4, 8

*Williams v. DDR Media, LLC*,
   2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ............................................................ 7

*Williams v. DDR Media, LLC*,
   2024 WL 347904 (N.D. Cal. Jan. 30, 2024)............................................................. 7

*Williams v. What If Holdings, LLC*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......................................................... 7

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) ........................................................... 5

*Yockey v. Salesforce, Inc.*,
   2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ..................................................... passim

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .............................................................. 1, 5, 6

**STATUTES**

Cal. Penal Code § 631(a) ........................................................................................... 3, 4, 7

Cal. Penal Code § 631(b)(1) ....................................................................................... 13, 14

Cal. Penal Code § 632(a) ................................................................................................... 9

Cal. Pub. Util. Code § 234 .............................................................................................. 14

**RULES**

Fed. R. Evid. 201(b) ................................................................................................... 13, 15

Fed. R. Evid. 201(c)(2) ............................................................................................... 13, 14

**OTHER AUTHORITIES**

2022 Cal. Legis. Serv. S.B. 1272 ................................................................................... 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

This is a straightforward case.  Plaintiff Michael Ambriz ("Plaintiff") alleges that when he called Verizon, the contents of his communications were simultaneously and contemporaneously read and learned by Defendant Google, Inc. ("Defendant" or "Google") using its software-as-a-service, Google Cloud Contact Center AI ("GCCCAI").  Compl. ¶¶ 1, 3-4, 7, 17-21, 32-37.  Google not only listens in on the call, it also transcribes the call in real time, analyzes the conversation in real time to suggest smart replies and step-by-step guidance, and has the capability to use those communications to improve its products and services.  *Id.* ¶¶ 22-24, 28.  And Google gets paid for each minute it listens in on a telephone call.  *Id.* ¶ 26.  All of this, Plaintiff alleges, was done without his or other Class Members' prior consent.  *Id.* ¶¶ 29, 38.  Under well-established authority, such allegations plausibly allege Google violated the California Invasion of Privacy Act ("CIPA") § 631(a).  The arguments in Google's Motion to Dismiss (ECF No. 28) (the "Motion" or "MTD") are not persuasive and should be rejected.

## ARGUMENT

I.      **THE COMPLAINT SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 631(A)**

      A.      **Google Was A Third-Party Wiretapper To Plaintiff's Communications**

Defendant argues Plaintiff Ambriz cannot state a § 631(a) claim because "[GC]CCAI – a software tool – does not qualify as a third-party participant to a communication."  MTD at 5:10-11.  Whether Defendant is a third-party wiretapper is a "a question of fact for a jury, best answered after discovery into the storage mechanics of [GCCCAI]."  *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) (same).  Regardless, and as explained in more detail below, courts are generally split into three camps regarding whether a software-as-a-service ("SaaS") provider is a third-party wiretapper for the purposes of CIPA § 631.  The two better-reasoned approaches—the "separate entity" approach and the "capability" approach—support Plaintiff's allegations that Defendant is a third-party wiretapper and is thus liable for violating CIPA § 631.  Defendant's proffered interpretation, meanwhile—the "extension" approach—has no basis in the text, caselaw,

1    and legislative policy behind CIPA § 631 and should be rejected.  But even under this interpretation,

2    Plaintiff has sufficiently alleged Defendant is a third-party wiretapper.

3                    1.    *Defendant Is A Third-Party Wiretapper Under The "Separate*
                          *Entity" Approach*
4

5          The first line of cases has adopted the "separate entity" approach, which holds that a SaaS

6    vendor like Google is a third-party wiretapper if it "is a separate legal entity that offers 'software-as-

7    a-service' and not merely a passive device."  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal.

8    2021) (finding SaaS provider was a third party to communications between website and its

9    customers); *see also*, *e.g.*, *Valenzuela v. Nationwide Mutual Ins. Co.*, --- F. Supp. 3d ---, 2023 WL

10   5266033, at *7 (C.D. Cal. Aug. 14, 2023) ("[A] plausible inference from Valenzuela's allegations is

11   that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the

12   contents of communications in real time."); *Revitch v. New Moosejaw, LLC,* 2019 WL 5485330, at

13   *2 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) ("[I]t cannot be that anyone who receives a direct signal

14   escapes liability by becoming a party to the communication.  Someone who presses up against a door

15   to listen to a conversation is no less an eavesdropper just because the sound waves from the next

16   room reach his ears directly.  That person remains a third party, even as a direct recipient of the

17   speaker's communication."); *D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*, 2023 WL 7006793, at

18   *8 (S.D. Cal. Oct. 24, 2023) ("Plaintiffs sufficiently allege Defendant allowed Vergic to

19   contemporaneously duplicate their chat conversations with Defendant as they occurred, thereby

20   reading them. … Therefore, Plaintiffs successfully allege, at this stage, that JC Penney may be liable

21   for violating Clause Two of CIPA, by aiding and abetting Vergic."); *Flowers v. Twilio, Inc.*, 2016

22   WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]he complaint makes clear that it is Twilio,

23   not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that

24   Twilio simply provided a software product that third parties misused.").  In short, this line of cases

25   holds that if the SaaS provider (*i.e.*, Google) is a separate and distinct entity from the actual parties

26   to the communication (*i.e.*, Plaintiff Ambriz and Verizon), then the SaaS provider is a third party

27   wiretapper.  "Whether the third party's use was purely for [the party to the communication's] benefit,

28

1    rather than for its own benefit, is immaterial under the statute." *Nationwide Mutual Ins. Co.*, 2023

2    WL 5266033, at *7.

3          The "separate entity" approach best comports with the text of the second clause of CIPA

4    § 631(a), which simply asks whether a wiretapper "reads, or attempts to read, or to learn the contents"

5    of any communication, not whether the wiretapper used the information for any particular purpose.

6    Cal. Penal Code § 631(a).  Indeed, "usage" is a separate clause and constitutes a separate violation

7    of CIPA § 631(a), and "reading a use requirement into the second prong would add requirements

8    that are not present (and swallow the third prong in the process)." *Javier v. Assurance IQ, LLC*, 649

9    F. Supp. 3d 891, 900 (N.D. Cal. 2023) ("*Javier II*") (Breyer, J.).  Further, the "separate entity"

10   approach best aligns with the legislative purpose behind CIPA § 631, which is to prevent the

11   "simultaneous dissemination [of the contents of a conversation] to *an unannounced second auditor,*

12   whether that auditor be a person *or mechanical device*." *Ribas v. Clark*, 38 Cal. 3d 355, 360–61,

13   (1985); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("*In

14   re Facebook*") ("[T]he Wiretap Act's legislative history evidences Congress's intent to prevent the

15   acquisition of the contents of a message by an unauthorized third-party or an unseen auditor.").  To

16   put it simply, the purpose of wiretapping statutes like CIPA is to prevent an entity—be it man or

17   machine—from listening in on a conversation between two others, which preserves the right of the

18   parties to "control the nature and extent of the firsthand dissemination of [their] statements." *Ribas*,

19   38 Cal. 3d at 361.  There is nothing regarding what a wiretapper must do with the conversation or on

20   whose behalf they must be acting; the eavesdropping is enough and was the conduct the California

21   Legislature sought to prevent.  *Nationwide Mutual Ins. Co.*, 2023 WL 5266033, at *7 ("Allowing a

22   third party to listen in makes the third party liable for a violation of Section 631.").

23         Finally, the "separate entity" approach best comports with the California Supreme Court's

24   decision in *Ribas*.  In that case, a conversation between a wife and husband, Ribas, was eavesdropped

25   on by the wife's friend, Clark.  There were no allegations that Clark used the wiretapped information

26   for his own benefit.  Clark was a separate person who listened in on a conversation to which he was

27   not a party, at the direction and for the benefit of the wife.  Nonetheless, the California Supreme

28   Court found Clark was a third-party wiretapper for the purposes of CIPA § 631(a).  *Id.* at 361-62.

1 Indeed, *Ribas* went as far as to contemplate liability under CIPA § 631(a) for an employer who

2 "*request[s] a secretary to secretly transcribe a conversation over an extension*," even though a

3 secretary would be doing the recording solely for the benefit of their employer. *Ribas*, 38 Cal. 3d at

4 361 (emphasis added).

5  Plaintiff's allegations make clear that Google is at least no different than the hypothetical

6 secretary in *Ribas*. Specifically, Plaintiff alleges Google is a "separate legal entity" from Verizon.

7 Compl. ¶¶ 27, 54. Further, Plaintiff alleges Google, among other things, secretly listens in on and

8 transcribes conversations that Verizon has with its current and prospective customers. *Id.* ¶¶ 21-22.

9 Accordingly, under the "separate entity" approach, Google was a third-party wiretapper to Plaintiff's

10 communications with Verizon.

11   2. Defendant Is A Third-Party Wiretapper Under The

12    "Capability" Approach

13  A second line of cases—and a rapidly growing one at that—has adopted the "capability"

14 approach, which holds SaaS provider is a third-party wiretapper if the SaaS provider "ha[s] the

15 *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [which]

16 has no independent capability to divulge the recording for any other purpose but that of its owner)."

17 *Javier II*, 649 F. Supp. 3d at 900 (emphasis in original); *see also*, *e.g.*, *Yockey v. Salesforce, Inc.*,

18 --- F. Supp. 3d ----, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (Tigar, J.) (adopting

19 "capability" approach); *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *2 (N.D. Cal. Oct.

20 24, 2023) (White, J.) ("*Balletto I*") (same); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472,

21 at *7 (C.D. Cal. Nov. 27, 2023) (same); *Heiting v. Taro Pharmaceuticals USA, Inc.*, 2023 WL

22 9319049, at *4 (C.D. Cal. Dec. 26, 2023) (same); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006,

23 at *3 (C.D. Cal. Sept. 5, 2023) (noting "courts have posited that companies like ASI are separate

24 corporate entities more accurately analogized to the eavesdropper in *Ribas*" because "the alleged

25 capabilities of [web monitoring] software are beyond the ordinary function of a tape recorder")

26 (internal quotations omitted). The "capability" approach does not require that the SaaS provider

27 actually use the data for another purpose in the instant action, only that the SaaS provider can do so.

28 *Javier II*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Active Prospect can use

that information for other purposes, even if Javier has not alleged that they have done so in this case").

Should the Court adopt "capability" approach, Plaintiff's allegations suffice to show Google is a third-party eavesdropper under this standard. As Plaintiff alleges, Google has the capability to use the wiretapped conversations for a number of purposes other than providing them to Verizon, including but not limited to:

- Analyzing conversations in real time to "'suggest articles and real-time, step-by-step guidance' to the [customer service] agent.'" Compl. ¶ 23.

- Providing "'smart replies' to the agent based on Google's analysis of the real-time contents of the conversations." *Id.* ¶ 24.

- Profiting from the intercepted communications by "charg[ing] its clients '$0.03 per minute' for 'Agent Assist for voice sessions with Summarization and other assist features.'" *Id.* ¶ 26.

- Having the capability to use the intercepted communications "'to train or fine-tune any AI/ML models' with its clients' permission … (*i.e.*, to improve the AI-based products and services Google provides)." *Id.* ¶ 31.

These allegations make clear that Google has the capability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081; *see also*, *e.g.*, *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *3 (N.D. Cal. Feb. 13, 2024) (White, J.) ("*Balletto II*") ("Balletto does include allegations about how Salesforce would be capable of using data from Honda's website: through the Einstein data intelligence platform."); *Javier II*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Javier pleads that ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites"); *Garcia*, 2023 WL 5736006, at *3 (SaaS provider was a third party wiretapper where "Plaintiff alleges that ASI's capabilities were significantly more sophisticated than the tape recorder in Rogers," including because SaaS provider "collect[ed] and store[d] chat transcripts"); *Nationwide Mutual Ins. Co.*, 2023 WL 5266033, at *7 n.9 (finding that "software that allows a third party to capture messages in real time and later perform data analysis" should qualify as a third-party wiretapper); *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) (SaaS

1  provider a third party eavesdropper based on "allegations that Quantum retains the right to analyze

2  and distribute recorded communications for independent purposes"); *Tanner v. Acushnet Co.*, 2023

3  WL 8152104, at *5 (C.D. Cal. Nov. 20, 2023) (SaaS provider a third party eavesdropper where

4  "Plaintiff [] alleges that the Session Replay Providers cross-reference and analyze user activity across

5  all the websites they monitor").

6       Google argues "Plaintiff does not allege that Verizon permitted Google to use Verizon's data

7  for [] training [its AI models]," and thus, Google did not have the ability to use at all.  MTD at 8:8-

8  15.  Further, Google argues that even if it could use the information, its terms state Google "does not

9  have the authority to use the data it receives from Verizon for its own purposes."  *Id.* at 8:10-15.

10 *First*, Defendant's argument ignores the myriad other allegations in the Complaint showing Google

11 has the capability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the

12 ordinary function of a tape recorder."  *Yoon*, 549 F. Supp. 3d at 1081.  Thus, even if Google's terms

13 prohibit it from using the intercepted communications to train its AI models—and this is a question

14 of fact[1]—Plaintiff's allegations still suffice to plead Google was a third party eavesdropper.  *Second*,

15 Google mistakes the "capability" standard, which asks whether Google "can use its records of the

16 communications for any purpose other than to furnish information relating to those communications

17 to [Verizon]."  *Yockey*, 2023 WL 5519323, at *5.  Google's "intentions with respect to the use of the

18 collected information are irrelevant."  *Id*.  *Third*, the standard also asks whether Google "can use that

19 information for other purposes, even if [Plaintiff] has not alleged that [Google] ha[s] done so in this

20 case."  *Javier II*, 649 F. Supp. 3d at 900.  For instance, the hypothetical secretary in *Ribas could

21 have*, for instance, used the intercepted communications as blackmail against his or her employer, or

22 done any assortment of nefarious things with the communications, even if the secretary would face

23 legal consequences for doing so.  Accordingly, allegations that Google *can* use intercepted

24 communications to train its AI models suffice under the "capability" standard, regardless of what its

25 contract with Verizon may or may not say.  *Finally*, Defendant cites to its "Cloud Data Processing

26 Addendum," which states "Customer instructs Google to process Customer Data in accordance with

27

28

---

[1] Specifically, it is impossible for Plaintiff to know the specific agreement between Google and Verizon without the benefit of discovery.

1    the applicable Agreement."  CLOUD DATA PROCESSING ADDENDUM (CUSTOMERS) § 5.2.[2]  But that

2    "applicable Agreement" between Verizon and Google could still permit Google to use the intercepted

3    communications to train its AI models.

4                  3.    *Defendant Is A Third-Party Wiretapper Under The "Extension"*
                        *Approach, Even Though This Approach Is Contrary To The Text*
5                        *And Policy Of CIPA § 631, As Well As Ribas, And Should Be*
                        *Rejected*

6

7            A third line of cases has adopted the "extension" approach, which generally holds that a SaaS

8    provider (like Google) is an "extension" of the company employing it (like Verizon), and the SaaS

9    provider only "provides a tool … that allows [the company] to record and analyze its own data in aid

10   of [its] business."  *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).  These

11   arguments are based on *Graham*, with other decisions simply following *Graham*'s reasoning without

12   much independent analysis.  *See*, *e.g.*, *Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D.

13   Cal. Dec. 22, 2022).[3]  As an initial matter, Plaintiff's allegations satisfy this standard.  Specifically,

14   Plaintiff alleges Google charges its customers "'\$0.03 per minute' for 'Agent Assist for voice sessions

15   with Summarization and other assist features,'" and that Google can use the intercepted communications

16   to train its AI models.  Compl. ¶¶ 26, 31.  Accordingly, even under the "extension" standard, Plaintiff

17   has alleged Google is a third-party wiretapper because Google "intercepted and used the data itself."

18   *Graham*, 533 F. Supp. 3d at 832.

19           Regardless, and as more recent decisions have commented, "*Graham* and its progeny are

20   based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the

21   third party's intentions with respect to the use of the collected information are irrelevant."  *Yockey*,

22   ─────────────────────
     [2] Available at https://cloud.google.com/terms/data-processing-addendum.

23   [3] Defendant also cites to *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771 (N.D. Cal. April 8, 2021), which
     was issued by the same magistrate judge as in *Graham* and at the same time as the *Graham* opinion.
24   Defendant further cites to *Williams v. DDR Media, LLC*, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)
     (Illston, J.).  But Judge Illston did not actually rule on which interpretation was best, and noted that "a
25   software company that analyzes or uses a recorded communication has read, attempted to read, or learned
     the contents of that communication."  *Id.*  And in a subsequent decision, Judge Illston found she could
26   not conclude, "as a matter of undisputed fact and law, that [the SaaS provider] did not read or attempt to
     read the contents of [the plaintiff's] communications on [the] website," and it was therefore plausible the
27   SaaS provider was a third party wiretapper.  *Williams v. DDR Media, LLC*, 2024 WL 347904, at *3 (N.D.
     Cal. Jan. 30, 2024) (Illston, J.).

28

2023 WL 5519323, at *5; *see also, e.g., Javier*, 649 F. Supp. 3d at 900 (rejecting *Graham*); *Balletto I*, 2023 WL 7026931 at *2 (same); *Nationwide Mutual Ins. Co.*, 2023 WL 5266033, at *7 (same); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (same); *D'Angelo*, 2023 WL 7006793, at *7-8 (same).

*First*, *Graham*'s holding "interprets the second prong of the statute"—which penalizes "reading" communications—"based on the intentions and usage of the prospective third party." *Javier II*, 649 F. Supp. 3d at 900. And "the third prong of the statute already penalizes 'use.'" *Id.* "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id.*; *see also D'Angelo*, 2023 WL 7006793, at *7-8 ("A use requirement is more appropriate in a Clause Three, not Clause Two … To plausibly allege a violation of Clause Two, [plaintiffs] need not allege that Vergic [conducted wiretapping] for its own use."); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 ("The determination in *Graham* and *Williams*, *i.e.*, that a violation of the second clause could occur only when the information in the communication was actually used by the vendor, are not based on the actual language of the statute."). Further, CIPA § 631(a)[iv] penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" to conduct wiretapping. In other words, CIPA § 631 not only prohibits wiretapping by a third party like Google, but also prohibits a party to the communication like Verizon from allowing Google to wiretap *on Verizon's behalf*. *Graham*'s reading is contrary to this plain text as well, as it would exempt an employer who asks his or her employee to conduct wiretapping.

*Second*, in *Ribas*, the California Supreme Court "did not consider the wife's friend's intentions or the use to which they put the information they obtained." *Javier*, 649 F. Supp. 3d at 900. "Instead, [*Ribas*] emphasized the privacy concerns at issue with having an unannounced second auditor listening in on the call." *Id.* (cleaned up). *Graham*'s holding, however, would have exempted the friend and the hypothetical secretary, as they were simply wiretapping on behalf of the wife and their employer respectively. But that is not what the California Supreme Court held.

*Third*, as the *Saleh* court recognized:

> [The holding in *Graham* w]ould imply that any third party who surreptitiously recorded a conversation between two parties would not

1

2

> violate § 631(a) so long as it was recording the conversation at the direction
> and for the benefit of a party.  The text of section 631(a), however, does not
> contain any such exception, and indeed, [*Graham* and Defendant] invite an
> interpretation that would vitiate the statute's protections.

*Saleh*, 562 F. Supp. 3d at 520; *Nationwide Mutual Ins. Co.*, 2023 WL 5266033, at *7

("Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done

for the benefit of a party to the conversation.").  In other words, adopting *Graham*'s approach would

undermine CIPA's purpose of preventing the dissemination communications to an unannounced

second auditor, *see Ribas*, 38 Cal. 3d at 360-61, as it would allow any third party to escape liability

so long as it was acting on behalf of a party.

Accordingly, putting aside that Plaintiff's allegations satisfy the "extension" approach, the

Court should not even consider this approach, instead finding Google is a third-party wiretapper

under the "separate entity" approach (*see, e.g.*, *Saleh*, *Revitch*, *Nationwide Mut. Ins. Co.*) or the

"capability" approach (*see, e.g.*, *Javier*, *Yockey*, *Balletto I-II*, *Yoon*).

**B.      Google Is A "Person"**

Google contends that it cannot be liable for a violation of CIPA § 631(a) because GCCCAI

"is software, not a person, and both prongs of Section 631(a) require that a 'person' do the

wiretapping."  Google's argument is without merit.  *First*, Plaintiff alleges GCCCAI is a "software-

as-a-service," not simply "software."  Compl. ¶¶ 1, 54.  This is an important distinction because

Plaintiff alleges "[Google], not its clients, [] recorded the communications [through its software-as-

a-service] … The allegations are not, as [Google] asserts, that [Google] simply provided a software

product that [Verizon] misused." *Flowers*, 2016 WL 11684603, at *1; *see also Saleh*, 562 F. Supp.

3d at 520 ("FullStory is a separate legal entity that offers 'software-as-a-service' and not merely a

passive device.").  Plaintiff further alleges that even when the call is transferred to a human agent,

Google's session manager listens in, transcribes the call, and analyzes the conversation to provide

guidance to the agent.  Compl. ¶¶ 21-22.  Thus, even accepting Defendant's argument, Plaintiff's

allegations suffice because Plaintiff alleges Google itself—who is certainly a "business …

corporation … or other legal entity" (Cal. Penal Code § 632(a)—conducted the wiretapping using

GCCCAI.

1    *Second*, Plaintiff need not allege that a specific Google employee, rather than the company

2    itself, conducted the wiretapping.  As Judge Tigar observed, although "[Google] protests that the

3    complaint is devoid of allegations that [Google] personnel read or could read the messages before

4    [Verizon], [Plaintiff] alleges misconduct *on the part of [Google] as the provider*, not on the part of

5    its personnel."  *Yockey*, 2023 WL 5519323, at *8 (emphasis added).  And the California Court of

6    Appeals has held "[b]ecause a corporation is a legal fiction that cannot act except through its

7    employees or agents, a corporation and its employees generally function as a single legal unit and

8    are the same legal 'person' for purposes of applying various tort, agency, and jurisdiction principles."

9    *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1392 (2011).

10        *Finally*, Defendant's argument (again) flies in the face of the plain text of CIPA § 631(a) and

11   *Ribas*.  As to the former, CIPA § 631(a) prohibits eavesdropping by "[a]ny person … by means of

12   any machine, instrument, or contrivance, or in any other manner."  Thus, whether Google used

13   software or software-as-a-service to accomplish its wiretapping is immaterial, as such software

14   qualifies as a "machine," or certainly another "manner."  *See James v. Walt Disney Co.*,

15   --- F. Supp. 3d ---, 2023 WL 7392285, at *12-13 (N.D. Cal. Nov. 8, 2023) (Chen, J.) (finding software

16   constitutes a "device" under Pennsylvania wiretapping statute).  As to the latter, the California

17   Supreme Court noted CIPA § 631(a) was enacted to protect Californians against the "simultaneous

18   dissemination" of their communications "to an unannounced second auditor, whether that auditor be

19   a person *or mechanical device*."  *Ribas*, 38 Cal. 3d at 360-61.  So, again, whether Google

20   accomplished its wiretapping through software is beside the point, because CIPA § 631(a) explicitly

21   protects against such conduct.

22        **C.    Defendant Intercepted Plaintiff's Calls "In Transit"**

23        Defendant claims that "Plaintiff does not plausibly allege that his communications were

24   intercepted 'while in transit'" because he failed to "allege specific facts supporting real-time

25   interception."  MTD at 11:13, 11:24.  Defendant misstates the legal standard and ignores Plaintiff's

26   allegations about how GCCCAI works.

27        As the California Supreme Court held in *Ribas*, CIPA § 631(a) protect Californians against

28   the "simultaneous dissemination" of their communications.  *Ribas*, 38 Cal. 3d at 360.  The Ninth

1   Circuit echoed this in *In re Facebook*, holding that "[p]ermitting an entity to engage in the

2   unauthorized duplication and forwarding of unknowing users' information would render permissible

3   the most common methods of intrusion." *In re Facebook*, 956 F.3d at 608.  Plaintiff alleges such

4   conduct by Google.  Specifically, Plaintiff alleges Google "monitor[s] the state of the conversation,"

5   "identif[ies] [caller] intent" in "real-time," "transcribes calls in real time," and "grabs context of the

6   conversation [to suggest] real-time … guidance." Compl. ¶¶ 17, 21-23.  Plaintiff further alleges that

7   GCCCAI "provides 'smart replies' … based on Google's analysis of the real-time contents of the

8   conversations." *Id.* ¶ 24.  *See McClung v. AddShopper, Inc.*, 2024 WL 189006, at *3 (N.D. Cal. Jan.

9   17, 2024) (Chhabria, J.) ("The complaint does more than merely recite the statutory element: it makes

10  specific factual allegations describing how AddShoppers's cookies intercept the information in real

11  time, and it points to statements allegedly made by AddShoppers about real time transmission.").

12  None of these features could occur unless Google was contemporaneously reading the contents of

13  Plaintiff's communications.

14          Plaintiff thus provides sufficient detail on how Defendant "acquires" his communications

15  "contemporaneously with transmission."  *In re Facebook*, 956 F.3d at 608 n.9; *see also Nationwide*

16  *Mut. Ins. Co.*, 2023 WL 5266033, at *5 ("[Plaintiff] did not simply recite that there was real time

17  interception, she added detail on how it occurs … and pointed to statements from Defendant

18  regarding real-time insights and data from every use event collected as it happens.") (cleaned up);

19  *Yockey*, 2023 WL 5519323, at *8 ("Yockey plausibly alleges that Salesforce, in real time, directly

20  receives Chat communications, creates live transcripts of those communications, and permits Rite

21  Aid supervisors to view those transcripts.  Yockey also plausibly alleges that Salesforce begins to

22  obtain the contents of a user's message before the user sends it via the Sneak Peek feature.") (internal

23  citations omitted); *Balletto II*, 2024 WL 589090, at *2 (in-transit interception alleged because "when

24  [plaintiff] used the chat function the defendant simultaneously routed chat messages through a third

25  party's servers"); *D'Angelo*, 2023 WL 7006793, at *8 (in-transit interception alleged where chat

26  provider "receives the chat messages either before or simultaneously with" the website).

27          The decisions cited by Defendant are inapposite.  *Mireskandari v. Mail*, 2013 WL 12129559,

28  at *10 n.44 (C.D. Cal. July 30, 2013) (plaintiff alleges "illegal disclosure of data … held in storage");

1   *People v. Wilson*, 17 Cal. App. 3d 598, 600 (Ct. App. 1971) (information was "received by the

2   answering service; were reduced to writing … and were [then] conveyed to defendant in person");

3   *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1113 (E.D. Cal. 2021) (intercepted communications

4   were "stored in the Pasteboard" and then accessed by application); *Valenzuela v. Keurig Green*

5   *Mountain, Inc.*, --- F. Supp. 3d ---, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) (dismissing

6   CIPA claims where the complaint "does little more than restate the pleading requirement of real time

7   interception" without alleging "how"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072,

8   1084 (C.D. Cal. 2023) (same).

9       **D.**    **Defendant Has Not Met Its Burden To Demonstrate Plaintiff Consented To The Wiretapping**

10       Defendant claims that since "Plaintiff does not allege that Verizon failed to inform him …

11   that his calls would be monitored and recorded generally," his claims must be dismissed.  MTD at

12   12:21-12:22; *see also id.* at 13:5.  But it is *Defendant's burden* to prove Plaintiff consented to the

13   wiretapping, not Plaintiff's to allege he did not consent.  *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672,

14   685 (N.D. Cal. 2021) (White, J.).  Defendant cannot do so.

15       *First*, Plaintiff does allege neither Defendant nor Verizon received consent for Google's

16   monitoring.  Compl. ¶ 4 ("neither Defendant nor Verizon procured the prior consent"); *id.* ¶ 34

17   ("[Plaintiff] did not expect or have any reason to suspect, that the virtual agent was being provided

18   by a third party"); *id.* ¶ 38 ("Neither Verizon nor Google procured Plaintiff's prior consent … Nor

19   did Plaintiff [sic] give his prior consent.").  This is sufficient.  *Javier v. Assurance IQ, LLC*, 2022

20   WL 1744107, at *2 (9th Cir. May 31, 2022) ("*Javier I*") ("According to the complaint, [defendant

21   has not] asked for [plaintiff's] consent … even though [a SaaS provider] was recording [Plaintiff's]

22   information as he was providing it.  [Plaintiff] has therefore alleged sufficient facts to plausibly state

23   … his communications with [defendant] were recorded … without his valid express prior consent.").

24       *Second*, Defendant's assertions to the opposite at most create a factual dispute that is not

25   suitable for resolution at this stage.  *See Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050,

26   at *2 (S.D. Cal. Aug. 2, 2023) ("Defendant's consent defense turns on the outcome of multiple factual

27   disputes … These factual disputes are not suitable for resolution at this stage in the proceedings.")

28

1
2
3
4
5
6
7
8
9
10
11
12
13

(internal citations omitted).  In *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at \*6 (S.D. Cal. Jan. 12, 2024), for example, defendant argued that "[p]laintiff must do more than merely allege lack of consent such as alleging additional facts showing Plaintiff did not have actual or constructive knowledge of the Privacy Policy."  The court rejected this and held that plaintiff's statement that "Defendant never sought consent, and Plaintiff and Class Members never provided consent" was "sufficient to meet his burden to plead that he did not provide prior consent to the recording." *Id.* (citing *Javier I*); *see also Keurig Green Mountain, Inc.*, 2023 WL 3707181, at \*3 (N.D. Cal. May 24, 2023) ("Plaintiff alleges she 'was not informed' her conversations were being 'recorded, intercepted, or eavesdropped upon,' and did not consent to monitoring by the third-party when she communicated with Defendant.  That is sufficient at this stage.") (citing *Javier I*); *Licea v. Old Navy, LLC*, --- F. Supp. 3d ---, 2023 WL 3012527, at \*4 (C.D. Cal. Apr. 19, 2023) (finding sufficient allegations that "[p]laintiff explicitly pleads that he and the purported class members did not consent to the recording of their conversations with Defendant").

14
15
16
17
18
19
20

*Finally*, Defendant claims in a footnote that Verizon's "current" message discloses that the call may be monitored.  MTD at 12 n.5.  This is unavailing.  Just because there "currently" is a disclosure message does not in any way prove that there was one at the time of Plaintiff's call. Further, Defendant has not requested judicial notice required by Fed. R. Evid. 201(c)(2), nor has Defendant provided an affidavit averring the fact as required by Civil Local Rule 7-5(a).  And, even if the Court took judicial notice there would still be a "reasonable dispute." *Augustine*, 2023 WL 4938050, at \*2 n.1 (citing F.R.E. 201(b)).

21

**E.    CIPA's Public Utility Exemption Does Not Apply To Defendant**

22
23
24

Defendant argues CIPA's public utility exemption applies to the conduct alleged because Verizon is a telephone company, GCCCAI is "necessary" for Verizon's "services," and Defendant is Verizon's agent.  MTD at 13:13-14:25 (citing Cal. Pen. Code § 631(b)(1)).  This argument fails.

25
26
27
28

As a threshold matter, Defendant raises multiple factual assertions which are not properly brought before the Court.  For instance, Defendant claims that Verizon is a "telephone company." MTD at 13:22-13:23.  Plaintiff makes no such claim in the Complaint.  Judge Koh faced the same argument and concluded that a showing in the record is required:

1
2
3
4
5

> [I]n California, a "public utility"[4] is a precisely defined entity subject to an expansive and exacting regulatory regime. Under the plain language of the statutes, merely operating a service over a telephone or telegraph line does not render a company a public utility. Rather, the critical question is whether the company owns, controls, operates or manages a telephone or telegraph line. Nothing in the record suggests that [defendant] owns, controls, operates, or manages a telephone or telegraph lines in California.

*In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (internal citations omitted).

6
7

   Defendant has not requested judicial notice that Verizon owns, controls, operates, or manages any telephone lines in California pursuant to Fed. R. Evid. 201(c)(2). Cal. Pub. Util. Code § 234. Nor has Defendant proffered any affidavit affirming those facts. Civil Local Rule 7-5(a). These procedural omissions at the motion to dismiss stage are fatal to the arguments. *See Diaz v. Target Corp.*, 2010 WL 11558086, at *2 (C.D. Cal. Sept. 20, 2010) (documents introduced without request for judicial notice rejected); *First Mercury Ins. Co. v. Great Divide Ins. Co.*, 241 F. Supp. 3d 1028, 1045 (N.D. Cal. 2017) (denying request for judicial notice for noncompliance with Civil Local Rule 7-5(a)); *Blue Spike, LLC v. Zeitera, LLC*, 2014 WL 4310977, at *1 (N.D. Cal. Aug. 28, 2014) (same).

   Even if the Court finds that Verizon is a "telephone company," a telephone company does not have free reign to procure others to wiretap where and when they want. The wiretapping may only be "for the purpose of construction, maintenance, conduct or operation of the services and facilities of the … telephone company." Cal. Penal Code § 631(b)(1). And even then, such wiretapping may be conducted only if it is "necessary." *United States v. Goldstein*, 532 F.2d 1305, 1314 (9th Cir. 1976) ("[T]he conduct of the phone company's business *requires* it to detect and prevent toll fraud.") (emphasis added); *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 n.2 (1978) ("The lineman should tap into a line, if such conduct *is necessary* at all absent a subscriber's complaint, only to ascertain that intelligible words are being spoken; once it is so determined, the monitoring should cease immediately.") (emphasis added); *People v. Garber*, 275 Cal. App. 2d 119, 128 (1969) ("[B]ecause the law *requires* telephone companies to discover illegal telephone calls

---

[4] The same analysis would apply to a "telephone company" which was added to CIPA in 2022. 2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272) (WEST).

1   investigative work carried out to discover such calls has become a part of the transmission of

2   communications.") (emphasis added); *People v. Buchanan*, 26 Cal. App. 3d 274, 288 n.12 (1972)

3   (summarizing argument by California AG that "the overhearing of a telephone conversation by a

4   switchboard operator operating a switchboard through which *it is necessary* that the call be placed

5   and which has been furnished by the telephone company is excepted by [CIPA]") (emphasis added).

6       Google's recording and analysis of conversations, and use of those communications to train

7   its AI services is in no way "necessary" to Verizon's provision of a customer service line.   At

8   minimum, this is a factual inquiry that is not appropriate to decide pursuant to Google's Rule 12

9   motion.   And Defendant's argument that its wiretapping "supports" the operation of Verizon's

10   services is not an enumerated category of the statute, nor a tenable extension of the narrow exception.

11   *See*, *e.g.*, *Ades v. Omni Hotels Management Corp.*, 46 F. Supp. 3d 999, 1008 (C.D. Cal. 2014)

12   (holding that "CIPA does not contain a broad exception for routine service monitoring"); *Maghen v.*

13   *Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1148 (C.D. Cal. 2015) (same).

14       Last, Defendant has not properly set forward, pursuant to Fed. R. Evid. 201(b) and Civil

15   Local Rule 7-5(a), any facts showing that it is an agent of a telephone company.   Defendant only

16   points to Plaintiff's allegations that "Verizon 'contracted' with Google," MTD at 14:7, but that is not

17   enough to establish an agency relationship.   Ultimately, agency is another textbook factual issue that

18   is not appropriate to decide on this motion.   "In California, an agency relationship arises when one

19   person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the

20   principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise

21   consents so to act."   *Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883, 899 (C.D. Cal. 2011)

22   (cleaned up).   "Under California law, questions regarding the existence of an agency are questions

23   of fact."   *In re Nelson*, 761 F.2d 1320, 1322 (9th Cir. 1985).   Defendant has not produced facts

24   demonstrating such a relationship, and any such determination cannot be made at this stage.

25                                    **<u>CONCLUSION</u>**

26       For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If the

27   Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave

28   to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

1    Dated: February 15, 2024              Respectfully submitted,

2                                          **BURSOR & FISHER, P.A.**

3                                          By: */s/ Neal J. Deckant*
4                                                  Neal J. Deckant

5                                          Neal J. Deckant (State Bar No. 322946)
                                           1990 North California Blvd., Suite 940
6                                          Walnut Creek, CA 94596
                                           Telephone: (925) 300-4455
7                                          Facsimile: (925) 407-2700
8                                          E-Mail: ndeckant@bursor.com

9                                          *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28