COOLEY LLP
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KRISTINE A. FORDERER (278745)
(kforderer@cooley.com)
ANUPAM DHILLON (324746)
(ADhillon@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone:     +1 415 693 2000
Facsimile:     +1 415 693 2222

TIANA DEMAS (*pro hac vice*)
(tdemas@cooley.com)
110 N. Wacker Drive, 42nd Floor
Chicago, IL 60606
Telephone:     +1 312 881 6500
Facsimile:     +1 312 881 6598

URVASHI MALHOTRA (334466)
(umalhotra@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

Attorneys for Defendant
Google LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MISAEL AMBRIZ, individually and on behalf of all other persons similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>Google LLC,<br><br>    Defendant. | Case No. 3:23-cv-05437-RFL<br><br>**GOOGLE LLC'S REPLY ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM (FED. R. CIV. P. 12(b)(6))**<br><br>Judge:          Hon. Rita F. Lin<br>Courtroom:  15, 18th Floor<br>Date:           March 19, 2024<br>Time:           10:00 a.m. |

**I.   INTRODUCTION**

Plaintiff's Opposition only reinforces the fundamental flaws in his CIPA Section 631(a) claims, which should be dismissed.[1] Plaintiff does not dispute that Google provided a software tool (CCAI) that Verizon used for its own customer service calls. Under the *Graham v. Noom* line of cases—which Plaintiff fails to rebut—merely providing a software tool for another party does not make the provider an unannounced third-party to a conversation during which the tool is used. In this context, CCAI is no different from a tape recorder (which is not a third-party), as numerous courts have held when faced with similar technologies. Plaintiff's failure to plausibly allege that Google—through CCAI—was a third-party to his customer service calls disposes of the case in its entirety.

Plaintiff's remaining arguments are equally flawed and Plaintiff cannot state a claim under either the first or second prong of Section 631(a).  First, Plaintiff concedes that he did not allege use of a landline to call Verizon customer service, which dooms his claim under Section 631(a)'s first prong. Second, Plaintiff cannot state a claim under Section 631(a)'s second prong (the only other claim alleged) because he has not adequately pleaded that Google read or learned the contents of his communications in real time. Third, the telephone company exemption to Section 631(a) applies to Verizon, and by extension to Google as Verizon's agent. This is true despite Plaintiff's nonsensical argument that Verizon—one of the nation's largest telecommunications companies—might not be a telephone company under California law. Finally, Plaintiff effectively concedes that he knew his calls were being recorded and monitored, another complete defense to liability under the statute. The Court should dismiss the Complaint with prejudice because there is no theory on which Plaintiff could state a claim.

**II.   ARGUMENT**

**A.   Google is Not a Third Party.**

Plaintiff cannot state a claim against Google because CCAI is not a "third party" to communications with Verizon customer service. Nothing in the Opposition merits a different conclusion from Judge Beeler's well-reasoned opinion in *Graham v. Noom*: "a vendor that provides

---

[1] Defined terms in this brief are incorporated from the Motion to Dismiss ("Mot."), ECF No. 28.

a software service that captures its clients' data, hosts it on [the vendor's] servers, and allows the clients to analyze their data[,]" is "not a third-party eavesdropper," and does not "wiretap[] in violation of California law." 533 F.Supp.3d 823, 828, 832–33 (N.D. Cal. 2021).

Plaintiff attempts to avoid this result by arguing that: (1) *Graham* and its progeny were wrongly decided; and (2) two other "camps" of CIPA decisions should govern here. Plaintiff's Opposition ("Opp.") at 1, ECF No. 29. Neither argument has merit, but even if the Court disagrees with the reasoning in *Graham*, the allegations here do not satisfy the test set forth in *Javier II* that Plaintiff advocates.[2]

### 1.    Plaintiff's Claims Fail Under *Graham v. Noom*.

As Plaintiff recognizes, a long line of cases beginning with *Graham* consistently hold that a software vendor like Google that provides a service allowing the vendor's clients to analyze their own data does not violate Section 631(a). *See, e.g., Graham*, 533 F.Supp.3d at 832; Mot. at 7 (citing cases). These cases correctly hold that the software vendor "is merely an extension of" the client, which "provides a tool—like the tape recorder in *Rogers*—that allows [the client] to record and analyze its own data in aid of [its] business." *Graham*, 533 F.Supp.3d at 832. Because "[i]t is never a secret to one party to a conversation that the other party is listening," *Rogers v. Ulrich*, 52 Cal.App.3d 894, 899 (1985), an "extension" of a party "is not a third-party eavesdropper." *Graham*, 533 F.Supp.3d at 833. To hold otherwise would drastically expand CIPA, a penal statute, to encompass manufacturers of inanimate devices that can be used to transmit or record communications, an absurd—and unconstitutional—result.

Relying on *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 900 (N.D. Cal. 2023) ("*Javier II*"), Plaintiff argues that *Graham* was wrongly decided. Opp. at 8. But, *Javier II* misreads *Graham*, which only examines use in the narrow context of evaluating whether a vendor is acting as a party to the communication. Far from rewriting the statute, *Graham* faithfully applies the Ninth Circuit's guidance that "[t]he party exception must be considered in the technical context of this case." *In re*

---

[2] Plaintiff also argues that "[w]hether Defendant is a third-party wiretapper" is a fact issue for the jury. Opp. at 1. This is false, as numerous courts have dismissed CIPA claims at the pleadings stage. *See, e.g.*, *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023); *Graham*, 533 F.Supp.3d 823; *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023).

1  *Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir. 2020). Furthermore, as

2  discussed below, *Javier II's* suggestion that *Graham's* framework would "swallow [CIPA's] third

3  prong" is contradicted by the statutory text. Section 631(a)'s third prong penalizes "use" of "any

4  information *so obtained.*" Cal. Penal Code § 631(a) (emphasis added).  It prohibits a party from

5  knowingly using information obtained in violation of Section 631(a)'s first two prongs regardless

6  of who committed the violation. Thus, an individual who *uses* data unlawfully intercepted by

7  another may violate the statute even if he is not directly liable under CIPA's first or second prong.

8  Plaintiff next makes the puzzling argument that the Complaint should be dismissed even

9  under *Graham* because "Google charges its customers "'$0.03 per minute' for 'Agent Assist for

10  voice sessions with Summarization and other assist features,'" and because Google "*can* use the

11  intercepted communications to train its AI models.'" Opp. at 7. Not so. The *Graham* court

12  understood that FullStory was paid for its services, as are all vendors. *Graham*, 533 F.Supp.3d at

13  828. Indeed, the vendor-client relationship was the foundation of the Court's reasoning. *Id.* Judge

14  Beeler also rejected similar allegations that FullStory theoretically *could* use the data for its own

15  purposes and was more than just a service provider. Post-dismissal, the *Graham* plaintiffs amended

16  to allege that FullStory had the right, under its privacy policy, to "access and use Customer

17  Data…as necessary to monitor and improve the Services" and was "permitted to use and disclose

18  anonymized data for product improvement." Second Amended Class Action Complaint, ¶ 48,

19  *Graham v. Noom, Inc.*, No. 3:20-cv-06903-LB (N.D. Cal. Apr. 29, 2021), ECF No. 58. The *Graham*

20  plaintiffs argued—as Plaintiff does with the SS Terms (Compl. ¶ 28)—that the privacy policy

21  supported the inference that FullStory could use their data for its own purposes. Plaintiffs'

22  Combined Opposition to Defendants' Motion to Dismiss at 12–13, *Graham v. Noom*, No. 3:20-cv-

23  06903-LB (N.D. Cal. Jun. 24, 2021), ECF No. 67. Judge Beeler correctly rejected this argument

24  and found that these allegations "do not change" her conclusion that FullStory functioned only as

25  "a software vendor that provides a service that allows Noom to analyze its own data." *Graham v.*

26  *Noom, Inc.*, 2021 WL 3602215, at *1 (N.D. Cal. Aug. 13, 2021).

27  **2.      The Court Should Not Adopt *Javier II*'s Flawed Reasoning**

28  The Court should reject Plaintiff's invitation to adopt the flawed reasoning of *Javier II.* As

noted above, *Javier II* disagreed with the "use" test deployed in *Graham* and instead held that if a software vendor has the "capability" to use information obtained from the communication for its own ends, this could violate CIPA.  But, to the extent *Javier II* finds it contrary to the statutory text to read a "use" requirement into Section 631(a)'s second clause, *Javier II*'s reasoning fails by the same logic. *Javier II* holds that CIPA's second prong can be violated if a third-party vendor has the "*capability* to use its record[s] . . . for any other purpose." 649 F.Supp.3d at 900 (emphasis added). But there is no "capability of use" requirement in the second prong, and "capab[ility] of using the recording for other ends" is so vague that it runs afoul of the constitutional requirement that "a penal statute define the criminal offense with sufficient definiteness." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Furthermore, *Javier II* heavily relies on *Ribas v. Clark*, which did not involve the party exception.[3] In *Ribas*, the defendant was a third person who eavesdropped on a telephone call between a husband and wife, not an intended recipient of the conversation. 38 Cal.3d 355, 358 (1985). Here, the Court is being asked to resolve whether a third-party vendor is acting in the place of a party when it records the data for a specific purpose, akin to the tape recorder in *Rogers v. Ulrich*, 52 Cal.App.3d 894. *Graham* correctly answered that question.

### 3.    Plaintiff's Allegations Fail Even Under *Javier II*'s "Capability" Test

Even under *Javier II*'s amorphous "capability" test, the Complaint should be dismissed. Multiple courts have applied *Javier II*'s test, including in cases with much more robust allegations about the alleged "third party's" involvement than this one, and found no Section 631(a) liability because the Defendant did not have "the capability to use the[] communications for any purpose other than furnishing them" to the party based on the specific facts alleged. *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023). In *Yockey*, for instance, this was the case even though the defendant there allegedly received the communications as part of the basic operation of the software. *See id.* (granting motion to dismiss Section 631(a) claim where chat feature on Kaiser's website "is run from Salesforce web servers" and Salesforce "directly receives

---

[3] The decisions in *Saleh v. Nike*, 562 F.Supp.3d 503 (2021) and *D'Angelo v. Penny OpCo*, LLC, 2023 WL 7006793, at *1 (S.D. Cal. Oct. 24, 2023), rely on *Javier II* and are equally unpersuasive. Plaintiff's effort to frame *Javier II* and its progeny as two "camps," with *Graham* as the third, is disingenuous. Opp. at 1. Tellingly, Plaintiff cites no case recognizing these three "camps." The split is between cases that follow *Graham* versus those that follow *Javier II.*

the electronic communications" because there was no allegation the chat feature could be used other than to furnish communications to Kaiser); *see also Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *3 (N.D. Cal. Oct. 24, 2023) (dismissing nearly identical claims as in *Yockey* involving same Salesforce technology); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) ("Even if LiveHelpNow created software for Super Bright, and even if that software stored communications for Super Bright so Super Bright could conduct its own data analytics and marketing efforts, this would not be sufficient to show that LiveHelpNow was eavesdropping on Super Bright's communications with its customers.").

Here, Plaintiff's argument that Google has the "capability" to use Verizon's information for its own ends is flatly contradicted by Google's SS Terms, which Plaintiff incorporated into the Complaint. Opp. at 5; Compl. ¶ 28, n.8 (alleging that "Google can use 'Customer Data' to 'train or fine-tune any AI/MIL models.'"). The SS Terms actually state: "***Google will not use Customer Data*** to train or fine-tune any AI/ML models without Customer's prior permission or instruction."[4] (Emphasis added). Plaintiff does not argue—much less allege—that Verizon permitted or instructed Google to use Verizon's "Customer Data" to train its AI models. Mot. at 8. There are no facts suggesting that Google has the "capability" to use Verizon's data, much less the contents of any of Plaintiff's communications with live Verizon agents.

The other cases Plaintiff cites following *Javier II* are readily distinguishable and involve allegations well beyond what is pled here. For example, in *Valenzuela v. Nationwide Mutual Insurance Co.*, 2023 WL 5266033, at *4 (C.D. Cal. Aug. 14, 2023), the plaintiff alleged that the third party was hired to "store transcripts" of customer chats and that its "business model is to harvest data" from such communications. There is no similar allegation here. Quite the opposite— Plaintiff alleges Google is compensated based on the amount of time Verizon uses CCAI, *not* through Google mining data (which the SS Terms prohibit). Like *Valenzuela*, in *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019), the plaintiff expressly alleged that the third party NaviStone "scanned [the plaintiff's] computer for files that revealed his

---

[4] *See* SS Terms, ¶ 16, available at: https://cloud.google.com/terms/service-terms (last accessed Mar. 6, 2024).

1    identity," located the plaintiff, sent him postcards, and sold the plaintiff's information to others.

2    *See also In re Facebook*, 956 F.3d at 596, 607–08 (alleging that Facebook tracked its users to third-

3    party websites, even when its users were not signed into Facebook, and then sold that data to

4    advertisers). As Judge Beeler recognized when analyzing *Revitch* and *In re Facebook*, "NaviStone

5    and Facebook were independent parties who mined information from other websites and sold it";

6    they "intercepted and used the data" for their own purposes. *Graham*, 533 F.Supp.3d at 832. There

7    are no even remotely equivalent allegations here.

8         Applying the existing case law to the facts pleaded here, there is no plausible claim that

9    Google "eavesdrops" on Verizon's customer calls by virtue of Verizon's choice to use the CCAI

10    software product, to assist its customer service agents. The Court should dismiss the Complaint in

11    its entirety on this basis.

12       **B.**     **Plaintiff Cannot State a Claim Under Either Prong (1) or (2) of Section 631(a)**

13          **1.**     **Plaintiff Concedes He Did Not Allege Use of a Landline.**

14         It is undisputed that a call made using a smartphone does not satisfy the "telegraph or

15    telephone wire" requirement under Section 631(a). Mot. at 10–11. The Opposition does not respond

16    to Google's argument that Plaintiff did not allege use of a landline and thus cannot state a claim

17    under the first prong of Section 631(a); he therefore concedes it.  *See Stichting Pensioenfonds ABP*

18    *v. Countrywide Fin. Corp.*, 802 F.Supp.2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in

19    an opposition brief to an argument put forward in an opening brief constitutes waiver or

20    abandonment in regard to the uncontested issue" (quotations and citation omitted)). The Court must

21    dismiss the Complaint under Section 631(a)'s first clause.

22          **2.**     **Plaintiff Fails to Allege That *Google* Intercepted Any Communications**
23                 **"While . . . In Transit."**

24         Plaintiff cannot state a CIPA claim against Google because he does not allege that Google

25    read or learned Plaintiff's communications "in transit." Plaintiff conflates his allegations regarding

26    Google and CCAI to make it appear as though he has plausibly alleged that *Google* engages in real-

27    time interception when in fact, it is simply the operation of the software. For instance, Plaintiff

28    argues that Google *must* learn communications in real time in order to provide a transcript and

suggested responses to the human agent (Compl. ¶ 27; Opp. at 5), but this ignores that CCAI is *AI*. In other words, it is not *Google* providing suggestions, it is the AI software product that processes the questions and provides suggestions based on its trained algorithm.  As explained in the video Plaintiff incorporates by reference into the Complaint (Compl. at 4–6 nn. 2–3 & 5–6), because the AI has "natural language" understanding capabilities it can understand the customers and send pertinent information in real-time to the human agent participating in the call.  *Id.* ¶¶ 23, 36. There are no facts in the Complaint suggesting that *Google* takes part in this interaction in any way, except by having developed and provided the AI software to Verizon.

And, tellingly, every single case cited by Plaintiff confirms that he must allege specific facts supporting the inference that the entity itself (not just the service) intercepted communications in real time.[5]  *See Yockey*, 2023 WL 5519323, at *5 (Salesforce itself "analyzes the customer-support agent interactions in real time to create live transcripts of communications," and that Salesforce "supervisors can view transcripts in real time"); *Nationwide Mutual*, 2023 WL 5266033, at *4 (alleging vendor "store[d] transcripts" of real-time communications, and its "business model is to harvest data from [these] communications"); *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *2 (N.D. Cal. Feb. 13, 2024) (alleging defendant "simultaneously routed chat messages through a third party's servers"); *D'Angelo*, 2023 WL 7006793, at *8 ("[W]henever a chat message is sent from a member of the Class to Defendant, it is first routed through Vergic's server.").

Plaintiff's allegations that Google "can use" data from its AI services (such as CCAI) to train its own models (based on Plaintiff's misreading of Google's SS Terms) do not plead that this occurs in real time. Compl. ¶ 28. In other words, even under Plaintiff's theory that Google must read or learn the contents of the communications because Google uses the information to train AI (which, as discussed above, reflects a misreading of Google's SS Terms), there is no plausible allegation that, Google intercepts, reads, or learns that information in real time. In *McClung v. AddShopper, Inc.*, Judge Chhabria drew a clear distinction between a complaint that "does little

---

[5] As set forth in Google's Motion at 9-10, Plaintiff's CIPA claim should be dismissed in its entirety because the Complaint fails to allege, as required, that a "person" violated CIPA.  CCAI is software—as set forth in the Complaint, using *AI* to interpret human speech. *Google* is not part of these interactions. There is thus no plausible inference that a "person" violated Section 631(a).

more than restate the pleading requirement of real time interception," and complaints with "added detail on how [real time interception] occurs." 2024 WL 189006, at *1, 3 (N.D. Cal. Jan. 17, 2024) (involving misappropriation of "browsing activity across a network of thousands of online retailers and using it to barrage that person's devices with unwanted email communications" all "without giving the person a way to put a stop to the communications").

Because the Complaint fails to allege any "added detail on how [real time interception] occurs" by Google (not just CCAI), Plaintiff's CIPA claim should be dismissed. *See id.*

## C.    CIPA's Telephone Company Exemption Bars Plaintiff's Claim.

There is no dispute that CIPA exempts telephone companies and their agents from liability under Section 631(a); the Complaint should be dismissed for this additional reason. On this point, Plaintiff argues, implausibly, that: (1) discovery is needed to determine whether Verizon Communications, Inc.—one of the nation's largest telecommunications companies—is a telephone company; (2) the Court should ignore the Complaint's allegations and incorporated documents showing that Google is Verizon's agent, with respect to CCAI; and (3) CCAI is not "necessary" to maintain Verizon's services. Opp. at 13–15. None of these arguments has merit.

**First**, there can be no dispute that Verizon is a telephone company.  Verizon is "one of the world's leading providers of communications … products and services to consumers," including "consumer-focused wireless and wireline communications services."[6] Verizon's "wireless services are provided across one of the most extensive wireless networks in the United States," including California.[7] CIPA broadly defines a "telephone company" to include "a telephone corporation as defined in section 234 of the Public Utilities Code *and* "any other person that provides residential or commercial telephone services to a subscriber utilizing any of the technologies or methods enumerated in" California Penal Code § 638(c)(2). Cal. Penal Code § 631(c). The technologies

---

[6] *See* Verizon Communications Inc Annual report for year ending December 31, 2023 (10-K) at 4, https://www.sec.gov/ixviewer/ix.html?doc=/Archives/edgar/data/732712/000073271224000010/vz-20231231.htm#ic34eec9bcdcd4bf8890cead9d2830552_13 (last accessed Mar. 6, 2024); *Alpha Venture Cap. Partners LP v. Pourhassan*, 30 F.4th 920, 924 (9th Cir. 2022) (SEC filings are properly subject to judicial notice); *Shenzhen Gooloo E-Commerce Co., Ltd. v. Pilot, Inc.*, 2021 WL 6751988, at *2 n.2 (recognizing that "the Court has the power to grant judicial notice *sua sponte*"); *Lopez v. Bank of Am., N.A.*, 505 F.Supp.3d 961, 970 (N.D. Cal. 2020) (taking judicial notice *sua sponte* of several documents in connection with motion to dismiss).
[7] *Id.*; *see also* https://www.verizon.com/coverage-map/ (last accessed Mar. 6, 2024).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

listed in § 638(c)(2) include wireless cellular networks, voice over Internet protocol, and landlines. Verizon clearly is a "telephone company," and the Court can properly rely on judicial experience and common sense to reach this conclusion. *See, e.g.*, *Marshall v. Danoe US, Inc.*, 402 F.Supp.3d 831, 834 (N.D. Cal. 2019) (determining whether a complaint states a claim for relief "is a context-specific task requiring the court 'to draw on its judicial experience and common sense'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 679 (2007))). Alternatively, the Court can *sua sponte* take judicial notice of publicly-available documents (including Verizon's SEC filing) that are not subject to reasonable dispute. *See* n.6, *supra*.[8]

**Second**, and equally unmeritorious, is Plaintiff's argument that discovery is needed to determine whether CCAI was acting as an "agent" of Verizon for purposes of the telephone company exemption. The Complaint alleges Verizon "contracted" with Google to use CCAI "to respond to customers who … call to, among other things, receive support" for Verizon's services, products, and other offerings. Compl. ¶¶ 3, 9, 25. Plaintiff further alleges that CCAI interacts with customers as a "virtual agent" and supports Verizon's live customer service agents. And the very documents Plaintiff incorporates into the Complaint—the SS Terms and the Cloud Data Processing Addendum—set forth an agency relationship for purposes of the exemption.[9]

**Finally**, faced with CIPA's plain text permitting telephone companies and their agents to engage in otherwise prohibited conduct if it is "for the purpose" of maintaining or operating the telephone company's services, Plaintiff invents the nonexistent requirement that "such wiretapping may be conducted only if it is 'necessary.'" Opp. at 14. CIPA contains no such element, as is clear from Plaintiff's cited cases. For example, in *United States v. Goldstein*, the Court found that the telephone company's business "requires it to detect and prevent toll fraud," but said nothing about whether the particular method used was "necessary" under CIPA.[10] 532 F.2d 1305, 1314 (9th Cir.

---

[8] Plaintiff's attempted reliance on *In re: Google Inc. Gmail Litigation*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013), is misplaced. There, Judge Koh considered the factually and legally distinct question of whether Gmail qualified as a "public utility" under CIPA, not whether one of the country's largest telephone companies qualified as a telephone company under CIPA.

[9] Plaintiff falsely claims that Google "only" relies the argument that it "contracted" with Verizon on the agency point. *See* Opp. at 15. Google relies on the Complaint in its entirety—including its repeated allegations that CCAI is an "agent" of Verizon, and the documents incorporated therein.

[10] Other cases cited by Plaintiff used phrases such as "necessary" or "required" in a similar manner. *See People v. Garber*, 275 Cal.App.2d 119, 128 (1969) (explaining "investigative work carried out

1  1976). Instead, *Goldstein*'s discussion of necessity was in the context of the Federal Wiretap Act,

2  which contains an explicit exception for "any activity which is a necessary incident to the rendition

3  of [] service …" *Id.* at 1309 (quoting 18 U.S.C. § 2511(2)(a)(i)). And *Tavernetti v. Superior*

4  *Court*—despite noting in *dicta* that the lineman's initial interception may have been overly intrusive

5  for the stated purpose of the telephone company's business—affirmed the lower court's finding

6  that the initial interception complied with CIPA's exemption. 22 Cal.3d 187, 192 (1978).[11]

7  **D.   Plaintiff Does Not Dispute He Knew His Call Could be Monitored**

8  Plaintiff similarly fails to rebut the argument that he knew his calls with Verizon were

9  monitored and recorded. *See* Mot. at 12–13; *Negro v. Super. Ct.*, 230 Cal.App.4th 879, 892 (2014)

10  (dismissing CIPA claim where circumstances "indicat[e] that the [party] knowingly agreed to the

11  surveillance."). Plaintiff's attempt to artfully plead around this by claiming he did not know that

12  *Google* provided the software that Verizon used for its recorded customer service calls is

13  unavailing. *See* Opp. at 12 ("[N]either Defendant nor Verizon received consent for *Google's*

14  *monitoring*.") (emphasis added); Compl. ¶ 38 (alleging no consent "to have Defendant eavesdrop"

15  or "to allow Defendant to wiretap"). Section 631(a) does not require disclosing the identity of the

16  entity that is (allegedly) monitoring or recording. *See Javier*, 2023 WL 3933070, at *3 (dismissing

17  claim because plaintiff reviewed privacy policy which stated defendant "may use third party

18  vendors to assist" for "monitoring and analyzing," even though plaintiff "did not know the third

19  party's identity" or "the full extent of the wiretapping involved"). The Complaint and Opposition

20  are both notably silent regarding whether Verizon obtained Plaintiff's consent for monitoring

21  generally; this is a fact that is clearly known to Plaintiff and in his possession.

22  **III.   CONCLUSION**

23  For the reasons discussed herein, the Court should dismiss the Complaint in its entirety.

---

24  to discover [illegal] calls has become a part of the transmission of communications," and saying
25  nothing about whether such steps are necessary); *People v. Buchanan*, 26 Cal.App.3d 274, 288 n.12
   (1972) (summarizing arguments made by party, none of which contended that the telephone
26  company's conduct was "necessary" to further its business).
27  [11] Plaintiff's other citations are far afield. *See Ades v. Omni Hotels Mgmt. Corp.*, 46 F.Supp.3d 999,
   1008 (C.D. Cal. 2014) (holding that a hotel management company was not a "public utility" for
   purposes of a motion to dismiss); *Maghen v. Quicken Loans Inc.*, 94 F.Supp.3d 1141, 1148 (C.D.
28  Cal. 2015) (rejecting a loan company's argument that CIPA has a "service-observing calls"
   exemption independent of the "public utility" or "telephone company" exemptions).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

GOOGLE'S REPLY ISO MOTION TO DISMISS
CASE NO. 3:23-CV-05437

1

2
Dated: March 7, 2024                        COOLEY LLP

3

4                                           By: */s/ Travis LeBlanc*
                                                Travis LeBlanc
5                                               Tiana Demas
                                                Kristine Forderer
6                                               Anupam Dhillon
                                                Urvashi Malhotra
7
                                            Attorneys for Defendant
8                                           Google LLC

9

10

11

12

13

14

298396752

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys at Law
San Francisco, CA