UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISAEL AMBRIZ,<br><br>             Plaintiff,<br><br>     v.<br><br>GOOGLE, LLC,<br><br>             Defendant. | Case No.  23-cv-05437-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |

      In this putative class action, Plaintiff Misael Ambriz alleges that Defendant Google used its Cloud Contact Center AI software-as-a-service to wiretap, eavesdrop on, and record his call to Verizon's customer service center.  Based on this theory, Ambriz asserts one cause of action under § 631(a) of the California Invasion of Privacy Act ("CIPA").  Google moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons explained below, Google's motion to dismiss is granted with leave to amend.  This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

      Ambriz's CIPA claim is barred by § 631's exemption from liability for telephone companies and their agents.  *See* Cal. Penal Code § 631(b).  Under that exemption, § 631 does not apply to "[a]ny public utility, or telephone company, engaged in the business of providing communications services and facilities, or to the officers, employees or agents thereof, where the acts otherwise prohibited herein are for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility or telephone company."  *Id.* § 631(b)(1).  The Complaint's alleged facts establish that Google, acting as Verizon's agent,

engaged in conduct that falls within this exemption. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1098 (9th Cir. 2004) ("A plaintiff may plead herself out of court. If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." (cleaned up)).

First, as Ambriz's counsel conceded at oral argument, Verizon is a telephone company within the meaning of § 631(b). *See In the Matter of the Joint Application of Tracfone Wireless, Inc. (U4321c), Am. Movil, S.A.B. De C.V. & Verizon Commc'ns, Inc. for Approval of Transfer of Control over Tracfone Wireless, Inc.*, No. 20-11-001, 2021 WL 5514578, at *3 (Cal. P.U.C. Nov. 18, 2021).

Second, the facts pleaded in the Complaint suffice to show that Google acted as Verizon's agent under § 631(b)(1). Ambriz alleges that "Verizon contracted with Google and its [Cloud Contact Center AI] service to respond to customers who call . . . to, among other things, receive support." (Compl. ¶ 3; *see also* Compl. ¶¶ 9, 25–26.) Specifically, Ambriz alleges that Google's Cloud Contact Center AI provides a "virtual agent" to interact with Verizon customers in a way that "consumers reasonably believe the virtual agent is provided by the company they are calling (*e.g.*, Verizon)." (Compl. ¶ 18; *see also* Compl. ¶ 34.) By acting as Verizon's representative to its customers, Google acted as an "agent" under California law. *See* Cal. Civ. Proc. Code § 2295 ("An agent is one who represents another, called the principal, in dealings with third persons."). Ambriz further alleges that Google's Cloud Contact Center AI acted as a "session manager" who "monitor[s]" conversations between Verizon and its customers, to assist Verizon's customer service representatives. (Compl. ¶¶ 19–24, 27, 29–30, 35–36.) "Verizon has contracted with Google to listen in on conversations through [the Cloud Contact Center AI], and for Google to provide at least all of the features" at issue in the Complaint. (Compl. ¶ 25.) Those allegations indicate that Google was acting on Verizon's behalf with its assent and under its control when performing these tasks using the features that Verizon required. *See Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883, 899 (C.D. Cal. 2011) (an agency relationship "arises

2

when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act" (cleaned up)).

Third and finally, the Complaint's factual allegations demonstrate that Google's alleged wiretapping conduct was "for the purpose of . . . operation of the services and facilities of" Verizon.  Cal. Penal Code § 631(b)(1).  The Complaint alleges that Google's Cloud Contact Center AI is a "customer service product." (Compl. ¶ 1; *see also* Compl. ¶ 8 (describing Cloud Contact Center AI as a "customer contact and support solution").)  "[A]mong other things," the Cloud Contact Center AI "'empowers human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance' and 'uses natural language processing to identify call drivers and sentiment that helps contact center managers learn about customer interactions to improve call outcomes.'" (Compl. ¶ 17 (citation omitted).)  Using this Cloud Contact Center AI software-as-a-service, Google is alleged to have wiretapped, eavesdropped on, and recorded conversations to assist Verizon in providing customer service support to its consumers.  (*See, e.g.*, Compl. ¶ 22 ("Google, through [the Cloud Contact Center AI], . . . '[t]ranscribe[s] calls in real time for agents to reference during the call or for analysis after the call.'" (citation omitted)); Compl. ¶ 23 ("Google, through [the Cloud Contact Center AI], 'grabs the context of the conversation to suggest articles and real-time, step-by-step guidance' to the agent," "actively analyzing the real-time contents of conversations between . . . Verizon and their customers." (citation omitted)); Compl. ¶ 27 ("Google . . . us[es] [the Cloud Contact Center AI] to eavesdrop upon and record a conversation to which it is not a party," and "needs access to the data in order to service . . . Verizon, such as through providing recommendations, analyzing customer intent, and transcribing conversations in real time."); Compl. ¶ 34 ("During these calls with Verizon, Plaintiff first interacted with a 'virtual agent' . . . provided by a third party, Google, rather than Verizon."); Compl. ¶ 35 ("[Ambriz] did not expect . . . a virtual agent provided by Google, a third party, was listening in on his conversation."); Compl. ¶ 36 ("Google, through [the Cloud Contact Center AI], eavesdropped on Plaintiff's entire

3

conversation with the Verizon human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff and Verizon, and Google, through [the Cloud Contact Center AI], transcribed Plaintiff's conversation in real time, analyzed the context of Plaintiff's conversation with Verizon, and suggested 'smart replies' and news articles to the Verizon agent Plaintiff was communicating with."); *see also* Compl. ¶¶ 4, 25–26, 29–30, 37, 55–57.)

While Ambriz contends that only wiretapping that is "necessary" to a telephone company's services is exempted under § 631(b)(1), the plain language of the statute forecloses his argument.  By its own terms, the statute does not contain a necessity requirement, imposing only a requirement that the wiretapping be "for the purpose of . . . operation of the services and facilities of the . . . telephone company." Cal. Penal Code § 631(b)(1).  Nor does Ambriz identify any case law that supports his proposed atextual limitation.  Given the statute's clear text, the Court must "apply the statute as it is written." *Pereira v. Sessions*, 585 U.S. 198, 219 (2018) (citation omitted).

Based on the allegations of the Complaint, and considering § 631(b)(1)'s plain language, it appears doubtful that Ambriz could amend to cure the above deficiencies.  However, because this is the first ruling on the legal sufficiency of Ambriz's claim, dismissal is with leave to amend.

*     *     *

For the foregoing reasons, Google's motion to dismiss is **GRANTED WITH LEAVE TO AMEND**. If Ambriz chooses to file an amended complaint, he must do so by **July 22, 2024**. If no amended complaint is filed by that date, the Complaint will remain dismissed, and the file will be closed. In the event that Ambriz files an amended complaint, Google's response to the amended complaint is due twenty-one days from the date of Ambriz's filing.

**IT IS SO ORDERED.**

Dated: June 20, 2024

RITA F. LIN
United States District Judge