**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ndeckant@bursor.com

**THE SIMON LAW FIRM, P.C.**
Anthony G. Simon (*Pro Hac Vice*)
Jeremiah W. Nixon (*Pro Hac Vice*)
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
        jnixon@simonlawpc.com

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISAEL AMBRIZ, JIMMY NIMMO, CHRISTOPHER BISSONNETTE, AHMAD MEHDIPOUR, EUGENE ERLIKH, JAMES FOX, PETER SAMISH, and CHRISTOPHER BARULICH, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>   v.<br><br>GOOGLE, LLC,<br><br>                 Defendant. | Case No. 3:23-cv-5437-RFL<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>**<br><br>Hon. Rita F. Lin |

Plaintiffs Misael Ambriz ("Verizon Plaintiff"), Jimmy Nimmo ("Hulu Plaintiff"), Christopher Bissonnette, Ahmad Mehdipour, Eugene Erlikh ("GoDaddy Plaintiffs"), James Fox, Peter Samish, and Christopher Barulich ("Home Depot Plaintiffs") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF ACTION

1. Defendant Google, LLC ("Defendant" or "Google") has developed and provides a customer service product called Google Cloud Contact Center AI (hereafter "GCCCAI") as a software-as-a-service.

2. GCCCAI is employed by numerous entities, including Verizon Communications, Inc. ("Verizon"), Hulu, LLC ("Hulu"), GoDaddy Group Inc. ("GoDaddy"), and Home Depot U.S.A., Inc. ("Home Depot") (collectively, the "Non-Defendant Entities") to monitor voice and text-based interactions.

3. Verizon, Hulu, GoDaddy, and Home Depot contracted with Google and its GCCCAI service to respond to customers who call from California and across the nation to, among other things, receive support through these channels ("Contact Centers").

4. By virtue of providing the GCCCAI service, however, Defendant also records, accesses, reads, and learns the contents of conversations between Californians and customer service representatives. And, crucially, neither Defendant nor the Non-Defendant Entities procure the prior consent, express or otherwise, of any person who interacts with the Non-Defendant Entities' customer service agents, prior to Defendant recording, accessing, reading, and learning the contents of conversations between Californians and the Non-Defendant Entities' customer service representatives.

5. Through its use of GCCCAI, Defendant has failed to comply with the California Invasion of Privacy Act ("CIPA") §§ 631 and 637.5.

6.      Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages for Defendant having recorded, accessed, read, and learned the contents of conversations between Californians and the Non-Defendant Entities without procuring prior consent, in contravention of CIPA §§ 631 and 637.5.

**THE PARTIES**

7.      Plaintiff Misael Ambriz resides in Napa County, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Ambriz, an account holder with Verizon, was in California when he spoke to a representative from Verizon over the phone from his home in or about January 2023.

8.      Plaintiff Jimmy Nimmo resides in Redding, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Nimmo, an account holder with Hulu, was in California when he spoke to a representative from Hulu over the phone on April 5, 2024.

9.      Plaintiff Christopher Bissonnette resides in Tustin, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Bissonnette, an account holder with GoDaddy, was in California when he spoke to a representative from GoDaddy over the phone on December 30, 2024, and January 2, 2024.

10.      Plaintiff Ahmad Mehdipour resides in Fresno, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Mehdipour, an account holder with GoDaddy, was in California when he spoke to a representative from GoDaddy over the phone on March 20, 2024, and April 2, 2024.

11.      Plaintiff Eugene Erlikh resides in Los Angeles, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Erlikh, an account holder with GoDaddy, was in California when he spoke to a representative from GoDaddy over the phone on February 23, 2024, February 25, 2024, and February 26, 2024.

12.      Plaintiff James Fox resides in Folsom, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Fox, an account holder with Home Depot, was in

California when he spoke to a representative from Home Depot over the phone on September 15, 2023.

13.     Plaintiff Peter Samish resides in Sylmar, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Samish, an account holder with Home Depot, was in California when he spoke to a representative from Home Depot over the phone on March 23, 2023.

14.     Plaintiff Christopher Barulich resides in Los Angeles, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Barulich was in California when he spoke to a representative from Home Depot over the phone on multiple occasions.

15.     Defendant Google, Inc. ("Google" or "Defendant") is a Delaware limited liability company, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California, 94043.  Google does business throughout California and the entirety of the United States.  Google provides a customer contact and support solution called "Google Cloud Contact Center AI," which is at issue here and described more fully below.

16.     At all relevant times, Verizon, Hulu, GoDaddy, and Home Depot contracted with Google and its GCCCAI service.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

18.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 Defendant resides in this District.

**FACTUAL BACKGROUND**

## I.    THE CALIFORNIA INVASION OF PRIVACY ACT

20.    The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

21.    As the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

22.    As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection ... with any telegraph or telephone wire," (ii) "willfully and without the consent of all parties to the communication ... read[ing], or attempt[ing] to read, or to learn the contents or meaning of any ... communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use ... any information so obtained."  CIPA § 631(a) also penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping.

23.    Individuals may bring an action against the violator of CIPA § 631 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).

24.     In addition, as part of CIPA, the California Legislature enacted § 637.5, which prohibits in pertinent part any person who (a) "owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system" from (1) "[u]se[ing] any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber."  Cal. Penal Code § 637.5(a)(1).  Moreover, (h) "[a]ny person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section."  Cal. Penal Code § 637.5(h).

25.     Individuals may bring an action against the violator of CIPA § 637.5 for $5,000 per violation.  Cal. Penal Code § 637.2.

## II.   DEFENDANT VIOLATES THE CALIFORNIA INVASION OF PRIVACY ACT §§ 631(A) AND 637.5

26.     GCCCAI is a "human-like generative AI powered contact center" that, among other things, "empowers human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance" and "uses natural language processing to identify call drivers and sentiment that helps contact center managers learn about customer interactions to improve call outcomes."[1]

27.     When a consumer calls into a GCCCAI-powered contact center, they may first be presented with a virtual agent provided by Google.  Virtual agents are not identified as being provided by Google, and so consumers reasonably believe the virtual agent is provided by the company they are calling.

---

[1] CONTACT CENTER AI, https://cloud.google.com/solutions/contact-center.

28.     Regardless, if a consumer requests to speak with a human agent, the virtual agent transfers the consumer – along with a transcript of the conversation up until that point – to a human agent[2]:



The call gets routed to an agent through the partner telephony

29.     Crucially, once a consumer is routed from the virtual agent to the human agent, they expect the conversation is only between themselves and the human customer service agent. They do not expect, nor do they have any reason to suspect, that the virtual agent or any sort of third party is listening in on the conversation.  After all, that is the point of being transferred.

---

[2] How Does Google Cloud Contact Center AI Work?, https://youtu.be/i8b4pEYIsIM?si=NjkXMwHwCJXOIKyz&t=158.

30.     And yet, contrary to those expectations, Google is *still listening* even when a call is transferred from a virtual agent to a human agent.  Specifically, a Google "session manager monitors the state of the conversation" with the human agent[3]:



A session manager monitors the state of the conversation.

31.     Google, through GCCCAI, does not simply listen in on the conversation between the consumer and the human agent though.  It also "[t]ranscribe[s] calls in real time for agents to reference during the call or for analysis after the call."[4]

32.     In addition, Google, through GCCCAI, "grabs the context of the conversation to suggest articles and real-time, step-by-step guidance" to the agent.[5]  In other words, Google, through GCCCAI, is actively analyzing the real-time contents of conversations between companies like the Non-Defendant Entities and their customers.

---

[3] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=NjkXMwHwCJXOIKyz&t=160.

[4] AGENT ASSIST, https://cloud.google.com/agent-assist?hl=en.

[5] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=szJ4Bfl9egcT5p1N&t=174.



to suggest articles and
real-time, step-by-step

33.    Further, through GCCCAI, Google provides "smart replies" to the agent based on Google's analysis of the real-time contents of the conversations[6]:

The human agent is also
provided with the smart replies

---

[6] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=DTnLsP36i4vO1NLD&t=188.

34.     For the last year, if not longer, Verizon, Hulu, GoDaddy, and Home Depot have contracted with Google to listen in on conversations through GCCCAI, and for Google to provide at least all of the features mentioned above.

35.     Google profits from its provision of the GCCCAI service.  For instance, Google charges its clients "$0.03 per minute" for "Agent Assist for voice sessions with Summarization and other assist features."[7]

36.     When GCCCAI is used on a telephone conversation, it is not like a tape recorder, or a "tool" used by one party to record the other.  Instead, GCCCAI involves Google – a separate and distinct third-party entity from the parties to the conversation – using GCCCAI to eavesdrop upon and record a conversation to which it is not a party.  This is so because Google itself is collecting the contents of any conversation, as alleged above.  Google also needs access to the data in order to service customers like Verizon, Hulu, GoDaddy and Home Depot, such as through providing recommendations, analyzing customer intent, and transcribing conversations in real time.

37.     Google has the capability to use the contents of conversations it collects through GCCCAI.  For instance, in its "Service Specific Terms," Google has a section pertaining to "AI/MIL Services," which includes GCCCAI.[8]  In this section, Google states it can use "Customer Data" to "train or fine-tune any AI/ML models" with its clients' permission (but not the end user's permission).[9]  Thus, Google has the capability to use the wiretapped data it collects through GCCCAI to improve its AI/ML models (i.e., to improve the AI-based products and services Google provides).

38.     During consumers' calls to the Contact Centers, Google fails to inform consumers, prior to any recording: (i) that Google, a third party, is listening in on consumers' communications, (ii) that Google, a third party, is tapping or otherwise making an unauthorized

---

[7] Agent Assist Pricing, https://cloud.google.com/agent-assist/pricing.

[8] Service Specific Terms, https://cloud.google.com/terms/service-terms.

[9] Id.

connection with the consumer's telephone conversation using GCCCAI, and (iii) that the content of consumers' confidential communications with the Contact Centers are being recorded, collected, intercepted, and analyzed by a Google, a third party, using GCCCAI.

39.     The GCCCAI service was designed to record and analyze real-time phone conversations.  As such, when Google provided the GCCCAI service to the Non-Defendant Entities, Google understood and therefore intended to record the communications of customers who called into the Contact Centers.

40.     At times, Google listens to, records, and monitors conversations that take place during customer calls to the Contact Centers regardless of whether these conversations take place inside the customer's residence, workplace, or place of business.

41.     Therefore, Defendant's conduct violates the rights of Californians set forth in CIPA §§ 631 and 637.5.

**III.     PLAINTIFFS' EXPERIENCES**

**A.     Plaintiff Ambriz**

42.     Plaintiff Ambriz has called Verizon's Contact Center several times, including most recently in or about January 2023, from his home.

43.     In these conversations, Plaintiff Ambriz reasonably expected his conversations with Verizon to be only between himself and Verizon.

44.     During these calls with Verizon, Plaintiff Ambriz first interacted with a "virtual agent."  Plaintiff Ambriz was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Verizon.

45.     On these calls, Plaintiff Ambriz then asked to be transferred from the virtual agent to a human agent.  When Plaintiff Ambriz's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the Verizon human customer service agent.  He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

46.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Ambriz's entire conversation with the Verizon human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff and Verizon, and Google, through GCCCAI, transcribed Plaintiff Ambriz's conversation in real time, analyzed the context of Plaintiff Ambriz's conversation with Verizon, and suggested "smart replies" and news articles to the Verizon agent Plaintiff was communicating with.

47.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Ambriz's conversation with Verizon.

48.     Neither Verizon nor Google procured Plaintiff Ambriz's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Ambriz's conversation with Verizon.  Nor did Plaintiff Ambriz give his prior consent, express or otherwise, to Google or Verizon to allow Defendant to wiretap his communications with Verizon.

49.     Plaintiff Ambriz has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

**B.     Plaintiff Nimmo**

50.     Plaintiff Nimmo called Hulu's Contact Center several times on April 5, 2024.

51.     In these conversations, Plaintiff Nimmo reasonably expected his conversations with Hulu to be only between himself and Hulu.

52.     During these calls with Hulu, Plaintiff first interacted with a "virtual agent." Plaintiff was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Hulu.

53.     On these calls, Plaintiff Nimmo then asked to be transferred from the virtual agent to a human agent.  When Plaintiff Nimmo's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the Hulu human customer service agent.  He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

54.      Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Nimmo's entire conversation with the Hulu human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff Nimmo and Hulu, and Google, through GCCCAI, transcribed Plaintiff Nimmo's conversation in real time, analyzed the context of Plaintiff Nimmo's conversation with Hulu, and suggested "smart replies" and news articles to the Hulu agent Plaintiff Nimmo was communicating with.

55.      Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Nimmo's conversation with Hulu.

56.      Neither Hulu nor Google procured Plaintiff Nimmo's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Nimmo's conversation with Hulu.  Nor did Plaintiff Nimmo give his prior consent, express or otherwise, to Google or Hulu to allow Defendant to wiretap his communications with Hulu.

57.      Plaintiff Nimmo has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

**C.      Plaintiff Bissonnette**

58.      Plaintiff Bissonnette has called GoDaddy's Contact Center several times, including on December 30, 2023, and January 2, 2024.

59.      In these conversations, Plaintiff Bissonnette reasonably expected his conversations with GoDaddy to be only between himself and GoDaddy.

60.      During these calls with GoDaddy, Plaintiff Bissonnette first interacted with a "virtual agent."  Plaintiff Bissonnette was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than GoDaddy.

61.      On these calls, Plaintiff Bissonnette then asked to be transferred from the virtual agent to a human agent.  When Plaintiff Bissonnette's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the GoDaddy human customer service agent.  He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

62.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Bissonnette's entire conversation with the GoDaddy human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff and GoDaddy, and Google, through GCCCAI, transcribed Plaintiff Bissonnette's conversation in real time, analyzed the context of Plaintiff Bissonnette's conversation with GoDaddy, and suggested "smart replies" and news articles to the GoDaddy agent Plaintiff was communicating with.

63.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Bissonnette's conversation with GoDaddy.

64.     Neither GoDaddy nor Google procured Plaintiff Bissonnette's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Bissonnette's conversation with GoDaddy.  Nor did Plaintiff Bissonnette give his prior consent, express or otherwise, to Google or GoDaddy to allow Defendant to wiretap his communications with GoDaddy.

65.     Plaintiff Bissonnette has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

**D.     Plaintiff Mehdipour**

66.     Plaintiff Mehdipour has called GoDaddy's Contact Center several times, including in March and April of 2024.

67.     In these conversations, Plaintiff Mehdipour reasonably expected his conversations with GoDaddy to be only between himself and GoDaddy.

68.     During these calls with GoDaddy, Plaintiff Mehdipour first interacted with a "virtual agent."  Plaintiff Mehdipour was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than GoDaddy.

69.     On these calls, Plaintiff Mehdipour then asked to be transferred from the virtual agent to a human agent.  When Plaintiff Mehdipour's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the GoDaddy human

customer service agent. He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

70.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Mehdipour's entire conversation with the GoDaddy human customer service agent. Specifically, a Google session manager monitored the conversation between Plaintiff Mehdipour and GoDaddy, and Google, through GCCCAI, transcribed Plaintiff Mehdipour's conversation in real time, analyzed the context of Plaintiff Mehdipour's conversation with GoDaddy, and suggested "smart replies" and news articles to the GoDaddy agent Plaintiff was communicating with.

71.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Mehdipour's conversation with GoDaddy.

72.     Neither GoDaddy nor Google procured Plaintiff Mehdipour's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Mehdipour's conversation with GoDaddy. Nor did Plaintiff Mehdipour give his prior consent, express or otherwise, to Google or GoDaddy to allow Defendant to wiretap his communications with GoDaddy.

73.     Plaintiff Mehdipour has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

**E.      Plaintiff Erlikh**

74.     Plaintiff Erlikh has called GoDaddy's Contact Center several times, including on February 23, 2024, February 25, 2024, and February 26, 2024.

75.     In these conversations, Plaintiff Erlikh reasonably expected his conversations with GoDaddy to be only between himself and GoDaddy.

76.     During these calls with GoDaddy, Plaintiff Erlikh first interacted with a "virtual agent." Plaintiff was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than GoDaddy.

77.     On these calls, Plaintiff Erlikh then asked to be transferred from the virtual agent to a human agent. When Plaintiff Erlikh's call was transferred to the human agent, he reasonably

expected the conversation would be only between himself and the GoDaddy human customer service agent.  He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

78.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Erlikh's entire conversation with the GoDaddy human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff Erlikh and GoDaddy, and Google, through GCCCAI, transcribed Plaintiff Erlikh's conversation in real time, analyzed the context of Plaintiff Erlikh's conversation with GoDaddy, and suggested "smart replies" and news articles to the GoDaddy agent Plaintiff was communicating with.

79.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Erlikh's conversation with GoDaddy.

80.     Neither GoDaddy nor Google procured Plaintiff Erlikh's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Erlikh's conversation with GoDaddy.  Nor did Plaintiff give his prior consent, express or otherwise, to Google or GoDaddy to allow Defendant to wiretap his communications with GoDaddy.

81.     Plaintiff Erlikh has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

**F.     Plaintiff Fox**

82.     Plaintiff Fox called Home Depot's Contact Center on September 15, 2023.

83.     In these conversations, Plaintiff Fox reasonably expected his conversations with Home Depot to be only between himself and Home Depot.

84.     During these calls with Home Depot, Plaintiff Fox first interacted with a "virtual agent."  Plaintiff Fox was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Home Depot.

85.     On these calls, Plaintiff Fox then asked to be transferred from the virtual agent to a human agent.  When Plaintiff Fox's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the Home Depot human customer

service agent.  He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

86.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Fox's entire conversation with the Home Depot human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff Fox and Home Depot, and Google, through GCCCAI, transcribed Plaintiff Fox's conversation in real time, analyzed the context of Plaintiff Fox's conversation with Home Depot, and suggested "smart replies" and news articles to the Home Depot agent Plaintiff Fox was communicating with.

87.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Fox's conversation with Home Depot.

88.     Neither Home Depot nor Google procured Plaintiff Fox's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Fox's conversation with Home Depot.  Nor did Plaintiff Fox give his prior consent, express or otherwise, to Google or Home Depot to allow Defendant to wiretap his communications with Home Depot.

89.     Plaintiff Fox has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

**G.     Plaintiff Samish**

90.     Plaintiff Samish called Home Depot's Contact Center on March 23, 2023.

91.     In these conversations, Plaintiff Samish reasonably expected his conversations with Home Depot to be only between himself and Home Depot.

92.     During these calls with Home Depot, Plaintiff Samish first interacted with a "virtual agent."  Plaintiff Samish was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Home Depot.

93.     On these calls, Plaintiff Samish then asked to be transferred from the virtual agent to a human agent.  When Plaintiff Samish's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the Home Depot human customer

service agent.  He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

94.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Samish's entire conversation with the Home Depot human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff Samish and Home Depot, and Google, through GCCCAI, transcribed Plaintiff Samish's conversation in real time, analyzed the context of Plaintiff Samish's conversation with Home Depot, and suggested "smart replies" and news articles to the Home Depot agent Plaintiff Samish was communicating with.

95.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Samish's conversation with Home Depot.

96.     Neither Home Depot nor Google procured Plaintiff Samish's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Samish's conversation with Home Depot. Nor did Plaintiff Samish give his prior consent, express or otherwise, to Google or Home Depot to allow Defendant to wiretap his communications with Home Depot.

97.     Plaintiff Samish has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

**H.     Plaintiff Barulich**

98.     Plaintiff Barulich has often visited Home Depot's retail stores in the Los Angeles area to shop for and purchase goods for various projects.

99.     In the fall of 2023, Plaintiff Barulich's wife went to a Los Angeles area Home Depot store to purchase goods.  During this visit, a Home Depot employee acted inappropriately toward Plaintiff's wife.

100.     Plaintiff Barulich then searched for Home Depot customer service numbers to discuss the incident with Home Depot.  His search led him to multiple phone numbers, including a local California number and a "1-800" number.

101.     Plaintiff Barulich has placed multiple calls to Home Depot customer service, including most recently in or about October 2023.

102.     In October of 2023, Plaintiff Barulich called Home Depot while located at home in California.  He called both a local California number and a Home Depot national number.

103.     During these calls with Home Depot, Plaintiff Barulich first interacted with a "virtual agent."  Plaintiff Barulich was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Home Depot.

104.     On these calls, Plaintiff Barulich then asked to be transferred from the virtual agent to a human agent.  When Plaintiff Barulich's call was transferred to the human agent, he reasonably expected the conversation would be only between himself and the Home Depot human customer service agent.  He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

105.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Barulich's entire conversation with the Home Depot human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff Barulich and Home Depot, and Google, through GCCCAI, transcribed Plaintiff Barulich's conversation in real time, analyzed the context of Plaintiff Barulich's conversation with Home Depot, and suggested "smart replies" and news articles to the Home Depot agent Plaintiff Samish was communicating with.

106.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Barulich's conversation with Home Depot.

107.     Neither Home Depot nor Google procured Plaintiff Barulich's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Samish's conversation with Home Depot.  Nor did Plaintiff Barulich give his prior consent, express or otherwise, to Google or Home Depot to allow Defendant to wiretap his communications with Home Depot.

108.     Plaintiff Barulich has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

1

## CLASS ALLEGATIONS

2    109.    Plaintiff Ambriz seeks to represent a Class defined as all residents of the State

3    of California who called Verizon from their residence, workplace, or place of business in

4    California and had their conversations with Verizon recorded, monitored, or listened to by

5    Defendant using GCCCAI (the "Verizon Class").

6    110.    Plaintiff Jimmy Nimmo seeks to represent a Class defined as all residents of

7    the State of California who called Hulu customer service while in California and who had the

8    contents of their conversations with Hulu read and learned by Defendant using GCCCAI (the

9    "Hulu Class").

10    111.    Plaintiffs Christopher Bissonnette, Ahmad Mehdipour, and Eugene Erlikh seek to

11    represent a Class defined as all residents of the State of California who called GoDaddy customer

12    service while in California and who had the contents of their conversations with GoDaddy read

13    and learned by Defendant using GCCCAI (the "GoDaddy Class").

14    112.    Plaintiffs James Fox, Peter Samish, and Chrstopher Barulich seek to represent a

15    Class defined as all residents of the State of California who called Home Depot customer service

16    while in California and who had the contents of their conversations with Home Depot read and

17    learned by Defendant using GCCCAI (the "Home Depot Class").

18    113.    The Verizon, Hulu, GoDaddy, and Home Depot Classes will collectively be

19    referred to as the "Class."

20    114.    The following people are excluded from the Class: (1) any Judge presiding over

21    this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents,

22    successors, predecessors, and any entity in which Defendant or their parents have a controlling

23    interest (including current and former employees, officers, or directors); (3) persons who properly

24    execute and file a timely request for exclusion from the Class; (4) persons whose claims in this

25    matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel

26    and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such

27    excluded persons.

28

115.   **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named Plaintiffs.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from records belonging to Defendant, Hulu, GoDaddy, Home Depot, and Verizon.

116.   **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

(a)   Whether Defendant violated CIPA § 631;

(b)   Whether Defendant violated CIPA § 637.5;

(c)   Whether Defendant sought or obtained prior consent – express or otherwise – from Plaintiffs and the Class; and

(d)   Whether Plaintiffs and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

117.   **Typicality:** The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs, like all other members of the Class, had the content of their communications read, learned, analyzed, and/or examined by Google.

118.   **Adequate Representation:** Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

119.   **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the

Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.   Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized litigation also presents a potential for inconsistent or contradictory judgments.   In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.   Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 631(a)

120.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

121.   Plaintiffs Nimmo, Bissonnette, Mehdipour, Erlikh, Fox, Samish, and Barulich (together, the "Hulu, GoDaddy, and Home Depot Plaintiffs") bring this claim individually and on behalf of the members of the Hulu, GoDaddy, and Home Depot Classes against Defendant.

122.   CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

123.   To establish liability under CIPA § 631(a), the Hulu, GoDaddy, and Home Depot Plaintiffs need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

124.    GCCCAI is a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct at issue here.

125.    Google is a separate legal entity that offers "'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021).  Accordingly, Google was a third party to any communication between Hulu, GoDaddy, and Home Depot Plaintiffs and members of the Hulu, GoDaddy, and Home Depot Classes, on the one hand, and Hulu, GoDaddy, or Home Depot, on the other.  *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F Supp. 3d 891, 900 (N.D. Cal. 2023); *Turner v. Nuance Communications, Inc.*, 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024).

126.    At all relevant times, through GCCCAI, Google intentionally tapped, electrically or otherwise, the lines of telephone communication between the Hulu, GoDaddy, and Home Depot Plaintiffs and members of the Hulu, GoDaddy and Home Depot Classes, on the one hand, and Hulu, GoDaddy, and Home Depot, on the other hand.

127.    At all relevant times, through GCCCAI, Google willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of the Hulu, GoDaddy, and Home Depot Plaintiffs and members of the Hulu, GoDaddy, and Home Depot Classes, while the

electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

128.    The Hulu, GoDaddy, and Home Depot Plaintiffs and members of the Hulu, GoDaddy, and Home Depot Classes did not consent to any of Defendant's actions discussed above. Nor have Hulu, GoDaddy, and Home Depot Plaintiffs or members of the Hulu, GoDaddy, and Home Depot Classes consented to Defendant's intentional access, interception, reading, learning, recording, collection, and analysis of communications from the Hulu, GoDaddy, and Home Depot Plaintiffs and members of the Hulu, GoDaddy, and Home Depot Classes.

129.    The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

130.    Pursuant to Cal. Penal Code § 637.2, the Hulu, GoDaddy, and Home Depot Plaintiffs and the Hulu, GoDaddy, and Home Depot Class Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Google's violations of CIPA § 631(a).

**COUNT II**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 637.5**

131.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

132.    Plaintiff Ambriz brings this claim individually and on behalf of the members of the Verizon Class against Defendant.

133.    Under CIPA § 637.5(a)(1), "[n]o person who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system" shall "[u]se any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber."

134.    Further, "[a]ny person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section."  CIPA § 637.5(h).

135.   Verizon is a "cable television corporation" because it is a "corporation or firm which transmits television programs by cable to subscribers for a fee." Cal. Pub. Util. § 216.4 (definition of term incorporated by CIPA § 637.5(f)(1)).

136.   GCCCAI is a "electronic device" for purposes of CIPA § 637.5(a)(1).

137.   Google is a separate legal entity that offers "'software-as-a-service' and not merely a passive device." *Saleh*, 562 F. Supp. 3d at 520. Accordingly, as an LLC, Google is a "person" for purposes of CIPA § 637.5(h) as defined under CIPA § 637.5(f)(3).

138.   At all relevant times, through GCCCAI, Defendant received subscriber information from Verizon—including Plaintiff Ambriz's and Verizon Class Members' subscriber information—by using GCCCAI to listen to, record, or monitor conversations that took place inside a subscriber's residence, workplace, or place of business when subscribers would call Verizon's Contact Centers.

139.   Plaintiff Ambriz and members of the Verizon Class did not consent to any of Defendant's actions discussed above.

140.   The violation of CIPA § 637.5 constitutes an invasion of privacy sufficient to confer Article III standing.

141.   Pursuant to Cal. Penal Code § 637.2, Plaintiff Ambriz and Verizon Class Members have been injured by the violations of CIPA § 637.5, and each seeks statutory damages of $5,000 for each of Google's violations of CIPA § 637.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)   For an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiffs as the representative of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)   For an order declaring that Defendant' conduct violates the statutes referenced herein;

(c)   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)     For statutory damages of $5,000 for each violation of CIPA § 631(a);

(e)     For pre- and post-judgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief; and

(g)     For an order awarding and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable.

Dated: October 7, 2024                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Neal J. Deckant*
          Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

**THE SIMON LAW FIRM, P.C.**
Anthony G. Simon (*Pro Hac Vice*)
Jeremiah W. Nixon (*Pro Hac Vice*)
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
            jnixon@simonlawpc.com

*Attorneys for Plaintiffs*