**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

**THE SIMON LAW FIRM, P.C.**
Anthony G. Simon (*Pro Hac Vice*)
Jeremiah W. Nixon (*Pro Hac Vice*)
1001 Highlands Plaza Dr., Ste. 300
St. Louis, Missouri 63110
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-mail: asimon@simonlawpc.com
          jnixon@simonlawpc.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISAEL AMBRIZ, JIMMY NIMMO, CHRISTOPHER BISSONNETTE, AHMAD MEHDIPOUR, EUGENE ERLIKH, JAMES FOX, PETER SAMISH, and CHRISTOPHER BARULICH, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC,<br><br>                              Defendant. | Case No. 3:23-cv-05437-RFL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>Date:    February 4, 2025<br>Time:    10:00 a.m.<br>Room:  Courtroom 15 – 18th Floor<br>Judge:  Hon. Rita F. Lin |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

    I.      DEFENDANT VIOLATED THE FIRST CLAUSE OF CIPA § 631 ......................2

    II.     DEFENDANT VIOLATED THE SECOND CLAUSE OF CIPA § 631 .................3

           A.    Google Is A Third-Party Wiretapper To Plaintiffs' Communications .................................................................................3

               1.    Defendant Is A Third-Party Wiretapper Under The "Capability" Approach, Which The Court Should Adopt....................................................................4

               2.    Defendant Is A Third-Party Wiretapper Under The "Extension" Approach, Which The Court Should Reject....................................................................8

           B.    Defendant Is A "Person" .................................................................11

           C.    Defendant Intercepted The Contents Of Plaintiffs' Communications With The Nonparty Entities In Transit Or From California ...............................................................................13

    III.    DEFENDANT VIOLATED CIPA § 637.5 ...........................................................15

CONCLUSION .................................................................................................................15

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Ade v. Viki, Inc.*,
   2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ............................................................................. 8

5

6

*Ambriz v. Google, LLC*,
   2024 WL 3282521 (N.D. Cal. June 20, 2024)............................................................................. 15

7

8

*Augustine v. Lenovo (United States), Inc.*,
   2023 WL 4938050 (S.D. Cal. Aug. 2, 2023)................................................................................. 3

9

*Balletto v. Am. Honda Motor Co.*,
   2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ........................................................................... 4, 9

10

11

*Balletto v. Am. Honda Motor Co.*,
   2024 WL 589090 (N.D. Cal. Feb. 13, 2024)............................................................................ 5, 14

12

13

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................................................................................ 13

14

*D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*,
   2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)........................................................................... 9, 14

15

16

*Davis v. Pacific Telephone & Telegraph Co.*,
   59 P. 698 (Cal. 1899)..................................................................................................................... 3

17

18

*Fed. Trade Commission v. DirecTV, Inc.*,
   2016 WL 3351945 (N.D. Cal. June 9, 2016).............................................................................. 15

19

*Flowers v. Twilio, Inc.*,
   2016 WL 11684603 (Cal. Super. Ct. Aug. 2, 2016).................................................................. 11

20

21

*Garcia v. Yeti Coolers, LLC*,
   2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) .............................................................................. 4

22

*Gladstone v. Amazon Web Servs., Inc.*,
   2024 WL 3276490 (W.D. Wash. July 2, 2024)................................................................... passim

23

24

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021)...................................................................................... 8, 9

25

26

*In re Facebook Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................................. 13, 14

27

*In re Google Inc.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)........................................................................... 2, 3

28

*Javier v. Assurance IQ, LLC,*
    649 F. Supp. 3d 891 (N.D. Cal. 2023) ............................................................................... passim

*Javier v. Assurance IQ, LLC,*
    2022 WL 1744107 (9th Cir. May 31, 2022) ................................................................................ 2

*Kight v. CashCall, Inc.,*
    200 Cal. App. 4th 1377 (2011) ................................................................................................. 12

*Licea v. Am. Eagle Outfitters, Inc.,*
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) ............................................................................... 3, 14

*Marden v. LMND Med. Group, Inc.,*
    2024 WL 4448684 (N.D. Cal. July 3, 2024) ............................................................................. 9

*Mastel v. Miniclip SA,*
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................................................... 14

*Matera v. Google Inc.,*
    2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........................................................................ 11

*McClung v. AddShopper, Inc.,*
    2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ........................................................................... 14

*Mireskandari v. Mail,*
    2013 WL 12129559 (C.D. Cal. July 30, 2013) ....................................................................... 14

*People v. Wilson,*
    17 Cal. App. 3d 598 (1971) ..................................................................................................... 14

*Revitch v. New Moosejaw, LLC,*
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................................................................... 4

*Ribas v. Clark,*
    38 Cal. 3d 355 (1985) ....................................................................................................... passim

*Roney v. Miller,*
    705 F. App'x 670 (9th Cir. 2017) ............................................................................................ 15

*Saleh v. Nike, Inc.,*
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ......................................................................... 4, 7, 10, 11

*Shah v. Fandom, Inc.,*
    2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .................................................................. 1, 9, 11

*Smith v. YETI Coolers, LLC,*
    2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ........................................................................... 9

*Tavernetti v. Superior Ct.,*
    22 Cal. 3d 187 (1978) ............................................................................................................... 2

*Turner v. Nuance Communications, Inc.*,
  2024 WL 2750017 (N.D. Cal. May 28, 2024)....................................................... passim

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023)................................................................. 14

*Valenzuela v. Nationwide Mut. Ins. Co.*,
  686 F. Supp. 3d 969 (C.D. Cal. 2023).............................................................. passim

*Valenzuela v. Super Bright LEDs Inc.*,
  2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........................................... 4, 9, 10

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
  2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) ............................................... 6

*Yockey v. Salesforce, Inc.*,
  688 F. Supp. 3d 962 (N.D. Cal. 2023).................................................... 4, 9, 12

*Yockey v. Salesforce, Inc.*,
  2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) ...................................... 5, 14

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021)..................................................... 3, 5, 8

**STATUTES**

Cal. Penal Code § 631 .......................................................... 8, 9, 10, 11

Cal. Penal Code § 632 .......................................................................... 12

Cal. Penal Code § 637.5 ........................................................................ 15

Cal. Pub. Util. Code § 216.4.................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

In recently examining another section of the California Invasion of Privacy Act ("CIPA"), this Court observed the following.  *First*, the Court noted its "analysis must begin with the statutory text, and if that text is clear, must end there."  *Shah v. Fandom, Inc.*, --- F. Supp. 3d ---, 2024 WL 4539577, at *3 (N.D. Cal. Oct. 21, 2024) (Lin, J.).  *Second*, the Court followed the California Supreme Court's instruction "to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests."  *Id.* at *4 (cleaned up).  *Finally*, the Court noted "the broad legislative intent underlying CIPA to protect privacy."  *Id.* (cleaned up).

This case comes down to the statutory text, case law from the California Supreme Court, and legislative policy.  And these elements invariably tip in Plaintiffs' favor.  The text of CIPA § 631 provides that when Californians call businesses such as The Home Depot, Hulu, and GoDaddy (the "Nonparty Entities"), another person or entity is not permitted to eavesdrop on those calls without their prior consent.  The California Supreme Court's decision in *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985), says that when a multi-billion-dollar technology company records and analyzes those communications—as well as uses the communications to improve its own products and services—it is an "unannounced second auditor" to those communications, the same as a "secretary [who] secretly transcribe[s] a conversation."  CAC ¶¶ 27-33.  And the legislative policy behind CIPA says that Plaintiffs do not surrender their privacy rights—which CIPA § 631 was enacted to protect (*Ribas*, 38 Cal. 3d at 361)—simply because Defendant was being paid by the Nonparty Entities to eavesdrop. The same factors cement that Plaintiff Ambriz has a claim for Defendant's violation of CIPA § 637.5 based on his calls to Verizon.

Two courts have rejected motions to dismiss CIPA claims brought by Defendant's competitors in this space.  *See Turner v. Nuance Communications, Inc.*, --- F. Supp. 3d ---, 2024 WL 2750017 (N.D. Cal. May 28, 2024); *Gladstone v. Amazon Web Servs., Inc.*, --- F. Supp. 3d ---, 2024 WL 3276490 (W.D. Wash. July 2, 2024).  This Court should do the same.

**ARGUMENT**

**I.    DEFENDANT VIOLATED THE FIRST CLAUSE OF CIPA § 631**

As to the first clause of CIPA § 631(a),[1] Defendant argues Plaintiffs "do not allege that Google wiretapped or made an unauthorized connection to any telegraph or telephone wire, line, cable, or instrument." MTD at 11:11-12 (cleaned up). Specifically, Defendant contends Plaintiffs have failed to clarify whether they made calls "by computer, smartphone, or landline." MTD at 11:20-21. The plausible inference of Plaintiffs' allegations is that they made calls using either a smartphone or a landline (CAC ¶¶ 42, 50, 58, 66, 74, 82, 90, 101-102), and Plaintiffs are happy to provide evidence to that effect if necessary. Thus, the real question is whether the first clause of CIPA § 631(a) applies only to calls made from landline telephones, or if it applies to calls made from smartphones as well. The latter interpretation must be correct. While smartphones can do an assortment of things, they are, at their root, telephones that can make telephone calls—thus the name "smartphone." And when a Californian uses their smartphone in this manner (*i.e.*, to make a phone call), they should not need to leave their privacy rights at the door because they chose not to dust off the landline in their basement. *Contra Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 982 (C.D. Cal. 2023) ("Valenzuela attempts to circumvent the requirements of the first clause by pointing out that she has alleged she accessed the Website via her smartphone. But in doing so, she was using her smartphone's *computer* function, not its *telephone* function.") (emphasis in original; internal citations omitted).

Given how ubiquitous cellphone usage is, the first clause of CIPA § 631 would be rendered virtually obsolete if Defendant is correct (which it is not). To avoid such an outcome, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) (finding CIPA § 631 "applies to emails"); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a)

---

[1] CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

1   applies to Internet communications."). Indeed, as the *In re Google* court pointed out, the California

2   Supreme Court previously read the word "telegraph lines" in another criminal statute to apply to

3   "telephone lines" because "'the idea conveyed by each term is the sending of intelligence to a

4   distance.'" *In re Google*, 2013 WL 5423918, at *21 (quoting *Davis v. Pacific Telephone &*

5   *Telegraph Co.*, 59 P. 698, 699 (Cal. 1899); internal brackets omitted). If "telegraph" can mean

6   "telephone," then there is no reason that "telephone" cannot include a smartphone, when the

7   smartphone is being used to make a phone call. Indeed a "smartphone" is simply "a *cell phone* that

8   includes additional software functions." *Smartphone*, MERRIAM-WEBSTER DICTIONARY (2024)

9   (emphasis added). The word "cell phone" means "a portable usually cordless *telephone* for use in a

10  cellular system." *Cell Phone*, MERRIAM-WEBSTER DICTIONARY (2024) (emphasis added).

11      Thus, whether Plaintiffs called the Nonparty Entities via a smartphone or a landline phone is

12  immaterial. The fact that Plaintiffs called the Nonparty Entities with a telephone, and that Defendant

13  wiretapped those communications, is sufficient.[2]

14  **II.    DEFENDANT VIOLATED THE SECOND CLAUSE OF CIPA § 631**

15      **A.    Google Is A Third-Party Wiretapper To Plaintiffs' Communications**

16      Defendant argues Plaintiffs cannot state a CIPA § 631(a) claim because "Google is not a

17  'third party' to the communications at issue." MTD at 6. Whether Defendant is a third-party

18  wiretapper is a "a question of fact for a jury, best answered after discovery into the storage mechanics

19  of [GCCCAI]." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see*

20  *also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023)

21  (same). Regardless, and as explained in more detail below, courts are generally split into two camps

22  regarding whether a software-as-a-service ("SaaS") provider is a third-party wiretapper for the

23  purposes of CIPA § 631. The better-reasoned approach—the "capability" approach—supports

24  Plaintiffs' allegations that Defendant is a third-party wiretapper and is thus liable for violating CIPA

25

26  _____

27  [2] In *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1076 (C.D. Cal. 2023), the plaintiff
    alleged "he visited Defendant's Website and had a brief conversation utilizing the chat feature on
    Defendant's Website." Thus, unlike here, the *Licea* plaintiff was using his smartphone as an Internet

28  browser rather than as a telephone.

§ 631.[3] Defendant's proffered interpretation, meanwhile—the "extension" approach—has no basis in the text, caselaw, and legislative policy behind CIPA § 631 and should be rejected. But even under this interpretation, Plaintiffs have sufficiently alleged Defendant is a third-party wiretapper.

1.    *Defendant Is A Third-Party Wiretapper Under The "Capability" Approach, Which The Court Should Adopt*

Previously, the Court "[a]ssume[d] for the sake of argument that the 'capability' analysis applies." ECF No. 32 at 2. Plaintiffs respectfully submit the Court should formally adopt this analysis and join the "growing number of district courts" to do so. *Turner*, 2024 WL 2750017, at *10 (collecting cases adopting the "capability" approach and doing the same); *see also*, *e.g.*, *Gladstone*, 2024 WL 3276490, at *6; *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023); *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023) (noting "courts have posited that companies like ASI are separate corporate entities more accurately analogized to the eavesdropper in *Ribas*" because "the alleged capabilities of [web monitoring] software are beyond the ordinary function of a tape recorder") (internal quotations omitted).

First established in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), the "capability" approach holds a SaaS provider is a third-party wiretapper if the SaaS provider "ha[s] the *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [that] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Id.* at 900 (emphasis in original). The "capability" approach does not require that the SaaS provider

---

[3] As Plaintiffs previously noted (ECF No. 29), a number of courts have even held a SaaS provider is a third-party wiretapper by virtue of the fact that it is "a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021) (finding SaaS provider was a third party to communications between website and its customers); *see also, e.g., Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("[A] plausible inference from Valenzuela's allegations is that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the contents of communications in real time."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication."). Plaintiffs believe this remains the best interpretation of CIPA § 631, but agree that the "capability" approach is well-grounded in the text, caselaw, and legislative history of the statute.

actually use the data for another purpose in the instant action, only that the SaaS provider can do so. *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case").

Applying the "capability" approach, Plaintiffs' allegations suffice to show Google is a third-party eavesdropper.   As Plaintiffs allege, Google has the capability to use the wiretapped conversations for a number of purposes other than providing them to Nonparty Entities, including but not limited to:

- Analyzing conversations in real time to "'suggest articles and real-time, step-by-step guidance' to the [customer service] agent.'" CAC ¶ 31-32.

- Providing "'smart replies' to the agent based on Google's analysis of the real-time contents of the conversations." *Id.* ¶ 32.

- Profiting from the intercepted communications by "charg[ing] its clients '$0.03 per minute' for 'Agent Assist for voice sessions with Summarization and other assist features.'" *Id.* ¶ 35.

- Having the capability to use the intercepted communications "to train or fine-tune any AI/ML models' with its clients' permission … (*i.e.*, to improve the AI-based products and services Google provides)." *Id.* ¶ 37 (cleaned up).

These allegations make clear that Google has the capability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081; *see also*, *e.g.*, *Gladstone*, 2024 WL 3276490, at *6 (SaaS provider was a third party wiretapper where it "may use and store Amazon Connect ML Content to develop and improve Defendant's own services" and "has the capability to analyze any data it collects through its Amazon Connect platform") (cleaned up); *Turner*, 2024 WL 2750017, at *10 (same where "the court may reasonably infer that at the very least, Nuance can use consumers' voice prints to improve its own products and services"); *Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2024 WL 3875785, at *4 (N.D. Cal. Aug. 16, 2024) (same where "Salesforce has the capability to use Chat communications to (i) improve Salesforce's own products and services; (ii) develop new Salesforce products and services; and (iii) analyze Chat communications to assist with customer service interactions and data analytics") (cleaned up); *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *3 (N.D. Cal. Feb.

13, 2024) ("Balletto does include allegations about how Salesforce would be capable of using data from Honda's website: through the Einstein data intelligence platform."); *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Javier pleads that ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites"); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (finding that "software that allows a third party to capture messages in real time and later perform data analysis" should qualify as a third-party wiretapper); *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) (SaaS provider is a third party eavesdropper based on "allegations that Quantum retains the right to analyze and distribute recorded communications for independent purposes").

In particular, Plaintiffs direct the Court's attention to the decisions in the *Gladstone* and *Turner* matters. There, courts analyzed whether competitors of Google in this space—Amazon and Nuance (which is owned by Microsoft)—who were providing SaaS to companies for customer service purposes were third party wiretappers. As noted above, *both courts* held the SaaS providers were third party wiretappers, based on allegations like those here that the SaaS provider could use the intercepted communications to improve and develop its own products and services. *Gladstone*, 2024 WL 3276490, at *6; *Turner*, 2024 WL 2750017, at *10. Defendant fails to even address *Gladstone* and makes a paltry attempt to sidestep *Turner*.[4] Given Amazon and a Microsoft-owned company were both deemed third-party wiretappers in similar cases, there is no good reason to hold otherwise as to Google here.

Defendant's insistence that it is "contractually barred from using [GC]CCAI data to train AI/ML models" (MTD at 9:14-15 (cleaned up)) is irrelevant at best. *First*, Defendant's argument does nothing to overcome Plaintiffs' allegations that Google is *capable* of using the communications to improve its products and services. FAC ¶ 37. As the Court previously appeared to recognize, it

---

[4] Defendant's sole retort to *Turner* is to focus on the SaaS provider's ability to create voice prints, and that the plaintiffs there were asked to "more directly allege that Nuance uses its Chase voice print database for other clients." MTD at 10:14-18 (quoting *Turner*, 2024 WL 2750017, at *10 n.5). As undersigned counsel—who also represents the plaintiffs in *Turner*—can attest, plaintiffs there did so, and the defendant answered. *See Turner v. Nuance Communications, Inc.*, Case No. 4:22-cv-5827, ECF Nos. 68, 74 (N.D. Cal.). Notwithstanding this, the court found the plaintiffs' allegations sufficient at the pleadings stage, even absent an amendment.

is "a plausible inference that [a contractual] restriction is necessary because Google's software is otherwise technologically capable of using the recordings for the purpose of training or fine-tuning AI/ML models" (ECF No. 32 at 2), meaning Defendant is a third party under the "capability" approach. *See also Gladstone*, 2024 WL 3276490, at *6 (rejecting the defendant's argument that it was not a third party because it "obtains no rights to a customer's content except for use in providing services to the customer" because CIPA § 631 cannot be interpreted "based on the intentions and usage of the software provider") (cleaned up).

The Court's prior inclination makes sense. Take, for instance, the hypothetical secretary mentioned in *Ribas*. *Ribas*, 38 Cal. 3d at 361. Presumably, such a secretary would be contractually prohibited from using any wiretapped communications by his or her employer. Yet, the California Supreme Court held such a secretary would be a third-party eavesdropper under CIPA § 631. *Id.* ("[I]t is probable that the Legislature viewed section 631 as a means of proscribing attempts to circumvent other aspects of the Privacy Act, *e.g.*, by requesting a secretary to secretly transcribe a conversation over an extension, rather than tape recording it in violation of section 632."). This implied that either (i) a contractual limitation is irrelevant, or (ii) a human has the capability to breach a contract. The same is true of a corporation. Defendant "is a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh*, 562 F. Supp. 3d at 520; *see also* CAC ¶¶ 1, 16, 36, 125. That means *Defendant itself* actually receives and reads the communications, rather than providing software through which the Nonparty Entities analyze calls made to them without Defendant's involvement. CAC ¶¶ 27-33, 127.[5] And as a "separate legal entity," Defendant is just as capable of breaching a contract as a human. ECF No. 36, at 8:4-6 (asking Defendant's counsel whether, even if someone is "promising that they won't listen to it, it's just going onto the device[,] [i]sn't that still a wiretap under CIPA?"); *see also Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third-party eavesdropper where it could "use [the intercepted] information for other purposes, even if [plaintiff] has not alleged that they have done so in this case").

---

[5] In other words, that Defendant itself records the calls, rather than the Nonparty Entities recording the calls themselves with a tape recorder. A tape recorder is not a separate company, and the manufacturer of a tape recorder does not itself do the recording.

1    *Second*, the contractual language *permits* Defendant to use the communications with the

2    permission of the Nonparty Entities (but not the end-users such as Plaintiffs).  CAC ¶ 37.[6]  That

3    means that, contrary to Defendant's arguments, the contract does not bar Defendant from using the

4    intercepted communications for its own purposes.  Instead, Defendant is perfectly allowed to do so

5    by its own contract so long as the Nonparty Entities permit Defendant to do so.[7]  And the clear

6    inference from the pleadings is that Defendant was given this permission.  *See id.* ¶¶ 36-37.

7    Regardless, whether Defendant was actually given permission to use the communications to train its

8    AI/ML models is a factual dispute inappropriate for resolution at the pleadings, and "[a]t this early

9    stage, the Court is required to construe the allegations liberally in favor of the plaintiffs."  *Ade v.*

10   *Viki, Inc.*, 2024 WL 1880153, at *1 (N.D. Cal. Mar. 28, 2024) (Lin, J.).  Indeed, "[t]o ask a plaintiff

11   to plead with great particularity exactly what a third-party software company is capable of doing

12   with data gathered from [third-party] websites sets the pleading bar too high."  *Turner*, 2024 WL

13   2750017, at *10 (cleaned up).

14   As it stands, Defendant's capability to use the intercepted communications for its own

15   purposes, as well as its ability to "capture[], store[], and interpret[] [] real-time data—which extends

16   beyond the ordinary function of a tape recorder" (*Yoon*, 549 F. Supp. 3d at 1081)—makes it a third-

17   party eavesdropper.  *See also Gladstone*, 2024 WL 3276490, at *6 ("[T]he Court can infer that

18   Defendant can use the data is collects to improve its own products and services, which shows that it

19   is capable of creating, recoding, and retaining data for purposes other than sending the data back to

20   Capital One.") (cleaned up).

21   ### 2.    *Defendant Is A Third-Party Wiretapper Under The "Extension" Approach, Which The Court Should Reject*

22   Defendant argues it is not liable under the "extension" approach because "cases hold that

23   where there is no allegation 'that [the vendor] intercepted and used the data itself' there can be no

24   Section 631(a) claim."  MTD at 8 (quoting *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D.

---

[6] Citing SERVICE SPECIFIC TERMS, https://cloud.google.com/terms/service-terms.

[7] Because Defendant does not procure the end users' (*i.e.*, Plaintiffs') consent, whether the Nonparty Entities permit Defendant to use the communications is insufficient for consent under CIPA § 631, which is a two-party consent statute.  *See* Cal. Penal Code § 631(a).

Cal. 2021)).    As an initial matter, Plaintiffs allege Defendant charges its customers "'$0.03 per minute' for 'Agent Assist for voice sessions with Summarization and other assist features,'" and that "Google states it can use 'Customer Data' to 'train or fine-tune any AI/ML models' with its clients' permission (but not the end user's permission.)"    CAC ¶¶ 35, 37.    These allegations satisfy the "extension" approach because Defendant "intercepted and used the data itself" "to monetize and market [its] own services" (*i.e.*, by improving its servings and making them more profitable). *Graham*, 533 F. Supp. 3d at 832; *Smith v. YETI Coolers, LLC*, --- F. Supp. 3d ---, 2024 WL 4539578, at *3 (N.D. Cal. Oct. 21, 2024) (Lin, J.) (internal quotations omitted).    Clearly, using the intercepted communications to improve Defendant's products and services cannot be for the Nonparty Entities' "sole benefit."    *Marden v. LMND Med. Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (Lin, J.) ("Plaintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers.").

Regardless, a growing number of courts have rejected the "extension" approach as "based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant."    *Yockey*, 688 F. Supp. 3d at 972; *see also*, *e.g.*, *Javier*, 649 F. Supp. 3d at 900 (rejecting "extension" approach); *Gladstone*, 2024 WL 3276490, at *6 (same); *Turner*, 2024 WL 2750017, at *10 (same); *Balletto*, 2023 WL 7026931, at *2 (same); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (same); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (same); *D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*, 2023 WL 7006793, at *7-8 (S.D. Cal. Oct. 24, 2023) (same).    This Court should do the same.

*First*, the "extension" approach defies the text of CIPA § 631, which, as this Court has recognized, controls as to statutory interpretation.    *Shah*, 2024 WL 4539577, at *3 ("[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there.").    Specifically, the "extension" approach "interprets the second prong of the statute"—which penalizes "reading" communications—"based on the intentions and usage of the prospective third party."    *Javier*, 649 F. Supp. 3d at 900.    And "the third prong of the statute already penalizes 'use.'"    *Id.*    "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)."    *Id.*; *see also D'Angelo*, 2023 WL 7006793, at *7-8 ("A use requirement

is more appropriate in a Clause Three, not Clause Two … To plausibly allege a violation of Clause Two, [plaintiffs] need not allege that Vergic [conducted wiretapping] for its own use."); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 ("The determination … that a violation of the second clause could occur only when the information in the communication was actually used by the vendor, are not based on the actual language of the statute.").

Further, CIPA § 631(a) penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" to conduct wiretapping.  In other words, CIPA § 631 not only prohibits wiretapping by a third party like Google, but also prohibits a party to the communication, such as the Nonparty Entities, from allowing Defendant to wiretap *on Nonparty Entities' behalf*.  The "extension" approach is thus contrary to this plain text as well, as it would exempt an employer who asks his or her employee to conduct wiretapping.  And because it is contrary to the text of CIPA § 631, the "extension" approach cannot be adopted.[8]

*Second*, in *Ribas*, the California Supreme Court "did not consider the wife's friend's intentions or the use to which they put the information they obtained." *Javier*, 649 F. Supp. 3d at 900. "Instead, [*Ribas*] emphasized the privacy concerns at issue with having an unannounced second auditor listening in on the call." *Id.* (cleaned up).  The "extension" approach, however, would have exempted the friend and the hypothetical secretary, as they were simply wiretapping on behalf of the wife and their employer respectively.  But that is not what the California Supreme Court held.  Moreover, the California Supreme Court expressly held CIPA § 631 was enacted to prevent eavesdropping by "an unannounced second auditor, whether that auditor be a person *or mechanical device*." *Ribas*, 38 Cal. 3d at 360-61 (emphasis added).  Under the "extension" approach, the "mechanical device" auditor would not be an eavesdropper, which also goes against *Ribas*.

*Third*, as the *Saleh* court recognized:

---

[8] Previously, Defendant argued the "capability" approach is equally flawed because "there is no 'capability of use' requirement in the second prong."  ECF No. 30 at 3:7.  However, "capability" only gets to whether an SaaS provider is like a person who, as a human, can use intercepted communications for some other purpose (versus an inanimate object that cannot).  It does not add anything to the text, and does not blend two clauses together like the "extension" approach, and no court has embraced Defendant's argument.  Regardless, this is why Plaintiffs maintain that simply holding "a separate legal entity that offers 'software-as-a-service' and not merely a passive device" is a *de facto* third party wiretapper is the best reading of the statute. *Saleh*, 562 F. Supp. 3d at 521.

1
2
3
4

> [The "extension" approach w]ould imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party.  The text of section 631(a), however, does not contain any such exception, and indeed, [Defendant] invite[s] an interpretation that would vitiate the statute's protections.

5

*Saleh*, 562 F. Supp. 3d at 520; *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 980 ("Eavesdropping

6

on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a

7

party to the conversation.").  In other words, adopting the "extension" approach would undermine

8

CIPA's purpose of preventing the dissemination communications to an unannounced second auditor,

9

*see Ribas*, 38 Cal. 3d at 360-61, as it would allow any third party to escape liability so long as it was

10

acting on behalf of a party.  On top of this, the "extension" approach permits innumerable technology

11

companies to possess the communications of Californians simply because they were paid by others

12

to do so, thus costing Californians "the right to control the nature and extent of the firsthand

13

dissemination of [their] statements." *Ribas*, 38 Cal. 3d at 361.  This undercuts the purpose of CIPA,

14

which is to be "interpret[ed] … in the manner that fulfills the legislative purpose of CIPA by giving

15

greater protection to privacy interests." *Shah*, 2024 WL 4539577, at *4.  Given this, the Court must

16

adopt the "capability" approach over the "extension" approach because "when faced with two

17

possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance

18

with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016

19

WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

20

### B.    Defendant Is A "Person"

21

Defendant contends "there is no alleged conduct by a 'person'" because although "Google is

22

a 'person' … [GC]CCAI is not." MTD at 10:25, 11:2.  Defendant's argument is without merit. *First*,

23

Defendant "is a separate legal entity that offers 'software-as-a-service' [GCCCAI] and not merely a

24

passive device." *Saleh*, 562 F. Supp. 3d at 520; *see also* CAC ¶¶ 1, 16, 36, 125.  This is an important

25

distinction because Plaintiffs allege "[Defendant], not its clients, [] recorded the communications,

26

and thus [Defendant] had possession and control of the contents of the communications … The

27

allegations are not, as [Defendant] asserts, that [Defendant] simply provided a software product that

28

[Nonparty Entities] misused." *Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct.

Aug. 2, 2016); *see also* CAC ¶¶ 27-33, 125; *Gladstone*, 2024 WL 3276490, at *9 ("Plaintiff alleges that Defendant itself is collecting the content of any conversation before said data is provided to customers.  When an agent is listening to a conversation, Defendant is also listening simultaneously through Amazon Connect.") (cleaned up).  Plaintiffs further allege that even when the call is transferred to a human agent, Defendant's session manager listens in, transcribes the call, and analyzes the conversation to provide guidance to the agent.  CAC ¶¶ 30-33.  Thus, even accepting Defendant's argument, Plaintiffs' allegations suffice because Plaintiffs allege Defendant itself—who is certainly a "business … corporation … or other legal entity" (Cal. Penal Code § 632(a))— conducted the wiretapping using GCCCAI.  *See Gladstone*, 2024 WL 3276490, at *9 ("Defendant itself is a user of Amazon Connect, even if some use is ultimately at the direction of Capital One.").

*Second*, Plaintiffs need not allege that a specific Google employee, rather than the company itself, conducted the wiretapping.  As Judge Tigar observed, although "[Defendant] protests that the complaint is devoid of allegations that [Google] personnel read or could read the messages before [Nonparty Entities], [Plaintiffs] allege[] misconduct *on the part of [Defendant] as the provider*, not on the part of its personnel."  *Yockey*, 688 F. Supp. 3d at 976 (emphasis added).  And the California Court of Appeals has held that "[b]ecause a corporation is a legal fiction that cannot act except through its employees or agents, a corporation and its employees generally function as a single legal unit and are the same legal 'person' for purposes of applying various tort, agency, and jurisdiction principles."  *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1392 (2011).

*Finally*, Defendant's argument (again) flies in the face of the plain text of CIPA § 631(a) and *Ribas*.  As to the former, CIPA § 631(a) prohibits eavesdropping by "[a]ny person … by means of any machine, instrument, or contrivance, or in any other manner."  Thus, whether Defendant used software or software-as-a-service to accomplish its wiretapping is immaterial, as such software qualifies as a "machine," or certainly another "manner."  *See Gladstone*, 2024 WL 3276490, at *8 (finding software constitutes a "device" under CIPA § 632).  As to the latter, the California Supreme Court noted CIPA § 631(a) was enacted to protect Californians against the "simultaneous dissemination" of their communications "to an unannounced second auditor, whether that auditor be a person *or mechanical device*."  *Ribas*, 38 Cal. 3d at 360-61 (emphasis added).  So, again, whether

1     Defendant accomplished its wiretapping through artificial intelligence software is beside the point,

2     because CIPA § 631(a) protects against such conduct.

3     **C.    Defendant Intercepted The Contents Of Plaintiffs' Communications With The Nonparty Entities In Transit Or From California**

4     Next, Defendant argues that "Plaintiffs do not plausibly allege that Google intercepted a

5     communication 'in transit'" because "there is no reasonable inference that Google itself 'reads' or

6     'learns' information while in transit, simply because its AI product allegedly provides information

7     to customer service agents in real-time." MTD at 12:5-6, 12:12-14. Defendant cannot skirt liability

8     by arguing that its own service is somehow different from itself. Argument § I. B, *supra*.

9     In any event, Plaintiffs allege that "Google has the capability to use the contents of

10    conversations it collects through GCCCAI. For instance, in its 'Service Specific Terms,' Google has

11    a section pertaining to 'AI/MIL Services,' which includes GCCCAI." CAC ¶ 37. In addition,

12    "[w]hen a consumer calls into a GCCCAI-powered contact center, they may first be presented with

13    a virtual agent provided by Google." *Id.* ¶ 27. As such, "a Google 'session manager monitors the

14    state of the conversation' with the human agent" once a call is transferred. *Id.* ¶ 30. By doing so,

15    "Google, through GCCAI, 'grabs the context of the conversation to suggest articles and real-time,

16    step-by-step guidance' to the agent. In other words, Defendant, through GCCCAI, is actively reading

17    and analyzing the real-time contents of conversation between companies like Nonparty Entities and

18    their customers." *Id.* ¶ 32.

19    Defendant focuses solely on the creation of a transcript (MTD at 12) while ignoring Plaintiffs'

20    aforementioned additional allegations, which are assumed true. *See*, *e.g.*, *Campbell v. Facebook

21    Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation that users' messages

22    were intercepted in transit is to be taken as true at this stage of the case."). And, concerning the

23    creation of a transcript, the California Supreme Court held in *Ribas* that CIPA § 631(a) protects

24    Californians against the "simultaneous dissemination" of their communications. *Ribas*, 38 Cal. 3d

25    at 360. The Ninth Circuit echoed this in *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608

26    (9th Cir. 2020) ("*In re Facebook*"), holding that "[p]ermitting an entity to engage in the unauthorized

27    duplication and forwarding of unknowing users' information would render permissible the most

28

common methods of intrusion." Plaintiffs allege such conduct by Google. Specifically, Plaintiffs allege Google "monitor[s] the state of the conversation," "identif[ies] [caller] intent" in "real-time," "transcribes calls in real time," and "grabs context of the conversation [to suggest] real-time … guidance." CAC ¶¶ 30-32, 36. Plaintiffs further allege that GCCCAI "provides 'smart replies' … based on Google's analysis of the real-time contents of the conversations." *Id.* ¶ 33. These allegations come from Google's own videos explaining its SaaS. *See McClung v. AddShopper, Inc.*, 2024 WL 189006, at *3 (N.D. Cal. Jan. 17, 2024) ("The complaint does more than merely recite the statutory element: it makes specific factual allegations describing how AddShoppers's cookies intercept the information in real time, and it points to statements allegedly made by AddShoppers about real time transmission."). None of these features could occur unless Defendant was contemporaneously reading the contents of Plaintiffs' communications.

Plaintiffs thus provide sufficient detail on how Defendant "acquires" their communications "contemporaneously with transmission." *In re Facebook*, 956 F.3d at 608 n.9; *see also Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 979 ("[Plaintiffs] did not simply recite that there was real time interception, she added detail on how it occurs … and pointed to statements from Defendant regarding real-time insights and data from every use event collected as it happens.") (cleaned up); *Yockey*, 2024 WL 3875785, at *5 ("[B]ecause Salesforce 'apparently receives the chat messages either before or simultaneously with' its clients—the intended recipients, [the reasonable inference] is that Salesforce intercepts these messages.") (quoting *D'Angelo*, 2023 WL 7006793, at *8); *Balletto*, 2024 WL 589090, at *2 (in-transit interception alleged because "when [plaintiff] used the chat function the defendant simultaneously routed chat messages through a third party's servers").[9]

---

[9] The decisions cited by Defendant are inapposite. *Mireskandari v. Mail*, 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (plaintiff alleged "illegal disclosure of data … held in storage"); *People v. Wilson*, 17 Cal. App. 3d 598, 600 (1971) (information was "received by the answering service; were reduced to writing … and were [then] conveyed to defendant in person"); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1113 (E.D. Cal. 2021) (intercepted communications were "stored in the Pasteboard" and then accessed by application); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) (dismissing CIPA claims where the complaint "does little more than restate the pleading requirement of real time interception" without alleging "how"); *Licea*, 659 F. Supp. 3d at 1084 (same).

### III.    DEFENDANT VIOLATED CIPA § 637.5

Because CIPA § 631(a) contains an exception for telephone companies, Plaintiff Ambriz now brings a claim for a violation of CIPA § 637.5, which applies to "satellite or cable television corporation[s]," or those who receive "subscriber information from" the same.  Cal. Penal Code §§ 637.5(a)(1), 637.5(h).  Defendant does not dispute it receives "subscriber information" from Verizon.  MTD at 13-15.  Instead, Defendant solely contends argues that "Verizon is not a 'satellite or cable television corporation' in California" because Verizon is not listed on California's Public Utilities Commission's list of cable or satellite providers.  MTD at 13:15-17.  Defendant asks the Court to rewrite the statute.  CIPA § 637.5 borrows the definition of a "satellite or cable television corporation" from the public utility code which defines such provider as "*any* corporation or firm which transmits television programs by cable to subscribers for a fee."  Cal. Pub. Util. Code § 216.4 (emphasis added).  Nowhere does the statute limit the definition to *just* California-licensed companies.  Indeed, the Court previously rejected Plaintiff Ambriz's attempt to add requirements to the "telephone company" exception in CIPA § 631(a).  *Ambriz v. Google, LLC*, 2024 WL 3282521, at *2 (N.D. Cal. June 20, 2024) ("By its own terms, the statute does not contain a necessity requirement … Given the statutes clear text, the Court must apply the statute as it is written.") (cleaned up).  The Court should likewise reject Defendant's attempt to do the same to CIPA § 637.5.

Here, Verizon is indisputably a "cable television corporation."  *See Fed. Trade Commission v. DirecTV, Inc.*, 2016 WL 3351945, at *1 (N.D. Cal. June 9, 2016) (listing Verizon as a "provider[] of cable or satellite television services" that is a "DIRECTV competitor[]").  And Plaintiff Ambriz plausibly alleges he is a Verizon subscriber whose information was disclosed to Defendant.  CAC ¶¶ 27-33, 42-47, 139.  Thus, Plaintiff Ambriz plausibly alleges Defendant violated CIPA § 637.5

### CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiffs respectfully request leave to amend to cure any such deficiencies.  *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

1    Dated: December 10, 2024              Respectfully submitted,

2                                         **BURSOR & FISHER, P.A.**

3                                         By:____*/s/ Neal J. Deckant*_____

4                                                 Neal J. Deckant

5                                         Neal J. Deckant (State Bar No. 322946)
                                          1990 North California Blvd., 9th Floor
6                                         Walnut Creek, CA 94596
                                          Telephone: (925) 300-4455
7                                         Facsimile:  (925) 407-2700
8                                         E-Mail: ndeckant@bursor.com

9                                         **THE SIMON LAW FIRM, P.C.**
                                          Anthony G. Simon (*Pro Hac Vice*)
10                                        Jeremiah W. Nixon (*Pro Hac Vice*)
                                          1001 Highlands Plaza Dr., Ste. 300
11                                        St. Louis, Missouri 63110
                                          Telephone: (314) 241-2929
12                                        Facsimile:  (314) 241-2029
                                          E-mail: asimon@simonlawpc.com
13                                                 jnixon@simonlawpc.com

14                                        *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28