COOLEY LLP
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
KRISTINE A. FORDERER (278745)
(kforderer@cooley.com)
ANUPAM DHILLON (324746)
(adhillon@cooley.com)
THILINI L. CHANDRASEKERA (333672)
(tchandrasekera@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

TIANA DEMAS (*pro hac vice*)
(tdemas@cooley.com)
110 N. Wacker Drive, 42nd Floor
Chicago, IL 60606
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MISAEL AMBRIZ, JIMMY NIMMO, CHRISTOPHER BISSONNETTE, AHMAD MEHDIPOUR, EUGENE ERLIKH, JAMES FOX, and PETER SAMISH, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:23-cv-05437-RFL<br><br>**GOOGLE LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT (ECF NO. 47)** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 2

    A.  Google (via CCAI) Is Not a "Third-Party Eavesdropper" Under Section 631(a) ................................................................................................................... 2

        1.  The CAC Fails the *Javier* "Capability" Test Because Google is Contractually Barred from Using the Data for its Own Purposes ............... 2

        2.  The CAC Fails the Extension Test ............................................................. 4

    B.  Plaintiffs' Section 631(a) Claim Under the First Clause Must Be Dismissed Because They Do Not Plead Use of a Landline ....................................................... 6

    C.  Section 631(a)'s Interception "While In Transit" Element Is Not Satisfied ........... 7

    D.  Plaintiffs Fail to Allege a "Person" (or "Entity") Tapped Their Communications ...................................................................................................... 8

    E.  Plaintiff Ambriz Fails to Plead the Required Elements Under Section 637.5 ........ 8

    F.  Amendment Would Be Futile ................................................................................ 10

III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abagninin v. AMVAC Chemical Corp.*,
545 F.3d 733 (9th Cir. 2008) .................................................................................................. 10

*Arcell v. Google*,
2024 WL 3738422 (N.D. Cal. Aug. 9, 2024) ............................................................................ 7

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ................................................................................................... 7

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .................................................................................. 2, 5

*Decision Denying Google Fiber Inc.'s Petition to Modify Decision 07-03-014*,
2015 WL 2396047 (Cal. Pub. Utilities Commission May 7, 2015) .......................................... 9

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........................................................................... 2

*Flowers v. Twilio, Inc.*,
2016 WL 11684603 (Cal. Super. Ct. Aug. 2, 2016) .................................................................. 8

*Gladstone v. Amazon Web Services, Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) ..................................................................... 3, 8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................................... 1, 2, 4, 5

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ................................................................................. 6, 7

*Marden v. LMND Med. Group, Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ............................................................................. 5

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .................................................................................. 6, 7

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......................................................................... 6

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ................................................................................................................ 2

# TABLE OF AUTHORITIES
(continued)

**Page**

*Schley v. One Planet Ops Inc.*,
 445 F. Supp. 3d 454 (N.D. Cal. 2020) ............................................................................... 9

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*,
 806 F.2d 1393 (9th Cir. 1986) ........................................................................................ 10

*Smith v. YETI Coolers, Inc.*,
 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ............................................................... 4, 5

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
 802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................................ 9

*Turner v. Nuance Communications, Inc.*,
 2024 WL 2750017 (N.D. Cal. May 28, 2024) ............................................................... 3, 4

*Valenzuela v. Keurig Green Mt., Inc.*,
 2023 WL 3707181 (N.D. Cal. May 24, 2023) ............................................................... 7, 8

*In re Vizio, Inc. Consumer Priv. Litig.*,
 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................................ 8

*Yockey v. Salesforce, Inc.*,
 688 F. Supp. 3d 962 (N.D. Cal. 2023) .............................................................................. 8

**Statutes**

Cal. Penal Code § 631(a) ............................................................................................ *passim*

Cal. Penal Code § 637.5 .................................................................................................. 1, 8, 9, 10

Cal. Pub. Util. Code § 216.4 ................................................................................................... 9, 10

**Other Authorities**

Fed. R. Civ. P 12(b)(6) ............................................................................................................. 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

GOOGLE'S REPLY BRIEF ISO MOTION TO DISMISS
CASE NO. 3:23-CV-05437-RFL

## I. INTRODUCTION

Plaintiffs' Opposition, ECF No. 52, lays bare the fundamental flaws in their CIPA claims.[1] In addition to urging the Court to ignore existing precedent and adopt entirely new law, Plaintiffs ask the Court to make unfounded inferences and ignore clear deficiencies in the CAC. The Court should reject this invitation and dismiss the CAC with prejudice.

To start, Plaintiffs fail to rebut the *Graham v. Noom* line of cases holding that a software tool like CCAI is not a "third-party eavesdropper" where, as here, Google does not use and is legally incapable of using the contents of allegedly intercepted communications for its own benefit. Indeed, the CAC makes clear that Google is prohibited under its contracts from using these communications for this purpose. Ignoring their own pleadings, Plaintiffs ask the Court to make an unsupported inference that Google actually received permission from its clients to use the contents of CCAI-based communications for its own ends. Of course, the CAC does not allege this, and the Court should reject Plaintiffs' attempt to amend the CAC via opposition. Plaintiffs next ask the Court to ignore the text of Section 631(a)'s first clause, which requires a plaintiff to allege a communication over a "telephone or telegraph" wire, *i.e.*, a landline. Plaintiffs plainly did not use a landline to place their customer service calls, which disposes of any claim under the first clause. As to the second clause of Section 631(a), Plaintiffs do not plausibly allege that Google itself intercepts their communications "while . . . in transit," instead relying only on allegations of how CCAI is used by businesses during customer calls.

Equally flawed are Ambriz's arguments concerning his Section 637.5 claim. Ambriz claims that Google challenged his pleading failure as to a single element only—the "satellite or cable television"—requirement. As is clear from the Motion, Google raised Ambriz's pleading failure as to *all* required elements of Section 637.5, including his failure to sufficiently allege that he placed a call "inside [his] residence, workplace, or place of business," or that Google intercepted "subscriber information." The Opposition does not cure these deficiencies.

The Court should dismiss the CAC with prejudice because there is no theory on which Plaintiffs could state a claim.

---

[1] Defined terms throughout this brief have the same meaning as in the Motion, ECF No. 47.

## II. ARGUMENT

### A. Google (via CCAI) Is Not a "Third-Party Eavesdropper" Under Section 631(a)

The Court should dismiss Plaintiffs' Section 631(a) claim because CCAI is not a third-party eavesdropper under either the "capability" (*Javier*) test or the "extension" (*Graham*) test.

#### 1. The CAC Fails the *Javier* "Capability" Test Because Google is Contractually Barred from Using the Data for its Own Purposes

No court has held that a party violates Section 631(a) where, as here, that party is **contractually barred** from using the allegedly intercepted data for its own purposes. This fact alone distinguishes this case from every other decision adopting the *Javier* "capability" theory.

In *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) ("*Javier II*"), Judge Breyer theorized that a software vendor's "capability" to use the allegedly intercepted data for its own purposes—separate and apart from providing the software to end users—could violate CIPA. In developing this theory, the court analogized the keystroke recording software in *Javier II* to the friend from *Ribas v. Clark*, 38 Cal. 3d 355, 358 (1985), who listened in on a call between a former wife and her former husband, at the wife's behest. Central to *Javier II*'s "capability" theory was the irrelevance of "the wife's friend's intentions or the use to which they put the information they obtained," *Javier II*, 649 F. Supp. 3d at 900, because when the friend heard the conversation, the horse was already out of the barn, and the husband had been deprived of "the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* (quoting *Ribas*, 38 Cal. 3d at 358). In other words, the moment the friend overheard the conversation, she was using it for her own purposes because she could not unhear it. That crucial "right to control" analogy from *Javier II* is absent here. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *17–18 (N.D. Cal. Apr. 11, 2024) (stating that "key" to *Graham* and *Javier II* tests "is whether the hiring of a third party to collect information . . . poses a materially enhanced risk to the individual's privacy," and noting that the "critical question is the extent the third parties were subject to [the client's] control and ability to limit the use of dissemination of the medical data," including steps taken "to ensure that third parties could collect and/or use information for [the client's] benefit only"). Here, Google's Service Specific Terms, *i.e.*, Google's contract with its customers, provide

that it "**will not** use Customer Data to train or fine-tune any AI/ML models without Customer's prior permission or instruction," and there is no allegation that any customer gave Google such permission. Mot. 9. Nor is there any allegation that any live person at Google sees or hears the allegedly intercepted customer service calls in real time, as would be required to deprive Plaintiffs of the "right to control" the firsthand dissemination of their information.

Plaintiffs' heavy reliance on *Gladstone v. Amazon Web Services, Inc.*, 2024 WL 3276490 (W.D. Wash. July 2, 2024) and *Turner v. Nuance Communications, Inc.*, 2024 WL 2750017 (N.D. Cal. May 28, 2024) is similarly misplaced. *Gladstone* involved "Amazon Connect" AI technology and data obtained from end users that Amazon was explicitly permitted to use for its own purpose, without needing to obtain consent from anyone. The *Gladstone* plaintiffs alleged that Amazon had violated Section 631(a) by providing to its customers a "'machine-learning powered contact center service' for use in customer service departments, among others." 2024 WL 3276490, at *1. In *Gladstone*, unlike here, Amazon's terms of service permitted it to use the contents of communications "to maintain and provide Amazon Connect ML Services" and "to improve AWS and affiliate machine-learning artificial intelligence technologies," **without needing to obtain consent from its customers**. *Id.* at *1–2. The *Gladstone* court heavily relied on this contractual provision to infer that Amazon was capable of using the contents of communications for purposes "other than sending the data back to [its direct customer] Capital One." *Id.* at *6. Here, the opposite is true. The Service Specific Terms expressly forbid Google from using the contents of CCAI communications for its own purposes *absent* customer consent, and Plaintiffs do not allege that Google's customers provided consent or allege any facts in support of that inference. Following *Gladstone*'s logic, the Court should dismiss Plaintiffs' Section 631(a) claims.

*Turner* involved similar allegations to *Gladstone*. In *Turner*, 2024 WL 2750017, at *1, the AI-based technology allegedly "allow[ed] business to authenticate their customers' identities with their voice," by turning customer service recordings into voice prints, "enroll[ing] those voice prints into a database of voice prints, and then compar[ing] the characteristics of later callers against its saved voice prints." *Id.* at *10. The developer defendant allegedly "amassed a massive database" of voice prints, as well as a "watchlist of known fraudsters," and retained those voice prints for a

"significant period of time." *Id*. On these facts, the court held it was reasonable to infer that the developer "can use consumers' voice prints to improve its own products and services—for example, to improve the accuracy of its authentication software for uses beyond benefitting [its direct customer] Chase." *Id.* at *10 ("This is sufficient to show that Nuance is capable of creating, recording, and retaining biometric data for purposes other than sending the data back to Chase."). There are no equivalent allegations here, and there was no contractual prohibition in *Turner* preventing the developer from using the allegedly intercepted data for its own purposes.

Finally, to the extent that Plaintiffs contend they have pleaded Google's capability to use (or actual use of) allegedly intercepted communications through the basic functionality of CCAI, that argument plainly fails. Opp. at 5 (identifying allegations about "articles and real-time, step-by-step guidance" and "smart replies" for human agents to provide end users as pleading "use"). These are just the features of CCAI, *i.e.*, how the Non-Party Entities (Google's customers) use the product with their ***own*** customers. This argument is like claiming a provider of session replay technology is capable of using the data for its purposes because it records users' clicks on a third-party's website. That is just the basic service provided by the software; it is not evidence of use or capability of use of the data ***by*** the software-as-a-service ("SaaS") provider for a separate purpose. The Court highlighted this distinction in *Smith v. YETI Coolers, Inc.*, 2024 WL 4539578, at *3 (N.D. Cal. Oct. 21, 2024), when analyzing CIPA's third-party requirement. In *Smith,* the Court distinguished allegations that the third-party software provider "collects consumers' personally identifiable and financial information in order to process payments and facilitate transactions on Defendant's website," which was not enough to satisfy the third-party requirement, from allegations that the software provider collected the plaintiff's information "to monetize and market [their] services to Defendant and other merchants within [the software provider's] network," which was sufficient to satisfy the requirement. Simply arguing that CCAI functions as it is designed to function when used by Google's customers is not enough to satisfy the third-party requirement, which demands that the software provider "act[s] in an independent manner." *Id.* And there is no such allegation here.

### 2. The CAC Fails the Extension Test

Although Plaintiffs cannot satisfy the "capability" test, the *Graham* ("extension") test,

which numerous courts have adopted, and which Plaintiffs also fail to satisfy, remains the better approach. *See* Mot. at 6–9. Plaintiffs argue that their claims survive dismissal under the "extension" test because Google charges for its product, and because Google's Service Specific Terms state that Google "may not" use data to train "AI/ML" algorithms, unless specifically given permission. Plaintiffs misunderstand the "extension" test, and neither of the facts they identify satisfy the test.

To plausibly state a Section 631(a) claim under *Graham*, a plaintiff must allege facts showing that a provider of technology intercepted and then used contents of communications between two parties for the provider's own, independent benefit—that is, for some purpose other than rendering a service to a party to the communication. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). As Plaintiffs note, this Court has previously applied an approach similar to *Graham*. Opp. at 9 (citing *Smith*, 2024 WL 4539578, at *3 and *Marden v. LMND Med. Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (Lin, J.)). In *Smith*, this Court explained that a software provider's "status as a nonparty to the communication turns on whether [its] conduct was 'sufficiently independent' from [the party to the communication] to be considered a distinct party." 2024 WL 4539578, at *3 (citation omitted).

The fact that a non-party software provider "benefits" by charging a fee for rendering software-related services is irrelevant to this analysis. No CIPA case suggests that charging a fee for a SaaS product is enough to satisfy the extension test. Instead, in determining whether a software provider is "sufficiently independent" of a party to a communication, courts look to whether the provider benefited from the **contents** of communications involving a customer and its end users, independent of rendering services to that customer. *See, e.g. Smith*, 2024 WL 4539578, at *3; *Marden*, 2024 WL 4448684, at *3. And, as discussed above, Plaintiffs' reliance on Google's Service Specific Terms, which state that "Google ***will not use Customer Data***" without permission, is equally misplaced. *See* CAC ¶ 37 n.8 (incorporating by reference Google's Service Specific Terms, https://cloud.google.com/terms/service-terms (emphasis added)). Being contractually barred from using data for Google's own purposes is the very opposite of alleging that Google used any of the data at issue here for an independent purpose. *Cf. Javier II*, 649 F. Supp. 3d at 900 (involving software vendor that was not contractually barred from using data for its own purposes).

The Court should apply the "extension" test to dismiss Plaintiffs' Section 631(a) claim, because the facts alleged in the CAC do not give rise to the inference that Google (through CCAI) was operating in a manner "sufficiently independent" from its customers' own use of the software.

\* \* \*

No matter what test the Court applies, the CAC's allegations fall well short. Existing case law and logic support dismissal of Plaintiffs' Section 631(a) claims. Google is not a "third party."

### B. Plaintiffs' Section 631(a) Claim Under the First Clause Must Be Dismissed Because They Do Not Plead the Use of a Landline

Plaintiffs' claims under Section 631(a)'s first prong must also be dismissed for an additional reason: Plaintiffs do not allege they used a landline (as opposed to a smartphone) to make the phone calls at issue. Plaintiffs' Opposition urges this Court to depart from well-established case law requiring a plaintiff to allege that his or her communications were made through a "telegraph or telephone" wire, line, or cable, as the plain text of Section 631(a)'s first clause demands, on the basis that cellphone usage is "ubiquitous." *See* Opp. at 2. Plaintiffs do not cite any case supporting this interpretation—which contradicts the plain text of Section 631(a)—and they instead rely on policy arguments. In doing so, Plaintiffs ignore the well-settled case law that smartphones are "in reality[] small computers" that do not satisfy the "telegraph or telephone wire" requirement. *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d. 1072, 1080 (C.D. Cal. 2023) (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021)).

Plaintiffs support this argument with misleading cites to decisions analyzing Section 631(a)'s *second* clause, which is not subject to the landline limitation. Opp. at 2–3; *see Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (emphasis added) ("the second clause of [S]ection 631[a], as opposed to the first clause, is not limited to communications passing over '*telegraph or telephone* wires, lines, or cables.'")

Alternatively, Plaintiffs argue that "[t]he plausible inference of [their] allegations is that they made calls using *either a smartphone or a landline* [], and Plaintiffs are happy to provide evidence to that effect if necessary." *See* Opp. at 2 (emphasis added). This is backwards. Plaintiffs must affirmatively plead the facts required for their claim in the complaint, particularly where the

facts are within their knowledge. *See Arcell v. Google*, 2024 WL 3738422, at *5 (N.D. Cal. Aug. 9, 2024); *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (prohibiting "allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation."). Further, their argument about the ubiquity of smartphones contradicts their requested inference. If, as Plaintiffs contend, practically no one uses a landline these days, there is no "plausible inference" that Plaintiffs used a landline for the calls at issue. The Court should dismiss the Section 631(a) claim under the first prong for this additional reason.

### C. Section 631(a)'s Interception "While In Transit" Element Is Not Satisfied

Plaintiffs' claim under Section 631(a)'s second prong likewise fails for an additional reason: they do not adequately allege the communications were "in transit" at the time Google allegedly intercepted them. The CAC and Plaintiffs' Opposition conflate the fact that CCAI functions in real time to assist human agents at call centers, with Google's own alleged "interception" of those communications to argue that because the product operates in real time, Google must also intercept communications in transit. But one does not follow from the other. As one court has explained, "the crucial question under § 631(a)'s second clause is whether [the plaintiff] has plausibly alleged that [*the defendant*] read one of his communications while it was in transit, i.e., ***before it reached its intended recipient***." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (emphasis added). Therefore, "[b]are allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit." *Licea*, 659 F. Supp. 3d at 1085. Moreover, the mere fact that software operates in "real time" does not mean that interception occurs while communications are in transit. *See, e.g., Valenzuela v. Keurig Green Mt., Inc.*, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) (holding it was "impossible to infer from the complaint" that communications were intercepted "while . . . in transit" where plaintiff alleged that third-party "code" was embedded in defendant's website for a chat feature).

Here, Plaintiffs allege that CCAI creates a transcript—which is analyzed by the software in real time—but they do not allege that CCAI sends a copy of the transcript, or the analysis, back to Google. Instead, the CAC claims that this transcript is provided to Google's customers, *i.e.*, Hulu, GoDaddy, or Home Depot, "for agents to reference during the call or for analysis after the call."

CAC ¶ 31. Moreover, CCAI's "real-time, step-by-step guidance" and its suggested "smart replies" are provided directly to the (customer's) human agent, *id.* ¶¶ 32–33, and the CAC does not explain how CCAI sends any portion of that analysis back to Google. Although Plaintiffs cite to a video and include images regarding CCAI's functionality, *id.*, those sources do not indicate that CCAI sends any information to Google. Nor do Plaintiffs cite to other Google sources discussing CCAI to bolster their allegation regarding real-time interception. Plaintiffs fail to provide a "written explanation" as to how interception occurred, and the Court should dismiss their Section 631(a) claim. *See In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).

### D. Plaintiffs Fail to Allege a "Person" (or "Entity") Tapped Their Calls

Given Plaintiffs' failure to plausibly allege how Google intercepted their communications in real time, they also cannot satisfy the required element that a "person" or "entity" wiretapped or eavesdropped on their communications under Section 631(a). This pleading failure is dispositive of the Section 631(a) claim under either prong. While Plaintiffs correctly point out that they need not allege "that a specific Google employee" wiretapped their communications and instead only that Google "itself[] conducted the wiretapping," Opp. at 12, the CAC is devoid of any facts suggesting that Google itself engaged in that conduct. In contrast to the cases on which Plaintiffs rely, here, there are no allegations that Google "itself (as opposed to the software it provides) is collecting the content of any conversation before said data is provided to customers." *See Gladstone*, 2024 WL 3276490, at *9; *see also Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) (alleging that "Twilio had possession and control of the contents of the communications"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (including allegations that Salesforce "directly receives the electronic communications of visitors" and that "supervisors can review transcripts in real time").

### E. Plaintiff Ambriz Fails to Plead the Elements Required Under Section 637.5

Plaintiff Ambriz's Section 637.5 claim must be dismissed because he has not alleged sufficient facts to support it. Indeed, as Google's Motion argues, and Ambriz does not rebut, Ambriz does not sufficiently allege that: (1) he called Verizon "inside [his] residence, workplace, or place of business," and (2) his "subscriber information" was intercepted by Google, Mot. at 14–

15. *See* Opp. at 15 (no rebuttal to the location where he called Verizon, and carefully arguing that "information was disclosed to Defendant" but not specifying it was "subscriber information"). The Court should dismiss the Section 637.5 claim on this basis alone. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue" (quotations and citation omitted)).[2] Considering that Ambriz called customer service and spoke to a stranger, it is unclear what "personal or private information" he could have revealed, and none is alleged. *See* Cal. Penal Code § 637.5 (describing "subscriber information" as "individually identifiable information regarding any of its subscribers, including, but not limited to, the subscriber's television viewing habits, shopping choices, interests, opinions, medical information, banking data or information, or any other personal or private information").

Ambriz's other argument that he has plausibly alleged that Verizon is a "satellite or cable television corporation" under Section 637.5 is wrong for two reasons. First, Ambriz alleges no facts showing that Verizon "transmits television programs by cable to subscribers for a fee" in any jurisdiction. *See* Cal. Pub. Util. Code § 216.4. He simply parrots the statutory language and urges the court to conclude that Verizon is a "cable television corporation." CAC ¶ 123. This is insufficient to satisfy Rule 12(b)(6). *See Schley v. One Planet Ops Inc.*, 445 F. Supp. 3d 454, 458 (N.D. Cal. 2020) ("[A]llegations in a complaint . . . may not simply recite the elements of a cause of action." (citation omitted)). Second, Ambriz completely ignores decisions from California agencies interpreting the public utilities code provision in question. As noted in the Motion, "[i]t is well established that the definition of 'cable television corporation' in § 216.4 is limited to entities that have authority to construct and operate cable TV facilities in public rights-of-way pursuant to a franchise granted by a governmental body of competent jurisdiction." *Decision Denying Google Fiber Inc.'s Petition to Modify Decision 07-03-014* ("*Google Fiber*"), 2015 WL 2396047, at *1 (Cal. Pub. Utilities Commission May 7, 2015); *see also* ECF No. 37 (citing a decision from the California Public Utilities Commission to hold that Verizon is a telephone company). Without this

---

[2] Ambriz states that Google "does not dispute it receives 'subscriber information' from Verizon." Opp. at 15. This is incorrect. Google's Motion clearly challenged the allegations as to all the elements to his claim, including that Google "received . . . subscriber information[]," Mot. at 14.

limitation, § 216.4 would encompass "any entity that uses wires to transmit television programs, including potentially Netflix, Hulu, and Amazon." *Google Fiber*, at *1. But that cannot be, and is not, the law. Ambriz's failure to allege any facts in the CAC (or in Opposition) showing that Verizon operates cable television facilities "pursuant to a franchise" is fatal to his claim.

Grasping for straws, Ambriz argues that because this Court previously rejected his "proposed atextual limitation" to Section 631(a)'s telephone company exemption, *see* ECF No. 37, at 4, it would be improper for this Court to limit Section 637.5 in any manner. *See* Opp. at 15. But that overlooks Ambriz's failure to cite to anything that supported his flawed interpretation of the telephone company exemption. *See, e.g.*, 3/3/2019 Hr'g at 20:25–21:2 ("Do you have something in the legislative history, or something like that, that points to this view of the statute?"). Unlike that separate statute, here, § 216.4 has been interpreted by the very California agencies responsible for enforcing the statute in the same manner Google proffers.

The Court should dismiss the Section 637.5 claim because Ambriz does no more than restate the statute and cannot show that Verizon is a "cable television corporation" under California law.

### F. Amendment Would Be Futile

The Court should deny Plaintiffs' request for leave to amend the Section 631(a) claim because "allegation[s] of other facts consistent with the challenged pleading could not possibly cure the deficiency." *See Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment."). As to the Section 637.5 claim, Verizon is not a regulated entity under the statute, and the Opposition fails to explain how Ambriz could overcome this deficiency.

### III. CONCLUSION

In contrast to what Plaintiffs argue, the text of CIPA, the California Supreme Court's decisions, and the legislative history all "invariably tip" in Google's favor necessitating dismissal. *See* Opp. at 1. The CAC's allegations, as applied to the plain language of Section 631(a), do not support a claim for "eavesdropping." For the reasons discussed herein and because the flaws in the CAC are fundamental and incurable, the Court should dismiss the CAC with prejudice.

| | |
|---|---|
| Dated: January 7, 2025 | COOLEY LLP |
| | By: */s/ Kristine Forderer*<br>Travis LeBlanc<br>Tiana Demas<br>Kristine Forderer<br>Anupam Dhillon<br>Thilini Chandrasekera |
| | Attorneys for Defendant<br>GOOGLE LLC |

312993249