KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Google Cloud Contact Center AI Privacy Litigation | Case No. 3:23-cv-5437-RFL<br>Consolidated Case No. 3:24-cv-06225-RFL<br>Consolidated Case No. 3:25-cv-10015-RFL<br>Consolidated Case No. 3:25-cv-10765-RFL<br>Consolidated Case No. 5:26-cv-02327-RFL<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 29, 2026<br>Time: 10:00 a.m.<br>Ctrm: 15, Floor 18<br>Judge: Hon. Rita F. Lin<br><br>Date Filed: October 23, 2023<br><br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS

Page(s)


I. INTRODUCTION ....................1

II. PROCEDURAL POSTURE ....................2

III. BACKGROUND ....................3

A. Plaintiffs have each agreed to the Third-Parties' account terms and conditions. ....................3

1. Plaintiff Samaco assented to Verizon's Customer Agreement and Privacy Policy. ....................3

2. Plaintiff Marquez assented to the Uber Terms of Service as an Uber Account Holder. ....................4

3. Plaintiff Price assented to the Discover Loan Terms and Conditions as a Discover Account Holder. ....................4

B. The Third Parties' terms and conditions include agreements to individually arbitrate. ....................5

C. The Third-Party agreements notify users how information and customer service calls may be disclosed to third parties. ....................6

D. Plaintiffs allege that Google conspired with the Third Parties to eavesdrop on their calls without their consent. ....................8

IV. ARGUMENT ....................8

A. Each Plaintiff has a valid agreement to individually arbitrate that includes claims such as those they assert here. ....................8

1. Plaintiffs have valid arbitration agreements with the Third Parties. ....................9

2. Plaintiffs' claims fall within the scope of the Third Parties' agreements. ....................10

B. Google can enforce the Third Parties' arbitration agreements with Plaintiffs under an equitable estoppel theory. ....................11

1. Plaintiffs' claims are intertwined with their agreements with the Third Parties. ....................11

2. Plaintiffs' allegations of concerted action by Google and the Third Parties further demonstrate intertwinement. ....................13

C. This Court should order a stay of this action pending resolution of the arbitration. ....................15

V. CONCLUSION ....................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Arroyo v. Google LLC*,
No. 25-cv-10706 (N.D. Cal.) ....3

*Bender v. Twilio Inc.*,
2025 WL 2308484 (N.D. Cal. 2025) ....15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....15

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ....15

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ....15

*Fraher v. Verizon Wireless Servs., LLC*,
2021 WL 2525732 (S.D. Cal. 2021) ....15

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ....15

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ....15

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) ....15

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th. Cir. 2024) ....15

*Hunt v. Meta Platforms, Inc.*
735 F. Supp. 3d 1133 (N.D. Cal. 2024) ....15

*Johnson v. Uber Techs., Inc.*,
2018 WL 4503938 (N.D. Ill. 2018) ....15

*Kilgore v. KeyBank, Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) ....15

*Knapke v. PeopleConnect, Inc*,
38 F.4th 824 (9th Cir. 2022) ....15

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ....................15

*L.W.A. v. LinkedIn Corp.*,
2025 WL 2780788 (N.D. Cal. 2025) ....................15

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ....................15

*Mullady v. Greene*,
2024 WL 4982896 (W.D.N.C. 2024) ....................15

*Perry-Hudson v. Twilio, Inc.*,
2024 WL 4933332 (N.D. Cal. 2024) ....................15

*Salas v. Universal Credit Servs., LLC*,
2019 WL 1242448 (S.D. Cal. 2019) ....................15

*Sanders v. Swift Transp. Co. of Ariz., LLC*,
843 F. Supp. 2d 1033 (N.D. Cal. 2012) ....................15

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020) ....................15

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....................15

*Smith v. Verizon Wireless (VAW) LLC*,
2018 WL 2294223 (D. Or. 2018) ....................15

*Theodore v. Am. Express Nat'l Bank*,
2024 WL 4165274 (N.D. Cal. 2024) ....................15

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) ....................15

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
962 F. Supp. 2d 1172 (N.D. Cal. 2013) ....................15

**State Cases**

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ....................15

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) ....................15

**Federal Statutes**

Federal Arbitration Act ....................15

**State Statutes**

California Information Privacy Act ........................................................................1, 2, 15

## NOTICE OF MOTION

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on September 29, 2026 at 10:00 a.m., or as soon thereafter counsel may be heard, before the Honorable Rita F. Lin in Courtroom 15, on the 18th Floor of the Phillip Burton Federal Building and U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Google LLC ("Google") will and hereby does move to compel Plaintiffs Paolo Romeo Samaco, Chelsea Marquez, and India Price ("Plaintiffs") to individual arbitrations pursuant to their arbitration agreements with Verizon, Uber, and Discover, respectively. Google also moves to stay this action with respect to Plaintiffs Samaco, Marquez, and Price, pending resolution of arbitration. Google's motion is based on this notice of motion, the following memorandum of points and authorities, the supporting declarations of Joseph Ninete (Verizon Decl."), Carlos Martinez ("Uber Decl."), Lisa Schwenk ("Discover Decl."), and the exhibits attached thereto, and on all pleadings and papers on file or to be filed in this action, the arguments of counsel, and any other matters properly before this Court.

Dated: June 22, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Matan Shacham*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
IAN KANIG

Attorneys for GOOGLE LLC

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I. INTRODUCTION

Google LLC respectfully moves to compel Plaintiffs Paolo Romeo Samaco, Chelsea Marquez, and India Price to individual arbitration.[1]

Each Plaintiff is an account holder at a company—Discover, Uber, and Verizon, respectively (the "Third Parties")—that uses technology under the Google Cloud Contact Center AI product suite of services ("CCAI") to help manage its customer-service operations. Plaintiffs' complaint in this action alleges that this use of the CCAI technology on their customer-service calls to the Third Parties violated the California Invasion of Privacy Act ("CIPA").

As account holders of the Third Parties, each Plaintiff agreed to terms of service that mandate that they individually arbitrate the sort of claims they bring here. But Plaintiffs have sued Google to try to circumvent these agreements. The law does not permit such evasion. California's doctrine of equitable estoppel prevents signatories to arbitration agreements from circumventing those agreements through artful pleading.

This case presents a textbook application of equitable estoppel. Plaintiffs' claims are intimately founded in and intertwined with their agreements with Verizon, Uber, and Discover because those agreements—and specifically the privacy policies incorporated into them—govern whether Plaintiffs consented to the collection, use, and sharing of information from their customer-service calls. Resolving Plaintiffs' allegations therefore necessarily requires examination of the very agreements containing the arbitration provisions.

Plaintiffs also allege concerted misconduct between Google and the Third Parties. According to the complaint, Verizon, Uber, and Discover partnered and collaborated with Google, integrating Google's technology into their customer-service operations so that Google could allegedly access Plaintiffs' communications. Plaintiffs' theory thus depends on alleged coordinated conduct between Google and the very entities with whom Plaintiffs agreed to

[1] To preserve its rights, Google has also filed a motion to dismiss the complaint with respect to all Plaintiffs, in the alternative. This Court need not rule on that motion with respect to Plaintiffs Samaco, Marquez, and Price before the issue of arbitrability is decided.

arbitrate disputes.

As detailed below, recent decisions from this District have repeatedly applied equitable estoppel to compel arbitration in materially indistinguishable privacy cases. Moreover, the linchpin of equitable estoppel is fairness, and it would be fundamentally unfair to permit Plaintiffs to evade their arbitration agreements by suing Google, when Google's alleged conduct is inseparable from the customer relationships, privacy disclosures, and consent provisions governed by the Third-Party agreements. Plaintiffs agreed to individually arbitrate disputes arising from those relationships. They must be held to that bargain.

Accordingly, Google respectfully requests that the Court compel Plaintiffs Samaco, Marquez, and Price to individual arbitration and stay their claims pending completion of those proceedings.

## II. PROCEDURAL POSTURE

Plaintiff Misael Ambriz originally filed this putative class action on October 23, 2023, alleging that Google's CCAI technology "eavesdropped" on his conversation with Verizon customer service in violation of the CIPA § 631. Dkt. 1. On June 20, 2024, this Court granted Google's motion to dismiss, finding that Ambriz's claim was barred by the statutory exemption from liability for telephone companies and their agents, but granted Plaintiff leave to amend. *See* Dkt. 37. Plaintiff Ambriz filed an amended complaint adding new plaintiffs Jimmy Nimmo, Eugene Erlikh, James Fox, Christopher Bissonnette, Ahmad Mehdipour, and Peter Samish. Dkt. 39. In addition to Verizon, the Complaint added allegations related to use of the same Google CCAI technology during customer service calls with third parties Hulu, GoDaddy, and Home Depot. *Id.* Plaintiffs then filed a consolidated amended complaint adding Plaintiff Christopher Barulich. Dkt. 45. Google moved to dismiss this consolidated amended complaint, but the Court denied that motion on grounds not relevant here. *See* Dkt. 56. Thereafter, Plaintiffs voluntarily dismissed Plaintiffs Bissonnette, Mehdipour, and Erikh, whose allegations related to GoDaddy, *see* Dkt. 68; and Plaintiffs Nimmo and Ambriz, whose allegations related to Hulu and Verizon respectively, *see* Dkt. 74, leaving just Plaintiffs Fox, Barulich, and Samish, whose allegations relate to Home Depot. Since then, Plaintiff filed four additional separate actions, three of which

were consolidated with this action.[2] *See* Dkts. 106, 111. Plaintiffs filed their third amended consolidated complaint on April 21, 2026, including these three new plaintiffs—Paolo Romeo Samaco, whose allegations relate to Verizon; Chelsea Marquez, whose allegations relate to Uber; and India Price, whose allegations relate to Discover. *See* Dkt. 112 ("TACC").

## III. BACKGROUND

### A. Plaintiffs have each agreed to the Third-Parties' account terms and conditions.

#### 1. Plaintiff Samaco assented to Verizon's Customer Agreement and Privacy Policy.

Plaintiff Samaco identifies himself as "an account holder and subscriber to Verizon's Wi-Fi service and mobile satellite services" who made a call to Verizon customer service in March 2026. TACC ¶¶ 12, 95. All Verizon account holders are required to consent to Verizon's Customer Agreement, which contains the terms and conditions governing a user's account. Declaration of Joseph Ninete in Support of Motion to Compel Individual Arbitration ("Verizon Decl.") ¶ 6. Verizon's records confirm that Plaintiff Samaco executed Verizon's Service Customer Receipt ("SCR") and Device Payment Agreement ("DPA") on December 9, 2025. *Id.* ¶¶ 7–8; *see also id.,* Ex. A (the SCR) and Ex. B (the DPA). Both of these agreements require that the user assent to the Verizon Customer Agreement: The SCR states, on the signature page, "I have read and agree to the Verizon Customer Agreement including settlement of dispute by arbitration instead of jury trial." *Id.* ¶ 10; *see also id.*, Ex. A at 3. The DPA states in the first paragraph,

> THIS DEVICE PAYMENT AGREEMENT REQUIRES THAT YOU MAINTAIN SERVICE WITH VERIZON WIRELESS UNDER YOUR CUSTOMER AGREEMENT. ALTHOUGH YOUR CUSTOMER AGREEMENT IS A SEPARATE DOCUMENT, EXCEPT AS PROHIBITED BY APPLICABLE LAW, THE WAIVERS AND LIMITATIONS OF LIABILITY, DISCLAIMER OF WARRANTIES, AND OTHER PROVISIONS OF YOUR CUSTOMER AGREEMENT ARE INCORPORATED BY THIS REFERENCE IN THIS AGREEMENT, AND SHALL SURVIVE TERMINATION OF YOUR CUSTOMER AGREEMENT.

[2] The fourth action asserts similar allegations under Arizona law, and this Court has related it to this action. *See* Dkt. 100. Motions to compel arbitration and dismiss are fully briefed and pending in that action. *See Arroyo v. Google LLC*, No. 25-cv-10706 (N.D. Cal.), Dkt. 37, 38.

*Id.* ¶ 13; *see also id.*, Ex. B at 2. Verizon's Customer Agreement that Plaintiff Samaco agreed to incorporates by reference Verizon's Privacy Policy (and all versions of the Customer Agreement have done so since at least 2011). *Id.* ¶ 19. The Customer Agreement explained to Samaco that his assent meant "you also agree to our Privacy Policy, available at verizon.com/privacy, which may be updated from time to time and describes the information we collect, how we use and share it, and the choices you have about how certain information is used and shared." *Id.* ¶ 20; *see also id.*, Ex. C at 1. When Plaintiff Samaco signed the SCR, he also explicitly "agreed to . . . the Verizon Privacy Policy." *Id.* ¶ 10; *see also id.*, Ex. A at 3.

### 2. Plaintiff Marquez assented to the Uber Terms of Service as an Uber Account Holder.

Plaintiff Marquez identifies herself as "an account holder with Uber" who made a call to Uber customer service in September 2025. TACC ¶¶ 11, 87. In order to gain and maintain access to the Uber apps as a Rider, Plaintiff Marquez was required to register for an Uber Account and agree to the Uber Rider Terms of Use. Declaration of Carlos Martinez in Support of Motion to Compel Individual Arbitration ("Uber Decl.") ¶ 12. Uber's Rider Terms have incorporated by reference, and hyperlinked to, the then-current version of Uber's Privacy Notice for Riders since at least 2015. *Id.* at ¶ 17. Specifically, the August 2024 version of Uber's Rider Terms that were in effect in September 2025, when Plaintiff Marquez allegedly made the call at issue, state that users "confirm [their] agreement to be bound by these Terms," the word "Terms" is defined as "includ[ing] but [] not limited to: the Privacy Notice, which describes how we collect, use, and disclose your personal information." *Id.* ¶ 17; *see also id.*, Ex. 5 at 1.[3]

### 3. Plaintiff Price assented to the Discover Loan Terms and Conditions as a Discover Account Holder.

Plaintiff Price identifies herself as "an account holder with Discover" who called Discover customer service in or about September 2025. TACC ¶¶ 10, 79. Plaintiff Price alleges that the

---

[3] Plaintiff Marquez does not allege whether she had an account as a Rider or a Driver or both. If Plaintiff Marquez had a Driver account (exclusively or in addition to a Rider account), she would similarly have been required to agree to the Driver Terms, which incorporate by reference the then-current version of the Privacy Notice for Drivers (and have done so since at least 2020). Uber Decl. ¶¶ 22, 26; *see also id.,* Ex. 4a ¶ 7 (2020 Driver Terms incorporating and hyperlinking to the then-current version of the Privacy Notice for Drivers).

reason for her call to Discover was to discuss "details regarding a loan, what she needed the loan for, and other personal details about payment for the loan." *Id.* ¶ 82. She also alleges that she "disclosed her name and account information" during the call. *Id.* Since at least August 2025, Discover has required website visitors seeking to apply for a personal loan to agree to Discover's Privacy Notice and Loan Agreement. Declaration of Lisa Schwenk ("Discover Decl.") ¶ 6. The May 2025 version of Discover's Loan Agreement, which was in effect when Plaintiff Price allegedly called Discover about her loan, explicitly incorporates Discover's Privacy Notice on the first page of the loan application. *Id.* ¶ 14. A consumer cannot continue past the first page of the loan application without acknowledging receipt and agreeing to the hyperlinked Privacy Notice. *Id.* ¶¶ 14–15. Similarly, a consumer cannot continue past the second page of the loan application without agreeing to the Loan Agreement. *Id.* ¶¶ 16–17. The final page of the loan application—where consumers "[r]eview and accept [their] loan[s]"—again requires consumers to agree to the Loan Agreement. *Id.* ¶¶ 19–20.

### B. The Third Parties' terms and conditions include agreements to individually arbitrate.

Plaintiffs Samaco, Marquez, and Price each were required to agree to individually arbitrate their claims as part of their respective agreements with Verizon, Uber, and Discover.

Samaco's Verizon Customer Agreement has contained an arbitration clause since at least 2009. Verizon Decl. ¶ 16. Verizon's November 2025 Customer Agreement includes an arbitration provision in bold, capitalized text that states:

> YOU UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY AGAINST VERIZON. YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW.

Verizon Decl., Ex. C at 5. The scope of this arbitration provision extends to "any dispute that in any way relates to or arises out of this Agreement," including allegations pertaining to "personal injury or invasion of privacy" for all disputes with Verizon or its agents, and the agreement explicitly includes a class waiver. *Id* at 5–6. Similarly, the SCR signed by Plaintiff Samaco

explicitly required him to "agree to the Verizon Customer Agreement including settlement of dispute by arbitration instead of jury trial," Verizon Decl. ¶ 10, while the DPA incorporated the same Customer Agreement by reference, *id.* ¶ 13.

Uber's Rider Terms similarly include an individual arbitration clause, as have previous Uber Rider Terms dating back to at least 2015. Uber Decl. ¶ 16. Uber's August 2024 Rider Terms, which were in effect when Plaintiff Marquez alleges she contacted Uber customer service in September 2025 state:

> By agreeing to these Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in binding arbitration as set forth in this Arbitration Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action …. [Y]ou and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms … and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law.

*Id.* ¶ 14; *see also id.*, Ex. 5 at 1–2.[4]

Discover's May 2025 Loan Agreement, which was in effect when Plaintiff Price alleges she called Discover's contact center, explains at the top, "This Loan Agreement contains an arbitration clause. Arbitration can have a substantial impact on your rights, including your right to a jury trial and your right to participate in a class action lawsuit." Discover Decl., Ex. 2 at 1. The provision states in relevant part:

> In the event of a dispute between you and us arising out of or relating to this Loan Agreement or the relationships resulting from this Loan Agreement or any other dispute between you or us, including, for example, a dispute based on a federal or state statute or local ordinance ("Claim"), either you or we may choose to resolve the Claim by binding individual arbitration, as described below, instead of in court.

*Id.*, Ex. 2 at 4.

### C. The Third-Party agreements notify users how information and customer service calls may be disclosed to third parties.

Each of these Third-Party agreements includes provisions governing user privacy that

[4] Uber's Driver Terms similarly included an arbitration clause, as have previous Uber Driver Terms dating back to at least 2020. Uber Decl. ¶¶ 23, 25; *see also id.* at Ex. 2a ¶¶ 13.1(a), 13.4(a); *see also id.*, Ex. 4a ¶ 13.

discuss how user information data may be collected, used, disclosed, and shared with non-parties.

Verizon's December 2025 Privacy Policy[5]—the policy in effect when Plaintiff Samaco called Verizon's customer service—explains to users that Verizon "may use automated processing, including artificial intelligence, to assist with" various services, including to "[h]elp you with service and technical support issues or questions." Verizon Decl., Ex. E at 4–5. The Privacy Policy also explains that it collects, directly and ***indirectly*** through "service providers acting on our behalf," "information you provide," like "voice recordings." *Id.* at 1–2.

Uber's Privacy Notice for Riders in effect when Plaintiff Marquez allegedly made her call discusses how Uber uses data, including disclosing that Uber uses data "[f]or customer support." Uber Decl. ¶ 19; *see also id.*, Ex. 6 at 6 and Ex. 7 at 8. Uber explains that, with respect to customer support, "[t]his includes investigating and addressing user concerns" and "monitoring and improving our customer support responses and processes[.]" Uber Decl., Ex. 6 at 6 and Ex. 7 at 8. Uber also states that it uses user content "[f]or research and development," including "for analysis, research and product development," which "helps us make our services more convenient and easy-to-use, enhance the safety and security of our services, and develop new services and features." Uber Decl., Ex. 6 at 6 and Ex. 7 at 8.[6]

The Discover Loan Agreement and Privacy Notice in effect when Plaintiff Price allegedly called Discover detail the information Discover collects and when Discover "may share it with others." Discover Decl. ¶ 11; *see also id.*, Ex. 2 at 2. Discover's May 2025 Loan Agreement first defines "Authorized Parties" as "Discover, [its] Affiliates, and agents, including service providers" and then explains that by signing, Plaintiff Price "agree[s]" that the Authorized Parties "may record or monitor any calls between [her] and the Authorized Parties." *Id.* ¶ 11; *see also id.*, Ex. 2 at 2. Discover's Privacy Notice—to which Plaintiff Price was required to agree—discloses that Discover can share user's personal information for many purposes, including for "everyday

[5] The December 2025 Privacy Policy is not materially different from the May 2025 Privacy Policy that was in effect when Plaintiff Samaco signed the Verizon SCR and DPA. *Compare* Verizon Decl., Ex. D (May 2025 Privacy Policy) *with* Verizon Decl., Ex. E (December 2025 Privacy Policy).

[6] Uber's Privacy Notice for Drivers contained the same disclosure. Uber Decl. ¶ 26; *see also id.*, Ex. 8 at 8.

business purposes." *Id.* ¶ 7; *see also id.*, Ex. 1 at 1. The May 2025 Loan Agreement further explains that the Discover Privacy Notice "includes a summary of the personal information [Discover] collect[s], when [Discover] may share it with others, how [Discover] safeguard[s] the confidentiality and security of information, and the steps you may take to limit our sharing of such information with others." *Id.*, Ex. 2 at 2.

### D. Plaintiffs allege that Google conspired with the Third Parties to eavesdrop on their calls without their consent.

The TACC alleges that "[t]hroughout the relevant time period, Home Depot,[7] Discover, Uber, and Verizon have contracted with Google to listen in on [user] conversations," TACC ¶ 33. Specifically, Plaintiffs allege that Google "was collaborating with," *id.* ¶ 36, "partnered with," *id.* ¶ 42, and "integrate[d]" with, *id.* ¶ 48, the Third Party's customer service centers so that it could "eavesdrop[]," *see, e.g.*, *id.* ¶ 68, on their conversations with each Third Party. Notwithstanding the disclosure detailed above, Plaintiffs each allege instances on which they contacted the Third Parties where they claim they neither knew of, nor anticipated, the use of Google's CCAI technology on those calls. *Id.* ¶¶ 79-83, 87-91, and 95-100. Plaintiffs filed this putative class action against Google alleging that the use of the CCAI technology on their calls with these Third Parties constitutes a violation of the California Information Privacy Act ("CIPA"), Sections 631(a), 632(a), and 637.5. *Id.* at 28. Notwithstanding their individual arbitration agreements, Plaintiffs seek to represent a nationwide class in court.

## IV. ARGUMENT

### A. Each Plaintiff has a valid agreement to individually arbitrate that includes claims such as those they assert here.

The Federal Arbitration Act ("FAA") governs the questions of arbitrability in this case because each of the Third Parties' terms involve interstate commerce and expressly state that the FAA applies. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058 (9th Cir. 2020); *see also* Verizon Decl., Ex. C at 6; Uber Decl., Ex. 5 at 3; Discover Decl., Ex. 2 at 4. The FAA provides

[7] The Home Depot plaintiffs are not at issue in this motion.

that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It further "mandates that . . . courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). In determining whether to compel a party to arbitrate, courts apply a two-part test, considering: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal quotation marks and citation omitted). Once it is established that a valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

**1. Plaintiffs have valid arbitration agreements with the Third Parties.**

To determine whether there is a valid arbitration agreement, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As detailed above, *see supra* Section III, each Plaintiff has a valid arbitration agreement with one of the third parties—Plaintiff Samaco with Verizon; Plaintiff Marquez with Uber; and Plaintiff Price with Discover. There is no basis to conclude that Plaintiffs' agreements with the Third Parties violated any traditional principle of contract law. Each agreement contains conspicuous and unequivocal language requiring assent to the arbitration agreement to become an account holder. *See* Verizon Decl. ¶¶ 10, 17–18; Uber Decl. ¶¶ 14–15; Discover Decl. ¶ 12; *see also id.*, Ex. 2 at 4. Courts have repeatedly found that the same or nearly identical arbitration agreements involving these Third Parties were valid and enforceable. *See, e.g.*, *Smith v. Verizon Wireless (VAW) LLC*, 2018 WL 2294223, at *2 (D. Or. May 3, 2018), *report and recommendation adopted,* 2018 WL 2293932 (D. Or. May 18, 2018) (enforcing the same Verizon agreement and arbitration terms at issue here); *Fraher v. Verizon Wireless Servs., LLC,* 2021 WL 2525732, at *3 (S.D. Cal. June 21, 2021) (same); *Mullady v.*

*Greene*, 2024 WL 4982896, at *3–4 (W.D.N.C. Dec. 4, 2024) (compelling arbitration on the basis of Plaintiff's Discover Account agreement with nearly identical terms); *Johnson v. Uber Techs., Inc.,* 2018 WL 4503938, at *5 (N.D. Ill. Sept. 20, 2018) (enforcing substantively identical Uber agreement terms).

**2. Plaintiffs' claims fall within the scope of the Third Parties' agreements.**

Plaintiffs' privacy claims are within the scope of their arbitration agreements. Specifically, Plaintiffs each allege that their privacy was violated under CIPA. *See e.g.*, TACC ¶¶ 86, 94, and 103. These kinds of claims fall squarely within the arbitration provisions as a matter of plain language: Plaintiff Samaco's agreement with Verizon explicitly lists disputes pertaining to "invasion of privacy" as within the scope of his agreement. Verizon Decl., Ex. C at 6. The Rider Terms that Plaintiff Marquez agreed to with Uber enumerate that disputes "arising out of or relating to . . . these Terms" (wherein "Terms" is defined to include "the Privacy Notice") or "your relationship with Uber" fall within the arbitration provision. *See* Uber Decl. ¶ 14.[8] And Plaintiff Price's agreement with Discover includes a broad arbitration clause covering all disputes "arising out of or relating to this Loan Agreement" along with any "dispute based on a federal or state statute or local ordinance," which includes a statute like CIPA. Discover Decl., Ex. 2 at 4. Nevertheless, should there be "any doubts concerning the scope of arbitrable issues," it "should be resolved in favor of arbitration." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). Moreover, with respect to the Verizon and Uber agreements, the Court need not even engage in this inquiry, as both of those agreements contain a delegation clause plainly delegating the issue of arbitrability to the arbitrator. *See* Verizon Decl., Ex. C at 6; Uber Decl. ¶ 11; *see also id.*, Ex. 5 at 3; *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (explaining that courts must enforce valid delegation clauses that clearly and unmistakably provide for such delegation).

[8] The arbitration clause in the Driver Terms similarly extends to any disputes "arising out of or related to your relationship with us or relationship with any of our agents." Uber Decl. ¶ 23. Both the Rider Terms and the Driver Terms delegate to the arbitrator any threshold issues of arbitrability. Uber Decl. ¶¶ 15, 24.

Thus, because Plaintiffs have valid arbitration agreements and their claims fall within the scope of these agreement, Plaintiffs would unquestionably be required to arbitrate if they sued the Third Parties.

**B. Google can enforce the Third Parties' arbitration agreements with Plaintiffs under an equitable estoppel theory.**

Because each Plaintiff has a valid agreement to arbitrate the subject matter raised in their claims, the sole issue left for the Court is whether Google may enforce these agreements as a nonsignatory. Under the doctrine of equitable estoppel, it can.

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). California law applies the relevant state contract law here. *See In re Henson*, 869 F.3d 1052, 1058–60 (9th Cir. 2017). California's doctrine of equitable estoppel permits a nonsignatory defendant to compel arbitration of a signatory plaintiff's claims when (1) "the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract;" ***or*** (2) "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 and n.5 (9th. Cir. 2024) (citations modified). The "linchpin" of this inquiry is fairness. *Id.* at 710. And while just one equitable estoppel basis is sufficient to compel arbitration, for the reasons stated below, both bases are satisfied here.

**1. Plaintiffs' claims are intertwined with their agreements with the Third Parties.**

"In determining whether equitable estoppel applies … we look at the relationship between the parties and their connection to the alleged violations." *Herrera*, 104 F.4th at 707 (citations modified). This assessment considers "the relationships of persons, wrongs and issues," regardless of whether the plaintiff specifically references the underlying contract that contains the arbitration agreement. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021). Put

simply, "[t]he question is whether [Plaintiff's] claims are 'fully viable without reference to' the underlying agreement." *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024) (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 230 (2009)).

Here, Plaintiffs' privacy-based claims are intertwined with their Third-Party agreements because those agreements govern whether Plaintiffs consented to the sharing of their calls with Google. Notably, each of Plaintiffs' CIPA privacy claims requires them to prove that they did not consent to their information being shared with Google. For their CIPA § 631 claim, Plaintiffs Marquez and Price will need to prove that Google made an "*unauthorized* connection" with a "telegraph or telephone wire" or attempted to read or learn the contents of a communication "*without the consent* of all parties." Cal. Penal Code § 631(a) (emphasis added). For her CIPA § 632 claim, Plaintiff Price must prove that Google used an "electronic amplifying or recording device" to "eavesdrop" on the communication "*without the consent* of all parties." *Id.* § 632. And for his CIPA § 637.5 claim, Plaintiff Samaco will need to show that Google listened to, recorded, or monitored his conversation "without obtaining [his] express written consent." *Id.* § 637.5(a)(1). Plaintiffs' complaint recognizes this and specifically pleads that Google lacked consent for each of these alleged intrusions. *See* TACC ¶¶ 123, 133, 145. It is thus unsurprising that courts have consistently found that CIPA claims like these require Plaintiffs "to plead (and ultimately prove) that [they] did not consent to [the] interception." *Perry-Hudson*, 2024 WL 4933332, at *2 (Section 631 and 632 claims); *see also Bender v. Twilio Inc.*, 2025 WL 2308484, at *6 (N.D. Cal. Aug. 11, 2025) (same); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002) (Section 632); *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008) (same); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021) (same).

Plaintiffs' claims thus cannot be resolved without considering their agreements with the Third Parties. Specifically, Plaintiff Samaco's claims cannot be resolved without review of the Privacy Policy he agreed to with Verizon, which governs what data Verizon may collect, what tools it may use to collect it, with whom it may share that data, and for what purposes. Verizon Decl., Ex. D at 1–2 (disclosing that Verizon "may use automated processing, including artificial intelligence" to deliver services and that it "disclose[s] information within Verizon, with service

providers who do work on our behalf, and with third parties"). Plaintiff Marquez's claims similarly cannot be resolved without review of the Uber Privacy Notice for Riders, which expressly provides that Uber collects user content and may use it "for analysis, research and product development." Uber Decl., Ex. 6 at 6 and Ex. 7 at 8.[9] Plaintiff Price's claims are no different. Her claims cannot be resolved without review of Discover's Loan Agreement and Privacy Notice which provide that "Authorized Parties," including Discover itself and third parties like Google, "may record or monitor any calls between [Plaintiff]" and them. Discover Decl. ¶ 11; *see also id.*, Ex. 2 at 2. Thus, this Court should find the first equitable estoppel circumstance applicable here.

*Hunt v. Meta Platforms, Inc.* is instructive. 735 F. Supp. 3d 1133 (N.D. Cal. 2024). There, the Court compelled arbitration for claims brought against a nonsignatory on the basis of equitable estoppel. *Id.* at 1138. Plaintiff Hunt had alleged that H&R Block had violated privacy laws by providing his sensitive tax return information to defendants Google and Meta through tracking tools installed on H&R Block's website. *Id.* at 1135–36. To use H&R Block's tax services, however, Hunt, had entered into an online services agreement, which contained an arbitration clause. *Id.* at 1136. Meta and Google moved to enforce the plaintiff's arbitration agreement with H&R Block, arguing that Hunt's claims were intertwined with the disclosures in the H&R Block Privacy Policy. *Id.* at 1137. The court agreed, holding that because the plaintiff's claims required proving that H&R Block's privacy policy did not disclose the sharing of personal information, the claims were "closely intertwined" with the plaintiff's agreement with H&R Block. *Id.* at 1137–38. Numerous cases in this District have applied this same logic in compelling arbitration. *See, e.g.*, *Perry-Hudson*, 2024 WL 4933332, at *2; *Bender*, 2025 WL 2308484, at *8; *L.W.A. v. LinkedIn Corp.*, 2025 WL 2780788, at *5 (N.D. Cal. Sept. 30, 2025); *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1184–86 (N.D. Cal. 2013) (similar).

**2. Plaintiffs' allegations of concerted action by Google and the Third Parties further demonstrate intertwinement.**

A second independent basis on which courts apply equitable estoppel when a plaintiff

[9] The same is true for the Privacy Notice for Drivers. Uber Decl. ¶ 28; *see also id.*, Ex. 8 at 8.

alleges that a signatory and nonsignatory acted "jointly in furtherance of a common scheme," and the legality of that scheme requires examining the terms of the plaintiff's contract. *Sanders v. Swift Transp. Co. of Ariz., LLC*, 843 F. Supp. 2d 1033, 1038 (N.D. Cal. 2012). That is exactly the situation here.

Plaintiffs allege such joint action: They first allege that all the Third Parties "have contracted with Google to listen in on [user] conversations," TACC ¶ 33. They then further allege with respect to each of the Third Parties that Google "was collaborating with," *id.* ¶ 36, "partnered with," *id.* ¶ 42, and "integrate[d]" with, *id.* ¶ 48, each of their customer service centers so that Google could "eavesdrop[]," *see, e.g.*, *id.* ¶ 68, on Plaintiffs conversations. In other words, it is the concerted action of Google and the Third Parties that forms the basis of Plaintiffs' claims, and these claims cannot be resolved without turning to the Plaintiffs' agreements with the Third Parties.

This Court's decision in *Perry-Hudson* is on all fours. 2024 WL 4933332. In that case, Plaintiff alleged that he provided his health data to a company named Keeps, believing the data would only be used to obtain a prescription recommendation. 2024 WL 4933332, at *3. He further alleged that Keeps disclosed this personal health data to Twilio through a tracking tool that Keeps embedded in its product in violation of privacy. *Id.* The Court first explained that Keeps's Privacy Policy spoke "directly to Keeps's obligations with respect to [Plaintiff]'s data and his consent to sharing that data." *Id.* The Court found this second equitable estoppel circumstance to apply because here the allegations amounted to "allegations of interdependent and concerted misconduct by [the nonsignatory defendant] and [the signatory third party] that is intimately connected with the obligations of the underlying agreement." *Id.* So too, here. Plaintiffs' allegations of concerted misconduct by Google and the Third Parties is intimately bound up with the obligations of the underlying agreements. *See also Salas v. Universal Credit Servs., LLC*, 2019 WL 1242448, at *1, 4 (S.D. Cal. Mar. 18, 2019) (finding allegations of concerted conduct between third parties regarding the sharing of plaintiff's credit report to be "intimately connected to the obligations" set forth in an agreement that arguably authorized the sharing).

Accordingly, because Google has demonstrated that both equitable estoppel circumstances apply here, it should be entitled to enforce Plaintiffs' arbitration agreements in this matter.[10]

### C. This Court should order a stay of this action pending resolution of the arbitration.

Section 3 of the FAA requires that the court must grant a stay pending arbitration when a district court determines that a lawsuit involves an arbitrable dispute and a party requests one. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Theodore v. Am. Express Nat'l Bank*, 2024 WL 4165274, at *3 (N.D. Cal. Aug. 27, 2024). Thus, if the Court determines that Plaintiff's claims are arbitrable, it must also stay the case.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant its motion to compel individual arbitration and enter a stay pending the resolution of the arbitration.

Dated: June 22, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Matan Shacham*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
IAN KANIG

Attorneys for GOOGLE LLC

[10] To the extent the Court determines there are any factual issues concerning arbitrability, Google should be permitted to conduct limited discovery on those issues. *See Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 833 (9th Cir. 2022).