KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for GOOGLE LLC

| | |
|---|---|
| *In re Google Cloud Contact Center AI Privacy Litigation* | Lead Case No. 3:23-cv-5437-RFL<br>Consolidated Case No. 3:24-cv-06225-RFL<br>Consolidated Case No. 3:25-cv-10015-RFL<br>Consolidated Case No. 3:25-cv-10765-RFL<br>Consolidated Case No. 5:26-cv-02327-RFL<br><br>**DECLARATION OF JOSEPH NINETE IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION**<br><br>Judge: Hon. Rita F. Lin<br><br>Date Filed: October 23, 2023<br>FAC: July 22, 2024<br><br>Trial Date: Not Yet Set |

I, Joseph Ninete, declare as follows:

1. I am an adult over the age of 18 and a resident of Chandler, Arizona. I submit this declaration in support of the Motion to Compel Individual Arbitration filed by Google LLC in the above-referenced matter. The statements set forth in this declaration are true and correct to the best of my knowledge, information, and belief, based on either my personal knowledge, my familiarity with Verizon Communications Inc.'s ("Verizon") policies and practices or my review of its records. If called upon as a witness to testify regarding these facts, I could and would do so competently.

2. I am presently employed as a Senior Analyst – Legal Support at Verizon. I have worked at Verizon since December 2011. In my role as Senior Analyst – Legal Support, I am familiar with Verizon's processes relating to capturing customer signatures for Verizon customer agreements, service customer receipts, and device payment agreements.

3. The Verizon records I reviewed were made by, or from information transmitted by, a person with knowledge of the event describe therein, at or near the time of the event described, and are kept in the ordinary course of the regularly conducted business activity of such person and Verizon, and it is the regular practice of that business activity to make or keep such records.

**Paolo Samaco Agreed to Verizon's Customer Agreement, Including its Arbitration Provision, in a Signed Writing**

4. I understand that the Plaintiff in this matter, Paolo Roméo Samaco, alleges that he resides in Los Angeles, California, is an account holder and subscriber to Verizon's Wi-Fi service and mobile satellite services, and spoke with a representative from Verizon in March 2026.

5. Verizon's records show that there is a Verizon customer by the name of Paolo Samaco who resides in Los Angeles, California.

6. All Verizon account holders are required to consent to Verizon's Customer Agreement, which outlines the terms and conditions pursuant to which Verizon provides products and services to its customers.

7. Verizon's records reflect that Mr. Samaco executed both a Service Customer Receipt ("SCR") and a Device Payment Agreement ("DPA") on December 9, 2025. A true and correct copy of the SCR is attached hereto as **Exhibit A**. A true and correct copy of the DPA is attached hereto as **Exhibit B**.

8. Verizon's records further reflect that Mr. Samaco executed both the SCR and DPA through Verizon's View Together interface. The View Together interface allows a customer to review the details of their transaction with a Verizon representative and execute certain documents. Customers are sent a link to the View Together interface by the Verizon representative. Mr. Samaco electronically accepted the DPA through a tap-to-agree button in the View Together interface. A copy of the DPA is sent to a customer's phone or email. Mr. Samaco also signed the SCR through the View Together interface.

9. Both the SCR and the DPA incorporate by reference and specifically evidence acceptance of Verizon's Customer Agreement.

10. The SCR states as follows on the signature page:

> **"Agreements**
>
> (View full agreement at **vzw.com/myverizon**)
>
> **I have read and agree** to the Verizon Customer Agreement including settlement of dispute by arbitration instead of jury trial, as well as the terms of the plan, optional services I have agreed to purchase and the **Verizon Privacy Policy**."

**Exhibit A, at 3.**

11. Below this statement, Mr. Arroyo provided his signature. **Exhibit A, at 3.**

12. The Verizon Customer Agreement is accessible via a customer's account at **vzw.com/myverizon** as is indicated by the bolded and underlined font.

13. In addition to the SCR, the DPA that Mr. Samaco executed states as follows, in its first paragraph:

> THIS DEVICE PAYMENT AGREEMENT REQUIRES THAT YOU MAINTAIN SERVICE WITH VERIZON WIRELESS UNDER YOUR CUSTOMER AGREEMENT. ALTHOUGH YOUR CUSTOMER AGREEMENT IS A SEPARATE DOCUMENT, EXCEPT AS PROHIBITED BY APPLICABLE LAW, THE WAIVERS AND LIMITATIONS OF LIABILITY, DISCLAIMER OF WARRANTIES, AND OTHER

> PROVISIONS OF YOUR CUSTOMER AGREEMENT ARE INCORPORATED BY THIS REFERENCE IN THIS AGREEMENT, AND SHALL SURVIVE TERMINATION OF YOUR CUSTOMER AGREEMENT.

**Exhibit B**, at 2.

14. On the last page, the DPA confirms Mr. Samaco's acceptance of its terms: "Retail Installment Sale Agreement/Security Agreement accepted by PAOLO SAMACO at OMNI-TELESALES CAROLINA TELESALES on 12/09/2025 21:27:07." **Exhibit B**, at 4.

15. Verizon's Customer Agreement in effect when Mr. Samaco signed both the SCR and DPA on December 9, 2025 is the November 5, 2025 Customer Agreement. That agreement remained in effect during the month of March 2026, when Mr. Samaco alleges he called Verizon. A true and correct copy of that agreement is attached hereto as **Exhibit C**.

16. The Customer Agreement has contained an arbitration clause since at least 2009.

17. The Customer Agreement has a clear and conspicuous arbitration provision, stating in relevant part:

> "YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW. Dispute means any dispute that in any way relates to or arises out of this Agreement. This includes, but is not limited to, any equipment, products and services you receive from us, any advertising for such products or services, or alleged personal injury or invasion of privacy relating to such products or services, and includes any disputes you have with our employees or agents. This also includes any dispute regarding the validity, enforceability, or scope of any portion of this Agreement (including the Agreement to arbitrate) unless otherwise provided in this Agreement. You can also bring any issues you may have to the attention of federal, state, or local government agencies, and if the law allows, they can seek relief against us for you. This Agreement is governed by the Federal Arbitration Act."

**Exhibit C**, at 6.

18. The Customer Agreement also states, on its first page, "This Customer Agreement ("Agreement") describes important information about your wireless Service and our business

relationship, including . . . our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court." **Exhibit C**, at 1.

**Verizon's Customer Agreement Incorporates by Reference Verizon's Privacy Policy**

19. The Customer Agreement incorporates by reference Verizon's Privacy Policy and has done so since at least 2011.

20. The Customer Agreement states, in relevant part: "Accepting this Agreement means that you also agree to our Privacy Policy, available at verizon.com/privacy, which may be updated from time to time and describes the information we collect, how we use and share it, and the choices you have about how certain information is used and shared. We will notify you or ask for your permission, as appropriate, if we plan to use your information for additional purposes." **Exhibit C**, at 1.

21. By signing the SCR, Mr. Samaco further confirmed, "**I have read and agree** to . . . the **Verizon Privacy Policy**." Exhibit A, at 3. The Verizon Privacy Policy was linked in the SCR as indicated by the bolded, underlined, and blue font.

22. The Verizon Privacy Policy in effect when Mr. Samaco signed the SCR on December 9, 2025 is the May 2025 Privacy Policy, a true and correct copy of which is attached hereto as **Exhibit D**.

23. Verizon updates its Privacy Policy from time to time. The only other version of the Privacy Policy that was in effect during the time between Mr. Samaco's signing of the SCR and DPA and the time he alleges he spoke to a representative from Verizon (March 2026) is the December 2025 Privacy Policy, which went live on or around December 19, 2025. A true and correct copy of which is attached hereto as **Exhibit E**.

24. The Privacy Policy states, "We may make changes to this privacy policy, so please check back periodically. You will be able to see that we made changes by checking the effective date below." **Exhibit D**, at 9; **Exhibit E**, at 38.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on June 18, 2026, in Chandler, Arizona.



JOSEPH NINETE

**Joseph Ninete**
E-signed 2026-06-18 11:46AM PDT
joseph.ninete@verizon.com
Verizon Wireless