KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re Google Cloud Contact Center AI Privacy Litigation

Case No. 3:25-cv-10765-RFL
Consolidated Case No. 3:24-cv-06225-RFL
Consolidated Case No. 3:25-cv-10015-RFL
Consolidated Case No. 3:25-cv-10765-RFL
Consolidated Case No. 5:26-cv-02327-RFL

**DECLARATION OF CARLOS MARTINEZ IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION**

Date: September 29, 2026
Time: 10:00 a.m.
Ctrm: 15, Floor 18
Judge Hon. Rita F. Lin

Date Filed: December 17, 2025

Trial Date: Not Yet Set

I, Carlos Martinez, declare:

1. I am an attorney licensed to practice law in the State of California. I am an attorney at Keker, Van Nest and Peters LLP and I represent Google LLC ("Google") in this action. I submit this declaration in support of the Motion to Compel Individual Arbitration filed by Google in the above-referenced matter. I have personal knowledge of the facts set forth herein, and if called upon as a witness thereto, could testify competently under oath.

2. In my capacity as counsel in this matter, I have become familiar with how Uber's digital platform operates at a high-level, the terms to which users, including Riders and Drivers, must agree in order to create and maintain an Uber account and access Uber's applications, and how those terms are communicated to and accepted by users. My knowledge is based on my review of Uber's publicly available terms, my review of records produced by Uber in other litigation, and my review of sworn declarations submitted by Uber representatives in other proceedings.

**<u>Uber Declarations</u>**

3. Attached hereto as **<u>Exhibit 1</u>** is a true and correct copy of the Declaration of Todd Gaddis, *Brown v. Uber Techs., Inc.*, No. 3:24-cv-9505-JSC (N.D. Cal. Mar. 31, 2025), Dkt. No. 31, which is a matter of public record.

4. Attached hereto as **<u>Exhibit 1a</u>** is a true and correct copy of Uber's November 21, 2016 U.S. Terms of Use, attached as Exhibit E to the Declaration of Todd Gaddis, *Brown v. Uber Techs., Inc.*, No. 3:24-cv-9505-JSC (N.D. Cal. Mar. 31, 2025), Dkt. No. 31-5, which is a matter of public record.

5. Attached hereto as **<u>Exhibit 2</u>** is a true and correct copy of the Declaration of Anny Liao, *Nuriyev v. Uber Techs., Inc.*, No. 5:25-cv-06123 (N.D. Cal. Aug. 5, 2025), Dkt. No. 20-1, which is a matter of public record.

6. Attached hereto as **<u>Exhibit 2a</u>** is a true and correct copy of Uber's Platform Access Agreement, Updated as of January 1, 2022 (hereinafter, the "2022 Driver Terms"), attached as Exhibit 3 to the Declaration of Anny Liao, *Nuriyev v. Uber Techs., Inc.*, No. 5:25-cv-06123 (N.D. Cal. Aug. 5, 2025), Dkt. No. 20-1, which is a matter of public record.

7. Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Tipper Llaguno, *Cordas v. Uber Techs., Inc.*, No. 3:16-cv-04065-RS (N.D. Cal. Nov. 18, 2016), Dkt. No. 27-2, which is a matter of public record.

8. Attached hereto as **Exhibit 3a** is a true and correct copy of Uber's Terms and Conditions, Updated on April 8, 2015, attached as Exhibit A to the Declaration of Tipper Llaguno, *Cordas v. Uber Techs., Inc.*, No. 3:16-cv-04065-RS (N.D. Cal. Nov. 18, 2016), Dkt. No. 27-2, which is a matter of public record.

9. Attached hereto as **Exhibit 4** is a true and correct copy of the Declaration of Daniel Chinchilla, *Davtian v. Uber Techs., Inc.*, 3:24-cv-05195-CRB (N.D. Cal. Sept. 5, 2024), Dkt. No. 13, which is a matter of public record.

10. Attached hereto as **Exhibit 4a** is a true and correct copy of Uber's Platform Access Agreement, Updated as of January 6, 2020 (hereinafter, the "2020 Driver Terms"), attached as Exhibit 5 to the Declaration of Daniel Chinchilla, *Davtian v. Uber Techs., Inc.*, 3:24-cv-05195-CRB (N.D. Cal. Sept. 5, 2024), Dkt. No. 13, which is a matter of public record.

**Riders**

11. Uber has explained in public statements that it is "a technology company that develops proprietary software used to create digital marketplaces that are operated through multi-sided platforms. One marketplace the company built is for consumers looking for rides ("Riders") to connect with independent transportation providers offering transportation services ("Drivers"), known as the Rides marketplace. Uber also created the Eats marketplace, which connects independent delivery providers ("Couriers") with individuals ordering and/or seeking general delivery service, including delivery of meals and products from local participating restaurants, groceries, and other retailers. Uber also created the Delivery marketplace, which connects Couriers with individuals looking to have items delivered." Ex. 2 ¶ 4.

12. Uber has further explained that, "[t]o order rides or deliveries using Uber's Rides or Eats platforms, a user must register for an [Uber] account and agree to certain terms—specifically, the Terms of Use (also referred to as 'Terms of Service' or 'Terms & Conditions,' hereafter the 'Terms') then in effect before the user can use the Uber Apps." Ex. 1 ¶ 7.

13. Attached hereto as **Exhibit 5** (hereinafter, the "August 2024 Rider Terms") is a true and correct copy of Uber's Terms that went into effect on August 19, 2024, and governed Uber Riders during September 2025 (when Plaintiff Marquez alleges she contacted Uber customer service and the alleged violation occurred, TACC ¶ 87), as available through the Wayback Machine at: https://web.archive.org/web/20250930012954/https://www.uber.com/legal/en/document/?name=general-terms-of-use&country=united-states&lang=en.[1]

14. The August 2024 Rider Terms contain an Arbitration Agreement and Class Waiver. Specifically, the Rider Terms state:

> By agreeing to these Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in binding arbitration as set forth in this Arbitration Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action …. [Y]ou and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms … and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law.

Ex. 5 at 1–2.

15. The August 2024 Rider Terms also delegate authority to the arbitrator to "resolve all threshold arbitrability issues." Ex. 5 at 3.

16. Uber regularly submits sworn declarations to this Court and other State and Federal District Courts that reference and describe the arbitration clause in its Rider Terms, including the declarations attached hereto as Exhibits 1 and 3. These declarations include as exhibits copies of prior versions of the Rider Terms, including Rider Terms that were in effect as early as in 2015. Like the August 2024 Rider Terms, these prior versions of the Rider Terms

[1] A true and correct copy of a screen capture from the Wayback Machine shows the August 2024 Rider Terms as still in effect on September 30, 2025. *See* Ex. 5 at 1 (describing Terms as "Last modified: 8/19/2024").

contain an arbitration clause. *See, e.g.*, Exs. 1 at ¶ 12; 1a at 2–4 (the November 21, 2016 Terms which contain a similar arbitration clause); Exs. 3 ¶ 3; 3a at 8–10 (the April 8, 2015 Terms which contain a similar arbitration clause).

17. The August 2024 Rider Terms incorporate and hyperlink to the then-current version of Uber's Rider Privacy Notice. *See* Ex. 5 at 1. Specifically, the Rider Terms state that "[i]n addition to these Terms of Service, your access to, and use of the Services is also governed by the applicable terms found on our website. These include but are not limited to: the Privacy Notice [hyperlinked], which describes how we collect, use, and disclose your personal information." *Id.* Prior versions of the Rider Terms also incorporated and hyperlinked to the then-current version of Uber's Rider Privacy Notice. *See* Ex. 1a at 2 (2016 Rider Terms hyperlinking to Uber's Privacy Notice); Ex. 3a at 2 (same for 2015 Rider Terms).

18. Attached hereto as **Exhibit 6** is a true and correct copy of Uber's Privacy Notice for Riders that was in effect at least as of September 2, 2025, as available through the Wayback Machine at: http://web.archive.org/web/20250902213210/https://www.uber.com/global/en/privacy-notice-riders-order-recipients/.

19. Attached hereto as **Exhibit 7** is a true and correct copy of Uber's Privacy Notice for Riders that was in effect at least as of September 30, 2025, as available through the Wayback Machine at: https://web.archive.org/web/20250930012831/https://www.uber.com/global/en/privacy-notice-riders-order-recipients/. I have reviewed Exhibits 6 and 7, and there are no differences between Exhibits 6 and 7 for purposes of Google's motion.

20. Uber's Privacy Notice for Riders describes the personal data Uber collects, how it's used and shared, and user choices regarding this data. The Rider Privacy Notice explains that Uber may collect recordings from customer support and that Uber may share customer data with third parties, including with customer support platform and service providers. *See, e.g.*, Exs. 6 at 8, 9 and 7 at 11, 13 (explaining that Uber may "share data with our affiliates, subsidiaries, service

providers and partners" including third-party "[c]ustomer support platform and service providers").

**Drivers**

21. Uber has stated publicly that "Uber has created several mobile applications, including the Driver App, which is available via the internet on a smartphone or tablet that allow individuals, Riders, Drivers, and Couriers to access its various marketplaces." Ex. 2 ¶ 5.

22. Uber has publicly explained that, "[t]o enter into the applicable agreement and obtain access to a marketplace through Uber's Driver App," a user must register for an Uber Driver account and agree to certain terms—specifically, an agreement called a "Platform Access Agreement" hyperlinked on a page of Uber's Driver App entitled "Terms and Conditions." *Id.* ¶¶ 8–9, 12.

23. The 2022 Driver Terms contain an Arbitration Agreement and Class Waiver. Specifically, the Driver Terms state:

> Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries, or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates. . . . Both Uber and you agree that any and all disputes or claims between the parties shall be resolved only in individual arbitration, and not on a class, collective, coordinated, or consolidated basis on behalf of others.

Ex. 2a ¶¶ 13.1(a), 13.4(a).

24. The 2022 Driver Terms also delegate authority to the arbitrator to "resolve all threshold arbitrability issues." Ex. 2a ¶ 13.3(j).

25. Uber regularly submits sworn declarations to this Court and other Federal District Courts that reference the arbitration clause in its Driver Terms, including the declarations

attached hereto as Exhibits 2 and 4. These declarations include as exhibits copies of a prior version of the Driver Terms that was in effect as early as in 2020. This prior version of the Driver Terms likewise contains an arbitration clause. *See, e.g.*, Exs. 4 ¶ 11–13, 14(iii); 4a ¶ 13 (the January 6, 2020 Terms which contain a similar arbitration clause).

26. The 2022 Driver Terms incorporate and hyperlink to the then-current version of Uber's Driver Privacy Notice. *See* Ex. 2a ¶ 7. Specifically, the Driver Terms state that "[w]e may collect and disclose information from or about you when you create an account, interact with our Platform or provide Deliveries and as otherwise described in our Privacy Notice [hyperlinked]. Notwithstanding anything herein to the contrary (a) the collection, use, and disclosure of such information will be made in accordance with our Privacy Notice [hyperlinked]." *Id.* The prior version of the Driver Terms also incorporated and hyperlinked to the then-current version of Uber's Driver Privacy Notice. *See* Ex. 4a ¶ 7 (2020 Driver Terms hyperlinking to Uber's Privacy Notice).

27. Attached hereto as **Exhibit 8** is a true and correct copy of Uber's Privacy Notice for Drivers that was in effect at least as of September 11, 2025, as available through the Wayback Machine at: https://web.archive.org/web/20250911025204/https://www.uber.com/global/en/privacy-notice-drivers-delivery-people/.

28. Uber's Privacy Notice for Drivers describes the personal data Uber collects, how it's used and shared, and user choices regarding this data. The Driver Privacy Notice explains that Uber may collect recordings from customer support and that Uber may share customer data with third parties, including with customer support platform and service providers. *See, e.g.*, Ex. 8 at 11, 12 (explaining that Uber may "share data with our affiliates, subsidiaries, service providers and partners" including third-party "[c]ustomer support platform and service providers").

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct. Executed on June 22, 2026, in Oakland, California.

*/s/ Carlos Martinez*
Carlos Martinez