KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Google Cloud Contact Center AI Privacy Litigation* | Lead Case No. 3:23-cv-5437-RFL<br>Consolidated Case No. 3:24-cv-06225-RFL<br>Consolidated Case No. 3:25-cv-10015-RFL<br>Consolidated Case No. 3:25-cv-10765-RFL<br>Consolidated Case No. 5:26-cv-02327-RFL<br><br>**GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Pursuant to Fed. R. Civ. P. 12(b)(6).**<br><br>Date: September 29, 2026<br>Time: 10:00 a.m.<br>Courtroom: 15 — 18th Floor<br>Judge: Hon. Rita F. Lin<br><br>Date Filed: October 23, 2023<br><br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ....................................................................................................2

II. BACKGROUND ....................................................................................................5

A. Google's customer support telephone software answers customer service calls and then provides customer assistance to customer service representatives. ................5

B. Home Depot, Uber, Discover, and Verizon respectively told Plaintiffs that their customer service calls were recorded and shared with third parties. ............................6

C. Google requires all its customers to provide these kinds of privacy disclosures to secure end-user consent before its customers can use the Google Services. ...........10

D. Notwithstanding these privacy disclosures, Plaintiffs allege they did not know third-party service providers like Google could record and analyze their calls. .........10

III. ARGUMENT ....................................................................................................11

A. Plaintiffs' action fails because Google's alleged customers told them that third parties like Google could record and assist with their customer service calls. ............11

B. Plaintiffs' action fails because they cannot allege that Google willfully or intentionally intercepted their customer service calls without consent. ......................14

C. Plaintiff Price cannot state a Section 632 claim as a matter of law. ...........................17

1. Price's customer service call to Discover was not a "confidential communication" because she knew that Discover would record it. ...................17

2. Section 632 applies only to physical "equipment" that is not connected to a transmission line, not integrated software like the Google Services. ..............18

D. Plaintiff Samaco does not state a Section 637.5 claim because he does not allege that he subscribes to Verizon's satellite or cable television services. ...............19

E. Plaintiffs cannot state a claim based on calls to Google's virtual agent. .....................20

IV. CONCLUSION ....................................................................................................20

# TABLE OF AUTHORITIES


Page(s)

**Federal and State Cases**

*In re Apple Data Priv. Litig.*, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ....21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....21

*Briskin v. Shopify Inc.*, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ....4, 21

*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ....4, 21

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ....4, 21

*Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....5, 21

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013) ....3, 21

*Flanagan v. Flanagan*, 27 Cal.4th 766 (2002) ....21

*Frio v. Super. Ct.*, 203 Cal. App. 3d 1480 (1988) ....21

*Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....3, 21

*Garcia v. Haskett*, 2005 WL 8162617 (N.D. Cal. Dec. 21, 2005) ....21

*Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024) ....21

*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) ....3, 21

*Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) ....21

*Hammerling v. Google, LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ....21

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 21

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 21

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 21

*M.D. v. Google LLC*,
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ........ 21

*Maghen v. Quicken Loans Inc.*,
94 F. Supp. 3d 1141 (C.D. Cal. 2015), *aff'd* 680 F. App'x 554 (9th Cir. 2017) ........ 4, 21

*Malinowski v. Martin*,
104 Cal. App. 5th 559 (2024) ........ 21

*Manier v. Triple Lift Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ........ 4, 21

*People v. Ratekin*,
212 Cal. App. 3d 1165 (1989) ........ 21

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........ 21

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 21

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 5

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ........ 21

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) ........ 21

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 21

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........ 3, 21

*Snyder v. G6 Hosp. LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025) ........ 21

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 4, 21

*TBG Ins. Services Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002) ....21

*Tsering v. Meta Platforms, Inc.*,
2026 WL 1433958 (N.D. Cal. May 21, 2026) ....4, 21

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ....21

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ....21

**Federal and State Statutes**

18 U.S.C. § 2510 ....21

Cal. Pen. Code § 502 ....4, 21

Cal. Pen. Code § 630 ....2, 4, 21

Cal. Pen. Code § 631 ....2, 3, 5, 21

Cal. Pen. Code § 632 .... *passim*

Cal. Pen. Code § 637.5 ....2, 5, 21

Cal. Pen. Code § 637.6 ....21

**Other Authorities**

Device, Black's Law Dictionary (12th ed. 2024) ....21

Device, Merriam-Webster Dictionary Online (2024) ....21

**GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 29, 2026 at 10:00 a.m., or as soon thereafter as possible, before the Honorable Rita F. Lin in Courtroom 15, on the 18th Floor of the Philip Burton Federal Building, 450 Golden Gate Avenue, CA 94102, Google LLC will and hereby does move to dismiss the third amended consolidated complaint filed by Plaintiffs James Fox, Peter Samish, Peter Barulich, India Price, Chelsea Marquez, and Paolo Samaco ("Plaintiffs") with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The specific issues raised through Google's motion to dismiss are as follows:

1. Whether Plaintiffs cannot state any claim under the California Invasion of Privacy Act ("CIPA") because they agreed that third-party service providers like Google could record and assist with customer service calls to the business they called;
2. Whether Plaintiffs cannot state any CIPA claim because Google did not willfully or intentionally intercept their communications without their consent;
3. Whether Plaintiff Price cannot state a Section 632 claim under CIPA fails because her call was not a confidential communication and did not involve equipment;
4. Whether Plaintiff Samaco cannot state a Section 637.5 claim under CIPA because he does not allege that he is a cable or satellite television subscriber; and
5. Whether Plaintiffs cannot state their CIPA claims based on calls with Google.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, Google's request for judicial notice and the supporting declaration of Ian Kanig with the exhibits attached thereto, and on all pleadings and papers on file or to be filed in this action, on the arguments of counsel, and on any other matters properly before the Court.

Dated: June 22, 2026 KEKER, VAN NEST & PETERS LLP

By: */s/ Ian Kanig*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
IAN KANIG

Attorneys for GOOGLE LLC

## I. INTRODUCTION[1]

Despite years of pleading amendments changing the parties, allegations, and theories, Plaintiffs' third amended consolidated complaint against Google fails to state a claim. Plaintiffs' core allegation is that Home Depot, Uber, Discover, and Verizon used Google's customer support software to record and assist with their customer service telephone calls without their consent. But these businesses told Plaintiffs they use third-party service providers like Google to record and assist with customer service calls in unambiguous disclosures that Google strictly requires all its customers to provide. Google reasonably and properly relies on its customers' disclosures to provide its legitimate and lawful services. Plaintiffs' action should be dismissed with prejudice.

The services that Google allegedly provides to Home Depot, Uber, Discover, and Verizon are part of Google's Cloud Contact Center AI suite of services (the "Google Services"). Dkt. No. 112 ("TACC") ¶¶ 1–3. Plaintiffs allege that when a customer of one of these businesses calls its customer support line, Google directly receives the call and assists the customer through a virtual agent. *Id.* ¶¶ 25–26. If the customer requests to speak with a representative, the call is transferred to the business, along with a record of the conversation up until that point. *Id.* ¶ 26. While the customer and the customer service representative are talking, the Google Services may provide the customer service representative with a running record of the call, reference materials that may assist the customer, and guidance about how to handle the customer's questions. *Id.* ¶¶ 29–31.

Plaintiffs allege that because no one told them Google provides the Google Services to the business that they called for customer support, Google violated three provisions of the California Invasion of Privacy Act ("CIPA") that prohibit various forms of wiretapping and eavesdropping. TACC ¶¶ 115–25 (asserting Section 631(a) wiretapping and nonconsensual interception claims); *id.* ¶¶ 126–35 (asserting Section 632 confidential eavesdropping claim as to Plaintiff Price); *id.* ¶¶ 136–47 (asserting Section 637.5 television eavesdropping claim as to Plaintiff Samaco). These CIPA claims are factually baseless and legally defective for a variety of independent reasons.

[1] Google has concurrently moved to compel Plaintiffs Price, Marquez, and Samaco to individual arbitration in accordance with their respective arbitration agreements with Uber, Discover, and Verizon. Accordingly, Google brings this motion to dismiss their claims in the alternative to those motions to preclude any possibility that Google is waiving its third-party arbitration rights.

**Consent.** Plaintiffs' action fails as a matter of law because Home Depot, Uber, Discover, and Verizon respectively told them that their customer service calls would be recorded and used by third-party service providers to provide customer service. Kanig Decl., Exs. D–F at 1, 6–8 (Home Depot collects "audio recordings" from "customer care calls" through "service providers" that "help us communicate with you" for "customer care"), Exs. I–K at 1, 3, 6, 9 (Uber collects "call recordings" from "customer support" calls using "[c]ustomer support platform and service providers" to provide "customer support"), Ex. L at 3 (Discover disclosed that "Authorized Parties may record or monitor any calls between you and the Authorized Parties," which include "service providers"), Ex. Q at 1–2 (Verizon collects "voice recordings" from "calls . . . with our service and support representatives" through "service providers" for customer "support"). Five of six Plaintiffs allege that they are accountholders with the business they called. TACC ¶¶ 7 (Fox is a Home Depot accountholder); *id.* ¶ 8 (Samish and Home Depot); *id.* ¶ 10 (Price and Discover); *id.* ¶ 11 (Marquez and Uber); *id.* ¶ 12 (Samaco and Verizon). Every accountholder with these businesses must agree to their Terms and Privacy Policy in order to create an account. Kanig Decl., Exs. A–C (Home Depot), Exs. G–H (Uber), Ex. L (Discover) & Ex. P (Verizon). Thus, these Plaintiffs have admitted they authorized third-party services like the Google Services.

These authorizations preclude these Plaintiffs' claims. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (affirming dismissal with prejudice of Section 631 and 632 claims on this basis); *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019–20 (9th Cir. 2013) (same for Section 632 claim). Plaintiffs cannot avoid dismissal with their "conclusory" allegations that they did not consent. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020). This pleading rule also applies with full force to Plaintiff Barulich, the one Plaintiff who does not allege he is an accountholder with the business that he called (Home Depot). Given that Home Depot discloses the conduct at issue, he must ***at least*** allege that he was not presented with its Privacy Policy before making his customer service calls. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135 (N.D. Cal. 2015). He does not do so. Thus, the entire third amended consolidated complaint is subject to dismissal.

**No criminal intent.** Just as fundamentally, Google could not have acted with the willful

criminal intent required to violate CIPA. Google has always required all its customers to secure all requisite consent from their end users before using the Google Services. Kanig Decl., Exs. T–U § 3.2. Beyond the fact that Google's alleged customers secured all requisite consent, even if there were some defect in their disclosures, Google's strict contractual instructions preclude the possibility that Google had the "conscious[] and deliberate[]" goal to intercept communications without consent. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (dismissing CIPA claims on this basis); *Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *3 (C.D. Cal. Apr. 15, 2026) (same); *Briskin v. Shopify Inc.*, 2026 WL 161441 at *4 (N.D. Cal. Jan. 21, 2026) (same). Even "mere awareness that [a nonconsensual] interception might occur" is insufficient to allege willfulness and is "not the right way to think about intent." *Doe I*, 741 F. Supp. 3d at 840.

Indeed, this Court has held that nearly identical contractual instructions from a third party preclude privacy claims under statutes providing a ***lesser*** criminal intent standard. *See Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, at *1 (N.D. Cal. May 21, 2026) (Lin, J.) (dismissing with prejudice claims under the California Computer Data Access and Fraud Act on this basis). Here, Plaintiffs do not allege Google was even ***aware*** that their calls were intercepted without consent, let alone that they had the conscious and deliberate goal to do so. They cannot. Google reasonably and properly relies on its customers' disclosures and could not have acted willfully.

**No Section 632 liability.** Plaintiff Price cannot state a Section 632 claim as a matter of law. Section 632 excludes from its protection "***any . . . circumstance*** in which the parties to the communication may ***reasonably expect*** that the communication ***may be*** . . . ***recorded***." Cal. Pen. Code § 632(c) (emphasis added). Beyond the fact that Discover told her that third-party service providers may record customer service calls, Discover told her ***it*** would record the call. Kanig Decl., Ex. L at 3. That disclosure separately bars Plaintiff Price's Section 632 claim. *Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1145–46 (C.D. Cal. 2015), *aff'd* 680 F. App'x 554, 555 (9th Cir. 2017). Indeed, even if Discover had not made this disclosure, "conversations with customer service agents are generally recorded" and it is "objectively unreasonable" to conclude they are confidential. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023); *accord D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10 (S.D. Cal. Oct. 24, 2023). In

any case, Section 632 applies only to extrinsic "equipment," not software that is connected to the telephone line. *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023).

**No Section 637.5 liability.** Additionally, Plaintiff Samaco's Section 637.5 claim—which prohibits cable and satellite television companies from making secret recordings of conversations had by television subscribers—has no applicability because Samaco does not allege that he is a ***television subscriber***. *See* Cal. Pen. Code § 637.5(l) ("The provisions of this section . . . set forth minimum state standards for protecting the privacy of subscribers to . . . television services"); *see also* TACC ¶ 12 (Samaco allegedly subscribes to Verizon's ***Wi-Fi*** and ***mobile satellite*** services).

**No virtual agent liability.** Plaintiffs cannot state any claims based on their conversations with Google's virtual agent. Google was the ***only*** other participant on those calls. TACC ¶¶ 25–27 (alleging these initial calls with virtual agents are "routed" ***from Google*** to the business). A defendant cannot violate Section 631 when it is the only other call participant because there is no interception of a call between other parties. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). Further, Plaintiffs Price and Samaco do not allege that they shared any information with Google's virtual agent that is required to state their respective Section 632 and 637.5 claims. TACC ¶¶ *Id.* ¶¶ 98–100, 130–31. Thus, Plaintiffs cannot state any claim based on Google's virtual agent.

Plaintiffs' third amended consolidated complaint should be dismissed with prejudice.

## II. BACKGROUND

### A. Google's customer support telephone software answers customer service calls and then provides customer assistance to customer service representatives.

Plaintiffs allege that Google provides customer support telephone software called Google Cloud Contact Center AI to Home Depot, Uber, Discover, and Verizon. TACC ¶¶ 1–3. They allege that this software provides two distinct services: (1) a virtual agent that answers calls and attempts to resolve the customer service issue; and (2) call recording and customer assistance for customer service representatives to whom calls may be transferred by Google's virtual agent.

**Virtual agent.** When a customer calls one of these businesses' retail customer service lines, a virtual agent provided by the Google Services first answers the call. *Id.* ¶ 25. Google is the party that directly receives and answers this initial part of the customer service call. TACC ¶

25, n.2 (citing Kanig Decl., Exs. A–C (explaining that calls are routed directly to Google)). Thus, the only parties to this initial call are the customer and Google, and not the business itself. *Id.* During these calls, Plaintiffs allege that the Google Services record any conversations with the virtual agent for use by a customer service representative if the call is later transferred. *Id.* ¶ 26.

Plaintiffs allege that they called Home Depot, Uber, Discover, or Verizon and spoke with one of these virtual agents. *Id.* ¶ 58 (Fox); *id.* ¶ 66 (Samich); *id.* ¶ 73 (Barulich); *id.* ¶ 81 (Price); *id.* ¶ 89 (Marquez); *id.* ¶ 98 (Samaco). They do not allege any facts about what the virtual agent said to them or what they said to the virtual agent on these calls, if anything at all. *Id.* Instead, Plaintiffs allege only that they were "not aware, nor did [they] have any reason to suspect, that the virtual agent was being provided by a third party, Google," and not the business they called. *Id.*

**Call recording and assistance.** Plaintiffs allege that a caller can then request to speak with a customer service representative if their issue is not resolved by Google's virtual agent. *Id.* ¶ 26. If they do, the telephone company providing the line transfers the phone call from Google's virtual agent to a customer service representative who works for the business they are calling. *Id.* Google sends over a record of the conversation between the caller and the virtual agent, if any, and the caller and the customer service representative then discuss the customer service issue. *Id.* During that call, Plaintiffs allege that the Google Services may provide a running record of the call and may recommend helpful reference materials and suggested responses. *Id.* ¶¶ 29–31.

### B. Home Depot, Uber, Discover, and Verizon respectively told Plaintiffs that their customer service calls were recorded and shared with third parties.

Plaintiffs Fox, Samish, Price, Marquez, and Samaco admit they are accountholders of the business that they called. TACC ¶¶ 7 (Fox and Home Depot); *id.* ¶ 8 (Samish and Home Depot); *id.* ¶ 10 (Price and Discover); *id.* ¶ 11 (Marquez and Uber); *id.* ¶ 12 (Samaco and Verizon). To become an accountholder, Plaintiffs were required to agree to their terms. Kanig Decl., Exs. A–C at 1 (Home Depot), Exs. G–H at 1 (Uber), Ex. L at 1 (Discover) & Ex. P at 1 (Verizon).

From the time that Plaintiffs called Home Depot, Uber, Discover, and Verizon until the present day, their Privacy Policies have all disclosed to their customers and the public that any calls to their customer service centers are recorded and used by third-party service providers.

**Home Depot.** Plaintiffs Fox, Samish, and Barulich allege that they called Home Depot's customer service center, respectively, on September 15, 2023, March 23, 2023, and in and about October 2023. TACC ¶ 56 (Fox); *id.* ¶ 64 (Samish); *id.* ¶ 72 (Barulich). At each of those times, Home Depot's Privacy Policy was materially identical and disclosed the following practices. *See* Kanig Decl., Ex. D (March 2023), *id.*, Ex. E (September 2023); *id.*, Ex. F (October 2023).

At the top of the very first page, the Home Depot Privacy Policy discloses that it collects the personal information of customers and visitors while "interacting with you" and uses it for a variety of business purposes. Kanig Decl., Exs. D–F at 1. These interactions include "Phone and email communications with us" and "Interactions with our authorized service providers." *Id.*

Home Depot then unambiguously explains in a section entitled "**What Do We Collect?**" that it collects "audio recordings" from "customer care calls." *Id.* at 6. In doing so, Home Depot collects all information provided by callers on those calls. *Id.* Critically, in the section entitled "**How Do We Collect Information?**," Home Depot also explains that it collects this call information directly—and also ***indirectly***—through "Service Providers," "analytics providers," and other "services providers that operate on our behalf and collect information." *Id.* at 7.

Home Depot then explains in a section entitled "**Information Disclosures**" that it "may disclose your information for our business purposes." *Id.* at 8. Third parties receiving customer information include "third parties who perform services on our behalf," including "Providers of digital analytics services," and "Third parties that help us communicate with you." *Id*. This section specifies that "Video/Audio Recordings" are shared with "Service Providers." *Id.* "Service providers" may then "process [that] information on [Home Depot's] behalf." *Id.* at 6.

Home Depot further explains in the section entitled "**How Do We Use Information?**" that information collected is used for a variety of business purposes, including "[t]o respond to you and provide you with goods and services you request"; "[p]roviding you with information," "[r]esponding to a product or service review," "[t]o improve our business, products, and services," and "[t]o communicate with you about your account or our relationship." *Id.* at 7.

**Uber.** Plaintiff Marquez alleges that she called Uber's customer service center in or about September 2025. TACC ¶ 11. At that time (and at all times since then), Uber has maintained two

Privacy Notices, one for riders and one for drivers. Marquez does not allege whether she is a rider or a driver, but at the time of her alleged customer service call, both Privacy Notices made the same disclosures regarding audio recordings of customer service calls. *See generally* Kanig Decl., Exs. I–K. For that reason and for ease of reference, Google refers to the rider policy.

The Uber Privacy Notice explains the "personal data ('data') we collect, how it's used and shared, and your choices regarding this data." *Id.*, Exs. I–J at 1. In the first section, entitled "**Data collections and uses**," Uber discloses that it collects "**User content**," which includes "the data that we collect when you . . . Contact Uber for customer support or other inquiries." *Id.* at 3. This customer service call data includes "call recordings." *Id.* In the section of the Uber Privacy Notice entitled "**Data sharing and disclosure**," Uber discloses that it "share[s] your data with . . . service providers." *Id.* at 9. These service providers include "[c]loud storage providers" and "[c]ustomer support platform and service providers." *Id.* Uber then explains in the section entitled "**How we use data**" that this content is used "**For customer support**," which "includes investigating and addressing user concerns" and "monitoring and improving our customer support responses and processes[.]" *Id.* at 6. Uber also explains that it uses user content "**For research and development**," including "for analysis, research and product development, including training machine learning models," which "helps us make our services more convenient and easy to use, enhance the safety and security of our services, and develop new services and features." *Id.*

**Discover.** Discover discloses to its accountholders and the public that third-party service providers monitor and record customer service calls in multiple locations. In the Discover Terms, to which Plaintiff Price necessarily agreed, in the section entitled "**Our Communications with You**," Discover requires that accountholders "agree that the Authorized Parties may record or monitor any calls between you and the Authorized Parties." *Id.*, Ex. L at 3. The "Authorized Parties" are defined as "[Discover], our Affiliates, and agents, including service providers[.]" *Id.*

Additionally, in the Discover California Privacy Notice, which is provided to and applies to California residents like Plaintiff Price, Discover explains that "we collect, use, disclose, share, and retain Personal Information relating to California residents in a variety of contexts[.]" *Id.*, Ex. O at 1. "Personal Information" includes "sensory data," such as "call recordings." *Id.*

The Discover California Privacy Notice then discloses that "[w]e may collect Personal Information to operate, manage, and maintain our business, to provide our products and services, for vendor management purposes, and to accomplish our business purposes and objectives." *Id.* at 2. Discover collects this data "[d]irectly from you" and ***indirectly*** through "[s]ervice providers . . . with whom we have a contractual relationship to perform services on our behalf[.]" *Id.* at 1. This data is used to, among many things, (1) "provide customer service," (2) "conduct research and data analysis," (3) "maintain or service accounts," (4) "audit functions, including auditing interactions with consumers," and (5) "maintain and enhance a product or service[.]" *Id.* at 2.

**Verizon.** The Verizon Privacy Policy "describes the information we collect, how it is used and disclosed, your choices about uses and disclosure and your rights under certain privacy laws." *Id.*, Ex. Q at 1. In the first section entitled, "**What information does Verizon collect?**," Verizon explains that "[w]e collect information when you interact with us and use our products and services." *Id.* There, Verizon explains that it collects, directly and ***indirectly*** through "service providers acting on our behalf," "information you provide," like "voice recordings." *Id.*

In the section entitled, "**We use information to provide you with services and enhance your experiences with us**," Verizon discloses that it uses this information, among other things, to: (1) "[d]eliver and maintain products and services," (2) "[p]rovide account-related services and information," (3) "[h]elp you with service and technical support issues or questions," (4) "[h]elp us improve and personalize your services," and (5) "[r]esearch, develop and market new products and services[.]" *Id.* Verizon also says it "may use automated processing, including artificial intelligence, to assist us with these uses" and that "we may use machine learning techniques to train algorithmic models with information we have about you and other customers[.]" *Id.* at 1–2.

In the section entitled, "**We use some types of information for additional purposes**," Verizon then discloses that it uses "[i]nformation, including recordings, from your calls . . . with our service and support representatives" for additional purposes: (1) "[t]o help train and allow employees, service providers, and systems to better serve you"; (2) "[t]o secure your account"; "(3) "[t]o provide customized technical support"; (4) "[t]o assist you with device settings"; and (5) "[t]o personalize your experience and make our marketing more relevant to you[.]" *Id.* at 2.

And in the section entitled, "**Does Verizon disclose information it has about me?,**" Verizon explains that "[w]e disclose information within Verizon, with service providers who do work on our behalf, and with third parties as further described in this section." *Id.* at 2.

**C. Google requires all its customers to provide these kinds of privacy disclosures to secure end-user consent before its customers can use the Google Services.**

Google requires all customers of the Google Services to provide privacy disclosures like these. Before any customer can use the Google Services, the customer must agree to Google's Cloud Terms of Service and Service Specific Terms. TACC ¶ 51, n.27 (citing Google's Cloud Service Specific Terms, which incorporate the Cloud Terms of Service); *see also* Kanig Decl., Exs. R–W. The Google Cloud Terms of Service instruct all customers of the Google Services to obtain all necessary consent from their end users before they implement the Google Services:

> *Privacy.* Customer is responsible for any consents and notices required to permit (a) Customer's use and receipt of the Services and (b) Google's accessing, storing, and processing of data provided by Customer (including Customer Data, if applicable) under this Agreement.

*Id.*, Exs. T–U § 3.2. Customers must comply with this or face termination. *Id.* §§ 1.5, 14.19.

**D. Notwithstanding these privacy disclosures, Plaintiffs allege they did not know third-party service providers like Google could record and analyze their calls.**

Plaintiffs are ***silent*** about the privacy disclosures that Google requires all its customers to provide to their end users. Instead, Plaintiffs conclusorily allege only that "[n]either [the business they called] nor Google procured [their] prior consent, express or otherwise, to have [Google] eavesdrop on [their] conversation with [that business]." TACC ¶¶ 62, 70, 77, 85, 93, 102.

Solely on the basis of that one conclusory allegation, Plaintiffs assert that Google violated three provisions of CIPA. All Plaintiffs assert that Google violated Section 631 by intentionally wiretapping and willfully intercepting without their consent their customer service calls to the business that they called. *Id.* ¶¶ 115–25. Plaintiff Price also asserts that Google violated Section 632's prohibition against eavesdropping on confidential communications when Discover used the Google Services during her customer service call. *Id.* ¶¶ 126–35. And Plaintiff Samaco asserts that Google violated Section 637.5's prohibition on recording the communications of cable or

satellite television subscribers during his customer service call to Verizon. *Id.* ¶¶ 136–47. For these claims, Plaintiffs seek declaratory relief, statutory damages, and restitution. *Id.*, Prayer.

## III. ARGUMENT

Plaintiffs cannot state their claims against Google because their basic factual premise is demonstrably false. As set out above in detail, Home Depot, Uber, Discover, and Verizon require all their customers to agree (and otherwise disclose to the general public) that they may record—***directly and indirectly through third-party service providers***—all customer service calls to their customer service centers in order to provide customer support services. A reasonable consumer reading those disclosures could only conclude that third-party service providers were allowed to record the contents of their customer service calls in real time and use them to provide customer care. Further, in view of Google's strict contractual requirement that all customers of the Google Services secure the consent of their end users before implementing them, Google could not have willfully or intentionally wiretapped or intercepted Plaintiffs' calls without consent. Plaintiffs do not even try to allege facts that plausibly show Google acted to willfully violate their privacy. For these reasons, and for the additional claim-specific reasons addressed below, Plaintiffs' action fails in its entirety. These factual and legal flaws cannot be cured by any possible amendment.

### A. Plaintiffs' action fails because Google's alleged customers told them that third parties like Google could record and assist with their customer service calls.

Plaintiffs' action is fundamentally predicated on their claim that they did not know their customer service calls could be recorded and used by third-party service providers like Google. Section 631(a) requires an "unauthorized" wiretap or an interception "without the consent of all parties to the communication." Cal. Pen. Code § 631(a). Section 632 requires recording "without the consent of all parties to a confidential communication." *Id.* § 632(a). Section 637.5 requires listening "without obtaining the express written consent of the subscriber." *Id.* § 637.5(a)(1).

Thus, Plaintiffs must plead lack of consent to state all of their CIPA claims. *See Smith*, 262 F. Supp. 3d at 955, *aff'd*, 745 F. App'x at 8 (Section 631 and Section 632 require the plaintiff to plead lack of consent); *Faulkner*, 706 F.3d at 1019–20 (same for Section 632); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (same for Section 631); *Perez v.*

*Romantix Online, Inc.*, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025) (same); *Snyder v. G6 Hosp. LLC*, 2025 WL 2426613, at *2 (C.D. Cal. Aug. 18, 2025) (same); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2–3 (N.D. Cal. July 28, 2021) (same); *Garcia*, 78 F. Supp. 3d 1125, 1135 (N.D. Cal. 2015) (same for the "written consent" element of Section 637.6 that mirrors Section 637.5); Further, like any element of a claim asserted in federal court, a plaintiff's lack of consent must be plausibly alleged. *M.D. v. Google LLC*, 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025). Allegations that are "conclusory" do not suffice. *Google Assistant*, 457 F. Supp. 3d at 828.

"In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith*, 745 F. App'x at 8; *accord L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *4 (N.D. Cal. Oct. 10, 2025). "Courts consistently hold that terms of service and privacy policies . . . can establish consent" in CIPA cases. *Perez*, 2025 WL 3085786, at *2 (quoting *Silver*, 2021 WL 3191752, at *4; citing *Smith*, 745 F. App'x at 8). Unambiguous disclosures in privacy policies are no less effective because they are broad. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal with prejudice); *Lakes*, 777 F. Supp. 3d at 1057 ("highly granular disclosure[s]" are not required).

Plaintiffs have not plausibly pleaded lack of consent to the Google Services. As an initial matter, Plaintiffs' conclusory allegations that they did not consent are insufficient standing alone. A "threadbare recital of the language of [the consent element of a CIPA statute is] precisely the kind that *Iqbal* prohibits." *Faulkner*, 706 F.3d at 1020 (affirming dismissal with prejudice of CIPA claim on this basis) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Google Assistant*, 457 F. Supp. 3d at 828 (rejecting virtually identical "conclusory" allegations of lack of consent as insufficient to state a claim). Yet that is all Plaintiffs allege here. TACC ¶ 62 (Fox); *id.* ¶ 70 (Samish); *id.* ¶ 77 (Barulich); *id.* ¶ 85 (Price); *id.* ¶ 93 (Marquez); *id.* ¶ 102 (Samaco).

Plaintiffs cannot cure this pleading defect. As set out above in detail, Home Depot, Uber, Discover, and Verizon broadly and unambiguously told their customers and the public that they record customer service calls through third-party service providers to provide customer support. Kanig Decl., Exs. D–F at 1, 6–8 (Home Depot), Exs. I–K at 1, 3–9 (Uber), Ex. L at 3 (Discover),

Ex. P at 1–2 (Verizon). There is no other reasonable interpretation of these disclosures.

Five of six Plaintiffs expressly authorized these customer service practices when creating their account with the business that they called. *See* TACC ¶¶ 7 (Fox created an account with Home Depot); *id.* ¶ 8 (same for Samish); *id.* ¶ 10 (same for Price and Discover); *id.* ¶ 11 (same for Marquez and Uber); *id.* ¶ 12 (same for Samaco and Verizon); *see also* Kanig Decl. Exs. A–C, G–H, L & Q (each business requires accountholders to agree to their Privacy Policy to create an account). Accordingly, their claims should be dismissed with prejudice. *Smith*, 262 F. Supp. 3d at 955, *aff'd*, 745 F. App'x at 8 (affirming dismissal of Section 631 and Section 632 claims on this basis); *Lakes*, 777 F. Supp. 3d at 1057 (dismissing Section 631 claims); *Perez*, 2025 WL 3085786, at *3 (same); *Snyder*, 2025 WL 2426613, at *2 (same); *Silver*, 2021 WL 3191752, at *2–3 (same); *Garcia*, 78 F. Supp. 3d at 1135 (same for CIPA claim requiring written consent).

*Smith* is exemplary of this rule. In that case, a court in this District considered whether the defendant's privacy policy sufficiently disclosed to its accountholders that it collects data when they visit third-party websites using certain cookie technologies. *Smith*, 262 F. Supp. 3d at 953. The defendant disclosed in its Privacy Policy to all accountholders that "[w]e collect information when you visit or use third-party websites and apps that use our Services" using "Cookies and similar technologies" in order to "serve you ads." *Id.* at 953–54. The plaintiffs alleged that these disclosures were too "vague" and "broad" to be enforceable with respect to the specific cookie technologies that the defendant employed to collect data on third-party websites. *Id.* at 954. The district court disagreed and dismissed. *Id.* These disclosures "disclose[d] the precise conduct at issue" and thus required dismissal. *Id.* (collecting cases). The Ninth Circuit affirmed. *Smith*, 745 F. App'x at 8–9. It was immaterial that the defendant did not disclose the precise method of collection or use that occurred; all that mattered was that the disclosures broadly encompassed the data collection and use. *Id.* The same is true here, but with even greater force. The disclosures at issue in *Smith* involved internet tracking technologies that are substantially more opaque than the easy-to-understand technology at issue here—telephone call recording and assistance services. Five Plaintiffs admit that they agreed to these disclosures and can never state their CIPA claims.

Plaintiff Barulich, who does not allege whether he had an account with the business that

he called (Home Depot), fares no better. Barulich is silent about whether he lacked notice of Home Depot's Privacy Policy. This tactical omission is insufficient to avoid dismissal given that Home Depot disclosed the precise practices at issue. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 856 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) (dismissing similar privacy claims on this basis because "[n]owhere do Plaintiffs allege that they did not find these policies or otherwise lacked notice of them"); *Garcia*, 78 F. Supp. 3d at 1135–37 (same). This defect is particularly glaring because it is now a "common practice that companies monitor customer service phone lines" and it is objectively unreasonable to conclude that those calls are not recorded or monitored. *D'Angelo*, 2023 WL 7006793, at *10; *Swarts*, 689 F. Supp. 3d at 747.

### B. Plaintiffs' action fails because they cannot allege that Google willfully or intentionally intercepted their customer service calls without consent.

There is another fundamental reason why Plaintiffs' action fails as a matter of law. CIPA is a criminal statute with a criminal intent requirement that "only extends to willful or intentional conduct." *Triple Lift*, 2026 WL 1295546, at *3 (quoting *Doe I*, 741 F. Supp. 3d at 844). Section 631 requires that a defendant "intentionally" use an "unauthorized" wiretap on a telephone line or "willfully" intercept communications without consent. Cal. Pen. Code § 631(a). Much the same, Section 632 requires that a defendant secretly record a conversation with "the purpose or desire of recording a confidential conversation" or "the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation." *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018). And although Section 637.5 does not contain an express criminal intent requirement, courts interpret similar CIPA statutes to require "wrongful intent." *E.g.*, *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 401–08 (S.D. Cal. 2018).

Thus, "mere awareness that [a nonconsensual] interception might occur" is insufficient to state any CIPA claim and is "not the right way to think about intent." *Doe I*, 741 F. Supp. 3d at 840; *accord Triple Lift*, 2026 WL 1295546, at *3; *Shopify*, 2026 WL 161441 at *4; *Rojas*, 20 Cal. App. 5th at 435. Instead, CIPA encompasses only "conscious[] and deliberate[]" interceptions of communications without the consent of all parties involved. *Doe I*, 741 F. Supp. 3d at 840. In this case, Plaintiffs do not allege that Google even had ***awareness*** that their communications were

intercepted without their consent, let alone that Google was ***deliberately*** doing so. Standing alone, that pleading defect precludes a finding of intent sufficient to state their CIPA claims.

More importantly, that pleading defect is incurable. Google has always required all its customers to secure all requisite consent from end users before using the Google Services. Kanig Decl., Exs. T–U § 3.2. In view of Google's strict contractual requirement and the unambiguous Privacy Policies of the businesses that Plaintiffs allege were customers of the Google Services, Google ***could not*** have willfully intercepted Plaintiffs' communications without consent. *Triple Lift*, 2026 WL 1295546, at *3; *Shopify*, 2026 WL 161441 at *4; *Doe I*, 741 F. Supp. 3d at 840. Indeed, even in cases where the plaintiff has alleged that a business's privacy policy does not sufficiently disclose the challenged practices, unlike as in this case, courts still hold that such a consent defect is insufficient to establish the requisite criminal intent of a third-party service provider like Google. *Shopify*, 2026 WL 161441 at *5 (explaining that even if there is a consent defect despite a service provider's instructions, "[the third-party service provider's] state of mind is the same, regardless of what merchants . . . ultimately do with their privacy policy"). Thus, even if Plaintiffs could amend their complaint to allege that there is a defect in Google's alleged customers' privacy policies, which there isn't, that would not establish Google's willfulness. *Id.*

This Court has enforced similar criminal intent requirements to dismiss with prejudice similar statutory and other invasion-of-privacy claims in materially indistinguishable cases.

In *Tsering v. Meta Platforms, Inc.*, the Court recently dismissed with prejudice claims under the California Computer Data Access and Fraud Act ("CDAFA") and under the California Constitution and common law for invasion of privacy on this precise basis. 2026 WL 1433958, at *1. In their initial complaint, the plaintiffs alleged that Meta had "acquired and tracked third-party application users' geolocation and other data without their consent through the development and dissemination of its Facebook software development kit[.]" *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *1 (N.D. Cal. Jan. 12, 2026). The plaintiffs asserted that Meta violated these CDAFA provisions because Meta had (1) "knowingly accesse[d] and without permission" used computer data and (2) "knowingly and without permission accesse[d] or cause[d] to be accessed any computer[.]" *Id.* at *3 (quoting Cal. Pen. Code § 502(c)(1), (7)). Meta moved to dismiss

because the plaintiffs did not allege that Meta had knowingly accessed and used data without the permission of the end users of third-party apps who had used its software development kit. *Id.*

The Court agreed with Meta and dismissed the initial complaint. The Court explained that "the phrase 'knowingly and without permission' . . . requires that an individual be aware both that they are using data or accessing a computer and that they are doing so without permission." *Id.* at *4 (citing *People v. McDaniel*, 22 Cal. App. 4th 278, 285 (1994), and *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438 (2002)). "Otherwise," the Court correctly reasoned, "CDAFA would apply to individuals who knowingly access a computer or use data under the reasonable but mistaken belief that they had permission." *Id.* If that interpretation of CDAFA's criminal intent standard were correct, as the plaintiffs contended, "[SDK developers] would be liable for receiving data about users even if [they] had received false assurances from a third-party app developer that users had consented to this sharing of their data." *Id.* "In essence, developers would be ***strictly liable*** for other parties' misdeeds or misinformation to consumers. Nothing in CDAFA's text or purpose supports such an expansive interpretation." *Id.* (emphasis added). Thus, even though the plaintiffs alleged that Meta knew that it was collecting geolocation data from end users, "[t]hose allegations are insufficient, without more, to raise a plausible inference that Meta knew the third-party app developers had not sought permission from the users to access the location data at issue." *Id.* Compounding this defect, the "privacy policies [of the app developers] do disclose that user geolocation data may be shared with third-party advertising partners" like Meta, even if the plaintiffs "did not consent to Meta's collection and use of geolocation data." *Id.* at *4–5. For these reasons, the plaintiffs' CDAFA claims (and invasion-of-privacy claims) failed. *Id.* at *4–7.

The *Tsering* plaintiffs amended their complaint but could not cure this defect. 2026 WL 1433958, at *1. The plaintiffs newly alleged that Meta was on "inquiry notice" to ensure that app developers were not non-consensually sharing information and was "willfully blind" to the fact that geolocation data was being shared with it, in violation of the business terms for its software-development kit that require app developers to not share sensitive information with it. *Id.* The Court again disagreed, explaining that "[t]he mere receipt of allegedly sensitive user information does not plausibly suggest that the recipient would (or should) know that such information was

received without consent." *Id.* "Ultimately, Plaintiffs do not allege any facts 'tending to exclude the possibility' that Meta lacked knowledge of the developers' consent practices." *Id.* (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)). Further, even if Meta were on "inquiry notice" that it was receiving unauthorized data from app developers about end users, that would not establish a knowing violation of CDAFA or an intentional violation of privacy. *Id.* at *2. The Court explained that a "knowingly" criminal intent standard requires "proof of actual knowledge." *Id.* (citing *In re A.L.*, 38 Cal. App. 5th 15, 22 (2019)). Thus, the plaintiffs' CDAFA and invasion-of-privacy claims were properly dismissed with prejudice. *Id.*

*Tsering* instructs that dismissal with prejudice is even more appropriate in this case. Just like CDAFA, the willfulness and intentional criminal intent standard in the CIPA statute modifies each element of the offenses. *Tsering*, 2026 WL 89320, at *1 (citing *McDaniel*, 22 Cal. App. 4th at 285, and *Hawkins*, 98 Cal. App. 4th at 1438). Thus, to state their CIPA claims, Plaintiffs must allege that Google willfully or intentionally intercepted their customer service calls without their consent. *Triple Lift*, 2026 WL 1295546, at *3; *Shopify*, 2026 WL 161441 at *4; *Doe I*, 741 F. Supp. 3d at 840; *Rojas*, 20 Cal. App. 5th at 435. Indeed, willfulness and intentionality are higher intent standards than mere knowledge: Google must have "acted consciously and deliberately" to intercept Plaintiffs' calls without their consent. *Doe I*, 741 F. Supp. 3d at 840. Here, there is no allegation that Google was even ***aware*** any calls were non-consensually intercepted, let alone that Google had the ***conscious and deliberate goal*** to intercept such communications without consent. Further, given that (1) Google instructs its customers to secure all requisite consent from end users before using the Google Services and (2) Home Depot, Uber, Discover, and Verizon made these disclosures to Plaintiffs, Plaintiffs can never plead that Google had sufficient criminal intent to intercept without consent. *Tsering*, 2026 WL 1433958, at *1; *Doe I*, 741 F. Supp. 3d at 840.

### C. Plaintiff Price cannot state a Section 632 claim as a matter of law.

Plaintiff Price cannot state a Section 632 claim for two additional, claim-specific reasons.

#### 1. Price's customer service call to Discover was not a "confidential communication" because she knew that Discover would record it.

Setting aside the fact that Plaintiff Price agreed third-party service providers like Google

could record and monitor her customer service call, Discover also plainly disclosed to her that it could record her customer service calls ***itself***. That separately precludes her Section 632 claim.

Section 632 excludes from its protection "***any . . . circumstance*** in which the parties to the communication may ***reasonably expect*** that the communication ***may be*** . . . ***recorded***." Cal. Pen. Code § 632(c) (emphasis added); *accord Flanagan v. Flanagan*, 27 Cal.4th 766, 777 (2002). Thus, the reasonable expectation that a communication may be recorded ***at all*** precludes a Section 632 claim. *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026). Because Discover told Plaintiff Price that her call may be recorded by Discover, her customer service call was not "confidential" as a matter of law. Kanig Decl., Ex. L at 3; *Maghen*, 94 F. Supp. 3d at 1145–46, *aff'd* 680 F. App'x 554 (dismissing Section 632 claim on this same basis).

Further**,** even if Discover had not told Plaintiff Price that it records customer service calls, "conversations with customer service agents are generally recorded" and thus it is "objectively unreasonable" to think otherwise. *Swarts*, 689 F. Supp. 3d at 747. "A reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms[.]" *TBG Ins. Services Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 449 (2002). This inquiry does not turn on "the content of the conversation," *Flanagan*, 27 Cal. 4th at 776, but on whether the caller has an objectively reasonable expectation the call would not be recorded, *Frio v. Super. Ct.*, 203 Cal. App. 3d 1480, 1488 (1988). Because it is now a "common practice that companies monitor customer service phone lines," it is objectively unreasonable to conclude that these calls are confidential. *D'Angelo*, 2023 WL 7006793, at *10; *accord Swarts*, 689 F. Supp. 3d at 747.

Further, Plaintiff Price alleges nothing about "the locations of the conversation[]" that she had with Discover. That means that she has failed to establish that she had a reasonable expectation of privacy in the context of her specific call to Discover's customer service line. *Google Assistant*, 457 F. Supp. 3d at 817 (N.D. Cal. 2020); *see also Malinowski v. Martin*, 104 Cal. App. 5th 559, 572 (2024) (holding that a conversation in a public place is not confidential).

#### 2. Section 632 applies only to physical "equipment" that is not connected to a transmission line, not integrated software like the Google Services.

Plaintiff Price's Section 632 claim also fails because it applies only to "electronic

amplifying or recording device[s]," Cal. Pen. Code § 632(a), meaning "***equipment*** which is ***not connected to any transmission line***." *People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989) (emphasis added); *accord Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (Section 632 covers "mechanical device[s]"). This precedent accords with the plain meaning of "device": "a piece of equipment," *e.g.,* a "recording device." Device, Merriam-Webster Dictionary Online (2024); Device, Black's Law Dictionary (12th ed. 2024) ("A mechanical invention . . . an apparatus or an article of manufacture"). For that reason, "software does not constitute a 'device' under [Section 632 of] the CIPA," and Price's Section 632 claim fails. *Microsoft*, 2023 WL 8780879, at *8.[2]

Even if telephone software were a device within the meaning of Section 632, Plaintiffs also admit that the Google Services are "connected to" the "transmission line." *See Ratekin*, 212 Cal. App. 3d at 1168 (distinguishing Section 631 claims, which concern connected interceptions, from Section 632 claims, which concern disconnected recordings); TACC ¶¶ 25–31 (alleging the Google Services are enabled by software integrated into the "telephony" system of the customer). Because that software is "connected to" the "transmission line," the Google Services are not actionable under Section 632. *Garcia v. Haskett*, 2005 WL 8162617, at *7 (N.D. Cal. Dec. 21, 2005) (citing *Ratekin*, 212 Cal. App. 3d at 1168) (dismissing Section 632 claim on this basis)).

**D. Plaintiff Samaco does not state a Section 637.5 claim because he does not allege that he subscribes to Verizon's satellite or cable television services.**

Plaintiff Samaco's Section 637.5 claim also independently fails for the straightforward reason that it applies only to cable and satellite ***television*** subscribers, not telephone subscribers.

Section 637.5(a)(1) provides that "[n]o person who owns, controls, operates, or manages a ***satellite or cable television corporation***, or who leases channels on a satellite or cable system shall: (1) Use any electronic device to record . . . any conversations that take place inside a

[2] Some courts have held to the contrary, but those decisions improperly relied on the Federal Wiretap Act to do so. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 956 (N.D. Cal. 2024); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 857 (W.D. Wash. 2024). That statute uses vastly broader language than Section 632: it covers any "electronic, mechanical, or other device," which is defined as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." *See* 18 U.S.C. §§ 2510(4), (5). Thus, the Wiretap Act is intended to cover ***anything*** capable of interception, including software, whereas Section 632 is intended to cover only ***mechanical devices*** that acoustically amplify or electronically record.

***subscriber's*** residence, workplace, or place of business, without obtaining the express written consent of the subscriber." Cal. Pen. Code § 637.5(a)(1) (emphasis added). Although the term "subscriber" is undefined, the statute declares that "***[t]he provisions of this section*** . . . set forth minimum state standards for protecting the privacy of ***subscribers to cable television services***[.]" *Id.* § 637.5 (l) (emphasis added). The legislative history confirms this interpretation. Cal. Bill Anal., S.B. 1090 Assem. (Jul. 10, 2001) (before adding cable satellite providers, the statute "[p]rohibit[ed] . . . monitoring by cable television providers of subscribers of cable services").

Because Plaintiff Samaco alleges that he subscribes only to "Verizon's Wi-Fi service and mobile satellite services," not its cable television or satellite television services (to the extent that Verizon even offers those services), TACC ¶ 96, his claim should be dismissed with prejudice.

**E. Plaintiffs cannot state a claim based on calls to Google's virtual agent.**

Finally, Plaintiffs cannot state any claims based on their conversations with Google's virtual agent. Plaintiffs allege that their initial calls were answered by Google's virtual agent, not the business they called. TACC ¶¶ 25–27 (alleging these initial calls are subsequently "routed" ***from Google*** to the business they called). Google was thus the ***only*** other participant on those initial calls. But "California law is well settled that a party to the communication is not liable for recording their own conversation under section 631(a)." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1106 (C.D. Cal. 2023) (discussing *Rogers*, 52 Cal. App. 3d at 899, and collecting cases).

Further, Plaintiff Price, the only Plaintiff asserting a Section 632 claim, does not allege she shared ***any*** confidential information with Google's virtual agent. TACC ¶¶ 130–31. Because she does not allege that Google recorded a confidential communication during this initial call, she cannot state a Section 632 claim on that basis. *Google Assistant*, 457 F. Supp. 3d at 817. The same is true of Plaintiff Samaco's Section 637.5 claim: he does not allege that he shared ***any*** "subscriber information" with Google's virtual agent. *Id.* ¶¶ 98–100. Thus, Plaintiffs cannot state any of their claims to the extent they are based on their calls with Google's virtual agent.

## IV. CONCLUSION

For the foregoing reasons, and because Plaintiffs cannot allege additional facts that would cure the fatal defects in their complaint, Plaintiffs' action should be dismissed with prejudice.

Dated: June 22, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Ian Kanig*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
IAN KANIG

Attorneys for GOOGLE LLC