KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

*In re Google Cloud Contact Center AI Privacy Litigation*

Lead Case No. 3:23-cv-5437-RFL
Consolidated Case No. 3:24-cv-06225-RFL
Consolidated Case No. 3:25-cv-10015-RFL
Consolidated Case No. 3:25-cv-10765-RFL
Consolidated Case No. 5:26-cv-02327-RFL

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF GOOGLE'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED COMPLAINT**

Date: September 29, 2026
Time: 10:00 a.m.
Ctrm: 15, Floor 18
Judge: Hon. Rita F. Lin

Date Filed: October 23, 2023

Trial Date: Not Yet Set

# GOOGLE'S REQUEST FOR JUDICIAL NOTICE

Plaintiffs allege that Home Depot, Uber, Discover, and Verizon ("Alleged Customers") used Google's customer support software ("Google Services") to record and assist with their customer service calls without their consent. Dkt. No. 112 ("TACC") ¶¶ 1–3, 25–31. On that basis, they allege that Google violated three provisions of the California Invasion of Privacy Act ("CIPA") that prohibit various forms of wiretapping and eavesdropping. *Id.* ¶¶ 115–47. These claims require the criminally willful or intentional interception of communications without consent. Google's Mot. to Dismiss ("MTD") at 11–14 (lack of consent), 14–17 (criminal intent).

Google moves to dismiss Plaintiffs' third amended consolidated complaint for failing to state a claim because, among other things: (1) the Alleged Customers told Plaintiffs that their respective customer service calls would be recorded and used by third-party service providers to provide customer service; and (2) Google lacked the criminal intent required to violate CIPA because Google contractually required all its customers to secure all requisite consent from their end users before using the Google Services. *Id.* at 11–14 (consent), 14–17 (no criminal intent).

In support of its motion to dismiss, Google respectfully requests that the Court incorporate by reference and judicially notice: (1) the Alleged Customers' Terms and Privacy Policies; and (2) Google's contract with customers of the Google Services. The Terms and Privacy Policies are incorporated because, as the Court recently held, Plaintiffs' privacy claims "necessarily depend[] on application of [these terms and] privacy policies" to allege that the Alleged Customers "failed to disclose" the business practice at issue. *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *2 (N.D. Cal. Jan. 12, 2026) (Lin, J.) (quoting *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015)). Google's alleged contract with the Alleged Customers is incorporated because Plaintiffs repeatedly allege its existence and rely upon it to state all of their CIPA claims. TACC ¶¶ 3, 14, 33, 45 (alleging and relying upon Google's contract); *Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, at *1, n.1 (N.D. Cal. May 21, 2026) (Lin, J.). Separately, all of these materials are subject to judicial notice as publicly-available internet records, the existence of which Plaintiffs cannot tactically avoid and the authenticity of which they cannot contest. *Zhang v. Twitter Inc.*, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023) (collecting similar cases).

## I. INCORPORATION-BY-REFERENCE AND JUDICIAL NOTICE DOCTRINES

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts may consider documents extrinsic to the complaint under the incorporation-by-reference doctrine if their "authenticity is not contested and the plaintiff's complaint necessarily relies on [them]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation modified), *abrogated on other grounds as suggested by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). A plaintiff's complaint necessarily relies on an extrinsic document "if the plaintiff refers extensively to the document ***or*** the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (emphasis added; citations omitted). Thus, incorporation is proper where the "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *accord Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). When a document is incorporated by reference, district courts treat it as part of the complaint and "assume that its contents are true for purposes of a motion to dismiss[.]" *Ritchie*, 342 F.3d at 908.

A district court may also consider any matters that are subject to judicial notice. *Swartz v. KMPG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). A matter is subject to judicial notice when it is "not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

## II. DOCUMENTS SUBJECT TO INCORPORATION AND JUDICIAL NOTICE

In support of its motion to dismiss, Google respectfully requests that the Court incorporate by reference and take judicial notice of the following documents relied upon in the complaint.

**Home Depot Terms.** Attached to the Declaration of Ian Kanig ("Kanig Decl.") as

**Exhibit A** is a true and correct copy of the Home Depot My Account Terms and Conditions that was in effect on March 23, 2023, when Plaintiff Samish alleges that he called Home Depot. *See* TACC ¶ 64. Attached thereto as **Exhibit B** is a true and correct copy of the Home Depot My Account Terms and Conditions that was in effect on September 15, 2023, when Plaintiff Fox alleges that he called Home Depot. *See id.* ¶ 56. And attached thereto as **Exhibit C** is a true and correct copy of the Home Depot My Account Terms and Conditions that was in effect in October 2023, when Plaintiff Barulich alleges that he called Home Depot. *See id.* ¶ 72.

**Home Depot Privacy Policy.** Attached to the Kanig Declaration as **Exhibit D** is a true and correct copy of the Home Depot, Inc. Privacy & Security Statement that was in effect on March 23, 2023, when Plaintiff Samish alleges that he called Home Depot. *See* TACC ¶ 64. Attached thereto as **Exhibit E** is a true and correct copy of the Home Depot, Inc. Privacy & Security Statement that was in effect on September 15, 2023, when Plaintiff Fox alleges he called Home Depot. *See id.* ¶ 56. And attached thereto as **Exhibit F** is a true and correct copy of the Home Depot, Inc. Privacy & Security Statement that was in effect in October 2023, when Plaintiff Barulich alleges he called Home Depot. *See id.* ¶ 72.

**Uber Terms.** Attached to the Kanig Declaration as **Exhibit G** is a true and correct copy of Uber's U.S. Terms of Use for riders that was in effect in September 2025, when Plaintiff Marquez alleges that she called Uber. *See* TACC ¶ 87. And attached thereto as **Exhibit H** is a true and correct copy of Uber's Platform Access Agreement for drivers. *See id.*

**Uber Privacy Policies.** Attached as **Exhibit I** is a true and correct copy of the Uber Privacy Notice for Riders that was in effect on September 2, 2025, during the time period when Plaintiff Marquez alleges that she called Uber. *See* TACC ¶ 87. Attached hereto as **Exhibit J** is a true and correct copy of the Uber Privacy Notice for Riders that was in effect on September 30, 2025, during the time period when Plaintiff Marquez alleges that she called Uber. *See id.* Attached as **Exhibit K** is a true and correct copy of the Uber Driver Privacy Policy that was in effect in September 2025, when Plaintiff Marquez alleges that she called Uber. *See id.*

**Discover Terms.** Attached to the Kanig Declaration as **Exhibit L** is a true and correct copy of Discover's Terms and Conditions that were in effect in September and October 2025,

when Plaintiff Price alleges she called Discover's customer service center. *See* TACC ¶ 79.

**Discover Privacy Policies.** Attached to the Kanig Declaration as **Exhibit M** is a true and correct copy of the Discover Personal Loans Consumer Privacy Notice that was in effect in September 2025, during the time period when Plaintiff Price alleges that she called Discover. *See id*. Attached thereto as **Exhibit N** is a true and correct copy of the current version of the Discover Personal Loans Consumer Privacy Notice, which was in effect in October 2025, during the time period when Plaintiff Price alleges that she also called Discover. *See id*. And attached thereto as **Exhibit O** is a true and correct copy of the Discover California Privacy Notice that was in effect in September and October 2025, when Plaintiff Price alleges that she called Discover. *See id*.

**Verizon Terms.** Attached to the Kanig Declaration as **Exhibit P** is a true and correct copy of the Verizon Mobile Customer Agreement that was in effect in March 2026, when Plaintiff Samaco alleges he called Verizon. *See* TACC ¶ 95.

**Verizon Privacy Policy.** Attached to the Kanig Declaration as **Exhibit Q** is a true and correct copy of the Verizon Privacy Policy that was in effect in March 2026, when Plaintiff Samaco alleges he called Verizon. *See* TACC ¶ 95.

**Google Customer Contracts.** Attached to the Kanig Declaration as **Exhibit R** is a true and correct copy of Google's Service Specific Terms that was in effect from February 9, 2023 through March 26, 2023. Attached thereto as **Exhibit S** is a true and correct copy of the current version of Google's Service Specific Terms, effective June 8, 2026. Attached thereto as **Exhibit T** is a true and correct copy of Google's Cloud Terms of Service that was in effect from February 6, 2023 through April 18, 2023. Attached thereto as **Exhibit U** is a true and correct copy of the current version of Google's Cloud Terms of Service, effective June 1, 2026. Attached as **Exhibit V** is a true and correct copy of Google's Cloud Platform Services Summary that was in effect from February 16, 2023 through March 29, 2023. And attached as **Exhibit W** is a true and correct copy of the current version of Google's Cloud Services Summary, effective June 8, 2026.

///

///

///

## III. ARGUMENT

### A. Plaintiffs incorporate by reference the Alleged Customers' Terms and Privacy Policies because their privacy claims necessarily depend on them.

Plaintiffs incorporate by reference the Alleged Customers' Terms and Privacy Policies (Exhibits A–Q) into their operative complaint. While Plaintiffs "do[] not explicitly allege the contents of" Alleged Customers Terms and Privacy Policies, incorporation is proper because all of their CIPA claims necessarily "depend[] on the contents of" those Terms and Privacy Policies. *See Knievel*, 393 F.3d at 1076; *see also Parrino*, 146 F.3d at 706 (incorporating contract that the plaintiff omitted from the complaint but whose claims depended upon it). The fundamental basis for Plaintiffs' claims is that Google allegedly wiretapped and intercepted their customer service calls with the Alleged Customers without their consent. TACC ¶¶ 115–47. But the Alleged Customers' Terms and Privacy Policies that govern the recording and use of customer service calls with the Alleged Customers disclosed this precise practice. MTD at 11–14. For that reason, incorporation of these materials is proper. *Knievel*, 393 F.3d at 1076; *Parrino*, 146 F.3d at 706.

The Court recently applied this rule to incorporate similar materials by reference in a similar case. In *Tsering v. Meta Platforms*, the plaintiffs alleged that Meta had "acquired and tracked third-party application users' geolocation and other data without their consent through the development and dissemination of its Facebook software development kit[.]" 2026 WL 89320, at *1. To support this claim, the plaintiffs alleged that the third-party app developers had "failed to disclose" that Meta was tracking their data. *Id.* at *2. On that basis, they asserted that Meta had violated the California Computer Data Access and Fraud Act ("CDAFA") because Meta had (1) "knowingly accesse[d] and without permission" used computer data and (2) "knowingly and without permission accesse[d] or cause[d] to be accessed any computer[.]" *Id.* at *3 (quoting Cal. Pen. Code § 502(c)(1), (7)). The plaintiffs also asserted that Meta had invaded their privacy under the California Constitution and common law on the same basis. *Id.* at *7. In its motion to dismiss, Meta requested incorporation of the privacy policies of the third-party app developers that had allegedly used its SDK to show that they had disclosed those precise practices. *Id.* at *2. The Court held that incorporation of these privacy policies was proper because the plaintiffs'

claims "necessarily depend[] on application of [those] privacy policies" to allege that the third-party app developers "failed to disclose" the challenged data practice. *Id.* at *2 (quoting *Garcia*, 78 F. Supp. 3d at 1136 (incorporating by reference terms and privacy policies on this basis)); *see also Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 866–67 (N.D. Cal. 2022) (incorporation by reference of documents providing notice to the plaintiff that he alleges did not occur is proper).

Here, the case for incorporation by reference is even stronger. Beyond the fact that *Tsering* is indistinguishable, five of six Plaintiffs admit they are accountholders with the Alleged Customer to which they made a customer service call. TACC ¶¶ 7 (Fox is an accountholder with Home Depot); *id.* ¶ 8 (same for Samish); *id.* ¶ 10 (Price and Discover); *id.* ¶ 11 (Marquez and Uber); *id.* ¶ 12 (Samaco and Verizon). All accountholders for the Alleged Customers are required to agree to the Alleged Customers' Terms and Privacy Policies. Kanig Decl., Ex. A at 4, Ex. B at 1 & Ex. C at 4 (Home Depot); Ex. G at 1 & Ex. H at 1 (Uber); Ex. L at 2–4 (Discover); Ex. P at 1 (Verizon). Because these five Plaintiffs necessarily agreed to the Alleged Customers' Terms and Privacy Policies, incorporation is plainly proper. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (finding that the plaintiff's admission that he agreed to terms of service and privacy policy warranted incorporation by reference). For the sixth and remaining Plaintiff (Barulich), the case for incorporation of the Home Depot Terms and Privacy Policy is also stronger than in *Tsering* because these materials are already incorporated into the complaint with respect to the other Home Depot Plaintiffs (Fox and Samish). Because these materials are in the record, Plaintiff Barulich cannot avoid them with tactical silence. *See Ritchie*, 342 F.3d at 908 (district courts treat incorporated materials as part of the complaint).

### B. Plaintiffs also incorporated by reference Google's contract that governs the Google Services because they cite to it and rely upon it to state their claims.

Google's contract with its customers of the Google Services (Exhibits R–W) is also incorporated by reference into the complaint. Plaintiffs repeatedly allege its existence and rely upon it to state their CIPA claims. TACC ¶¶ 3, 14, 33, 45 (alleging and relying upon Google's "contract" with the Alleged Customers to provide the Google Services to state their claims). Plaintiffs leave no doubt about what Google "contract" to which they are referring: they explicitly

cite and provide a link to Google's Cloud Service Specific Terms (Exhibits R–S) and allege that these Terms govern the Google Services. TACC ¶ 51, nn. 27–28. Plaintiffs then allege that the terms of this contract permit Google to use data in a manner to which they did not consent. *Id.*; *see also id.* ¶ 123 (Section 631), ¶ 133 (Section 632), ¶ 145 (Section 637.5). Because Plaintiffs cite to and rely upon Google's Cloud Service Specific Terms to state their claims, it is subject to incorporation by reference. *Lee*, 250 F.3d at 688; *Ritchie*, 342 F.3d at 908; *Tsering*, 2026 WL 1433958, at *1, n.1 (incorporating Meta's contract with third-party app developers on this basis).

In turn, Google's Cloud Service Specific Terms incorporate by reference Google's Cloud Terms of Service (Exhibits T–U) and Google's Cloud Services Summary (Exhibits V–W). If a contract "clearly references" other "easily accessible" documents, incorporation by reference of those other documents is proper. *Alfia v. Coinbase Glob., Inc.*, 2022 WL 3205036, at *3 (N.D. Cal. July 22, 2022); *accord Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418, at *5 (C.D. Cal. Feb. 5, 2013). That is the case here. Google's Cloud Service Specific Terms provide that they are "incorporated into the agreement under which Google has agreed to provide Google Cloud Platform (as described at https://cloud.google.com/terms/services) to Customer (the 'Agreement')." Kanig Decl., Ex. T at 1 & Ex. U at 1. Google's Cloud Terms of Service confirm that it is the "Agreement" that "govern[s] Customer's access to and use of the Services" set out in the Cloud Service Specific Terms because it also defines "Services" to mean "the then-current services described at https://cloud.google.com/terms/services[.]" Ex. R at 1, 4; Ex. S at 1, 4. This is a link to Google's Cloud Services Summary, which explain that Google's "Contact Center AI" (the Google Services) is a "Google Cloud Platform" service subject to these terms. Ex. V at 3; Ex. W at 4. Thus, Google's Cloud Terms of Service and Google's Cloud Terms of Service are the terms that govern the Google Services (as explained in Google's Cloud Services Summary) and are properly incorporated by reference. *Knievel*, 393 F.3d at 1076; *Swartz*, 476 F.3d at 763.

Google's alleged contract with the Alleged Customers is relevant to Google's motion to dismiss because it demonstrates that Google could not have had the requisite criminal intent to willfully or intentionally have wiretapped or intercepted Plaintiffs' calls without their consent. MTD at 14–17. That's because Google's Cloud Terms of Service strictly require its customers

are required to secure all requisite consent from their end users before using the Google Services or face contract termination. Kanig Decl., Exs. T–U § 3.2; *see also id.* § 1.5, 14.19. That strict contractual instruction precludes the plausible possibility that Google willfully or intentionally intercepted Plaintiffs' customer service calls without consent. *Tsering*, 2026 WL 1433958, at *2.

### C. The Alleged Customer Terms and Privacy Policies and Googles' contract with its customers are also judicially noticeable because they are internet records.

Finally, the Alleged Customer Terms and Privacy Policies and Google's alleged contract are also judicially noticeable because they are publicly-available internet records not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). "In general, websites and their contents may be judicially noticed." *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *accord Hammerling v. Google LLC*, 2022 WL 17365255, at *4 (N.D. Cal. Dec. 1, 2022) ("[W]ebpages . . . are regularly the subject of judicial notice in this circuit.").

For that reason, district courts in this Circuit regularly take judicial notice of the existence of publicly-available internet records and their contents, including "privacy policies" and "terms of service." *E.g.*, *Zhang*, 2023 WL 5493823, at *3; *see also, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at *3–4 (N.D. Cal. Dec. 28, 2012) (taking judicial notice of Google's "past and present" Privacy Policies); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (same for Twitter's Terms of Service); *Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983–84 (N.D. Cal. 2010) (Microsoft's Xbox Terms of Use); *Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *5 (C.D. Cal. Sept. 18, 2018) ("[T]he Court takes judicial notice of the Privacy Policy as matters of public record outside the pleadings that are not subject to reasonable dispute.") (quotation and citation omitted). This includes publicly-available internet records that are archived on the Wayback Machine, because those internet records are "inherently reliable." *Parziale v. HP, Inc.*, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020); *see also Laatz v. Zazzle, Inc.*, 682 F. Supp. 3d 791, 804 (N.D. Cal. 2023) (appropriate to take judicial notice of webpages captured via the Wayback Machine); *Erickson v. Neb. Machinery Co.*, 2015 WL 4089849, at *1, n.1 (N.D. Cal. Jul. 6, 2015) (same).

Accordingly, because the Alleged Customer Terms and Privacy Policies and Google's

alleged contract with the Alleged Customers are publicly-available internet records not subject to reasonable dispute, the Court may properly take judicial notice of their existence and contents. These materials are relevant to Google's motion to dismiss for the reasons set out above in detail.

## IV. CONCLUSION

The Court should grant Google's request for judicial notice and incorporation by reference in support of Google's motion to dismiss Plaintiffs' third amended consolidated complaint.

Dated: June 22, 2026

KEKER, VAN NEST & PETERS LLP

By: /s/ *Ian Kanig*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
IAN KANIG

Attorneys for GOOGLE LLC