**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

*In re Google Cloud Contact Center AI Privacy Litigation*

Case No. 3:23-CV-5437-RFL

**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO COMPEL ARBITRATION**

Hon. Rita F. Lin

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. DEFENDANT HAS NOT SHOWN THAT PLAINTIFF PRICE AGREED TO ARBITRATE WITH DISCOVER BY A PREPONDERANCE OF EVIDENCE .......... 1

II. DEFENDANT CANNOT INVOKE EQUITABLE ESTOPPEL TO COMPEL PLAINTIFFS TO ARBITRATE THEIR CLAIMS .......... 3

A. Plaintiffs' Claims Are Not Intertwined With Their Agreements With The Third Parties .......... 4

B. Plaintiffs' Claims Are Not Predicated On Concerted Action That Is Intertwined With Their Agreements With the Third Parties .......... 7

C. Even If Plaintiffs' Claims Are Intertwined With Third Party Agreements, They Are Not The Agreements The Arbitration Clauses Are Found In .......... 9

CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ........ 8

*AT&T Tech., Inc. v. Commc'n Workers of Am.*,
475 U.S. 643 (1986) ........ 2

*Bender v. Twilio Inc.*,
2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) ........ 6

*Britton v. Co-op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) ........ 3

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 6

*C.D. Anderson & Co. v. Lemos*,
832 F.2d 1097 (9th Cir. 1987) ........ 1

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 5, 9

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025) ........ 5, 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........ 2

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ........ 1

*Cortes v. Cabrillo Credit Union*,
2021 WL 2588858 (S.D. Cal. June 24, 2021) ........ 2

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 6

*Ford Motor Warranty Cases*,
17 Cal. 5th 1122, 570 P.3d 857 (2025) ........ 7

*Goldman v. KPMG LLP*,
173 Cal.App.4th 209 (2009) ........ 4, 7

*Houghton v. Polychain Alchemy, LLC*,
2025 WL 2965204 (9th Cir. Oct. 21, 2025) ........ 11

*Hunt v. Meta Platforms, Inc.*,
735 F. Supp. 3d 1133 (N.D. Cal. 2024) ........ 6

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) ........ 4, 7, 11

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........ 3

*Jones v. Jacobson*,
195 Cal. App. 4th 1 (2011) ........ 9, 10

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ........ 1

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 3, 4, 7, 9, 11

*L.W.A. v. LinkedIn Corp.*,
2025 WL 2780788 (N.D. Cal. Sept. 30, 2025) ........ 6

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ........ 5

*Ngo v. BMW of North America*,
23 F.4th 942 (9th Cir. 2022) ........ 3

*Olson v. FCA US, LLC*,
176 F.4th 612 (9th Cir. 2026) ........ 3, 4

*Perry-Hudson v. Twilio, Inc.*,
2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) ........ 6, 9

*Smith v. Google, LLC*,
722 F. Supp. 3d 990 (N.D. Cal. 2024) ........ 5, 6, 8, 9

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) ........ 6

## INTRODUCTION

Defendant has attempted to get rid of this case and failed. Now, Defendant is taking a new approach by arguing Plaintiffs must be compelled to arbitrate their claims based on the equitable estoppel doctrine. *See* Defendant's Motion to Compel Individual Arbitration (ECF No. 117) ("MTC").

As Plaintiffs allege in their Third Amended Consolidated Complaint (ECF No. 112) ("TACC"), they are customers of Home Depot, Discover, Uber, and Verizon, all of which are non-defendant third parties (the "Third Parties"). Defendant is of the mistaken belief that because Plaintiffs *may* have arbitration agreements with the Third Parties, Defendant is entitled to reap the one-sided benefits of compelling arbitration based on these agreements. But Defendant cannot invoke equitable estoppel because Plaintiffs' claims are not intertwined with any agreement to begin with, let alone the agreements that contain arbitration clauses, nor are Plaintiffs alleging concerted conduct between Defendant and the Third Parties.

As discussed below, Defendant's arguments fly in the face of Ninth Circuit precedent and well-established principles of arbitration, that is, a party "cannot be compelled to arbitrate an issue that it did not agree to arbitrate." *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1099 (9th Cir. 1987). Accordingly, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (citation omitted). Because of this, Defendant's motion must be denied.

## ARGUMENT

### I. DEFENDANT HAS NOT SHOWN THAT PLAINTIFF PRICE AGREED TO ARBITRATE WITH DISCOVER BY A PREPONDERANCE OF EVIDENCE

As an initial matter, Defendant cannot invoke the alleged arbitration agreement between Plaintiff Price and non-defendant Discover because Defendant has not shown Plaintiff Price ever entered into such an agreement with Discover. Defendant, "as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute

which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("[I]t is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Here, Defendant merely relies on Discover's industry practices to argue Plaintiff Price has an arbitration agreement with Discover. While the other Third Parties supplied evidence that the Plaintiffs were customers and specifically may have been provided with the relevant agreements, Discover and Defendant fail to do so for Plaintiff Price. Instead, Defendant provides a declaration from a Discover employee explaining "how consumers are presented with" Discover's Loan Agreement and Privacy Notice, the same agreements Defendant relies on here in its motion. Schwenk Decl. ¶ 3. The declaration further explains that "[s]ince at least August 2025, Discover has required website visitors to agree to Discover's Privacy Notice and Loan Agreement to apply for a personal loan via the Discover website." *Id.* ¶ 6. The declaration further provides a template loan agreement and a copy of the privacy policy in effect during 2025. *Id.* ¶¶ 7–10. Absent from the exhibits attached to the declaration is the actual loan agreement Plaintiff Price allegedly signed or assented to, or any evidence otherwise that she herself formed an agreement to arbitrate with Discover.

*Cortes v. Cabrillo Credit Union*, 2021 WL 2588858, at *3 (S.D. Cal. June 24, 2021) forecloses Defendant's argument to compel Plaintiff Price to arbitration. The defendant in *Cortes* sought to compel arbitration by providing an employee declaration stating that "the Agreement is a standard form given to every customer when they open an account" and that "it was Defendant's policy to provide the Agreement to the customer prior to signing the membership application." Just as here, "[b]esides company practice and policy, Defendant does not provide any evidence that it provided Plaintiff with the Agreement and that he assented to the terms in the Agreement on the day he opened his account." *Id.* "Therefore, because Defendant has failed to offer evidence that Plaintiff was given the Agreement and assented to the terms in the Agreement, Defendant has failed to demonstrate by a preponderance of the evidence that there was an agreement to arbitrate." *Id.*

So too here. Neither Defendant nor Discover provide any evidence that Plaintiff Price was provided with the Loan Agreement (which contains the arbitration agreement) or the Privacy Notice.

Defendant has not even shown that Plaintiff Price has a loan with Discover, as her allegations state that she "discussed details regarding a loan, what she needed the loan for, and other personal details about payment for the loan," meaning she was inquiring about obtaining a loan, not an active loan. *See* TACC ¶ 82. And even if Plaintiff Price did receive a loan from Discover, there is no evidence to indicate when that would have been. Defendant simply relies on the Discover Loan Agreement that was "in effect when Plaintiff Price allegedly called Discover about her loan" in order to compel arbitration. MTC at 5.

"It was [Google's] burden to show assent, not [Plaintiff Price's] to show lack thereof." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023). Defendant has failed to show by a preponderance of the evidence that Plaintiff Price entered an arbitration agreement with Discover through a Loan Application and therefore cannot compel Plaintiff Price to arbitration.

## II. DEFENDANT CANNOT INVOKE EQUITABLE ESTOPPEL TO COMPEL PLAINTIFFS TO ARBITRATE THEIR CLAIMS

"Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)).[1] "But a litigant who is not a party to a contract containing an arbitration agreement may compel arbitration under that agreement if contract law in the relevant jurisdiction would allow the litigant to enforce the contract." *Olson v. FCA US, LLC*, 176 F.4th 612, 617 (9th Cir. 2026). Here, Defendant seeks to enforce Plaintiffs' arbitration agreements with the Third Parties under California's doctrine of equitable estoppel. MTC at 11. "[T]he doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges

[1] Likewise, *Kramer* holds that whether a nonsignatory can invoke the delegation clause is a question for the court, because there is no clear and unmistakable agreement between Plaintiffs and Defendant to arbitrate arbitrability. 705 F.3d at 1127; *see also Ngo v. BMW of North America*, 23 F.4th 942, 946 (9th Cir. 2022) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable").

substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1128–29 (citing cases) (internal citations omitted). At its core, "[e]quitable estoppel prevents a person from enforcing only the parts of a contract that are beneficial to him while disclaiming the less desirable parts of that contract." *Olson*, 176 F.4th at 621 (citing *Kramer*, 705 F.3d at 1128).

### A. Plaintiffs' Claims Are Not Intertwined With Their Agreements With The Third Parties

Here, Plaintiffs' claims are not reliant on, or intertwined with, their agreements with the Third Parties and therefore alternative estoppel cannot be invoked. The Ninth Circuit has clearly defined the circumstances in which claims are so intertwined with the agreement that equitable estoppel is permitted. That is, the claims "must rely on" and be "based on the obligations imposed by" the underlying agreement. *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) (citing *Goldman v. KPMG LLP*, 173 Cal.App.4th 209, 92 Cal.Rptr.3d 534, 543 (2009)).

The Ninth Circuit's holding in *In re Henson* is dispositive. There, Verizon Wireless subscribers sued a third party for violating their privacy rights by contracting with Verizon to collect usage data from their mobile phones to send targeted ads. *In re Henson*, 869 F.3d at 1052. The third-party defendant sought to compel arbitration based on the Verizon customer agreement, the same one at issue here. The Ninth Circuit correctly found equitable estoppel could not be invoked to compel the plaintiffs to arbitration because in order to do so "the claims must be based on the obligations imposed by the Customer Agreement." *Id*. at 1060 (internal citations omitted). Specifically, the complaint was "replete with allegations of wrongdoing that have nothing to do with the Customer Agreement," including that the defendant "violated Verizon users' reasonable expectations of privacy" and that the defendant "used Class members' personal, private, and confidential data for commercial gain without their knowledge or consent." *Id*. at 1061. The allegations Plaintiffs bring here mirror these and also have "nothing to do with the Customer Agreement" nor do they "seek to gain any benefit from its terms." *Id.*; *see* TACC ¶¶ 27, 51–52, 63, 71, 78, 86, 94, 103. And just as the case here, the Ninth Circuit found this especially true considering

the statute the plaintiffs brought suit under allowed the plaintiffs to do so "regardless whether [plaintiffs] signed a Customer Agreement with Verizon." *Id*. Indeed, the Ninth Circuit recently denied a theory of equitable estoppel because the claims were not intertwined with the terms of an agreement, but rather "rel[ied] on rights created by California statutes[.]" *Olson*, 176 F.4th at 622.

*Smith v. Google, LLC*, 722 F. Supp. 3d 990, 994 (N.D. Cal. 2024) is further instructive. There, the plaintiffs asserted state and federal wiretapping claims, including CIPA, against Google, alleging that Google received the plaintiffs' information without their consent when using H&R Block's website. *Id*. Google moved the compel arbitration based on the plaintiffs' arbitration agreements with H&R Block, asserting equitable estoppel applied. *Id*. In applying California's doctrine of equitable estoppel as outlined in *Kramer*, the court rejected Google's attempt to enforce the arbitration agreement to which they were a non-party, finding that the "plaintiffs' claims against Google do not rely on their purported agreement with H&R Block[.]" *Id*. at 991. "[I]t is not enough for an agreement to be one but-for causal link in a chain of events leading to the circumstances underlying a claim; the claim itself must stem from or be intertwined with the agreement." *Id*. at 994. "[P]laintiffs' claims do not involve violation of any duty, obligation, term or condition imposed by the ... agreement[.]" *Id*. (internal citations omitted). Just as the case here, the Smith plaintiffs' claims "are fully viable without reference to the terms of the purported agreement." *Id*. (internal citations omitted); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1231 (9th Cir. 2013) (same).

Against this backdrop, Defendant states Plaintiffs' claims are intertwined with the Third Party agreements "because those agreements govern whether Plaintiffs consented to the sharing of their calls with Google" and "each of Plaintiffs' CIPA privacy claims require them to prove that they did not consent" to the alleged conduct. MTC at 12. CIPA does not impose any requirement on the plaintiff to prove a lack of consent. To the contrary, consent is not an element to a claim under CIPA, but rather "an affirmative defense for which defendant bears the burden of proof." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024); see also *Calhoun v. Google LLC*, 349 F.R.D. 588, 595 (N.D. Cal. 2025) ("Because case law is clear that implied consent is a defense to each cause of action at issue in this matter[.]"). The *Smith* court addressed this head on, explaining that "the claims themselves do not require considering the purported H&R Block agreement to determine

consent; the agreement is instead relevant only as a potential defense." *Smith*, 722 F. Supp. 3d at 994. Defendants relied upon authority to argue that Plaintiffs must prove consent was either decided prior to the Ninth Circuit's holding in *Calhoun*, or ignored it altogether. MTC at 12; *see Perry-Hudson*, 2024 WL 4933332, at *2 (did not address *Calhoun* or provide any other case law to support lack of consent was an element for CIPA); *Bender v. Twilio Inc.*, 2025 WL 2308484, at *6 (N.D. Cal. Aug. 11, 2025) (merely cited to the holding in *Perry-Hudson* as support); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002) (decided before *Calhoun* and does not address whether consent is an element or a defense); *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008) (same). And critically, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021), which Defendant also relies on and was a party to, states that "[c]onsent is a defense to [p]laintiffs' claims," the exact opposite of what Defendant alleges it held. *Id*.

Defendant's reliance on *Hunt v. Meta Platforms, Inc.*, 735 F. Supp. 3d 1133 (N.D. Cal. 2024) to argue intertwinement is misplaced. There, the plaintiffs brought RICO Act claims against H&R Block, Google, and Meta. *Id*. at 1136. The court permitted Google and Meta to compel the plaintiffs to arbitrate based on a theory of equitable estoppel because the plaintiffs' claims involved a "pattern of racketeering activity," an element under RICO, which included allegations regarding "fraudulent communications ... regarding H&R Block's privacy and data security policy," "fraudulent[ ] misrepresent[ations] ... that H&R Block had the authority to transmit [tax return information] to third parties under its privacy and data security policy," and "fraudulent[ ] represent[ations] in the privacy and data security policy[.]" *Id*. at 1137 (citations to the complaint omitted). "[B]ecause the claims allege fraud arising from the H&R Block agreements as **one of the elements of his RICO claims**, those claims are intimately intertwined with the H&R Block agreements[.]" *Id*. (emphasis added). This is a far cry from what Plaintiffs allege here, as the claims asserted in Plaintiffs' operative complaint are not reliant on any representations purportedly made in the Third Party agreements, and none of the representations made in the Third Party agreements are an element to Plaintiffs' claims.[2]

[2] Defendant's reliance on *Perry-Hudson*, 2024 WL 4933332, at *2, *Bender*, 2025 WL 2308484, at *8, and *L.W.A. v. LinkedIn Corp.*, 2025 WL 2780788, at *5 (N.D. Cal. Sept. 30, 2025) (MTC at 13) are again misplaced, because those holdings were premised on the incorrect notion that consent is an element of CIPA claims that plaintiffs must prove and fly in the face of Ninth Circuit precedent.

Put simply, CIPA claims, including the claims here, stem from independent actions and do not require or rely on the existence of a contract in order to be brought. The purpose of permitting equitable estoppel in instances where the claim is interwoven with the contract that contains the arbitration clause is to ensure plaintiffs do not "have it both ways – that is, he could sue the non-signatory, [Google], under the terms of the agreement containing the arbitration clause, but ignore the arbitration requirement because [Google] is a non-signatory." *In re Henson*, 869 F.3d at 1060 (citing *Goldman*, 173 Cal.App.4th 209). The Supreme Court of California also reemphasized this recently, explaining "unless a party to an arbitration agreement **has used the substantive terms of that agreement as the foundation for his claims against a nonsignatory**, there is no reason in equity why he should be forced to arbitrate his claims against the nonsignatory." *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1137, 570 P.3d 857, 866–67 (2025) (citations omitted) (emphasis added); see also *id*. (denying equitable estoppel because the "claims are founded on statutory obligations and fraud allegations, not the sales contract."). Plaintiffs here are not suing Defendant "under the terms of the agreement," nor have they "used the substantive terms of that agreement as the foundation of [their] claims," and therefore equitable estoppel cannot be invoked.

### B. Plaintiffs' Claims Are Not Predicated On Concerted Action That Is Intertwined With Their Agreements With the Third Parties

The same reasons why Defendant cannot compel arbitration under the intertwinement theory of equitable estoppel foreclose them from compelling arbitration under the concerted action theory. "The doctrine of equitable estoppel applies where a signatory raises allegations of substantially interdependent and concerted misconduct by both a nonsignatory and a signatory." *Kramer*, 705 F.3d at 1132. However, "California state contract law does not allow a nonsignatory to enforce an arbitration agreement based upon a mere allegation of collusion or interdependent misconduct between a signatory and nonsignatory" unless "the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause*." *Id*. (quoting *Goldman*, 173 Cal. App. 4th at 219) (emphasis in original).

As discussed throughout, Plaintiffs' claims against Defendant are not "founded in and inextricably bound up with obligations imposed by" the Third Party agreements. *See Kramer*, 705

F.3d at 1132. Indeed, as this Court has already recognized, "Plaintiff does not allege that any of the businesses at issue granted Google permission to use the 'Customer Data to train or fine-tune' its models." *Ambriz v. Google, LLC*, 2025 WL 830450, at *1 (N.D. Cal. Feb. 10, 2025).

*Smith* is again instructive. In *Smith*, the plaintiff alleged statutory claims relating to the disclosure of his sensitive tax information from the H&R Block Website. 722 F. Supp. 3d at 992. Google, the defendant, was a nonsignatory to the H&R Block Online Services Agreement but sought to enforce the agreement's arbitration provision under the doctrine of equitable estoppel. *Id*. Despite the complaint containing specific allegations that H&R Block "was responsible for configuring" the data-disclosing tool and "made the decision to transmit data to Google," the court rejected Google's argument that it was entitled to equitable estoppel:

> These allegations generally seem to show H&R Block acting independently from Google—making its own decisions regarding the use and implementation of Google's tools without further involvement from Google. And to the extent Google acted interdependently or in concert with H&R Block, there is no indication that Google interacted differently with H&R Block than with any other third parties that use its tracking tools. Indeed, in its motion to dismiss, Google emphasizes that its tracking tools are "products available in the market" to developers, that it is web developers who "are in control of how to implement Google Analytics on their websites," and that plaintiffs do not allege "that Google instructed the Websites to transmit to Google the purported financial data—or any other type of data at all." If Google interacted with H&R Block no differently from how it interacted with any other user of its off-the-shelf tracking tools, it is difficult to see how Google's actions could be "founded in" or "intimately connected with" the specific agreement that H&R Block allegedly had with its *own* users.

*Id*. at 995 (emphasis in original).

The same circumstances that precluded the application of the equitable estoppel doctrine in *Smith* are present here and warrant the same result. That is, to the extent Plaintiffs allege interdependent conduct between Defendant and the Third Parties, Plaintiffs have made no allegations that Defendant "interacted differently with [the Third Parties] than any other third parties that use its tracking tools." *See id*. Indeed, Plaintiffs' allegations regarding the Third Parties' use of Defendant's features are uniform, and any deviations were decisions made by the Third Parties independently.

*See id.;* TACC ¶¶ 24–48 (explaining the technology offerings Google has for all clients and how the Third Parties implemented them). As in *Smith*, this Court should reject the plea to apply the equitable estoppel doctrine.

*Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332 (N.D. Cal. Dec. 2, 2024), which Defendant relies on (MTC at 14), is distinguishable. *First*, the allegations in Perry-Hudson differ from the allegations here. There, the plaintiff alleged that Twilio, the defendant non-signatory to the arbitration agreement, and Keeps, the non-defendant signatory to the arbitration agreement, entered into a "data sharing agreement" that explicitly permitted Twilio to "wiretap" his communications, and that Keeps knew it was violating the law because it received a letter from the government but continued to work with Twilio even afterward. *Id*. at 3. It was for these reasons that the court found that the plaintiff's allegations involved interdependent and concerted misconduct. *Id*. The court further found the allegation that "Twilio and Keeps made an agreement to permit Twilio to wiretap and intercept his data without his consent" was intimately founded and intertwined with the privacy policy. *Id*. Here, however, Plaintiffs do not allege an agreement to wiretap without Plaintiffs' consent was made. *Second*, and as already discussed, this decision ignored Ninth Circuit precedent that established consent is not an element of a CIPA claim that plaintiffs have the burden to disprove. *Calhoun*, 113 F.4th at 1147. But in any event, Plaintiffs here do not allege any concerted action that even rises to the level of the allegations found in *Perry-Hudson*.

### C. Even If Plaintiffs' Claims Are Intertwined With Third Party Agreements, They Are Not The Agreements The Arbitration Clauses Are Found In

A final point that would dispose of Defendant's motion to compel arbitration is that the two circumstances that permit equitable estoppel mentioned above rely solely on the "underlying contract" which contains the arbitration clause. This comports with "'the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of the **same agreement**.'" *Kramer*, 705 F.3d at 1129 (quoting *Jones v. Jacobson*, 195 Cal. App. 4th 1, 20, 125 Cal. Rptr. 3d 522, 538 (2011), *as modified* (June 1, 2011)) (emphasis added).

Here, the arbitration clauses Defendant seeks to enforce are not found in the contracts Defendant argues are "intertwined with" Plaintiffs' claims. Beginning with Plaintiff Samaco, he executed Verizon's Service Customer Receipt and Device Payment Agreement, which incorporate by reference the Verizon Customer Agreement (where the arbitration clause is found). MTC at 3. The Verizon Customer Agreement further incorporates by reference Verizon's Privacy Policy. *Id*. It is this privacy policy that Defendant argues is intertwined with Plaintiffs' claims. *See* MTC at 12 ("Plaintiff Samaco's claims cannot be resolved without review of the Privacy Policy he agreed to with Verizon, which governs what data Verizon may collect, what tools it may use to collect it, with whom it may share that data, and for what purposes.") (citing Verizon Decl., Ex. D at 1–2). Notably, there is no arbitration provision found in the privacy policy. *See* Verizon Decl. Ex. D.

Next, according to Defendant, Plaintiff Marquez agreed to Uber's Rider Terms, which includes the arbitration clause Defendant is seeking to enforce, and incorporates by reference and hyperlinks to Uber's Privacy Notice. MTC at 4. Again, it is the incorporated privacy policy that Uber argues is intertwined with the claims. MTC at 13 ("Plaintiff Marquez's claims similarly cannot be resolved without review of the Uber Privacy Notice for Riders, which expressly provides that Uber collects user content and may use it 'for analysis, research and product development.'") (citing Uber Decl., Ex. 6 at 6 and Ex. 7 at 8). And again, Uber's privacy policy does not contain an arbitration clause. *See* Uber Decl., Ex. 6 and Ex. 7.

Last, while no evidence exists to establish Plaintiff Price has an arbitration agreement with Discover, see *supra.*, Defendant states that the Loan Agreement, which contains the arbitration agreement, incorporates the privacy notice by reference, and that applicants must separately agree to the privacy notice as well. MTC at 5 (citing Discover Decl. ¶ 6). While Defendant claims Plaintiff Price's claims "cannot be resolved without review of Discover's Loan Agreement and Privacy Notice," they only cite to the privacy notice specifically. MTC at 13. And upon review of the Loan Agreement, it mentions privacy once, explaining a privacy policy exists (which arguably is not an incorporation by reference). Discover Decl. Ex. 2.

Based on these facts, none of the arbitration clauses Defendant seeks to invoke are found in any contract that could be considered intertwined with Plaintiffs' claims. Defendant admits as much

but relies solely on the privacy notices for each Third Party in making this argument. Therefore it is not the "same agreement" the arbitration clause is found in, and equitable estoppel is not permitted. *Houghton v. Polychain Alchemy, LLC*, 2025 WL 2965204, at *4 (9th Cir. Oct. 21, 2025) ("[E]quitable estoppel did not apply where the cause of action did not depend on or invoke the terms of the contract that contains an arbitration agreement.") (citing cases); *see Kramer*, 705 F.3d at 1134 (holding defendants could not invoke equitable estoppel because the contract containing an arbitration clause's relevance was limited to showing that plaintiffs purchased the Toyota at issue).

The Court need not look further than *In re Henson*, 869 F.3d at 1052. There, the theory of equitable estoppel was exactly as it is here – that the arbitration clause is found in an agreement that incorporates by reference the privacy policy, and the privacy policy is intertwined with the claims. *See In re: Anthony Henson v. U.S. District Court for the Northern District of California, Respondent, Turn, Inc., Real Party in Interest*, 2016 WL 5846111, at *8 ("The Customer Agreements expressly incorporated Verizon's Privacy Policy, which disclosed Verizon's targeted advertising programs and advertisers' use of cookies as part of those programs[.]"); *Henson v. Turn Inc.*, Case No. 15-cv-01497-JSW, ECF No. 20 (Turn Inc.'s Notice of Motion And Motion to Dismiss (or in the Alternative To Stay) This Acton to Compel Arbitration) at 9 (arguing that the Verizon subscription agreement, which contained the arbitration clause, was intertwined with the claims because "those subscriber agreements explicitly incorporated the Verizon Privacy Policy, alerting subscribers to how the advertising program worked and specifically informing them how they could opt-out"). Despite this, the Ninth Circuit solely focused its attention on the Verizon Customer agreement, as it was the contract that contained the arbitration agreement, holding that the plaintiff's "claims must be based on "*the obligations imposed by the [Customer Agreement]*." *In re Henson*, 869 F.3d at 1060 (citations omitted) (emphasis in original).

Thus, even if Plaintiffs' claims are premised on the obligations and duties set forth in the Third Party privacy policies (which they are not), they have little to nothing to do with the actual agreements between Plaintiffs and the Third Parties that contain the arbitration agreement. In other words, no arbitration clauses can be found in the alleged contracts that Defendant argues permit it to compel arbitration under equitable estoppel.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Compel Arbitration.

Dated: August 6, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Neal J. Deckant
Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

**THE SIMON LAW FIRM, P.C.**

By: /s/ Jeremiah W. Nixon

Anthony G. Simon, MO Bar #38745
Jeremiah W. Nixon, MO Bar #67148
THE SIMON LAW FIRM, P.C.
1001 Highlands Plaza Drive, Suite 300
St. Louis, Missouri 63110
Phone (314) 241-2929
Fax (314) 241-2029
asimon@simonlawpc.com
jnixon@simonlawpc.com

*Counsel for Plaintiffs*