**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re Google Cloud Contact Center AI Privacy Litigation* | Case No. 3:23-CV-5437-RFL<br><br>**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED COMPLAINT**<br><br>Hon. Rita F. Lin |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW PLAINTIFFS CONSENTED TO THE INTERCEPTION, RECORDING, AND USE OF THEIR PHONE CONVERSATIONS ..... 3

A. Plaintiffs Have Properly Pleaded That Defendant Intercepted, Recorded, And Used Plaintiffs' Phone Conversations Without Their Knowledge Or Consent ..... 3

B. Defendant Cannot Meet Its Burden Of Showing Plaintiffs Consented To Its Actions ..... 4

C. Intentional Interception Without Consent Is An Issue Of Fact ..... 8

II. PLAINTIFF PRICE STATES A VALID SECTION 632 CLAIM ..... 13

A. Plaintiff Price's Call to Discover Was a Confidential Communication ..... 13

B. Section 632 Applies To The GCCCAI Service ..... 16

III. PLAINTIFF SAMACO STATES A SECTION 637.5 CLAIM ..... 17

IV. PLAINTIFFS STATE A CLAIM BASED ON DEFENDANT'S INTERCEPTION OF THEIR INFORMATION ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ........ passim

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ........ 3

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 4

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 1, 4

*Coulter v. Bank of Am.*,
28 Cal. App. 4th 923 (1994) ........ 14

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........ 7, 15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 8, 9, 16

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 16

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 3

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) ........ 4

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 2, 14

*Flowers v. Twilio, Inc.*,
2016 WL 11684603 (Cal. Super. Ct. Aug. 2, 2016) ........ 8

*Frio v. Superior Ct.*,
203 Cal. App. 3d 1480 (Ct. App. 1988) ........ 14

*Gladstone v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 9, 10, 11, 16

*Graham v. Noom*, Inc., 533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 15

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 16, 17

*In re Apple Data Priv. Litig.*, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .......... 15

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 20

*In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 20

*In re Meta Android Priv. Litig.*, 2026 WL 1279416 (N.D. Cal. May 11, 2026) .......... 4, 5

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) .......... 3, 16

*L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 8

*Lewis v. Clarke*, 108 Cal. App. 4th 563 (2003) .......... 18

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 19, 20

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 20

*Lynch v. Express Scripts Holding Co.*, 2026 WL 1749550 (N.D. Cal. June 17, 2026) .......... 9

*Maghen v. Quicken Loans, Inc.*, 94 F. Supp. 3d 1141 (C.D. Cal. 2015) .......... 15

*O'Laskey v. Sortino*, 224 Cal. App. 3d 241 (Ct. App. 1990) .......... 14

*People v. Hawkins*, 98 Cal. App. 4th 1428 (2002) .......... 12

*People v. Mackreth*,
58 Cal. App. 5th 317 (2020) ........ 12

*People v. McDaniel*,
22 Cal. App. 4th 278 (1994) ........ 12

*People v. Ratekin*,
212 Cal. App. 3d 1165 (1989) ........ 16

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ........ 5, 14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 20

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 1, 14, 16, 19

*Rivera v. Amazon Web Servs., Inc.*,
2023 WL 4761481 (W.D. Wash. July 26, 2023) ........ 9, 11

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ........ 2, 11

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 19

*Romero v. Securus Techs.*,
331 F.R.D. 391 (S.D. Cal. 2018) ........ 9, 11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 7

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 15

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........ 16

*Taylor v. ConverseNow Technologies, Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) ........ 10, 13

*Tsering v. Meta Platforms, Inc*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 12

*Tsering v. Meta Platforms, Inc*,
2026 WL 1433958 (N.D. Cal. May 21, 2026) ........ 12

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 10

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 3

*Weiss v. City of Del Mar*,
39 Cal. App. 5th 609 (2019) .......... 18

*Wilson v. Google LLC*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025) .......... 10

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 16

**STATUTES**

Cal. Penal Code § 630 .......... 19

Cal. Penal Code § 637.5 .......... 2, 17, 18

**INTRODUCTION**

This Court has already held that Plaintiffs' core theory states a claim. In denying Defendant's prior motion to dismiss, the Court held that Plaintiffs adequately alleged that Defendant, not merely its software, "acted as an unauthorized third party to Plaintiffs' calls in violation of CIPA," because Defendant's own terms of service "create[] a plausible inference that Google has the technological capability to use the data it collects and analyzes" for its own purposes. *Ambriz v. Google, LLC*, 2025 WL 830450, at *1, 3 (N.D. Cal. Feb. 10, 2025) (Lin, J.). Tellingly, Defendant's new motion does not ask the Court to revisit that holding. Defendant no longer disputes that it is a third party to Plaintiffs' calls, that it intercepts their contents in transit, or that it does so through a covered instrument. Instead, Defendant reaches for new theories of "consent" and "criminal intent" that recycle the same basic move this Court has already rejected: pointing to someone else's paperwork to excuse Defendant's own conduct.

The Third Amended Consolidated Complaint ("TACC") alleges that when Plaintiffs called Home Depot, Discover, Uber, and Verizon (the "Third Parties"), Defendant secretly listened in. A Google "session manager" monitored each conversation after it was transferred to a human representative, and Defendant transcribed the calls in real time, analyzed their contents using natural language processing, fed "smart replies" and step-by-step coaching to the agents, and reserved the right to use the resulting data to "train or fine-tune" Defendant's own AI models, all without ever announcing its presence to a single caller. TACC ¶¶ 26–31, 50–51. Defendant charges for this service by the minute and profits from it. *Id.* ¶ 49. That is precisely the "simultaneous dissemination to an unannounced second auditor" that CIPA exists to prohibit. *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985).

Defendant's lead argument, that Plaintiffs "consented," rests entirely on the privacy policies of the Third Parties. But consent is an affirmative defense on which Defendant bears the burden, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024), and it is a quintessentially factual question ill-suited to resolution on the pleadings. More fundamentally, Defendant needed Plaintiffs' consent to its own interception, and not one of the policies it invokes mentions Google, GCCCAI, real-time third-party monitoring, agent coaching, or the training of a third party's AI models.

Defendant's "criminal intent" argument fails for a familiar reason. In its last motion, Defendant argued that its contractual restrictions on data use insulated it from liability; this Court held those contract terms "irrelevant." *Ambriz*, 2025 WL 830450, at *3. Defendant now repackages the same argument, contending that its contractual instruction that its customers obtain consent negates Defendant's own willfulness. But under settled California law, CIPA's intent element is satisfied where a defendant acts with "knowledge to a substantial certainty" that its conduct will capture confidential communications. *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018). Defendant designed, built, marketed, and priced GCCCAI for the specific purpose of capturing and analyzing the contents of customer service calls; interception is not an accident of the product but its function. TACC ¶¶ 49–53. Defendant's contrary authorities, including *Doe I*, *Tsering*, *Shopify*, and *Triple Lift*, involved defendants who instructed their counterparties *not* to send them the data at issue. Defendant issued no such instruction, and could not have, because receiving call content is what GCCCAI does.

Defendant's claim-specific arguments fare no better. *First*, Plaintiff Price's call to her bank, which she placed from her home to discuss a loan and during which she disclosed her name, account information, and personal financial details, was a confidential communication. An expectation that Discover itself might record the call says nothing about a reasonable expectation that an unannounced third party would simultaneously intercept it for its own ends. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 774–77 (2002). *Second*, the weight of authority in this District holds that recording software like GCCCAI is a "device" under Section 632. *Third*, Plaintiff Samaco's Section 637.5 claim tracks the statute's plain text, which protects "subscribers" of cable television corporations like Verizon ("television" modifies the regulated corporation, not the subscriber) and independently reaches "[a]ny person receiving subscriber information" from such a corporation. Cal. Penal Code § 637.5(a)(1), (h). Indeed, this Court has already sustained a Section 637.5 claim in this action brought by a Verizon accountholder who called from his home, without requiring any allegation of a television subscription. *Ambriz*, 2025 WL 830450, at *5–6. Finally, Defendant's virtual-agent argument attacks a claim Plaintiffs do not bring. Plaintiffs' claims rest on Defendant's continued

eavesdropping *after* their calls were transferred to human representatives, conversations to which Defendant was indisputably not a party.

Twice now, Defendant has asked this Court to look past what Defendant actually does, which is intercept and analyze the contents of confidential calls, by design and for profit, in favor of what other parties' contracts and policies say. The Court should decline the invitation again and deny the motion in its entirety.

## ARGUMENT

### I. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW PLAINTIFFS CONSENTED TO THE INTERCEPTION, RECORDING, AND USE OF THEIR PHONE CONVERSATIONS

#### A. Plaintiffs Have Properly Pleaded That Defendant Intercepted, Recorded, And Used Plaintiffs' Phone Conversations Without Their Knowledge Or Consent

Defendant argues that Plaintiffs "have not plausibly pleaded lack of consent to [Defendant's] Services." MTD at 12. Defendant is wrong. As a preliminary matter, the determination of consent under CIPA claims is a factual dispute not suitable for resolution in a motion to dismiss. *See Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) ("Defendant's consent defense turns on the outcome of multiple factual disputes[.]") (internal citations omitted). In any event, in order to plead lack of consent under CIPA, a Plaintiff need only allege that they were not informed their calls were being recorded and did not consent to monitoring by a third party. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756–57 (N.D. Cal. 2023) ("Plaintiff alleges she 'was not informed' her conversations were being 'recorded, intercepted, or eavesdropped upon,' and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage."); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (finding absence of "express prior consent" when complaint pled "neither Assurance nor ActiveProspect asked for Javier's consent prior to his filling out the insurance questionnaire"); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 941 (S.D. Cal. 2024) ("Plaintiff alleges neither he nor class members expressly or impliedly consented to any of

Defendant's actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (cleaned up).[1]

Each Plaintiff meets this pleading standard for lack of consent. TACC ¶¶ 62, 70, 77, 85. Therefore, Plaintiffs have properly pleaded that Defendant intercepted, recorded, and used their phone conversations without Plaintiffs' knowledge or consent, and Defendant has the burden to show otherwise, as explained below.

### B. Defendant Cannot Meet Its Burden Of Showing Plaintiffs Consented To Its Actions

It is Defendant's burden to show consent, not the Plaintiffs' burden to show lack of consent. *See*, *e.g.*, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears the burden of proof.") (cleaned up); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023) ("The Court finds, again, that consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.") (cleaned up). Further, Defendant must show that ***Defendant itself*** had consent from Plaintiffs to intercept Plaintiffs' phone conversations for its own purposes; it cannot impute consent based on the Third Parties' notices that *they* may record Plaintiffs' conversations for *their* own purposes.

Defendant argues that the Third Parties "broadly and unambiguously told [Plaintiffs] that they record customer service calls through third-party service providers to provide customer support." MTD at 12. Yet, "consent is strictly construed in scope, reaching only the particular conduct, or substantially the same conduct as what was agreed to." *In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *4 (N.D. Cal. May 11, 2026) (Lin, J.). Thus, even assuming this assertion by Defendant is true for all Third Parties' policies (it is not), Defendant concedes that none disclose or even come close to disclosing that Defendant specifically is recording the calls in real time and uses Plaintiffs' data for "train[ing] [and] fine-tun[ing] of AI/ML models." *See* TACC ¶ 51. "[S]eemingly

---

[1] Defendant incorrectly relies on *Faulkner* to argue Plaintiffs' allegations of lack of consent fail. MTD at 12. But in *Faulkner*, the decision did not address consent at all, but instead turned on the pleading standard for confidential communications. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) ("To prevail against the Rule 12(b)(6) motion, then, Faulkner would have to allege facts that would lead to the plausible inference that his was a confidential communication … Faulkner's complaint, at least in its present form, does not do so.").

broad text in a disclosure might not provide effective consent if it would be objectively reasonable for a person to interpret the text more narrowly." *In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *6 (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1064 (N.D. Cal. 2021) (holding that a user could reasonably believe data collection does not occur in private browsing mode when the disclosure "never mentions private browsing mode"). A policy silent on the conduct at issue cannot establish consent to it. *See Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1359 (S.D. Cal. 2024).

Here, the Court cannot find as a matter of law that a reasonable person would read the Third Parties' policies as disclosing precisely what Plaintiffs allege Defendant has done. Defendant "transcribe[s] [the] conversation in real time, analyze[s] the context of [the] conversations with [Non-Defendant Entity] using natural language processing, and suggest[s] 'smart replies' and news articles to the [Non-Defendant Entity] agent" in addition to using call recordings to train its AI models. TACC ¶¶ 51, 60, 68, 75, 83, 91, 100. Such interception and information processing is categorically different from the type described in the Third Parties' policies.

Home Depot's Privacy Policy states that it discloses customer call recording to "Service providers that process information on our behalf, such as security and fraud prevention services" for a list of limited purposes, none of which fully encompass Google's purpose and capabilities. Kanig Decl., Ex. D. Home Depot's policy never mentions Defendant by name, nor does it clearly specify the kind of real-time processing, analysis, and AI training performed by Defendant. *Id.*

Uber's Privacy Policy explains "data that **we [Uber] collect**" including "Chat logs and call recordings." Kanig Decl., Ex. J at 3 (emphasis added). It separately enumerates data shared with "Uber service providers" and names "Google, in connection with the use of Google Maps," separately from "Customer support" providers and providers of "artificial intelligence and machine learning tools." *Id.* at 12–13 (emphasis added). Naming Defendant only in connection with Maps invites the reasonable inference that Defendant is thus *not* included in the set of customer support platforms or artificial intelligence providers, else Defendant would have been mentioned there as well. Uber's policy links to Google's Privacy Policy, which discloses collecting only call "log

information" (number, time, date, duration, routing), not recordings as alleged by Plaintiffs.[2] Even making an inferential leap to include Defendant's policy within Uber's, it still does not disclose call recordings.

Discover's policy is also narrower than Defendant's conduct, stating that "Authorized Parties or their service providers may use voiceprint technology for identity verification and fraud prevention purposes." Kanig Decl., Ex. L at 3. This does not reasonably encompass real-time transcription, analysis, agent coaching, or AI training. *See* TACC ¶¶ 51, 83. Moreover, Discover's policy does not include Defendant's name nor any of its products. Kanig Decl., Ex. L at 3.

Verizon's Privacy Policy addresses web activity, not phone calls, disclosing that service providers may collect "your activity on our sites and in our apps" using "cookies, pixels, web beacons, tags, scripts." Kanig Decl., Ex. Q at 3. This is far from a disclosure that a third party will itself answer the call, receive the live audio in real time, transcribe and analyze the conversation as it occurs, coach Verizon's representatives during the call, and reserve the right to use the resulting data to train the third party's own AI models. TACC ¶¶ 25–31, 51. Indeed, the policy affirmatively forecloses that understanding. In the very section addressing disclosures to service providers, which again does not apply to phone calls, Verizon represents that it "disclose[s] information to them as necessary for them to perform work for us," and that service providers "are required to protect information they receive from us or collect on our behalf and use it only for the purposes we allow." Kanig Decl., Ex. Q at 4. A reasonable subscriber reading that representation would conclude that no service provider may exploit his call data for its own independent benefit, which is precisely the conduct that makes Defendant an unauthorized third party under this Court's prior order. *Ambriz*, 2025 WL 830450, at *3. Moreover, Verizon never mentions Defendant or its services by name and only discloses sharing with service providers via web-based technologies, not phone conversation recordings. *Id.*

None of Non-Defendant Entities' policies therefore create a reasonable expectation that Defendant (or any third party) would intercept, record, and use callers' phone conversations in the

[2] *Privacy and Terms*, GOOGLE, https://web.archive.org/web/20250930003149mp_/https://policies.google.com/privacy?hl=en-US.

ways alleged. Reasonable persons are left completely unaware of the breach of privacy occurring on the calls with the Third Parties, and just as important, they are also unaware the Defendant is capitalizing on their personal data to train and improve its AI.

Defendant again relies heavily on *Smith*, which involved a defendant whose privacy policy stated "[w]e collect information when you visit or use third-party websites and apps that use our Services" using "Cookies and similar technologies" to "serve you ads." *See* MTD at 13 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017)). But this statement in the privacy policy was exactly what the plaintiffs alleged as the misconduct. *Id.* ("[A] court in this District considered whether the defendant's privacy policy sufficiently disclosed to its accountholders that it collects data when they visit third-party websites using certain cookie technologies."). Defendant's use of this case to argue "it was immaterial that the defendant did not disclose the precise method of collection … [only that] the disclosures broadly encompassed the data collection and use," ignores the facts of Plaintiffs' allegations entirely. MTD at 13. As explained above, the Third Parties' privacy policies do not just omit the "precise method of collection," but rather they omit *who* is collecting, *what* is being collected, and the truth about *how* it is being used. The "who" is especially relevant in distinguishing*Smith*, as the policy in question was ***directly between the plaintiff and defendant*** and did not discuss whether an unannounced third party like Defendant was entitled to intercept the plaintiff's communications.

Defendant attempts to save its flawed argument by claiming it is "'common practice that companies monitor customer service phone lines' and that it is "objectively unreasonable to conclude that those calls are not recorded or monitored." MTD at 14 (quoting *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)). *D'Angelo* involved defendant's own recording of its conversations with its customer, not that an unannounced third party like Defendant. Thus, even if the Court were to find that a reasonable consumer would believe their calls with the Third Parties were recorded based on common practices (which is an issue of fact that Plaintiffs do not concede), this reasonableness only applies to the Third Parties themselves. It does not extend to an unknown, unannounced third party that is recording the calls to provide analysis and improve its own AI. Defendant cannot rely on implausibly broad readings of the Third Parties' privacy policies to protect

its independent conduct. *See Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]he complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.").

Defendant has not explained why Plaintiffs should have reasonably expected that an unannounced third party would engage in conduct not described in the Third Parties' privacy policies—that is, to intercept, record, and analyze their conversations for Defendant's own benefit. Such use of Plaintiffs' data by Defendant is not reached by even the broadest readings of the Third Parties' policies.

**C. Intentional Interception Without Consent Is An Issue Of Fact**

Defendant argues that Plaintiffs cannot state their CIPA claims because they "do not allege that Google even had awareness that their communications were intercepted without their consent, let alone that Google was deliberately doing so." MTD at 14. That argument inverts the pleading burden. As explained above, consent is an affirmative defense on which Defendant bears the burden of proof, and Plaintiffs need not plead Defendant's knowledge that consent was lacking in order to state their claims. What CIPA's intent element requires is that Defendant acted deliberately rather than by accident or mistake. That is, that Defendant intended to do the act of intercepting, recording, and analyzing Plaintiffs' conversations. Plaintiffs plead precisely that: Defendant designed, built, marketed, priced, and sold GCCCAI to do exactly what it did to Plaintiffs' calls. TACC ¶¶ 28-31, 49-53.

At the threshold, intent is a question of fact. Courts have repeatedly recognized that a defendant's intent "turn[s] on disputed questions of fact that need development on a full evidentiary record," which makes it a poor fit for a motion to dismiss. *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *12 (N.D. Cal. Oct. 10, 2025) (quoting *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023)). That is why, after "[a]cknowledging [an] apparent split in authority," the *L.B.* court adopted "the majority rule" and declined to "hold that [a defendant's] Ads Agreement and Advertising Policies are entirely dispositive of its intent at the pleadings stage," because "the question of intent should be considered on a more developed record." *Id.* at *13. *Lynch v. Express*

*Scripts Holding Co.* agrees. Even though Meta's own terms prohibited businesses from sending Meta sensitive health data, the court held it was "not a leap to infer" that the defendant knew how the technology it deployed worked and what data it transmitted, and that "the issues of knowledge, intent, and substantial assistance are better addressed on a more fully developed record." 2026 WL 1749550, at *8 (N.D. Cal. June 17, 2026). Indeed, intent is so fact-bound that in *Romero v. Securus Techs., Inc.*, a case Defendant itself cites, MTD at 14, the court declined to resolve the question as a matter of law even after full discovery, denying the plaintiffs' own summary judgment motion because "Plaintiffs fail[ed] to establish there is no genuine issue of material fact as to whether Securus had the intent necessary to violate the statute." 331 F.R.D. 391, 408 (S.D. Cal. 2018). If intent could not be resolved as a matter of law after discovery, it certainly cannot be resolved against Plaintiffs now.

*Gladstone v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024), confirms that Plaintiffs have alleged more than enough. There, as here, the plaintiff alleged that a cloud provider's contact-center product (Amazon Connect) intercepted, recorded, transcribed, and analyzed customer service calls placed to the provider's business customers, including Capital One. *Id.* at 852–53. And there, as here, the provider argued that it could not have intended any nonconsensual interception because it "contractually requires companies that use Amazon Connect to provide notice and obtain consent from their customers." *Id.* at 860. The court sustained the CIPA § 631 claim. Intent was adequately pleaded because Amazon Connect "is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities," and because Amazon featured Capital One as a "case study" on its website, "demonstrating specific awareness of the nature of Capital One's business." *Id.* As for Amazon's contractual consent requirement, the court was "not convinced that [the defendant's] inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations." *Id.* (quoting *Rivera v. Amazon Web Servs., Inc.*, 2023 WL 4761481, at *10 (W.D. Wash. July 26, 2023)). Whether the defendant "truly possessed the requisite intent will be 'tested on an evidentiary record.'" *Id.* (quoting *Doe*, 690 F. Supp. 3d at 1080).

*Taylor v. ConverseNow Technologies, Inc.* reached the same conclusion on materially similar facts. There, the defendant supplied AI-powered voice technology that answered and processed

customers' phone orders to restaurants such as Domino's. The court held that allegations that the defendant "intended to wiretap Plaintiff and members of the Classes by contracting with businesses such as Domino's to use its technology" "are sufficient to show that defendant did not stumble into recording the conversations by 'accident or mistake.'" 2025 WL 2308483, at *6 (N.D. Cal. Aug. 11, 2025) (citing *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015), and *Gladstone*, 739 F. Supp. 3d at 860).

Plaintiffs' allegations here are at least as strong. The Third Amended Complaint alleges that "[t]he GCCCAI service was designed to record and analyze real-time phone conversations," and that "when Google provided the GCCCAI service to the Non-Defendant Entities, Google understood and therefore intended to record the communications of customers who called into the Contact Centers." TACC ¶ 53. GCCCAI is not a passive tool that a customer merely points at its own calls: "Google itself is collecting the contents of any conversation" so that it can provide real-time transcription, analysis, and agent recommendations. *Id.* ¶ 50. Defendant built specific, named features to accomplish this including a "session manager" that continues monitoring the conversation after it is transferred to a human agent, real-time transcription "for agents to reference during the call or for analysis after the call," and a tool that "grabs the context of the conversation to suggest articles and real-time, step-by-step guidance." *Id.* ¶¶ 28-30. Defendant charges "$0.03 per minute" for these features and reserves the right to use the "Customer Data" it collects "to train or fine-tune any AI/ML models." *Id.* ¶¶ 49, 51. Nor can Defendant plead ignorance of what its software intercepts. Defendant contracts directly with each Contact Center customer and publicly touts those relationships, so it knows the conversations flowing through GCCCAI are consumers' calls to their bank (Discover), their telecommunications carrier (Verizon), and major consumer businesses (Home Depot and Uber), calls that routinely involve account numbers, financial details, and other private matters. *Id.* ¶¶ 33-48. In short, the software worked exactly as Defendant designed and intended it to work. These allegations of purpose, design, and profit motive "permit an inference of willfulness." *Wilson v. Google LLC*, 2025 WL 901941, at *6 (N.D. Cal. Mar. 25, 2025) (allegations that Google intercepted data to offer services "essential to Google's business" and "specifically designed" its tools to gather information support an inference of willfulness); *Gladstone*, 739 F. Supp. 3d at 860.

Against all of this, Defendant offers its contract language requiring its customers to obtain "consents and notices" from end users. MTD at 10, 15, 17. But shifting the consent obligation to others does not immunize the entity actually doing the intercepting, that is precisely the "catch-all provision" argument that *Gladstone* and *Rivera* rejected. 739 F. Supp. 3d at 860; 2023 WL 4761481, at *10. Defendant's professed reliance on its customers rings especially hollow here because Defendant receives, transcribes, and analyzes every one of the calls at issue in real time. TACC ¶¶ 28-30, 50. Defendant is thus uniquely positioned to know from the very transcripts it generates that neither Defendant nor its customers disclose its presence on the calls themselves or seek the caller's consent to its monitoring before it begins. *Id.* ¶ 52.

The result is no different under the Section 632 intent standard that Defendant itself quotes: whether the defendant acted "with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation." MTD at 14 (quoting *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018)). *Rojas* defeats Defendant's argument rather than supporting it. There, the defendant "purposefully used a full-time recording system" to record all calls on certain lines, and it had even disclosed that calls "may be recorded;" the Court of Appeal nevertheless reversed summary judgment for the defendant, holding that such a disclosure, "even assuming it is uncontested, does not conclusively establish a lack of intent." *Id.* at 430, 436. Systematically recording calls by design, with knowledge to a substantial certainty that confidential communications will be captured, satisfies the intent element whether or not any individual call is separately targeted. *Id.* Defendant's always-on GCCCAI service, which intercepts and transcribes every call to the Contact Centers it serves, is materially indistinguishable. TACC ¶¶ 28-31, 50, 53.

Defendant's contrary authorities all involve the opposite facts: defendants who told their business partners *not* to send them the data at issue. In *Doe I v. Google LLC*, the complaint itself alleged that "Google repeatedly told developers not to send personally identifiable information through use of its source code" and specifically warned health care providers not to transmit HIPAA-covered information; the court concluded that "Google purposefully acted so as not to receive" the very data at issue. 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024). *Tsering v. Meta Platforms, Inc.* is the

same: Meta's developer terms prohibited app developers from sending it the sensitive data at issue, leaving no basis to infer that Meta knew its instruction was being ignored, and the decision rested on CDAFA's distinct "knowingly and without permission" element, not on CIPA. 2026 WL 89320, at *3–4 (N.D. Cal. Jan. 12, 2026); 2026 WL 1433958, at *1–2 (N.D. Cal. May 21, 2026). *Briskin v. Shopify Inc.* and *Manier v. Triple Lift Inc.* likewise involved general-purpose web infrastructure that passively receives whatever data a merchant's website happens to transmit, such that the merchants' implementation choices, not the defendant's design, determined what was collected. MTD at 14–15. GCCCAI is nothing like those tools. Its function, for every customer alike, is to answer, listen to, transcribe, and analyze live telephone conversations. Defendant does not have to guess whether call content will reach it: receiving and processing call content is the product, and Defendant never told Home Depot, Discover, Uber, or Verizon to withhold that content. Its service could not operate without it. TACC ¶¶ 50–53.

The generic criminal-law authorities Defendant imports through *Tsering* fare no better. MTD at 17. *People v. McDaniel* concerned jury instructions in a witness-intimidation prosecution, 22 Cal. App. 4th 278, 285 (1994); *People v. Hawkins* was a criminal hacking case about a former employee accessing his former employer's systems, 98 Cal. App. 4th 1428, 1438 (2002); *In re A.L.* addressed "knowingly" in a juvenile resisting-arrest adjudication, a holding another appellate district has since rejected, *see People v. Mackreth*, 58 Cal. App. 5th 317 (2020); and *In re Century Aluminum Co. Sec. Litig.* is a securities case about share traceability. None addresses how CIPA's intent element applies to a company that builds, sells, and profits from interception technology. And *Century Aluminum*'s own pleading framework cuts in Plaintiffs' favor: a plaintiff who pleads facts "tending to exclude the possibility" that the defendant's innocent explanation is true survives dismissal. 729 F.3d 1104, 1108 (9th Cir. 2013). Plaintiffs have done exactly that by alleging that GCCCAI was designed, marketed, and priced to capture and analyze the contents of consumers' calls, not as an incidental byproduct of some unrelated service. TACC ¶¶ 49-53.

## II. PLAINTIFF PRICE STATES A VALID SECTION 632 CLAIM

### A. Plaintiff Price's Call to Discover Was a Confidential Communication

Defendant argues that Plaintiff Price had no reasonable expectation of privacy because Discover disclosed that it may record the call itself, and thus the entire Section 632 claim against Defendant is precluded. MTD at 18. Defendant is mistaken and stretches its precedents beyond what their facts can bear.

This court recently held in a remarkably similar case that "alleging the sharing of personally identifiable information and personal financial information is sufficient to allege a confidential communication took place." *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *8 (N.D. Cal. Aug. 11, 2025). Exactly parallel to Plaintiff Price's claims, the plaintiff in *Taylor* disclosed financial information to a company over the phone and was recorded by the defendant, a third-party provider of AI-enabled call-center technology. *See id.* at *1. Notably, the *Taylor* court assigned no weight to the defendant's assertions whether the plaintiff should have reasonably expected that the conversation was recorded, by the other party or by the third-party defendant. Here, Plaintiff Price called Discover to discuss a financial loan and disclosed personally identifiable and financial information as part of the conversation. TACC ¶ 82. The conversation's financial nature renders it confidential and supports a reasonable expectation that it would not be recorded and used by an unannounced third party. Therefore, at least at the pleading stage, Plaintiff Price has alleged a confidential conversation took place.

Defendant's arguments fall flat for several reasons beyond this. *First*, Defendant asserts that Plaintiff Price consented to Defendant's interception and recording of her call with Discover because of the disclosure provided by Discover. *See* MTD at 17–18 (citing Kanig Decl., Ex. L at 3). This is false. The cited passage from Discover's terms states only that "Authorized Parties or their service providers may use voiceprint technology for ***identity verification and fraud prevention purposes***," not that Defendant (as a service provider) may use the complete conversation recording to train AI models or monitor the conversation live to coach Discover's service agent. *Compare* Kanig Decl., Ex. L at 3 *and* TACC ¶¶ 30, 51. Therefore, Defendant's foundational assertion is incorrect; Discover

did not put Plaintiff Price on notice of how her confidential conversation would be intercepted and used by Defendant sufficient to meet the reasonable expectation standard. Given the conflicting language, it is not reasonable that a prudent user would "necessarily have known or learned of the [conduct] prior to acting." *Price*, 712 F. Supp. 3d at 1359. If anything, Plaintiff was led to believe an entirely different sort of involvement by Discover's "service providers."

*Second*, Defendant argues that the conversation could not be confidential because Plaintiff Price had notice that it could be recorded "***at all***." MTD at 18 (emphasis in original). This is also wrong. The *Flanagan* court held that a conversation is confidential if a party has an objectively reasonable expectation that the conversation itself is not being overheard or recorded, rejecting the view that confidentiality turns on whether the content would later be divulged to others. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) (adopting *Frio v. Superior Ct.*, 203 Cal. App. 3d 1480 (Ct. App. 1988); *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923 (1994); rejecting *O'Laskey v. Sortino*, 224 Cal. App. 3d 241 (Ct. App. 1990)). The court further clarified that the first clause of Section 632(c) includes conversations "that a party desires [] not to be overheard or recorded," i.e., "confined to the parties." *Flanagan* at 774. The second clause excludes conversations reasonably expected to be overheard or recorded without regard as to "whether [either] party expects that the *content of the conversation* may later be conveyed to a third party." *Flanagan,* 27 Cal. 4th at 774–75 (emphasis in original); *see also Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985) (distinguishing between "simultaneous dissemination" and "secondhand repetition"). If Discover had recorded the conversation and later shared it with Defendant ("secondhand repetition") the claim may be precluded, but that is not what occurred. Instead, Defendant simultaneously intercepted and recorded the phone conversation. *See, e.g.*, TACC ¶ 60. That an expectation of secondhand repetition does not annul confidentiality, read with the first clause's "confined to the parties" language, suggests that Section 632(c) excludes *only* cases in which the parties may reasonably expect that the "communication may be overheard or recorded" by a third party. A "public gathering," a "proceeding open to the public," and an "overheard" exchange all contemplate nonparties. By contending that Discover's potential recording of (and ability to subsequently share) the conversation defeats Plaintiff Price's Section 632 claim, Defendant's argument more closely aligns with the framing in *O'Laskey* that was rejected by the

*Flanagan* court. Thus, Plaintiff Price's potential expectation that Discover would record the call does not defeat her Section 632 claim.

*Third*, Defendant seeks to collapse the distinction between recordings made by counterparties versus those made by third parties. *See* MTD at 18. This too is unsupported. Regardless of whether Plaintiff Price reasonably expected Discover to record the conversation, she could not have reasonably expected that Defendant would also simultaneously record it to use for Defendant's own purposes. *See* TACC ¶ 51. Further, Defendant's recording and use of Plaintiff Price's conversation for Defendant's own benefit removes any protection it would have as an "extension" of Discover. *See Ambriz*, 2025 WL 830450, at *3 (discussing and rejecting the "extension test" from *Graham v. Noom*, Inc., 533 F. Supp. 3d 823 (N.D. Cal. 2021), where the defendant had the "capability" to independently benefit). Defendant, seeking to step into Discover's shoes, argues that whether a conversation is "recorded ***at all*** precludes a Section 632 claim." MTD at 18 (citing *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026)). However, *In re Apple* is distinguishable because its plaintiffs' claims rested on written communications sent to the defendant that were "by their very nature recorded" and therefore never confidential, whereas here the confidential communication was over the phone and Defendant was a third party rather than participant. Defendant repeats this pattern, invoking cases concerning recorded communications between the parties without acknowledging that their rulings did not extend to unannounced third parties. *See* MTD at 18 (citing *Maghen v. Quicken Loans, Inc.*, 94 F. Supp. 3d 1141 (C.D. Cal. 2015) (dismissing a Section 632 claim based on a counterparty's (not third party's) recording); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) (same, holding it is "objectively unreasonable" to think support calls are not recorded by the receiving company, but silent on third parties); *D'Angelo*, 2023 WL 7006793 (same, finding it is a "common practice that companies monitor customer service phone lines," but silent on third parties). Defendant was a third party to Plaintiff Price's conversation with Discover, and Plaintiff Price's expectation that Discover may record the call is irrelevant.

*Fourth*, Defendant incorrectly argues that Plaintiff Price "allege[d] nothing about the locations of the conversation." MTD at 18 (internal quotations omitted). But the operative complaint alleges that "Plaintiff Price called Discover[] … from her home in California." TACC ¶ 79.

**B. Section 632 Applies To The GCCCAI Service**

Defendant asserts that Section 632 precludes Plaintiff Price's claim because it applies only to "electronic amplifying or recording devices … not connected to any transmission line." MTD at 18–19 (cleaned up). In support of its argument, Defendant refers to two cases from the 1980s to frame "devices" under Section 632(a) as "mechanical devices" physically connected to "transmission lines." *Id.* (citing *People v. Ratekin*, 212 Cal. App. 3d 1165 (1989); *Ribas*, 38 Cal. 3d at 360). Defendant then relies on *Microsoft*, which held that "software does not constitute a 'device.'" *Id.* at 19 (citing *Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)). In a footnote, however, Defendant admits that subsequent cases in this court have applied the opposite interpretation. *Id.* at 19 n.2 (citing *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 956 (N.D. Cal. 2024) (holding that plaintiffs may plausibly allege that chat software is a device); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024) (holding that "device" as used in Section 632 can include software); *cf. Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 958 (E.D. Cal. 2025) ("Section 632(a), however, lacks any language suggesting that an 'electronic amplifying or recording device' must be physical in nature."). Further, the *Yockey* court explicitly declined to follow *Microsoft*'s reasoning because it inappropriately relied on cases involving Section 637.7 and were thus distinguishable. *Yockey*, 745 F. Supp. 3d at 955 n.6; *see also Doe v. Meta Platforms*, 690 F. Supp. 3d at 1080 (holding that Meta's recording "software is a device under Section 632(a)"). Finally, "the California Supreme Court has also emphasized that *all* CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier*, 2022 WL 1744107, at *2. Considering this legislative intent, "courts should focus less on the form of the data collector and more on the result." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023). Here, Defendant's chosen dictionary definition of device does not change the fact that Plaintiff Price's private personal and financial information was intercepted, recorded, and used

by Defendant without her knowledge or consent. Plaintiff Price has thus plausibly alleged that Defendant's GCCCAI software operated as a "device" recording her confidential communications.

Defendant inaccurately asserts that Plaintiff Price "admit[ted] that [GCCCAI is] connected to the transmission line" and "allege[d] [GCCCAI is] enabled by software integrated into the 'telephony' system of [Discover]." MTD at 19 (cleaned up). First, Plaintiff Price has not at any point alleged that GCCCAI was "connected" to a "transmission line." *See id.* Second, Defendant quotes a single word from the TACC out of context to imply Plaintiff alleged GCCCAI was "integrated into the 'telephony' system" in an apparent attempt to strengthen Defendant's "transmission line" argument. *Id.* In fact, the term "telephony" only appears in the TACC in a screenshot of Defendant's instructional video, the transcript of which explains that "[t]he call gets routed to an agent through the partner telephony channel. A session manager monitors the state of the conversation." TACC ¶ 26. In context, this passage explains that while the call is taking place, Defendant's "session manager" is simultaneously monitoring (recording) the conversation, as alleged by Plaintiff Price. TACC ¶ 28. Setting aside the fact that the GCCCAI software is a device, Defendant provides no support for its argument that it is "connected to" the "transmission line" aside from its misrepresentation of Plaintiff's allegations. Even if there remains a dispute as to whether or how Defendant's recording software is connected to a transmission line, such details are known only to Defendant. That determination would require discovery and a fact-intensive inquiry inappropriate at the pleading stage. Defendant has thus failed to provide a cognizable argument explaining why Plaintiff Price's Section 632 claim does not apply to GCCCAI.

## III. PLAINTIFF SAMACO STATES A SECTION 637.5 CLAIM

Defendant's argument fails because it invents a limitation found nowhere in the statutory text. Section 637.5(a)(1) prohibits any person who "owns, controls, operates, or manages a satellite or cable television corporation" from using an electronic device to "listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber." Cal. Penal Code § 637.5(a)(1). The word "television" modifies the corporation, the class of regulated defendants, not the subscriber. Nothing in subdivision (a)(1), nor in subdivision (h)'s extension of liability to "[a]ny person receiving

subscriber information from a satellite or cable television corporation," confines the statute's protections to subscribers of a video product. Defendant's construction requires the Court to rewrite "subscriber" as "cable television subscriber," adding an element the Legislature declined to include. "[Courts] cannot insert what has been omitted, omit what has been inserted, or rewrite the statute to conform to a presumed intention that is not expressed." *Lewis v. Clarke*, 108 Cal. App. 4th 563, 567 (2003), *as modified on denial of reh'g* (June 5, 2003). Plaintiff Samaco alleges that he is an account holder and subscriber to Verizon's services (TACC ¶¶ 12, 96), and that Verizon is a "cable television corporation" within the meaning of Public Utilities Code § 216.4, as incorporated by § 637.5(f)(1) (TACC ¶ 140), an allegation the Court must accept as true. Nothing more is required at the pleading stage.

Defendant's sole textual support, subdivision (l), cannot bear the weight Defendant places on it. That subdivision is a savings clause providing that the section's provisions "set forth minimum state standards" and do not preempt more protective local regulation. It is addressed to the relationship between state and local cable regulation, not to the definition of the protected class. Subdivision (l) appears nowhere among the statute's actual definitions in subdivision (f), and a "general statement of statutory purpose does not override the substantive portion of a statute where, as here, that statutory language is clear and unambiguous." *Weiss v. City of Del Mar*, 39 Cal. App. 5th 609, 622 (2019). Moreover, the statute's structure confirms that its concern is subscriber privacy generally, not television viewing: subdivision (a)(2) protects "individually identifiable information" including subscribers' "shopping choices, interests, opinions, energy uses, medical information, banking data or information, or any other personal or private information," categories having nothing to do with television. Plaintiff Samaco's allegations that Defendant monitored calls in which he discussed his bill, personal circumstances, and credit card information from inside his home (TACC ¶¶ 95, 99–100) fall within the core of the privacy interests the Legislature protected.

Finally, Defendant ignores that Plaintiff Samaco's claim independently proceeds under subdivision (h), which subjects to the statute "[a]ny person receiving subscriber information from a satellite or cable television corporation." Cal. Penal Code § 637.5(h). The elements of that provision are receipt of "subscriber information," not "television subscriber information," from a qualifying

corporation, and Plaintiff Samaco alleges precisely that: Defendant, through GCCCAI, received his account and billing information from Verizon while monitoring, transcribing, and analyzing his conversations in real time. TACC ¶¶ 100–101, 144. Defendant offers no authority for its contrary construction of either subdivision because none exists; not a single decision has adopted the atextual limitation Defendant proposes. And any residual doubt must be resolved in favor of coverage, because CIPA is a remedial statute that the Legislature directed courts to construe broadly to combat "new devices and techniques for the purpose of eavesdropping upon private communications." Cal. Penal Code § 630; *Ribas v. Clark*, 38 Cal. 3d 355, 359–60 (1985). A real-time artificial intelligence system that listens to, transcribes, and analyzes conversations occurring inside subscribers' homes is exactly the type of technological intrusion CIPA was enacted to reach.

## IV. PLAINTIFFS STATE A CLAIM BASED ON DEFENDANT'S INTERCEPTION OF THEIR INFORMATION

Defendant argues that because its virtual agent was "the only other participant" on Plaintiffs' initial calls, it cannot be liable "for recording their own conversation under section 631(a)." MTD at 20 (quoting *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1106 (C.D. Cal. 2023)). But Plaintiffs' claims are not based on that first, brief greeting. They are based on what happens next: a Google "session manager monitors the state of the conversation," and Defendant continues to eavesdrop in real time after Plaintiffs are transferred to a live, human representative, a conversation Defendant was never part of. TACC ¶¶ 26–29, 82–84, 99–100. *Rogers v. Ulrich* does not support Defendant's position. *Rogers* held only that one person on a two-person call did not violate section 631(a) by recording his own conversation, because "only a third party can listen secretly to a private conversation." 52 Cal. App. 3d 894, 899 (1975). Defendant is that third party: the "unannounced second auditor" listening in on the conversation between a consumer and a business's employee after Defendant's own role as virtual agent had already ended. *Ribas*, 38 Cal. 3d at 360–61.

*Licea* does not support Defendant's position either. In that case, the court found the third-party chat vendor was not liable only because Plaintiffs did not allege it acted "sufficiently independent" of the website operator, making it "more akin to a tape recorder" than a third-party listening in. 659 F. Supp. 3d at 1108–09. The same is not true of Defendant. The TACC alleges that

GCCCAI "is not like a tape recorder," but instead involves "Google – a separate and distinct third-party entity from the parties to the conversation" that has "the capability to use the wiretapped data it collects through GCCCAI to improve its AI/ML models." TACC ¶¶ 50–51. Using intercepted communications for its own benefit is exactly what placed the defendants outside the party exemption in the cases *Licea* relied on. *Licea*, 659 F. Supp. 3d at 1109 (discussing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019)).

*In re Google Assistant Privacy Litig.* does not support Defendant's argument that Plaintiffs Price and Samaco failed to allege confidential or subscriber information either. That claim was dismissed only because the plaintiffs did not allege any "facts regarding the participants in the conversations, the locations of the conversations, or examples of content from the conversations." 457 F. Supp. 3d 797, 817 (N.D. Cal. 2020); *see id.* at 828–29 (applying the same rule to the Section 632 claim). Plaintiffs' complaint does not have that same issue. Plaintiff Price alleges she told a Discover representative about her loan and her account information, and Plaintiff Samaco alleges he gave a Verizon representative his billing and credit-card information, all while Defendant's session manager was transcribing and analyzing the calls in real time. TACC ¶¶ 82–84, 99–100, 130–32. These are the kind of specific allegations that *Google Assistant* found missing, and Defendant's reliance on that decision does not support dismissal here.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety. In the alternative, should the Court dismiss any claim, Plaintiffs respectfully request leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted "unless it determines that the pleading could not possibly be cured by the allegation of other facts").

Dated: August 6, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Neal J. Deckant*
Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

**THE SIMON LAW FIRM, P.C.**

By: /s/ *Jeremiah W. Nixon*

Anthony G. Simon, MO Bar #38745
Jeremiah W. Nixon, MO Bar #67148
THE SIMON LAW FIRM, P.C.
1001 Highlands Plaza Drive, Suite 300
St. Louis, Missouri 63110
Phone (314) 241-2929
Fax (314) 241-2029
asimon@simonlawpc.com
jnixon@simonlawpc.com

*Counsel for Plaintiffs*