KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Google Cloud Contact Center AI Privacy Litigation* | Lead Case No. 3:23-cv-5437-RFL<br>Consolidated Case No. 3:24-cv-06225-RFL<br>Consolidated Case No. 3:25-cv-10015-RFL<br>Consolidated Case No. 3:25-cv-10765-RFL<br>Consolidated Case No. 5:26-cv-02327-RFL<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION**<br><br>Date: September 29, 2026<br>Time: 10:00 a.m.<br>Ctrm: 15, Floor 18<br>Judge: Hon. Rita F. Lin<br><br>Date Filed: October 23, 2023<br><br>Trial Date: Not Yet Set |

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs have valid Third-Party arbitration agreements that govern their claims. ..... 2

1. Plaintiffs Samaco and Marquez do not dispute their agreements with Verizon and Uber. ..... 2

2. Plaintiffs' speculation about whether and when Plaintiff Price entered into her agreement with Discover is baseless. ..... 2

B. Google can enforce the Third Parties' arbitration clauses under equitable estoppel ..... 4

1. Plaintiffs' claims are intertwined with the Third Parties' agreements. ..... 5

2. Plaintiffs allege that Google and the Third Parties acted in concert. ..... 7

3. The incorporated privacy policies are part of the agreements. ..... 8

C. Plaintiffs do not dispute that a stay is appropriate. ..... 10

III. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arroyo v. Google*,
2026 WL 2445834 (N.D. Cal. Aug. 20, 2026) .....1, 5, 6, 9

*Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) .....9, 10

*Bender v. Twilio Inc.*,
2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) .....5, 6, 9

*Calhoun v. Google LLC*,
113 F.4th 1141 (9th Cir. 2024) .....5, 6

*Coinmint, LLC v. DX Corr Design, Inc.*,
2023 WL 9595893 (N.D. Cal. Apr. 24, 2023) .....8, 9

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) .....6

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) .....2

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) .....6, 7, 9

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) .....4, 5, 6, 7

*Houghton v. Polychain Alchemy, LLC*,
2025 WL 2965204 (9th Cir. Oct. 21, 2025) .....10

*Hunt v. Meta Platforms, Inc.*,
735 F. Supp. 3d 1133 (N.D. Cal. 2024) .....6, 7, 9

*Hunter v. Pre-Paid Legal Servs., Inc.*,
2025 WL 3101978 (N.D. Cal. Nov. 6, 2025) .....3

*Kilgore v. KeyBank, Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) .....2

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) .....9, 10

*L.W.A. v. LinkedIn Corp.*,
2025 WL 2780788 (N.D. Cal Sept. 30, 2025) .....5, 6

*Maus v. Hyundai Motor Am.*,
2026 WL 974512 (N.D. Cal. Apr. 10, 2026) ....................................................... 3

*Olson v. FCA US, LLC*,
176 F.4th 612 (9th Cir. 2026) ....................................................... 7

*Perry-Hudson v. Twilio, Inc.*,
2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) ....................................................... 5, 6, 8, 9

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ....................................................... 8

*Sanders v. Swift Transp. Co. of Ariz., LLC*,
843 F. Supp. 2d 1033 (N.D. Cal. 2012) ....................................................... 8

*Smith v. Google*,
722 F. Supp. 3d 990 (N.D. Cal. 2024) ....................................................... 7

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....................................................... 7, 10

**State Cases**

*Ballesteros v. Ford Motor Co.*,
331 Cal. Rptr. 3d 232 (Ct. App. 2025) ....................................................... 7, 10

*Ford Motor Warranty Cases*,
17 Cal. 5th 1122 (2025) ....................................................... 7

**State Statutes**

California Information Privacy Act ....................................................... 5, 6

## I. INTRODUCTION

Plaintiffs' opposition leaves the central facts largely undisputed. Plaintiffs Samaco and Marquez do not dispute that they entered into valid arbitration agreements with Verizon and Uber, respectively, nor do they dispute that those provisions encompass privacy disputes arising from their customer relationships. Nor does Plaintiff Price dispute that the agreement submitted by Discover requires individual arbitration of disputes such as this one. Plaintiffs' only response on the facts is to speculate (without any evidence) that Plaintiff Price may or may not have signed that agreement. Discover has now confirmed that Plaintiff Price did sign it. Each Plaintiff therefore entered into a valid arbitration agreement governing the subject matter of this action.

Plaintiffs cannot evade those agreements simply by suing Google instead of Verizon, Uber, and Discover (collectively, the "Third Parties"). Plaintiffs allege that each of the Third Parties contracted, collaborated, and integrated with Google to process Plaintiffs' customer-service calls. The Plaintiffs' agreements with the Third Parties each incorporate privacy terms governing the very conduct Plaintiffs challenge. Because Plaintiffs' claims are inextricably intertwined with their arbitration agreements with the Third Parties and depend on allegations of concerted conduct intimately tied to those agreements' obligations, Google is entitled to compel enforcement of the arbitration provisions. As this Court recently found in the related action, *Arroyo v. Google LLC*, privacy claims such as Plaintiffs' "rely upon the absence of authorization in the [Third Party] agreements, such that the Court would be required to consider the underlying agreements in resolving [their] claims," No. 25-cv-10706-RFL, 2026 WL 2445834, at *2 (N.D. Cal. Aug. 20, 2026). Plaintiffs' authorities do not support a different result. These cases are readily distinguishable because they addressed independent claims, lacked the underlying substantive terms at issue, or raised legal issues distinct from Google's equitable estoppel arguments. For these reasons, and as detailed below and in Google's opening brief, the Court should compel Plaintiffs' claims to individual arbitration and stay this action.

## II. ARGUMENT

### A. Plaintiffs have valid Third-Party arbitration agreements that govern their claims.

Courts apply a two-step inquiry to determine whether parties have agreed to arbitrate their claims, considering first whether a valid agreement to arbitrate exists, and, if it does, whether that agreement encompasses the dispute at issue. *Kilgore v. KeyBank, Nat'l Ass'n,* 718 F.3d 1052, 1058 (9th Cir. 2013). Here, the evidence establishes that Plaintiffs assented to the terms of the Third-Party agreements with Verizon, Uber, and Discover, respectively, and that those agreements each contain arbitration clauses that govern privacy disputes like the claims brought by Plaintiffs in this case.

#### 1. Plaintiffs Samaco and Marquez do not dispute their agreements with Verizon and Uber.

Plaintiffs Samaco and Marquez do not dispute the key facts presented by Google in its Motion. Dkt. 117 ("Mot.") at 3–8; *see also* Dkt. 118 ("Verizon Decl."), Dkt. 119 ("Uber Decl."). Specifically, they do not dispute that (1) they entered into arbitration agreements with Third Parties Verizon and Uber, respectively; (2) their agreements with these Third Parties are valid; (3) these agreements each contain an individual arbitration clause; and (4) the subject matter of their respective allegations in this case is encompassed by each respective agreement's individual arbitration clause.

#### 2. Plaintiffs' speculation about whether and when Plaintiff Price entered into her agreement with Discover is baseless.

Plaintiffs argue that Google "has not even shown that Plaintiff Price has a loan with Discover." Dkt. 127 ("Opp.") at 2–3. But motions to compel arbitration are resolved under a summary judgment standard, *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021), and Plaintiffs submit no evidence from Plaintiff Price disputing that she had a Discover loan or agreed to Discover's terms. Plaintiffs fail to do so even though the essential facts are not uniquely within Discover's possession or knowledge. Plaintiff Price herself necessarily knows whether and when she obtained a Discover loan and agreed to its terms, but Plaintiffs offer only

attorney argument. Such unsupported argument is insufficient. *See Maus v. Hyundai Motor Am.*, 2026 WL 974512, at *3 (N.D. Cal. Apr. 10, 2026) (granting motion to compel arbitration where plaintiff "[did] not introduce *any* competing evidence or even directly deny that he completed the [account] enrollment form") (emphasis in original).

Moreover, even in their attorney argument, Plaintiffs never actually take the position that Plaintiff Price does not have a loan with Discover—they just argue that Google has not submitted sufficient evidence. *See* Opp. at 2–3. Nor could they do so, because Plaintiffs' own allegations identify Price as "an account holder with Discover" who "disclosed . . . account information" when discussing "details regarding a loan." Dkt. 112 ("TACC") ¶¶ 10, 82. Indeed, Plaintiffs' Opposition to Google's Motion to Dismiss describes Plaintiff Price as talking to a Discover representative "about *her* loan and *her* account information." *See* Dkt. 128 ("Mot. to Dismiss Opp.") at 20 (emphasis added).

In any event, to dispel any doubt, Google informed Plaintiffs after receiving their opposition that Discover[1] would confirm the existence of Plaintiff Price's Discover Loan Agreement if Plaintiff Price provided her consent. Supplemental Declaration of Carlos Martinez ¶ 2. (Discover required such authorization because Plaintiff Price's loan records are confidential.) Plaintiff Price consented. *Id.* ¶ 3. Discover then provided Plaintiff Price's final Discover Loan Agreement to Google, along with a second supporting declaration.[2] *See* Supplemental Declaration of Lisa Schwenk ("Reply Discover Decl.").

The disclosed agreement is consistent with Google's Motion to Compel Arbitration and forecloses Plaintiffs' factual arguments as to Plaintiff Price. The Loan Agreement indicates its version with the date "05.18.25"—confirming that it is the same May 18, 2025 Loan Agreement discussed in Discover's initial declaration. *See* Reply Discover Decl., Ex. A at 6 (version "05.18.25"); *see also* Discover Decl., Ex. 2 at 6 (same). Plaintiff Price's Loan Agreement is materially identical to the loan agreement attached to Discover's initial declaration. *Compare*

[1] Discover is now a part of Capital One. Dkt. 120 ("Discover Decl.") ¶ 1.

[2] The Discover reply declaration "is appropriately responsive to [Plaintiffs'] arguments in [their] opposition." *Hunter v. Pre-Paid Legal Servs., Inc.*, 2025 WL 3101978, at *2 n.1 (N.D. Cal. Nov. 6, 2025).

Reply Discover Decl., Ex. A *with* Discover Decl., Ex. 2.

Discover records show that Plaintiff Price completed an online application for a Discover Personal Loan in September 2025. Reply Discover Decl. ¶ 5. The first page of her loan application explicitly incorporated Discover's Privacy Notice. Discover Decl. ¶ 14. Plaintiff Price could not have continued past this first page without acknowledging receipt and agreeing to the hyperlinked Privacy Notice. *Id.* ¶¶ 14–15. Similarly, Plaintiff Price could not have continued past the second page of her loan application without agreeing to the Loan Agreement. *Id.* ¶¶ 16–17; Reply Discover Decl. ¶ 6. The final page of the loan application again required Plaintiff Price to confirm that she agreed to the Loan Agreement. Discover Decl. ¶¶ 19–20; Reply Discover Decl. ¶ 7. Discover's records also show that, one day after Plaintiff Price submitted her loan application, Discover sent her a welcome package containing a physical copy of her final Loan Agreement. Reply Discover Decl. ¶ 8. This evidence establishes that Price assented to the Discover Personal Loan Agreement.

Plaintiff Price's Loan Agreement demonstrates that she agreed to arbitrate her claims, and she does not dispute the key facts on that issue presented by Google in its Motion. Mot. at 4–8; *see also* Discover Decl. Specifically, Plaintiff Price does not dispute that (1) she entered into an arbitration agreement with Third Party Discover; (2) her agreement with Discover is valid; (3) her agreement contains an individual arbitration clause; and (4) the subject matter of her allegations in this case is encompassed by her Discover agreement's individual arbitration clause.

**B. Google can enforce the Third Parties' arbitration clauses under equitable estoppel.**

Plaintiffs agree that California's doctrine of equitable estoppel provides two separate bases under which a non-signatory like Google may enforce a signatory's arbitration agreement with a third party: (1) where "the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract;" or (2) where "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702,

707 & n.5 (9th Cir. 2024) (citations modified); *see also* Opp. at 3–4. Although either basis alone would be sufficient, both are satisfied here.

**1. Plaintiffs' claims are intertwined with the Third Parties' agreements.**

Plaintiffs' privacy claims under CIPA §§ 631, 632, and 637.5 directly implicate their agreements with the Third Parties because Plaintiffs allege that Google lacked authorization for each of the alleged intrusions they claim. *See* TACC ¶¶ 123, 133, 145. Those claims cannot be resolved without considering the Third-Party agreements because the agreements govern whether Plaintiffs consented to that conduct. *See, e.g.*, *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024); *Bender v. Twilio Inc.*,, 2025 WL 2308484, at *8 (N.D. Cal. Aug. 11, 2025); *L.W.A. v. LinkedIn Corp.*, 2025 WL 2780788, at *5 (N.D. Cal Sept. 30, 2025); *Herrera*, 104 F.4th at 710. Indeed, in the related *Arroyo* matter, this Court recently found it "evident" that a Verizon customer's privacy claim required consideration of the Verizon Customer Agreement and incorporated Privacy Policy because the Policy described Verizon's use of artificial intelligence and its sharing of information with service providers and third parties. 2026 WL 2445834, at *2. Just like Plaintiffs' related claims here, *Arroyo* involved privacy claims pertaining to Google's CCAI technology in which the plaintiff alleged that she had not consented to the alleged privacy intrusions. *Id.* at *1. And the Verizon agreements the Court considered there included the same kind of disclosures covering the same alleged data practices as here. *Id.* at *1–2. Although *Arroyo* applied Arizona law, it confirms the critical point: the Court cannot resolve Plaintiffs' claims without looking to Verizon and the other Third Parties' terms.

Plaintiffs' primary argument in response is that, under *Calhoun v. Google LLC*, consent is merely an affirmative defense and thus cannot establish intertwinement. Opp. at 4–7 (citing *Calhoun v. Google LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024)). As detailed in Google's Motion to Dismiss reply, Plaintiffs have misread *Calhoun*, *see* Dkt. 131 at Section II.A.1, and many courts have held that lack of consent is an element of Plaintiffs' CIPA claims, *see* Mot. at 12 (citing cases). Indeed, the plaintiff in *Arroyo* similarly "argue[d] that estoppel is inapplicable because consent is only an affirmative defense to her claim," but this Court held that "this argument is inconsistent with the statutory language" of the Arizona claim, which made it

"unlawful to take certain actions 'without . . . authorization.'" *Arroyo*, 2026 WL 2445834, at *2. The language of Plaintiffs' CIPA claims similarly makes it unlawful to take certain actions without "authorization" or "consent." Cal. Pen. Code § 631(a) (barring "unauthorized" wiretap or an interception "without the consent of all parties to the communication"); *id.* § 632 (barring recording "without the consent of all parties to a confidential communication"); *id.* § 637.5(a)(1) (barring listening "without obtaining the express written consent of the subscriber").

In any event, *Calhoun* does not involve equitable estoppel. 113 F.4th at 1147–48. And *Calhoun* certainly does not hold that an agreement governing consent becomes irrelevant merely because the defendant bears that burden. Indeed, the equitable estoppel inquiry is not so limited, looking instead to "the substance of the plaintiff's claim" and "the relationships of persons, wrongs and issues." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871, 875 (9th Cir. 2021). The relevant question is whether Plaintiffs' claims can actually be resolved without reference to the agreement—not which side must prove it. *See id.* at 875–76; *Herrera*, 104 F.4th at 710. Here, they cannot.

The same flaw undermines Plaintiffs' argument as to *Perry-Hudson*, *Bender*, and *L.W.A*. Plaintiffs' sole attempt to distinguish those cases rests on the fact that each considered consent as an element of the plaintiff's claims, which Plaintiffs claim is barred by *Calhoun*. But Plaintiffs are wrong about *Calhoun*, and these numerous rulings after *Calhoun* further demonstrate that. Plaintiffs argue that *Hunt* is distinguishable because there, the complaint explicitly relied on representations made in the relevant Third-Party agreements. *See* Opp. at 6. But *Hunt* held that intertwinement turns on whether the claims "ultimately depend[]" on compliance with the agreement, not whether the complaint expressly cites it. *Hunt v. Meta Platforms, Inc.,* 735 F. Supp. 3d 1133, 1137 (N.D. Cal. 2024). Plaintiffs' claims against Google likewise depend on whether the Verizon, Uber, and Discover agreements disclose the alleged sharing of their calls with Google. Plaintiffs cannot plead around that dependence. *Perry-Hudson*, 2024 WL 4933332, at *2 ("[W]hile [plaintiff] does not mention the [agreement] in his Complaint, parties may not plead around equitable estoppel.").

The other cases that Plaintiffs cite do not move the needle. In *In re Henson*, the Ninth

Circuit declined to find intertwinement because Henson's claims had "nothing to do with the Customer Agreement" and Henson could pursue his claims "regardless [of] whether [he] signed a Customer Agreement" with the third party. 869 F.3d 1052, 1061 (9th Cir. 2017). Here, by contrast, Plaintiffs' claims arise directly from customer-service calls made pursuant to their relationships with Verizon, Uber, and Discover and their agreements with those Third Parties expressly govern monitoring and data sharing of these calls.

Nor does *Smith v. Google LLC* control. 722 F. Supp. 3d 990, 994 (N.D. Cal. 2024). *Smith* was decided without the benefit of the Ninth Circuit's decision in *Herrera v. Cathay Pac. Airways Ltd.*, which issued only days earlier and was not briefed by the parties. 104 F.4th 702, 707. *Herrera* clarified that claims need only be "in *any way* founded in or bound up with the terms" of the contract—they need not stem from it. *Id.* at 710 (emphasis in original). After *Herrera*, the same court that decided *Smith* found intertwinement and compelled arbitration in *Hunt,* 735 F. Supp. 3d at 1137–38.

Plaintiffs' reliance on *Ford Motor* and *Olson* is equally unpersuasive, as there, the vehicle warranty and defect claims were capable of adjudication without reference to the vehicle sale contracts containing the arbitration agreements. *See Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1133–38 (2025); *Olson v. FCA US, LLC*, 176 F.4th 612, 621–25 (9th Cir. 2026).

**2. Plaintiffs allege that Google and the Third Parties acted in concert.**

Plaintiffs also allege concerted misconduct intimately connected to the Third-Party agreements. As Google explained in its motion, Plaintiffs allege that each Third Party "contracted with Google to listen in on [user] conversations," and that Google "collaborat[ed] with," "partnered with," and "integrate[d]" its technology into the Third Parties' customer-service centers so that Google could allegedly eavesdrop on Plaintiffs' calls about their accounts. TACC ¶¶ 33, 36, 42, 48, 68. Those allegations describe a coordinated arrangement between Google and the Third Parties for the conduct at issue.

Plaintiffs rely on *Smith* in their opposition, but that case involved materially different allegations. There, the complaint portrayed H&R Block as independently choosing how to configure and use Google's off-the-shelf tools. *Smith,* 722 F. Supp. 3d at 995. Here, Plaintiffs

allege that Google and each Third Party contracted, collaborated, partnered, and integrated CCAI into the customer-service centers to accomplish the challenged listening and data processing. TACC ¶¶ 33, 36, 42, 48.

Plaintiffs cannot avoid those allegations by insisting they "do not allege an agreement to wiretap without Plaintiffs' consent was made." Opp. at 9. The equitable estoppel doctrine requires allegations of substantially interdependent and concerted misconduct, not an allegation that the signatory and nonsignatory expressly agreed to violate the law. *See Sanders v. Swift Transp. Co. of Ariz., LLC*, 843 F. Supp. 2d 1033, 1038 (N.D. Cal. 2012). *Perry-Hudson* is instructive: there, the court found concerted misconduct where the plaintiff alleged that the signatory integrated the nonsignatory's technology to transmit customer data, and the incorporated privacy policy governed the signatory's obligations concerning that data. 2024 WL 4933332, at *3; *see also Coinmint, LLC v. DX Corr Design, Inc.*, 2023 WL 9595893, at *4 (N.D. Cal. Apr. 24, 2023) (finding concerted misconduct where the plaintiff alleged that the signatory and nonsignatory defendants jointly participated in a single scheme to induce the plaintiff to enter the underlying agreement). Plaintiffs allege the same kind of integration and coordinated use here between Google and the Third Parties.

Because Plaintiffs attribute the challenged conduct to the concerted actions of Google and the Third Parties jointly through their contractual CCAI integrations, the second, independent basis for equitable estoppel is also satisfied.

**3. The incorporated privacy policies are part of the agreements.**

As a last-ditch effort, Plaintiffs argue that even if the Privacy Policies are intertwined with their claims, these policies are not the "same agreement" as each Customer Agreement or Terms and Conditions. Opp. at 10–11. This argument fails because under California law, "a contract and a document incorporated by reference into the contract are read together as a single document." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017).

Accordingly, numerous courts have permitted equitable estoppel based on a contract and a document incorporated by reference under similar circumstances. Most recently, in the related *Arroyo* matter, this Court addressed the same contractual structure presented here: Verizon's

Customer Agreement contained the arbitration provision, while the Privacy Policy was incorporated by reference into the agreement. 2026 WL 2445834, at *1. The Court correctly read the Customer Agreement and incorporated Privacy Policy together as a single document. *See id.* at *2 (granting Google's motion to compel arbitration after explaining that "the Court would be required to *consider the underlying agreements* in resolving her claims" (emphasis added)). Similarly, in *Atkins v. Amplitude, Inc.*, this Court compelled arbitration under equitable estoppel where the plaintiffs' claims were intertwined with obligations in DoorDash's Privacy Policy that was "expressly incorporated into DoorDash's Terms & Conditions—the broader agreement containing the arbitration provision." 2025 WL 2521732, at *3 (N.D. Cal. Sept. 2, 2025). The Court read the DoorDash Privacy Policy and Terms & Conditions as a single document. *See id.*; *see also Perry-Hudson,* 2024 WL 4933332, at *2–3 (compelling arbitration under equitable estoppel where plaintiff's claims were intertwined with obligations in Keep's Privacy Policy that was incorporated into the Keeps Terms & Conditions).

Indeed, courts have flatly rejected arguments similar to the one Plaintiffs make here. *See, e.g.*, *Bender,* 2025 WL 2308484, at *7 (rejecting plaintiff's argument that claims do not rely on the agreement and compelling arbitration under equitable estoppel based on the relevant terms and incorporated privacy policy); *Hunt*, 735 F. Supp. 3d at 1137–38 & n.2 (rejecting argument that the agreement and incorporated privacy notice are "entirely separate document[s]" and treating both as part of the same agreement).

Plaintiffs' cited cases are not to the contrary. Plaintiffs read *In re Henson* to foreclose equitable estoppel where the asserted intertwinement rests on an incorporated privacy policy rather than the agreement containing the arbitration clause. 869 F.3d 1052; Opp. at 11. Plaintiffs overread *In re Henson*: the Ninth Circuit did not have to consider any incorporated documents because it concluded that the plaintiff's claims had "nothing to do with the Customer Agreement." 869 F.3d at 1061. The privacy policy was irrelevant to the holding—it was not excluded from the agreement. *See id.*

Plaintiffs otherwise cherry-pick quotes that are unrelated to their separate agreement theory. Plaintiffs misleadingly emphasize a portion of a quotation from *Kramer v. Toyota Motor*

*Corp.*, 705 F.3d 1122 (9th Cir. 2013), to imply that separate incorporated documents are not considered under equitable estoppel. *See* Opp. at 9. But *Kramer* did not address incorporation by reference or hold that incorporated terms must appear in the same document as the arbitration provision. *See Kramer*, 705 F.3d at 1129. Instead, *Kramer* explained that the purpose of equitable estoppel is to prevent a plaintiff from invoking an agreement's obligations while simultaneously avoiding an arbitration clause in that "same agreement." *Id.*

Similarly, Plaintiffs point to a quote from *Houghton v. Polychain Alchemy, LLC*, 2025 WL 2965204 (9th Cir. Oct. 21, 2025), about how equitable estoppel does not apply where the claims do not depend on the contract. *See* Opp. at 11. But *Houghton* also does not support Plaintiffs' theory because there, the Ninth Circuit considered both the arbitration agreement *and* the incorporated document. *See Houghton*, 2025 WL 2965204, at *3–4.

### C. Plaintiffs do not dispute that a stay is appropriate.

Plaintiffs do not oppose Google's request for a stay pending arbitration as to Plaintiffs Samaco, Marquez, and Price. *See* Mot. at 15. If the Court compels arbitration, Section 3 of the Federal Arbitration Act requires such a stay. *Smith v. Spizzirri,* 601 U.S. 472, 478 (2024).

## III. CONCLUSION

The "overriding concern in equitable estoppel cases" is fairness. *Atkins*, 2025 WL 2521732, at *3 (quoting *Ballesteros v. Ford Motor Co.*, 331 Cal. Rptr. 3d 232, 249 (Ct. App. 2025)). It would be unfair to allow Plaintiffs to evade their arbitration agreements with the Third Parties by suing Google, when Google's alleged conduct is inextricably intertwined with the customer relationships, privacy disclosures, and consent provisions governed by the Third-Party agreements. *See id.* Plaintiffs agreed to individually arbitrate disputes arising from their relationships with the Third Parties, and the Court should hold them to those agreements.

For the foregoing reasons, Google respectfully requests that the Court grant its motion to compel individual arbitration for Plaintiffs Samaco, Marquez, and Price, and stay this action as to Plaintiffs Samaco, Marquez, and Price pending resolution of the individual arbitrations.

Dated: September 10, 2026

KEKER, VAN NEST & PETERS LLP

By: /s/*Benjamin Berkowitz*
BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
IAN KANIG

Attorneys for Defendant GOOGLE LLC