UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: GOOGLE CLOUD CONTACT CENTER AI PRIVACY LITIGATION

Case No. 23-cv-05437-RFL

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 117

This is a consolidated set of putative class actions, generally alleging that defendant Google recorded Plaintiffs' customer service calls with non-parties, in violation of Sections 631(a), 632(a), and 637.5 of the California Invasion of Privacy Act (CIPA). (Dkt. No. 112.) Google has moved to compel three of the named plaintiffs—Paolo Roméo Samaco, Chelsea Marquez, and India Price—to arbitrate their claims pursuant to their agreements with the non-parties.[1] (Dkt. No. 117.) For the reasons explained below, Google's Motion to Compel Arbitration is **GRANTED**, and the case is **STAYED** with respect to those three plaintiffs pending resolution of the arbitration proceedings. This order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.

***Formation.*** There is no dispute that Samaco, Marquez, and Price formed valid and binding arbitration agreements with non-parties Verizon, Uber, and Discover, respectively. Samaco does not dispute that he agreed to Verizon's Customer Agreement, which contains an individual arbitration clause and incorporates by reference Verizon's Privacy Policy. (Dkt.

[1] Google also moved in the alternative to dismiss, which will be addressed in a separate order. (Dkt. No. 121.)

No. 118 ¶ 7–14; Dkt. No. 118-1 at 4; Dkt. No. 118-2 at 3; Dkt. No. 118-3 at 2, 6–9.)[2] Similarly, Marquez does not dispute that she agreed to the Uber Rider Terms of Use, which include an arbitration clause and incorporate by reference Uber's Privacy Notice. (Dkt. No. 119 ¶ 12; Dkt. No. 119-9 at 2-5.)

Price initially disputed whether Google had met its burden to show she formed a valid and binding arbitration agreement with Discover. (Dkt. No. 127 at 5-7.) But on reply, Google submitted a declaration from a Discover employee, confirming that Price agreed to Discover's Personal Loan agreement, which includes an arbitration clause and incorporates Discover's Privacy Policy. (Dkt. No. 134 ¶ 4-7; Dkt. No. 134-1 at 2, 3, 5-7.) At oral argument, counsel for Plaintiffs conceded that there was no longer any dispute about formation as to Price.

***Equitable Estoppel.*** Google may enforce the arbitration agreements against Plaintiffs under California's equitable estoppel doctrine. That doctrine "applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (alteration in original) (citations omitted). Both circumstances apply here.

As to the first circumstance, Plaintiffs' claims are intimately founded in and intertwined with their agreements with Verizon, Uber, and Discover. To determine whether claims are intertwined with the agreements, courts "look at the relationship between the parties and their connection to the alleged violations." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024) (citation omitted). "Equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in

[2] All citations to page numbers refer to ECF pagination.

asserting its claims against the nonsignatory." *Kramer*, 705 F.3d at 1129 (internal quotation marks and alterations omitted) (quoting *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 541 (Ct. App. 2009)). Thus, the Court considers whether the claims are "fully viable without reference to the terms of those agreements." *Goldman*, 92 Cal. Rptr. 3d at 551.

Here, Plaintiffs' claims are intertwined with their agreements with non-parties Verizon, Uber and Discover, because the claims require that Google lacked consent to record or intercept Plaintiffs' customer service calls, and consent cannot be determined without reference to the non-parties' agreements, as memorialized in their privacy policies. All claims require lack of consent. *See* Cal. Penal Code § 631(a) (prohibiting "any unauthorized connection" or wiretapping "without the consent of all parties to the communication"); *id.* § 632(a) (prohibiting recording "without the consent of all parties"); *id.* § 637.5(a)(1) (prohibiting recording "without obtaining . . . express written consent"). The non-parties' privacy policies, each of which addresses customer service calls, are essential to evaluating whether Plaintiffs consented to Google's recording of their customer service calls with those non-parties. (Dkt. No. 118-5 at 6-7; Dkt. No. 119-10 at 7; Dkt. No. 119-11 at 9; Dkt. No. 120-2 at 3.) Indeed, at the hearing on the motion to dismiss, the discussion concerning the adequacy of Plaintiffs' allegations was all about the language in those non-parties' privacy policies, which underscores how the claims depend on the absence of consent in those privacy policies.

Because those privacy policies are incorporated by reference into the agreements containing arbitration clauses, they are considered together as a single contract. *See, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017) ("Under California law, a contract and a document incorporated by reference into the contract are read together as a single document . . . ."). Thus, Plaintiffs' claims depend on interpreting contracts containing arbitration provisions.

Plaintiffs' primary counterargument is that lack of consent is not an element of their claims but instead an affirmative defense. By that logic, their claims are fully viable without reference to the agreements.

The argument fails because lack of consent is an element of the CIPA claims, not an affirmative defense. Most courts that have addressed this issue have decided consent is an element. *See, e.g.*, *Atkins v. Amplitude, Inc.*, No. 24-cv-04913-RFL, 2025 WL 2521732, at *2 (N.D. Cal. Sept. 2, 2025); *Perry-Hudson v. Twilio, Inc.*, No. 24-cv-03741-VC, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024); *but see Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023). This is the most natural way to read the statutory provisions at issue here, because they all include lack of consent in the initial definition of the proscribed conduct, rather than in a separate exceptions section. *See* Cal. Penal Code §§ 631, 632, 637.5; *United States v. Carey*, 929 F.3d 1092, 1099-1100 (9th Cir. 2019) (explaining that when a statute includes a condition in "the clause proscribing the conduct in question," the condition is more likely to be an element, whereas a condition in a separate "clause set off by commas and beginning with the word[] 'except'" is more likely to be an affirmative defense (citations omitted)). Additionally, California's jury instructions place the burden on the plaintiff to prove lack of consent. Jud. Council of Cal. Civil Jury Instruction 1809 (consent is an element of civil Section 632, 637.5 claims); *see also* Cal. Jury Instr., Crim. 13.01 (same for criminal Section 632 claims).

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024), on which Plaintiffs rely, is not to the contrary. *Calhoun* did remark in passing that "[t]he parties agree that consent is 'an affirmative defense for which defendant bears the burden of proof.'" *Id.* at 1147. But that statement was not specific to CIPA claims. The parties apparently reached that agreement as to six causes of action, and there is no explanation of why they so agreed as to CIPA. *Id.* Moreover, the allocation of the burden of proof was not relevant to *Calhoun*'s holding. Instead, *Calhoun*'s point was that the district court erred by straying from the core question of consent, which was whether a reasonable consumer would have understood the agreement to include permission to collect the data at issue. *Id.* at 1148-51. That would be error regardless of whether consent is an element or affirmative defense. In sum, *Calhoun* did not say one way or another whether consent is an element of a CIPA claim. Thus, courts within the Ninth Circuit have

continued to hold that consent is an element of CIPA claims after *Calhoun*. *See, e.g.*, *Perry-Hudson*, 2024 WL 4933332, at *2; *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d at 940.

As to the second circumstance in which equitable estoppel applies, Plaintiffs' claims involve allegations of interdependent and concerted misconduct by Google and non-parties Verizon, Uber, and Discover. The operative complaint alleges that these non-parties "contracted with Google to listen in on conversations through" Google's Cloud Customer Center AI product. (Dkt. No. 112 ¶ 33.) Plaintiffs do not allege that Google would have listened to their calls absent its agreements with the non-parties, and indeed, allege that those non-parties paid Google for the Cloud Customer Center AI product. (Dkt. No. 112 ¶ 49.) And as explained above, the claims against Google depend on showing an absence of consent in the privacy policies that govern Plaintiffs' calls with the non-parties. *See Atkins*, 2025 WL 2521732, at *3 (holding privacy claims involved allegations of interdependent and concreted misconduct where defendant had installed tracking software on non-party's website pursuant to a contract with that non-party, and claims depended on showing the non-party's privacy policy did not disclose the tracking).

***Conclusion.*** For the reasons explained above, Google's motion to compel arbitration is **GRANTED**. Plaintiffs Paolo Roméo Samaco, Chelsea Marquez, and India Price must arbitrate their claims, and the case is **STAYED** with respect to these plaintiffs pending resolution of their arbitration proceedings. The parties shall file a joint status report every 180 days to update the Court on the arbitration proceedings and shall file a joint status report within 14 days of the completion of arbitration proceedings.

**IT IS SO ORDERED.**

Dated: October 22, 2026

RITA F. LIN
United States District Judge