UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GOOGLE CLOUD CONTACT CENTER AI PRIVACY LITIGATION | Case No. 23-cv-05437-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 121 |

This is a consolidated set of putative class actions against Google, generally alleging that Google violated Plaintiffs' privacy when its Cloud Contact Center AI product recorded their customer service calls with various companies and used those recordings to train Google's AI models, among other purposes. Some named plaintiffs were sent to arbitration in a separate order. (Dkt. No. 140.) Google moves to dismiss the remaining named plaintiffs, who allege Google recorded their customer service calls with non-party Home Depot, in violation of Section 631(a) of the California Invasion of Privacy Act. (Dkt. No. 121.) For the reasons explained below, Google's Motion to Dismiss is **GRANTED**. Plaintiffs' claims are **DISMISSED** with leave to amend.

## I. BACKGROUND

The following is a recitation of the operative complaint's allegations, which are taken as true at this stage of the proceedings.

Google Cloud Customer Center AI is a "human-like generative AI powered contact center." (Dkt. No. 112 ¶ 24.) When a consumer calls the customer service line of a company that uses Google Cloud Customer Center AI, such as Home Depot, the consumer first speaks with Google's "virtual agent," which tries to answer their questions. (Dkt. No. 112 ¶¶ 25.) The virtual agent does not disclose that it is provided by Google. (Dkt. No. 112 ¶ 25.) If the consumer requests to speak to a human, Google's virtual agent transfers them, along with a

transcript of their conversation, to a human agent at the company, which would be Home Depot in the case of the three named plaintiffs. (*See* Dkt. No. 112 ¶ 26.) However, Google continues to listen to the call between the consumer and the human agent; it gives the human agent a real-time transcript, suggested articles, and "smart replies." (*See* Dkt. No. 112 ¶ 28-31.) Google uses generative AI for these capabilities. (*See* Dkt. No. 112 ¶ 32, 34.) Google has the capability to use recordings of the calls to improve its own AI models. (Dkt. No. 112 ¶ 51.)

Plaintiffs are consumers who called companies that use Google Cloud Customer Center AI. (Dkt. No. 112 ¶¶ 56-103.) Google moved to compel several plaintiffs to arbitrate their claims, and the court granted that request in a separate order. (Dkt. No. 140.) There are three named plaintiffs remaining in the action, all of whom placed calls to Home Depot's customer service and then interacted with Google Cloud Customer Center AI. (Dkt. No. 112 ¶¶ 56-78.) James Fox and Peter Samish have customer accounts with Home Depot. (Dkt. No. 112 ¶¶ 7-8.) Christopher Barulich does not allege whether or not he has a Home Depot customer account. (*See* Dkt. No. 112 ¶¶ 9, 72-78.)

Fox, Samish, and Barulich allege only one cause of action: that Google violated Section 631(a) of the California Invasion of Privacy Act (CIPA) by listening to their Home Depot customer service calls. (Dkt. No. 112 ¶¶ 115-25.) Google has moved to dismiss under Rule 12(b)(6).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In ruling on a motion under Rule 12(b)(6), a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice."

*UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

## III. DISCUSSION

### A. Consent

The accountholder plaintiffs, Fox and Samish, have not plausibly alleged lack of consent, so their claims are dismissed. However, Barulich has plausibly alleged lack of consent.

Section 631(a) sets forth "three distinct and mutually independent" kinds of violations: "[1] intentional wiretapping, [2] wil[l]fully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). The first two violations concern obtaining information from communications; the third is about using information, and requires that the information was "obtained through a violation of the first or second clauses." *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020).

As explained in the order granting Google's motion to compel arbitration, lack of consent is an element of these violations, not an affirmative defense. (*See* Dkt. No. 140.) Most courts that have addressed this issue have decided consent is an element. *See, e.g.*, *Atkins v. Amplitude, Inc.*, No. 24-cv-04913-RFL, 2025 WL 2521732, at *2 (N.D. Cal. Sept. 2, 2025); *Perry-Hudson v. Twilio, Inc.*, No. 24-cv-03741-VC, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940 (N.D. Cal. 2024); *but see Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023). This is the most natural way to read Section 631, because it includes lack of consent in the initial definition of the proscribed conduct, rather than in a separate exceptions section. *See* Cal. Penal Code § 631; *United States v. Carey*, 929

F.3d 1092, 1099-1100 (9th Cir. 2019) (explaining that when a statute includes a condition in "the clause proscribing the conduct in question," the condition is more likely to be an element, whereas a condition in a separate "clause set off by commas and beginning with the word[] 'except'" is more likely to be an affirmative defense (citations omitted)). Additionally, California's jury instructions for related CIPA violations place the burden on the plaintiff to prove lack of consent. Jud. Council of Cal. Civil Jury Instruction 1809 (consent is an element of civil Section 632, 637.5 claims); *see also* Cal. Jury Instr., Crim. 13.01 (same for criminal Section 632 claims).

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024), on which Plaintiffs rely, is not to the contrary. *Calhoun* did remark in passing that "[t]he parties agree that consent is 'an affirmative defense for which defendant bears the burden of proof.'" *Id.* at 1147. But that statement was not specific to CIPA claims. The parties apparently reached that agreement as to six causes of action, and there is no explanation of why they so agreed as to CIPA. *Id.* Moreover, the allocation of the burden of proof was not relevant to *Calhoun*'s holding. Instead, *Calhoun*'s point was that the district court erred by straying from the core question of consent, which was whether a reasonable consumer would have understood the agreement to include permission to collect the data at issue. *Id.* at 1148-51. That would be error regardless of whether consent is an element or affirmative defense. In sum, *Calhoun* did not say one way or another whether consent is an element of a CIPA claim. Thus, courts within the Ninth Circuit have continued to hold that consent is an element of CIPA claims after *Calhoun*. *See, e.g.*, *Perry-Hudson*, 2024 WL 4933332, at *2; *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d at 940.

"Consent 'can be [express] or implied, but any consent must be actual.'" *In re Meta Android Priv. Litig.*, 833 F. Supp. 3d 1010, 1023 (N.D. Cal. 2026) (alteration in original) (quoting *Calhoun*, 113 F.4th at 1147). "[C]onsent is strictly construed in scope, reaching only 'the particular conduct, or substantially the same conduct' as what was agreed to." *Id.* (quoting *Calhoun*, 113 F.4th at 1147).

### 1. Accountholder Plaintiffs (Fox and Samish)

Here, the accountholder plaintiffs have not plausibly alleged lack of consent because they agreed to a privacy policy that discloses that Google has access to their calls. Fox and Samish allege that they are Home Depot accountholders, which means they had to agree to Home Depot's Account Terms and Conditions, which incorporated Home Depot's Privacy and Security Statement.[1] (Dkt. No. 112 ¶¶ 7-8; Dkt. No. 123-1 at 5; Dkt. No. 123-2 at 2; Dkt. No. 123-3 at 5.)[2] The Privacy and Security Statement, in turn, disclosed that Home Depot would collect "Video Recordings and Audio Recordings," including "customer care calls," and that Home Depot would "[d]isclose" those recordings to "[s]ervice providers that process information on [Home Depot's] behalf." (Dkt. No. 123-4 at 7; Dkt. No. 123-5 at 6-7; Dkt. No. 123-6 at 7.) Those "service providers" plainly include Google, because the complaint alleges that Google's Cloud Customer Center AI product analyzed the context of Plaintiffs' calls and suggested "smart replies" to Home Depot's agent. (Dkt. No. 112 ¶¶ 24-25, 60, 68.)

Although Fox and Samish argue that Google exceeded the scope of this consent, the language of the Privacy and Security Statement defeats that argument. They argue that the Statement did not cover real-time sharing, but the Statement provides without limitation that customer service call recordings may be disclosed to service providers, and there is no reason to assume some kind of delay is built into that disclosure. (*See* Dkt. No. 123-4 at 7; Dkt. No. 123-5 at 6-7; Dkt. No. 123-6 at 7.) They argue that Google was not specifically named in the Statement, but they offer no reason why Google is not already included in the express category of "service providers." (Dkt. No. 123-4 at 7; Dkt. No. 123-5 at 7; Dkt. No. 123-6 at 7.)

Fox and Samish also argue that Google exceeded the scope of their consent by allegedly using call recordings for its own purposes, such as training its AI models. (Dkt. No. 128 at 10-14.) But while Section 631(a)(3) allows liability for subsequent use of recordings, such use is

---

[1] Google's unopposed request for judicial notice (Dkt. No. 122) is granted as to the documents concerning Home Depot, and denied as moot as to all other documents. Home Depot had several different versions of these documents in effect during the class period, but the differences between these versions are immaterial.

[2] All citations to page numbers refer to ECF pagination.

prohibited only when it was obtained as a result of a violation of Section 631(a)(1) or (2). *See, e.g.*, *Google Assistant*, 457 F. Supp. at 827. Fox and Samish have not pled a predicate violation, because Google had their consent to listen to the calls. The Privacy and Security Statement did not say service providers' access to calls would be conditioned on them only using the calls for certain purposes. Instead, the Statement only said that Home Depot could "disclose" the calls to "service providers that process information on [Home Depot's] behalf." (Dkt. No. 123-4 at 7; Dkt. No. 123-5 at 6-7; Dkt. No. 123-6 at 7.) When pressed at oral argument, Plaintiffs' counsel could not identify any reason the privacy policy does not give consent to Google to listen to calls as a service provider for Home Depot, and the complaint affirmatively alleges that Google does use the calls to provide services to Home Depot. (*See* Dkt. No. 112 ¶¶ 24-31, 50, 60, 68, 75.) The Statement does include a list entitled "Why Do We Collect and Disclose It?" with respect to the recordings of customer care calls. (Dkt. No. 123-4 at 7; Dkt. No. 123-5 at 7; Dkt. No. 123-6 at 7.) That language, however, describes only Home Depot's reasons for making the disclosure and does not purport to restrict subsequent use of the information. In sum, Plaintiffs do not plausibly allege Google's initial collection of call data to be beyond the scope of Fox and Samish's consent, so there is no Section 631(a)(1) or (a)(2) claim. Because Fox and Samish's allegations are only about how Google uses data that it had consent to collect, they have also failed to adequately plead a Section 631(a)(3) claim.

Fox and Samish's claims are therefore dismissed. It seems unlikely that Fox and Samish could bring claims in light of the language of the Privacy and Security Statement. However, because this is the first opportunity for Fox and Samish to amend with the benefit of the Court's analysis, and there may be additional facts or agreements not otherwise alleged, dismissal will be with leave to amend.

**2. Non-accountholder Plaintiff (Barulich)**

The analysis comes out differently for Barulich. Unlike Fox and Samish, he is not a Home Depot accountholder, and Google has not shown that he otherwise assented to or was even aware of the Privacy and Security Policy. Google argues that it is Barulich's responsibility to

affirmatively allege that he did not see the Privacy and Security Policy, but there is no basis for imposing this heightened requirement on Barulich when he does not even have a Home Depot account. (Dkt. No. 121 at 8, 18-19.) Google argues that it is common practice for customer service calls to be recorded, but that alone does not establish that Barulich impliedly consented to share the recording of his call to an unannounced third party. (Dkt. No. 121 at 19.) Because Barulich affirmatively alleges that he did not consent to Google listening to his call, and because there is nothing in the complaint or the judicially noticeable materials to make that allegation implausible, he has adequately pled lack of consent. (Dkt. No. 112 ¶ 77.)

**B. Intent**

Although Barulich has plausibly alleged lack of consent, he (as well as Fox and Samish) failed to plausibly allege that Google had the requisite intent for a Section 631(a) violation. All three Plaintiffs' claims are thus dismissed on that basis, with leave to amend.

Another element of Section 631(a) is that the defendant acted "intentionally" or "willfully." Cal Penal Code § 631(a). The defendant must have this requisite intent for all elements of the claim, including the lack of consent. *See Manier v. Triple Lift Inc*, No. 5:25-cv-03223-SSS-DTBx, 2026 WL 1295546, at *3 (C.D. Cal. Apr. 15, 2026); *see also Rojas v. HSBC Card Servs. Inc.,* 20 Cal. App. 5th 427, 434-35 (2018) (holding there is a similar requirement for Section 632(a) claims); *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (holding there is a similar requirement for California Computer Data Access and Fraud Act claims). Thus, if a defendant did not intend to listen to a call without consent, the defendant cannot have violated Section 631(a). *See Manier*, 2026 WL 1295546, at *3. Plaintiffs do not seem to contest that the intent requirement applies to lack of consent: at oral argument, they conceded that if Home Depot had represented to Google that it obtained Plaintiffs' consent, and Google had reasonably relied on that representation, then Google could not be liable under Section 631(a) for nonconsensual recording.

Plaintiffs have alleged no facts that would show Google intended to record the calls without Plaintiffs' consent. While it is obvious from the complaint that Google intentionally

listened to the calls—that is what the Cloud Customer Center AI product is built to do—there are no factual allegations about whether Google intended to do so without Plaintiffs' consent. Instead, Plaintiffs simply allege conclusory statements that Google "intentionally tapped" their calls and "willfully and without the consent of all parties to the communication" recorded the calls. (Dkt. No. 112 ¶¶ 121-22.) Those bare repetitions of the elements of the claim, without supporting factual allegations, are insufficient to state a claim. *See, e.g.*, *Khoja*, 899 F.3d at 1008.

Google argues that amendment is futile because its contract with Home Depot requires Home Depot to obtain Plaintiffs' consent, so Google could never have the required state of mind. (Dkt. No. 121 at 19-22.) It is true that Google's instructions to Home Depot, including in any such contractual provision, are relevant to whether Google intended to act without consent. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024) ("If a plaintiff alleges that the clients of a source code provider use the code contrary to the provider's instructions, the plaintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions."). But that does not mean that simply including such a contractual provision would always be sufficient to defeat liability as a matter of law. The record does not foreclose the possibility that Plaintiffs could allege facts supporting a plausible inference that Google knew Home Depot was not obtaining customers' consent or otherwise showing that Google intended to listen to their calls without consent. As it is not clear that amendment would necessarily be futile, Plaintiffs' claims are dismissed with leave to amend.

## IV. CONCLUSION

For the reasons explained above, Google's Motion to Dismiss is **GRANTED**. Fox, Samish, and Barulich's claims are **DISMISSED** with **LEAVE TO AMEND**. If they wish to file an amended complaint correcting the deficiencies identified above, they shall do so by **November 12, 2026**. They may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15. If no such amended

complaint is filed by that date, their claims will remain dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: October 22, 2026

RITA F. LIN
United States District Judge